# Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x
                                        :

Z & J LLC d/b/a APPEALTECH,                                          :

                              Plaintiff,     :

                                      :     Index No. 650620/2018

                    -against-     :

                                      :

LAURENCE MYNES and COUNSEL PRESS, INC.,     :

                                      :

                           Defendants.     :

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## COUNSEL PRESS'S MOTION TO DISMISS THE COMPLAINT

900200.00001/106703095v.1

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO: 28

INDEX NO. 650620/2018

19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 3 of 23

RECEIVED NYSCEF: 03/30/2018

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 2

    A. AppealTech ............................................................................................... 2

    B. The Employment Agreement ................................................................... 3

    C. Mynes Joins Counsel Press ..................................................................... 4

    D. AppealTech's Claims .............................................................................. 5

    E. The Current Motion ................................................................................. 6

ARGUMENT .............................................................................................................. 7

    POINT ONE  APPEALTECH FAILED TO ALLEGE CLAIMS AGAINST
    COUNSEL PRESS FOR TORTIOUS INTERFERENCE ................................. 7

        A. AppealTech Failed to Allege a Claim for Tortious Interference with Contract ..... 7

            1. AppealTech Failed to Allege the Existence of a Valid Contract ...................... 8

            2. AppealTech Failed to Allege Its Claims with Specificity ............................... 11

            3. AppealTech Has Not Alleged a Breach of the Confidentiality Provision ....... 14

        B. Tortious Interference with Business Relationships ............................................. 15

    POINT TWO  APPEALTECH'S CAUSE OF ACTION FOR ATTORNEYS' FEES
    SHOULD BE DISMISSED ........................................................................ 17

CONCLUSION ........................................................................................................... 18

900200.00001/106703095v.1

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 28
RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 4 of 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy Orthotic & Prosthetic Assoc. IPA, Inc. v. Healthfirst PHSP, Inc.*,
  2016 N.Y. Misc. LEXIS 2734 (Sup. Ct. N.Y. Cnty. 2016) .........................................15, 16, 17

*Algomod Tech. Corp. v. Price*,
  65 A.D.3d 974 (1st Dep't 2009) ...........................................................................................16

*BDO Seidman v. Hirshberg*,
  93 N.Y.2d 382 (1999) ............................................................................................................8

*Blackman Plumbing Supply Co. v. Connelly*,
  2011 N.Y. Misc. LEXIS 4352 (Sup. Ct. Nassau Cnty. 2011) .................................................9

*Bonanni v. Straight Arrow Publishers, Inc.*,
  133 A.D.2d 585 (1st Dep't 1987) ......................................................................................1, 11

*Burrowes v. Combs*,
  25 A.D.3d 370 (1st Dep't 2006) ...........................................................................................11

*Chapel v Mitchell*,
  84 NY2d 345 (N.Y. 1994) ....................................................................................................18

*Comcast Sound Commc'ns, Inc. v. Hoeltke*,
  572 N.Y.S.2d 189 (4th Dep't 1991).......................................................................................14

*Crown It Servs., Inc. v. Koval-Olsen*,
  11 A.D.3d 263 (1st Dep't 2004) .............................................................................................8

*ENV Servs., Inc. v. Alesia*,
  10 Misc. 3d 1054(A) (Sup. Ct. Nassau Cnty. 2005)...............................................................9

*Fiduciary Ins. Co. of Am. v. Med. Diagnostic Servs.*,
  P.C., 150 A.D.3d 498 (1st Dep't 2017) .................................................................................17

*Geffert Co., Inc. v. Fratelli Bonella, SRL*,
  2015 N.Y. Misc. LEXIS 3699 (Sup. Ct. Nassau Cnty. 2015) ...............................................16

*Good Energy, L.P. v. Kosachuk*,
  49 A.D.3d 331 (1st Dep't 2008) ..........................................................................................8, 9

*Goodman v. N.Y. Oncology Hematology, P.C.*,
  101 A.D.3d 1524 (3d Dep't 2012) ......................................................................................8, 10

ii

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 28
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
RECEIVED NYSCEF: 03/30/2018
Re Motion to Dismiss.    Pg 5 of 23

*Greco v. GSL Enters., Inc.,*
   137 Misc.2d 714 (N.Y. City Civ. Ct. 1987)............................................................18

*Greystone Staffing, Inc. v. Warner,*
   106 A.D.3d 954 (2d Dep't 2013).............................................................................13

*Jonas v. Newedge USA, LLC,*
   2008 N.Y. Misc. LEXIS 9805 (Sup. Ct. N.Y. Cnty. 2008)..........................11, 12, 13

*Korangy Publ., Inc. v. Miceli,*
   22 Misc. 3d 1130(A) (Sup. Ct. N.Y. Cnty. 2009)..................................................1, 7

*Lau v. Lazar,*
   130 A.D.3d 413(1st Dep't 2015) ..............................................................................8

*Leon v. Martinez,*
   84 N.Y.2d 83 (1994) .................................................................................................7

*Maltby v. Harlow Meyer Savage, Inc.,*
   166 Misc.2d 481 (1995)........................................................................................8, 10

*Martian Entertainment, LLC v. Harris,*
   12 Misc. 3d 1190(A) (Sup. Ct. N.Y. Cnty. 2006)..............................................7, 15

*Yeldin v. Lieberman,*
   102 A.D.3d 769 (2d Dep't 2013) .............................................................................10

**Statutes**

CPLR §3211........................................................................................................................1

Defendant Counsel Press, Inc. ("Counsel Press") submits this Memorandum of Law in support of its motion (the "Motion") to dismiss Plaintiff Z & J LLC d/b/a AppealTech's ("AppealTech") claims against Counsel Press pursuant to New York Civil Practice Law and Rules §§ 3211(a)(1) and (7) (the "Motion").

## PRELIMINARY STATEMENT

AppealTech alleges two vexatious claims for tortious interference against Counsel Press, its primary competitor in the appellate services industry. The allegations relate to Counsel Press's hiring of Defendant Laurence Mynes ("Mynes") who had previously worked for AppealTech. Mr. Mynes signed an Employment Agreement (defined below) with AppealTech while in its employ. The Employment Agreement contains a non-competition clause and a confidentiality provision. AppealTech's claims against Counsel Press fail as a matter of law for a variety of reasons.

Under New York law, tortious interference claims must be pleaded with specificity. *Korangy Publ., Inc. v. Miceli*, 22 Misc. 3d 1130(A) (Sup. Ct. N.Y. Cnty. 2009) (*Bonanni v. Straight Arrow Publishers, Inc.*, 133 A.D.2d 585, 587 (1st Dep't 1987) (citation omitted). In the Complaint, however, AppealTech does not identify a single customer or other business relationship with which Counsel Press interfered, nor does it identify a single piece of confidential information Mynes wrongfully disclosed. Rather, AppealTech makes conclusory allegations based largely "upon information and belief." AppealTech merely speculates that: (i) Mynes may have retained certain information from his employment at AppealTech and, if he did, (ii) Mynes may also have shared that information with Counsel Press and, if he did, (iii) Counsel Press may have misused that information. These speculative allegations fail as a matter of law.

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO. 28
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 7 of 23

But even if AppealTech's allegations were adequate, which they are not, the underlying Employment Agreement is unenforceable because its scope far exceeds any legitimate interest AppealTech may have. For example, while Mynes' work for AppealTech was focused on the New York market, the Employment Agreement purports to bar him from continuing his career in the appellate services nationwide for a period of six months. The Employment agreement also purports to bar Mynes from servicing all AppealTech clients regardless of whether Mynes had worked with them. New York law is clear that such expansive restrictions on a person's livelihood are unenforceable. Accordingly, the Court should dismiss AppealTech's claims against Counsel Press.

## FACTUAL BACKGROUND

### A.    *AppealTech*

AppealTech is an appellate services provider with offices in New York, New York, Rochester, New York and Los Angeles, California. *See* Affirmation of Ryan E. Cronin dated March 30, 2018 ("Cronin Aff."), Exh. A (the "Complaint"), ¶¶ 12-13. AppealTech also services various jurisdictions nationwide for both state and federal appellate courts. *Id.,* ¶¶ 14-15. As an appellate services provider, AppealTech "is retained during the appellate process to guide attorneys and law firms through appellate court procedures..." *See* Cronin Aff., Exh. B ("Kestan Aff."), ¶ 4. AppealTech also provides appellate printing and electronic filing services. *Id.*

In January 2006, Plaintiff hired Mynes to serve as a Senior Appellate Consultant. Cmplt., ¶ 22. Prior to working in the appellate services industry, Mynes worked for various advertising and marketing consultant companies for approximately twenty-five (25) years. *Id.,* ¶ 23. As a Senior Appellate Consultant, Mynes assisted AppealTech's clients in perfecting appeals, specializing in the New York State Appellate Divisions, the New York State Court of Appeals, and the Second Circuit Court of Appeals. *Id.,* ¶¶ 27-28.

2

900200.00001/106703095v.1

In recent years, AppealTech's business has experienced a significant downturn. For example, in August 2016, AppealTech's employees began to leave AppealTech to work for its competitor, Counsel Press. Cmplt., ¶ 36-38. By October 2016, seven employees had left AppealTech to work for Counsel Press. *Id.,* ¶ 38. After the departure of these employees, AppealTech's profits "significantly decreased." *See* Kestan Aff. ¶ 48. And, by the end of 2017, "AppealTech's revenue declined substantially." *See* Cmplt., ¶¶ 38, 41.

## B.    *The Employment Agreement*

By September 2016, Mynes was AppealTech's only remaining appellate consultant. Cmplt., ¶ 38. Before transferring client accounts to Mynes, AppealTech compelled him to enter into an employment agreement on November 16, 2016 (the "Employment Agreement"). *Id.,* ¶¶ 46-47. The Employment Agreement with AppealTech contained, among other things, a restrictive "non-competition" covenant (the "Non-Compete Provision") and a confidentiality provision (the "Confidentiality Provision" and, together with the Non-Compete Provision, the "Restrictive Covenants"). *Id.,* ¶¶ 43-44.

The Non-Compete Provision provides that, for a period of six (6) months after Mynes' employment with AppealTech, Mynes may not: (a) "provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of [AppealTech] in any geographic area in which [AppealTech] does or is actively seeking to do business;" (b) "solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those [AppealTech] provides or has provided within six (6) months prior to the termination of [Mynes'] employment;" or (c) "interfere with the [AppealTech] 's relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with [AppealTech]."

3

900200.00001/106703095v.1

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO. 26
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 9 of 23

*Id.*, ¶ 44. The Employment Agreement defines "Client" as "any individual or entity that is, or during the last six (6) months of [Mynes'] employment was a customer of the [AppealTech] or a potential customer from whom [AppealTech] actively sought business." *See* Cronin Aff., Exh. C (the "Employment Agreement"), ¶ 12. The Non-Compete Provision is not limited to "Clients" with whom Mynes did business; it includes <u>all</u> of AppealTech's customers <u>regardless of whether Mynes worked with them.</u> *Id.*

The Confidentiality Provision provides that Mynes may not "disclose or use any of [AppealTech]'s Confidential Information (defined below) during or after [his] employment, except to the extent necessary to perform [his] job duties ...." *Id.*, ¶ 43. The Employment Agreement's expansive definition of "Confidential Information" specifically excludes "information that is or has become publicly known or made generally available..."[1] *Id.*

## C.    *Mynes Joins Counsel Press*

Counsel Press is an appellate services provider that competes with AppealTech. Cmplt., ¶ 19. Like AppealTech, Counsel Press focuses on the preparation of appellate documents,

---

[1]    The Employment Agreement defines "Confidential Information" as:

> any and all proprietary, confidential, or sensitive information, and any and all data, trade secrets, or know-how of the Company, including, but not limited to: client and potential client identities and lists; contact details for, personal data concerning, and needs, preferences, and specifications of clients and potential clients; product/services lists; relationships and arrangements with vendors; marketing strategies and plans; operating strategies and plans; finances; financing strategies and plans; pricing; commissions; relationships; methodologies; processes; research; business plans; alliances; technology; software; databases; source code; planned technology or software improvements or changes; developments; Inventions (defined in Section 11); designs; and any other technical, financial or business information or plans pertaining to the Company's business. Confidential Information does not include information that is or has become publicly known or made generally available through no wrongful act of you or anyone else who had confidentiality obligations to the Company.

> *See* Employment Agreement, ¶ 10.

4

printing services and electronic filing services, and it also advises law firms and attorneys on procedural court rules by jurisdiction. *Id., ¶¶* 20-21.

After AppealTech's poor performance in 2017, Mynes announced his resignation on January 17, 2018. Cmplt., ¶ 53. Soon thereafter, Mynes joined Counsel Press on January 29, 2018 as a Senior Appellate Consultant. *Id.,* ¶ 57.

## D.    *AppealTech's Claims*

AppealTech filed the Complaint on February 7, 2018. Cmplt., p. 16. AppealTech's first two causes of action allege breach of the Restrictive Covenants and breach of the duty of loyalty against Mynes for working at Counsel Press after resigning from AppealTech. *Id.* at p. 11-13. Specifically, AppealTech alleges that Mynes breached his Employment Agreement by providing services for Counsel Press less than six months after his resignation from AppealTech in direct violation of the Non-Compete Provision. *Id.,* ¶ 63. AppealTech further alleges, "upon information and belief," that Mynes breached his Employment Agreement, by "removing AppealTech's confidential and proprietary business information and client information, to disclose and or use the same in connection with his employment at Counsel Press in violation of the Employment Agreement." *Id., ¶¶* 50-52, 62, 71. AppealTech did not specify the information that was allegedly taken. Nor has it done so since. Rather, AppealTech vaguely stated that, beginning in June 2017 (three months before Mynes is alleged to have first spoken with Counsel Press and seven months before he resigned from AppealTech), Mynes accessed client lists and other client and sales information, as well as presentation materials. *Id., ¶¶* 48-49.

AppealTech's third and fourth causes of action allege claims against Counsel Press for tortious interference with contract and tortious interference with business relationships. Cmplt., p. 13-14. AppealTech alleges, in broad and conclusory terms, that "Counsel Press intentionally

5

900200.00001/106703095v.1

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO: 28
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 11 of 23

induced Mynes to resign from AppealTech and work for Counsel Press, AppealTech's known competitor." *Id.*, ¶ 79. AppealTech also speculates that Counsel Press "intentionally induced Mynes to appropriate Plaintiff's confidential and proprietary business information, and confidential information for its own use," and such "intentional interference" resulted in Mynes' breach of the Employment Agreement. *Id.*, ¶ 80. AppealTech alleged no further specifics with regard to Counsel Press's alleged inducements of Mynes. Finally, AppealTech alleges that Counsel Press interfered with AppealTech's business relationships by appropriating confidential and proprietary information and acquiring AppealTech's client lists and "[u]pon information and belief" Counsel Press has utilized this information to further its own business interests. *Id.*, ¶¶ 59, 88. Again, AppealTech did not specify any of its client relationships with which Counsel Press has allegedly interfered.

AppealTech also alleges a fifth cause of action seeking a permanent injunction against Mynes' future breach of the Employment Agreement and a sixth cause of action against unspecified defendants for attorneys' fees and costs.[2] *Id.*, p. 14-16.

### E.    *The Current Motion*

Counsel Press brings this Motion to have the third and fourth causes of action in the Complaint dismissed. The Motion also seeks dismissal of the fifth and sixth causes of action to the extent they are alleged against Counsel Press.

---

[2]    AppealTech's cause of action for a permanent injunction has, for the most part, been rendered moot. In the February 8, 2018 so-ordered Stipulation, the parties agreed that Mynes work for Counsel Press would be largely limited for the period of six (6) months from January 19, 2018, and if Counsel Press has any of AppealTech's confidential information, that information would be destroyed. *See* Cronin Aff., Exh. D.

6

## ARGUMENT

## POINT ONE

## APPEALTECH FAILED TO ALLEGE CLAIMS AGAINST COUNSEL PRESS FOR TORTIOUS INTERFERENCE

AppealTech's claims for tortious interference against Counsel Press are deficient for a multitude of reasons. In deciding the Motion, the Court must "accept the facts as alleged in the complaint as true" and "determine only whether the facts as alleged fit within any cognizable legal theory." *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 (1994) (citing *Morone v. Morone*, 50 N.Y.2d 481 (1980)). "[A] plaintiff's failure to plead each element of a tortious interference claim with specificity requires dismissal of that claim." *Korangy Publ., Inc. v. Miceli*, 22 Misc. 3d 1130(A) (Sup. Ct. N.Y. Cnty. 2009) (citing *Bonanni*, 133 A.D.2d at 587). AppealTech's allegations of tortious interference both fail to allege a cognizable legal theory and fail to satisfy the requirement of pleading with specificity. Therefore, they are insufficient as a matter of law and should be dismissed.

### A.    *AppealTech Failed to Allege a Claim for Tortious Interference with Contract*

To adequately plead a claim for tortious interference with contract, AppealTech must allege these elements with specificity: "(1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of a breach of that contract without justification; (4) actual breach; and (5) damages." *Martian Entertainment, LLC v. Harris*, 12 Misc. 3d 1190(A) (Sup. Ct. N.Y. Cnty. 2006) (citing *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 620-21 (1996)). AppealTech failed to satisfy these requirements for at least three reasons. First, the allegations fail to allege the existence of a valid contract because the Employment Agreement is unenforceable. Second, AppealTech's claims improperly rely on speculative and conclusory allegations. Third,

7

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO. 28

19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 13 of 23

INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018

AppealTech failed to allege a breach of the Confidentiality Provision, because it does not identify any confidential information that was allegedly disclosed to Counsel Press.

### 1.    AppealTech Failed to Allege the Existence of a Valid Contract

AppealTech's claim for tortious interference should be dismissed, because the Employment Agreement is not a valid contract. *Lau v. Lazar*, 130 A.D.3d 413(1st Dep't 2015)(citing *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996)). Agreements, such as the Employment Agreement, which "restrict[] an individual's right to work or compete are not favored and thus are strictly construed." *Goodman v. N.Y. Oncology Hematology, P.C.*, 101 A.D.3d 1524, 1526 (3d Dep't 2012) (citing *Morris v. Schroder Capital Mgt. Intl.*, 7 N.Y.3d 616, 620 (2006); (*BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999)); *see also Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 332 (1st Dep't 2008) (the "stricter" reasonableness standard applies to restrictive covenants in employment agreements.). Indeed, "powerful public policy considerations militate against enforcement of restrictive covenants." *Maltby v. Harlow Meyer Savage, Inc.*, 166 Misc.2d 481, 485 (1995) (citing *Columbia Ribbon and Carbon Manuf. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977); *Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267, 272 (1963)).

Under New York law, the Restrictive Covenants must be reasonable, and they will only be deemed reasonable if they: "(1) [are] no greater than is required for protection of the legitimate interest of the employer, (2) do[] not impose undue hardship on the employee, and (3) [are] not injurious to the public." *BDO Seidman*, 93 N.Y.2d at 388-89. "Violating 'any prong renders the covenant invalid." *Goodman*, 101 A.D.3d at 1526 (citing *BDO Seidman*, 93 N.Y.2d at 388-89). Restrictive covenants provoke "undoubted judicial disfavor" and must be "reasonable in time and area…" *Crown It Servs., Inc. v. Koval-Olsen*, 11 A.D.3d 263, 264 (1st

900200.00001/106703095v.1

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 26
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
RECEIVED NYSCEF: 03/30/2018
Re Motion to Dismiss.    Pg 14 of 23

Dep't 2004) (citing *BDO Seidman*, 93 N.Y.2d at 382; *see also Reed, Roberts Assocs. Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976) ("In order to be enforceable, an anticompetitive covenant ancillary to an employment agreement must be reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the public, and not unreasonably burdensome to the employee.")).

The Non-Compete Provision is, on its face, unenforceable for at least three reasons. First, its nationwide scope is geographically overbroad because Mynes specialized in the New York market. The provision provides that Mynes may not "provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of [AppealTech] in any geographic area in which [AppealTech] does or is actively seeking to do business." *See* Cmplt., ¶ 44. Such a vast geographic restriction is far greater than required to protect AppealTech's legitimate interests, and New York courts routinely deem such broad geographic restrictions unenforceable. *See, e.g., Good Luck, L.P. v. Kosachuk*, 49 A.D.3d 331, 332 (1st Dep't 2008) (holding that restrictive covenant covering the entire United States was unreasonable); *ENV Servs., Inc. v. Alesia*, 10 Misc. 3d 1054(A) (Sup. Ct. Nassau Cnty. 2005) (citing *Rescomcleaning, Inc. v. Ulloa*, 5 Misc 3d 1003[A] (Sup Ct. Suff. Co. 2004) (holding that the geographic limitation of 100-mile radius of "any geographic area where former employer is . . . engaged in business, or maintains sales or service representatives or employees," is unreasonably broad in scope)); *Blackman Plumbing Supply Co. v. Connelly*, 2011 N.Y. Misc. LEXIS 4352, at *6 (Sup. Ct. Nassau Cnty. 2011) (restriction prohibiting competition in area from Manhattan to Montauk is unreasonable).

Second, the Non-Compete Provision purports to bar Mynes from soliciting any AppealTech customers, including customers with whom he never had a relationship.

9

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 26    19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL    RECEIVED NYSCEF: 03/30/2018

Re Motion to Dismiss.    Pg 15 of 23

Specifically, the provision provides that Mynes may not solicit "any individual or entity that is,

or during the last six (6) months of [Mynes'] employment was a customer of the [AppealTech] or

a potential customer from whom [AppealTech] actively sought business." It is well settled that

such a "non-solicitation covenant is overbroad and therefore unenforceable [because] it seeks to

bar the employee from soliciting or providing services to clients with whom the employee never

acquired a relationship through his or her employment." *TSIG Consulting, Inc. v. ACP*

*Consulting LLC*, 2014 N.TY. Misc. LEXIS 3788, at *16 (Sup. Ct. N.Y. Cnty. 2014) (citing

*Brown & Brown, Inc. v. Johnson*, 115 A.D.3d 162 (4th Dep't 2014)) *see also Yeldin v.*

*Lieberman*, 102 A.D.3d 769, 770 (2d Dep't 2013) (finding restrictive covenant unenforceable

where it would have precluded the former employee from merely participating in projects that

involved employer's present or former clients). The Non-Compete Provision's broad-sweeping

language is not limited to protect any legitimate interest. Instead, it seeks to baldly restrain

competition – which by law it may not do.

Third, the Non-Compete provision places an undue hardship on Mynes. Indeed, Mynes

has spent the last twelve years in the appellate services industry, and cannot reasonably be

expected to find comparable employment in a different industry. Enforcement of the

Employment Agreement would effectively bar Mynes from working until mid-July 2018. This is

a textbook example of why New York courts have "powerful public policy considerations

militat[ing] against" the enforcement of provisions that purport to ""restrict[] an individual's

right to work." *Maltby*, 166 Misc.2d at 485; *Goodman*, 101 A.D.3d at 1526 (citations omitted).

Accordingly, the Court should find the Employment Agreement is unenforceable as a

matter of law and, as a result, AppealTech's claim that Counsel Press tortiously interfered with

the Employment Agreement must be dismissed.

10

900200.00001/106703095v.1

## 2.    AppealTech Failed to Allege Its Claims with Specificity

Regardless of whether the Employment Agreement constitutes a valid contract, which it does not, AppealTech failed to adequately plead tortious interference with the Employment Agreement. "[T]o avoid dismissal of a tortious interference with contract claim, a plaintiff must support his claim with more than mere speculation." *Jonas v. Newedge USA, LLC*, 2008 N.Y. Misc. LEXIS 9805, at *26 (Sup. Ct. N.Y. Cnty. 2008) (citing *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006)). "Failure to plead in nonconclusory language facts establishing all the elements of a wrongful and intentional interference in the contractual relationship requires dismissal of the action." *Bonanni*, 133 A.D.2d at 587 (citation omitted). Also, AppealTech must specifically allege that the contract would not have been breached "but for" the defendant's conduct. *Jonas*, 2008 N.Y. Misc. LEXIS 9805, *26 (citing *Burrowes*, 25 A.D.3d at 373).

The court's holding in *Jonas* is instructive here. In that case, plaintiffs alleged that defendants tortiously interfered with a contract between plaintiffs and co-defendant. There, the court noted that although plaintiffs contended that the complaint sufficiently alleged facts from which a motive to interfere with the agreement may be inferred, "in reality, the amended complaint merely speculates, in the most conclusory of terms, that [defendants] induced [co-defendant] to delay signing a definitive agreement and to renege on its existing contractual and other legal obligations..." The court held that "[t]hese conclusory allegations are insufficient to sustain a claim for tortious interference with contract." *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at *26-28 (citing *Chestnut Hill Partners, LLC v. Van Raalte*, 45 AD3d 434, 435 (1st Dep't 2007) ("the speculative allegations set forth by plaintiff are insufficient to sustain a claim for ... tortious interference with contract"); *Black Car and Livery Ins., Inc. v H&W Brokerage. Inc.*, 28 AD3d 595, 595 (2d Dep't 2006) ("The cause of action alleging tortious interference with a

11

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO. 28
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 17 of 23

contract was properly dismissed as to the respondent, as the allegations in support of this cause

of action 'are devoid of a factual basis and are vague and conclusory'") (citation omitted);

*Martian Entertainment, LLC v Harris,* 12 Misc 3d 1190[A], (Sup. Ct., NY Cnty 2006)

(dismissing tortious interference claim on ground that "plaintiff must support its claim with more

than mere speculation")).

Like the allegations in *Jonas*, the allegations in this case merely speculate, in the most

conclusory terms, that Counsel Press induced Mynes to breach the Employment Agreement.  For

example, AppealTech alleges that Counsel Press "intentionally induced" Mynes to breach the

Employment Agreement.  However, AppealTech fails to specify how this purported inducement

was carried out, nor does it allege any wrongful means.  Rather, AppealTech merely speculates

that: (i) Mynes may have retained certain information from his employment at AppealTech and,

if he did, (ii) Mynes may also have shared that information with Counsel Press and, if he did,

(iii) Counsel Press may have misused that information.  These speculative and conclusory

allegations are insufficient as a matter of law.

The *Jonas* court further held that dismissal was particularly appropriate given that most

of the allegations in support of the tortious interference claim were made "upon information and

belief" and are therefore insufficient as a matter of law.  *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at

*28 (citing *Angel v. Bank of Tokyo-Mitsubishi. Ltd.,* 39 A.D.3d 368, 369 (1st Dep't 2007)

(allegations in complaint made upon information and belief are insufficient to withstand a

motion to dismiss); *Mandarin Trading Ltd. v. Wildenstein,* 17 Misc 3d 1118(A) (Sup. Ct., N.Y.

Cnty. 2007) (allegation based upon information and belief "is simply a conclusory claim or

statement unsupported by factual evidence," and, as such, "the bald allegation is not entitled to

preferential consideration" on a motion to dismiss)).

12

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 28
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
RECEIVED NYSCEF: 03/30/2018
Re Motion to Dismiss.    Pg 18 of 23

Similarly, most of AppealTech's allegations of tortious interference are made "on information and belief." For example, AppealTech alleges that "upon information and belief," Mynes breached his Employment Agreement, by "removing AppealTech's confidential and proprietary business information and client information, to disclose and or use the same in connection with his employment at Counsel Press in violation of the Employment Agreement." *See* Complaint ¶¶ 50-52, 62, 71. AppealTech also alleges, "[u]pon information and belief," that Counsel Press has utilized this information to further its own business interests. *Id.,* ¶¶ 59, 88. As New York courts have repeatedly held, these allegations are insufficient as a matter of law.

The *Jonas* court also noted that plaintiffs failed to allege that "but for" the defendants' actions, the contract would not have been breached. The court held that "this omission is fatal to the[] claim." *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at *28-29 (citing *CDR Creances S.A. v. Euro-American Lodging Corp.,* 40 AD3d 421, 422 (1st Dep't 2007) ("The tortious interference cause of action was deficient for failure to allege the required 'but for' causation and intent to induce a breach in nonconclusory fashion"); *Constantin Assocs. v. Kapetas,* 17 Misc 3d 1137(A) (Sup. Ct., N.Y. Cnty. 2007) (stating same)).

Here, AppealTech has not alleged that "but for" Counsel Press's actions, Mynes would not have breached the Employment Agreement. To the contrary, AppealTech concedes that there has been an exodus of employees from AppealTech to Counsel Press in the midst of AppealTech's financial struggles. *See, e.g. Greystone Staffing, Inc. v. Warner*, 106 A.D.3d 954 (2d Dep't 2013) (declining to enforce non-compete where former employer was in a financial downturn and enforcement would effectively require employee to endure a year of unemployment). As a result of AppealTech's multiple failures to adequately plead tortious interference with contract, its claim should be dismissed.

13

3.    **AppealTech Has Not Alleged a Breach of the Confidentiality Provision**

Finally, AppealTech has not alleged a breach of the Confidentiality Provision.  The

Complaint merely speculates that certain information may have been shared with Counsel Press.

And even if AppealTech's speculative allegations were sufficient, which they are not, the

information AppealTech claims to have been disclosed does not constitute confidential

information that is subject to protection.  To sustain its claim, AppealTech must allege that

Mynes shared confidential information that was not otherwise available through public sources.

*See Comcast Sound Commc'ns, Inc. v. Hoeltke*, 572 N.Y.S.2d 189 (4th Dep't 1991) (a

nondisclosure provision is unenforceable where a list of customer names is readily ascertainable

from sources available to the general public); *see also* Employment Agmt., ¶ 10 (definition of

"Confidential Information" specifically excludes "information that is or has become publicly

known or made generally available…").  AppealTech's allegations fail in this regard.

AppealTech does not identify any specific information it believes Mynes shared with

Counsel Press.  Instead, it lists vague categories of information Mynes allegedly accessed

months before he even began discussions with Counsel Press.  None of the categories identified

by AppealTech are subject to protection as confidential information.  For example, the customer

lists are publicly available because, when AppealTech prepares an appeal for a client,

AppealTech applies its logo to the papers in the form of a unique printer's mark on the cover

page, and each filing is public.  *See* Cronin Aff., Exh. E.  As a result, AppealTech's customer list

is not only publicly available, but AppealTech advertises it.

The remainder of the vague categories are likewise unprotected because they are

comprised of basic information such as presentation materials and checklists.  It strains credulity

to characterize this information as confidential.  AppealTech has not endeavored to specify a

14

single piece of confidential information it believes to have been misappropriated. Accordingly,

its allegations against Counsel Press relating to Mynes' supposed breach of the Confidentiality

Provision should be dismissed.

**B.** ***Tortious Interference with Business Relationships***

AppealTech also failed to adequately allege tortious interference with any business

relationship. To state a claim for tortious interference with business relationship, AppealTech

must plead these elements with specificity: "(1) that it had a business relationship with a third

party; (2) that the defendant knew of the relationship and intentionally interfered with it; (3) that

the defendant acted solely out of malice or used improper or illegal means that amounted to a

crime or independent tort; and (4) that the defendant's interference caused injury to the

relationship with the third party." *Academy Orthotic & Prostehetic Assoc. IPA, Inc. v.*

*Healthfirst PHSP, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at *40 (Sup. Ct. N.Y. Cnty. 2016) (citing

*Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47 (1st Dep't 2009)).

"The law deliberately makes tortious interference with business relations more difficult to

plead and prove by virtue of the requirement that plaintiff establish sufficiently 'culpable

conduct' in the form of malice or an independent tort." *Academy Orthotic & Prostehetic Assoc.*

*IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40 (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182,

189 (2004)). Specifically, AppealTech must allege that Counsel Press interfered with a specific

business relationship by "wrongful means, consisting of fraud, misrepresentation, physical

violence, civil suits, criminal prosecutions and some degree of economic pressure....or that

defendant acted for the sole purpose of harming the plaintiff." *Martian Entertainment, LLC*, 12

Misc. 3d 1190(A) (citing *Snyder v. Sony Music Entertainment, Inc.*, 252 A.D.2d 292, 299-300

15

900200.00001/106703095v.1

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO. 28
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 21 of 23

(1st Dep't 1999); *Don Buchwald & Assoc., Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001);

*Jurlique, Inc. v. Austral Biolab Pty., Ltd.*, 187 A.D.2d 637, 639 (2d Dep't 1992)).

Finally, "[i]t is well settled that 'wrongful means' cannot be conclusorily pleaded."

*Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40 (citing

*Kickertz v. N.Y. Univ.*, 110 A.D.3d 268, 275 (1st Dep't 2013)(citation omitted)); *see also Geffert*

*Co., Inc. v. Fratelli Bonella, SRL*, 2015 N.Y. Misc. LEXIS 3699, *16-17 (Sup. Ct. Nassau Cnty.

2015) (citing *Washington Ave. Assocs. v. Euclid Equip.*, 229 A.D.2d 486, 487 (2d Dep't)

1996)("generic allegations which vaguely refer to 'wrongful means'… neither particularly

describe the misconduct at issue nor disclose precisely how each defendant allegedly committed

whatever wrongful acts are being relied upon")).

In sum, AppealTech must allege in nonconclusory language that Counsel Press's acts

were accompanied by wrongful means, and that but for such acts AppealTech would have

entered into new relationships with a specific client. *Algomod Tech. Corp. v. Price*, 65 A.D.3d

974, 975 (1st Dep't 2009) (citing *Bonanni*, 133 A.D.2d 585, 586-87 (1987); *NBT Bancorp*, 87

N.Y.2d at 621; *Vigoda v. DCA Prods. Plus*, 293 A.D.2d 265 (2002)). AppealTech did not satisfy

any of these requirements.

First, AppealTech did not identify any client relationships with which Counsel Press

allegedly interfered. Rather, it merely alleges that "Defendants acted to harm Plaintiff and

diminish its standing as Counsel Press's competitor." *See* Complaint, ¶ 89. This allegation is

vague and therefore insufficient to sustain a claim for tortious interference with business

relationship. For this reason alone, AppealTech's claim fails as a matter of law.

Second, AppealTech has not alleged any supposed wrongful means with specificity.

Instead, it speculates with no supporting detail that Counsel Press interfered with AppealTech's

16

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO. 28
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 22 of 23

INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018

business relationships by appropriating confidential and proprietary information and acquiring AppealTech's client lists and that, "[u]pon information and belief," Counsel Press has utilized this information to further its own business interests. *See* Complaint ¶¶ 59, 88. As a matter of law, these speculative and conclusory statements are insufficient to allege wrongful means. And, as established above, AppealTech makes its customer list public and, as a result, the list cannot be confidential.

Third, AppealTech did not even attempt to allege that Counsel Press acted purely out of malice. To the contrary, it is clear from the Complaint that AppealTech is alleging only that Counsel Press acted in its own economic interest to gain a competitive advantage and expand its market share. *See Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40-41 (a plaintiff fails to plead malice if it alleges that defendant acted in its economic interest).

AppealTech's allegations fall woefully short of New York's heightened pleading requirement for tortious interference. As a result, AppealTech's claims against Counsel Press should be dismissed.

## POINT TWO

## APPEALTECH'S CAUSE OF ACTION FOR ATTORNEYS' FEES SHOULD BE DISMISSED

AppealTech is not entitled to recover its attorneys' fees as requested in the Sixth Cause of Action.[3] *See* Cmplt, p. 15. "It is well settled in New York that a prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule." *Fiduciary Ins. Co. of Am. v. Med. Diagnostic Servs.*, P.C., 150 A.D.3d 498 (1st Dep't 2017) (citing *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004)); *see*

---

[3]    The Complaint incorrectly labels the sixth cause of action as the "fifth" cause of action. *See* Cmplt., p. 15.

17

FILED: NEW YORK COUNTY CLERK 03/30/2018 01:37 PM
NYSCEF DOC. NO: 28
19-01435-jlg    Doc 5-5    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit D - MOL
Re Motion to Dismiss.    Pg 23 of 23
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018

*also Chapel v Mitchell*, 84 NY2d 345, 349 (N.Y. 1994), *quoting Hooper Assoc., Ltd. v AGS Computers, Inc.*, 74 NY2d 487, 491 (N.Y. 1989) (holding that an award of attorneys' fees to the prevailing party in a litigation must be "authorized by agreement between the parties, statute or court rule"); *Greco v. GSL Enters., Inc.*, 137 Misc.2d 714, 715 (N.Y. City Civ. Ct. 1987) (observing that "courts may not create a right to recover attorney's fees," and that the right to attorney's fees "must be statutory or contractual."). Here, there was no contract between Counsel Press and AppealTech, and AppealTech has not identified any statute or court rule in the Complaint that provides any basis for an award of attorneys' fees against Counsel Press. As a result, AppealTech's request for attorneys' fees as against Counsel Press should be dismissed.

## CONCLUSION

For all the foregoing reasons, Counsel Press respectfully requests an order granting its Motion to Dismiss in its entirety, along with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        March 30, 2018

BLANK ROME LLP

By: _____
    Anthony A. Mingione
    Ryan E. Cronin
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5345
Email: amingione@blankrome.com
       rcronin@blankrome.com
*Attorneys for Defendant Counsel Press, Inc.*

18