# Exhibit G

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Z & J LLC d/b/a APPEALTECH,<br><br>Plaintiff,<br><br>v.<br><br>LAURENCE MYNES AND COUNSEL PRESS INC.,<br><br>Defendants. | NYSCEF CASE<br><br>Hon. Doris Ling-Cohan, J.S.C<br><br>No. 650620/2018 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LAURENCE MYNES' MOTION TO DISMISS

Dated: March 30, 2018
        New York, New York

Motion Return Date: April 18, 2018

Douglas B. Lipsky
LIPSKY LOWE LLP
630 Third Avenue, Fifth Floor
New York, New York 10017
*Counsel for Defendant Mynes*

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM    INDEX NO. 650620/2018

NYSCEF DOC. NO. 34                                  RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G -
Lipsky MOL re dismiss.    Pg 3 of 25

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

PRELIMINARY STATEMENT ....................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................................ 2

LEGAL ARGUMENT ................................................................. 5

I.    APPEALTECH'S CLAIMS AGAINST DEFENADNT MYNES DO NOT
      SURVIVE THE MOTION TO DISMISS STANDARD ........................................ 5

II.   APPEALTECH'S BREACH OF CONTRACT CLAIM FAILS FOR
      FUNDAMENTAL REASONS, INCLUDING THE AGREEMENT IS
      UNENFORCEABLE, NO BREACH EXISTS AND APPEALTECH FAILS TO
      SHOW ANY DAMAGES. ...................................................... 6

      A.    The Agreement's Non-Compete Provisions Extend Beyond What Is
            Permissible, Making Them Unenforceable ................................ 6

      B.    AppealTech Fails to Show Mynes Breached the Agreement By
            Commencing Employment With Counsel Press and With The Disclosure
            of Supposed Confidential Information .................................. 10

      C.    The Single, Boilerplate Allegation On Damages Is Insufficient to Survive
            A Motion to Dismiss. ................................................ 13

III.  APPEALTECH'S BREACH OF THE DUTY OF LOYALTY CLAIM
      DUPLICATES ITS BREACH OF CONTRACT CLAIM, WARRANTING ITS
      DISMISSAL AS A MATTER OF LAW ............................................ 14

IV.   FATAL TO ITS TORTIOUS INTERFERENCE CLAIM, APPEALTECH DOES
      NOT CLAIM MYNES DIRECTED ANY TORTIOUS CONDUCT AT
      APPEALTECH CLIENTS, NOR DOES IT CLAIM THE ALLEGED
      CONDUCT WAS SOLELY INTENDED TO HARM IT ................................ 15

      A.    The Tortious Interference Claim Is Misdirected. ...................... 16

      B.    AppealTech Fails To Plead With Specificity The Third Element To This
            Claim. .............................................................. 16

V.    WITH THE FAILED SUBSTANTIVE CLAIMS, APPEALTECH CANNOT
      SEEK A PERMANENT INJUNCTION NOR FEES. .................................. 18

-i-

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM

INDEX NO. 650620/2018

NYSCEF DOC. NO. 34

RECEIVED NYSCEF: 03/30/2018

19-01435-jlg   Doc 5-8   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit G -
Lipsky MOL re dismiss.    Pg 4 of 25

VI.     COUNSEL PRESS'S MOTION...........................................................................18

CONCLUSION..............................................................................................................19

## TABLE OF AUTHORITIES

CASES

*Am. Para Professional Sys. v. Examination Mgmt. Servs., Inc.*,
214 A.D.2d 413, 625 N.Y.S.2d 33 (1st Dep't 1995) ........................................ 7

*Anonymous v. Anonymous*,
233 A.D.2d 162, 649 N.Y.S.2d 665 (1st Dep't 1996) ..................................... 12

*BDO Seidman v. Hirshberg*,
93 NY2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999).............................. 7

*Bower v. FDR Servs. Corp.*,
Index No. 651420/2016, 2016 N.Y. Misc. LEXIS 2400 (N.Y. Sup. Crt. N.Y. Cty. June
28, 2016) ........................................................................................................ 10

*Brown & Brown, Inc. v. Johnson*,
25 N.Y.3d 364 (N.Y. 2015) ............................................................................. 7

*Business Intelligence Servs., Inc. v. Hudson*,
580 F. Supp. 1068 (S.D.N.Y. 1984)................................................................. 7

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004)............................ 17

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
76 A.D.3d 310, 910 N.Y.S.2d 618 (1st Dep't 2010) ...................................... 14

*Columbia Ribbon & Cabon Mfg. Co. v. A-1-A Corp.*,
42 N.Y.2d 496 (N.Y. 1977) ............................................................................. 6

*Contempo Communications, Inc. v. MJM Creative Services, Inc.*,
182 A.D.2d 351, 582 N.Y.S2d 667 (1st Dep't 1992) ....................................... 8

*Crippen v. United Petroleum Feedstocks*,
245 A.D.2d 152, 666 N.Y.S.2d 156 (1st Dep't 1997) .................................... 10

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
957 F. Supp. 477 (S.D.N.Y. 1997)................................................................. 16

*G.K.A. Beverage Corp. v. Honickman*,
55 F.3d 762 (2d Cir 1995)............................................................................. 16

*Gino v. Dino De Laurentiis Corp.*,
141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) .................................... 12

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34

INDEX NO. 650620/2018

19-01435-jlg   Doc 5-8   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit G -
Lipsky MOL re dismiss.   Pg 6 of 25

RECEIVED NYSCEF: 03/30/2018

*Good Energy, L.P. v. Kosachuk,*
49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dep't 2008) ...................... 7

*Gordon v. Dino De Laurentiis Corp.,*
141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ................... 13

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
98 N.Y.2d 314, 774 N.E.2d 1190 (N.Y. 2002) ...................... 5

*Granirer v. Bakery, Inc.,*
54 A.D.3d 269, 863 N.Y.S.2d 396 (1st Dep't 2008) ................... 14

*Greenapple v. Capital One, N.A.,*
92 A.D.3d 548, 939 N.Y.S.2d 351 (1st Dep't 2012) ................... 5

*Healthworld Corp. v. Gottlieb,*
12 A.D.3d 278, 786 N.Y.S.2d 8, (1st Dep't 2004) ................... 8

*Kaisman v.* Hernandez,
61 A.D.3d 565, 878 N.Y.S.2d 305 (1st Dep't 2009) ................... 5

*McGuire v. Sterling Doubleday Enters., L.P.,*
19 A.D.3d 660, 799 N.Y.S.2d 65 (1st Dep't 2005) ................... 5

*Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
48 N.Y.2d 84, 86 (N.Y. 1979) ...................... 6

*Sontag v. Cook,*
Index No. 600102/04, 2005 N.Y. Misc. Lexis 3256 (N.Y. Sup. Crt. N.Y. Cty. 2005) ...... 7

*Thome v. Alexander & Louisa Calder Found.,*
70 A.D.3d 88, 890 N.Y.S.2d 16, 31 (1st Dep't 2009) ................... 15

*VisionChina Media Inc. v. Shareholder Representative Servs., LLC,*
109 A.D.3d 49, 967 N.Y.S.2d 338 (1st Dep't 2013) ................... 10

*Weinreb v. 37 Apts. Corp.,*
97 A.D.3d 54, 943 N.Y.S.2d 519 (1st Dep't 2012) ................... 18

*Williams-Smith v. MTA N.Y.C. Transit,*
82 A.D.3d 512, 918 N.Y.S.2d 345 (1st Dep't 2011) ................... 5

*Willis of New York Inc., v. Defelice,*
299 A.D.2d 240, 750 N.Y.S.2d 39 (1st Dep't 2002) ................... 8

-iv-

Defendant Laurence Mynes submits this memorandum of law in support of his motion to dismiss Plaintiff AppealTech's claims (the "Motion").

PRELIMINARY STATEMENT

This is a dispute between a former employer and employee. During his employment with AppealTech, Laurence Mynes signed an Employment Agreement that contains overbroad and unenforceable restrictive covenants that – despite their scope – do not prevent him from working for an AppealTech competitor. Mynes, in January 2018, quit AppealTech and became a Counsel Press employee. AppealTech, clearly unhappy about this development, filed a lawsuit against Mynes and Counsel Press, asserting five claims against him: breach of contract, breach of the duty of loyalty, tortious interference with business relationships, permanent injunction, and attorneys' fees. AppealTech, for all of these claims, stretches the law and, sometimes, their employment agreement to the breaking point.

Multiple problems exist with claiming Mynes breached the restrictive covenants in his AppealTech employment agreement. First, the covenants are, fundamentally, unenforceable, as they go beyond what the First Department permits. They, for example, would bar him from soliciting customers with whom he never had any contact. If that was not enough, the covenants attempt to bar him from working in the same industry anywhere in the country – even though he worked only in New York and AppealTech's business is limited to a few states. Second, AppealTech does not show a breach occurred. It claims he is in breach by being a Counsel Press employee. Yet the agreement does not preclude this. Third, AppealTech does not sufficiently assert any damages.

Its breach of duty of loyalty claim suffers from a different problem. This claim is

a near-mirror image of the breach of contract claim and does not identify any duty that exists separate and apart from the employment agreement, dooming this claim as a matter of law.

The tortious interference with business relationships claim fails as well. Preliminarily, the claim is misguided. This tort focuses on whether someone wrongfully interfered with existing or prospective customers. The focus is thus, naturally, on conduct directed at those customers. But that is not the Complaint's focus. The Complaint, rather, focuses, entirely on Mynes' conduct towards AppealTech. It, in fact, does not even identify a single customer with whom Mynes supposedly interfered. What's more, this claim cannot be pleaded in a conclusory manner. AppealTech's burden is, instead, to assert specific facts showing how he acted with the specific intent to harm it. The Complaint, however, does not identify any specific facts and does not assert Mynes had this specific intent.

In the end, the substantive claims against Mynes fail as a matter of law. With that, AppealTech's claims for injunctive relief and attorneys' fees fall.

<u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>[1]

Plaintiff AppealTech is an appellate service provider, with offices in New York City, Rochester, New York and Los Angeles and servicing surrounding areas.[2] Defendant Counsel Press is also an appellate service provider.[3]

---

[1] These facts are based entirely on the assumed-to-be-true allegations in Plaintiff's Complaint and the Employment Agreement between Plaintiff and Defendant Laurence Mynes. Defendant Mynes does not, however, admit or concede any of these allegations are true or that the Agreement is enforceable.

[2] Plaintiff's February 7, 2018 Complaint (Doc. No. 1) ("Compl.") ¶¶ 12-14, Exhibit A to Douglas B. Lipsky's March 30, 2018 Affidavit ("Lipsky Aff.").

[3] Compl. ¶ 19.

-2-

AppealTech hired Mynes in January 2006 as a Senior Appellate Consultant.[4]
Approximately ten years later, on November 16, 2016, Mynes signed an employment
agreement with AppealTech (the "Employment Agreement")[5] that contains various
terms, including "Confidential Information" and "Non-Competition" provisions.[6] The
"Confidential Information" provision states:

> You agree not to, directly or indirectly, disclose or use any of the
> Company's Confidential Information (defined below) during or after your
> employment, except to the extent necessary to perform your job duties for
> the Company . . .[7]

The "Non-Competition" provision states:

> You agree that during your employment and for a period of six (6) months
> after your employment terminates ("Restricted Period") for any reason,
> you will not, except as necessary to perform your job duties for the
> Company, directly or indirectly, on your own behalf or on behalf of any
> individual or entity, as an employee, owner, joint venture, consultant,
> contractor, or otherwise: (a) provide services for any individual, entity, or
> other third party that is engaged or seeks to engage in the same or similar
> business as that of the Company in any geographic area in which the
> Company does or is actively seeking to do business . . .[8]

Between June 2017 and January 2018, while an AppealTech employee, Mynes
"retained" his then-employer's client information and other confidential information[9] and
uploaded it to his personal iCloud account.[10] On January 17, 2018, Mynes resigned from
AppealTech and commenced employment with Counsel Press on January 29, 2018.[11]

---

[4] Compl. ¶ 22.
[5] In using this reference, Mynes does not cede it is an enforceable agreement.
[6] Compl. ¶ 42.
[7] Compl. ¶ 43; Employment Agreement ¶ 10, Exhibit B to Lipsky Dec.
[8] Compl. ¶ 44; Employment Agreement ¶ 12.
[9] Mynes does not concede any information is, in fact, confidential. For the sake of
brevity, he will, for purposes of this Motion, refer to the alleged confidential information
as merely "confidential information."
[10] Compl. ¶¶ 51, 52.
[11] Compl. ¶¶ 53, 57.

-3-

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018
19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G -
Lipsky MOL re dismiss.    Pg 10 of 25

Mynes was then, subsequently, listed on Counsel Press' website as a Senior Appellate Consultant.[12]

On February 7, 2018, AppealTech filed a Complaint against Mynes and Counsel Press.[13] It asserts five causes of action: breach of contract against Mynes; breach of the duty of loyalty against Mynes; tortious interference with a contract against Counsel Press; tortious interference with a prospective business relationship against Mynes and Counsel Press; injunctive relief against Mynes and Counsel Press; and attorneys' fees against Mynes and Counsel Press.

The Complaint does not allege Mynes provided appellate services to any Counsel Press clients – regardless of where they are located and whether they were ever AppealTech clients. It further does not assert he has disclosed any confidential information to Counsel Press. Nor does it allege he has contacted any existing or former AppealTech clients to solicit them to bring their business to Counsel Press.

In addition to filing the Complaint, AppealTech moved, by way of an Order to Show Cause, for a preliminary injunction and temporary restraining order that would, *inter alia,* preclude Counsel Press from employing him and preclude Mynes from disclosing any confidential information.[14] The parties subsequently entered into a February 9, 2018 Stipulation and Order, mooting the Order to Show Cause.[15] AppealTech has, however, not served Mynes with the Complaint.

---

[12] Compl. ¶ 57.
[13] Doc. No. 1.
[14] Doc. Nos. 2-20.
[15] Doc. No. 22.

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34
INDEX NO. 650620/2018
RECEIVED NYSCEF: 03/30/2018
19-01435-jlg   Doc 5-8   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit G -
Lipsky MOL re dismiss.   Pg 11 of 25

<u>LEGAL ARGUMENT</u>

I.   APPEALTECH'S CLAIMS AGAINST DEFENADNT MYNES DO NOT SURVIVE THE MOTION TO DISMISS STANDARD.

Courts, generally, "must accept as true the facts alleged in the complaint" and draw every possible inference in the claimant's favor. *Williams-Smith v. MTA N.Y.C. Transit,* 82 A.D.3d 512, 513, 918 N.Y.S.2d 345 (1st Dep't 2011). Limits exist to this rule: "allegations consisting of bare legal conclusions, as well as factual claims that are inherently incredible or flatly contradicted by documentary evidence, are not entitled to such considerations." *Kaisman v. Hernandez*, 61 A.D.3d 565, 566, 878 N.Y.S.2d 305 (1st Dep't 2009).

Dismissal under C.P.L.R. § 3211(a)(1) is warranted when the documentary evidence submitted "utterly refutes plaintiff's factual allegations" and conclusively establishes a defense to the asserted claims as a matter of law. *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326, 774 N.E.2d 1190 (N.Y. 2002); *see Greenapple v. Capital One, N.A.*, 92 A.D.3d 548, 550, 939 N.Y.S.2d 351 (1st Dep't 2012). Dismissal under to C.P.L.R. § 3211(a)(1) is accordingly appropriate when documentary proof disproves an essential allegation – even if the allegations, standing alone, could withstand a motion to dismiss. *McGuire v. Sterling Doubleday Enters., L.P.*, 19 A.D.3d 660, 661-62, 799 N.Y.S.2d 65 (1st Dep't 2005).

-5-

II.    APPEALTECH'S BREACH OF CONTRACT CLAIM FAILS FOR
       FUNDAMENTAL REASONS, INCLUDING THE AGREEMENT IS
       UNENFORCEABLE, NO BREACH EXISTS AND APPEALTECH FAILS TO
       SHOW ANY DAMAGES.

Inescapable flaws exist with AppealTech's breach of contract claim.

Preliminarily, this claim rests on the enforceability of the restrictive covenants. These

provisions, however, go beyond what the First Department permits. Next, AppealTech

claims he breached the Employment Agreement by becoming a Counsel Press employee.

Yet the Agreement does not prohibit this. It also claims he breached the Agreement

because he removed confidential information with the intent to disclose it to Counsel

Press. But the Complaint does not, as required, assert he disclosed any confidential

information to Counsel Press, let alone identify what information was disclosed. It further

claims $100,000 in damages without any supporting allegation, which is insufficient.

A.    The Agreement's Non-Compete Provisions Extend Beyond What Is
      Permissible, Making Them Unenforceable.

Not all restrictive covenants are created equally: some are enforceable, others are

not. The restrictive covenants in the Employment Agreement go beyond what the First

Department permits, making them unenforceable.

Preliminarily, New York "public policy . . . militate[s] against sanctioning the loss

of a man's livelihood." *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d

84, 86 (N.Y. 1979). Restrictive covenants, such as non-compete and non-solicitation

provisions, are consequently "uniformly disfavored and are sustained only to the extent

that they are reasonably necessary to protect the legitimate interests of the employer and

not unduly harsh or burdensome to the one restrained." *Id.* at 86-87 (quoting *Columbia

Ribbon & Cabon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (N.Y. 1977)); *see also*

-6-

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34

INDEX NO. 650620/2018

RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G -
Lipsky MOL re dismiss.    Pg 13 of 25

*Brown & Brown, Inc. v. Johnson,* 25 N.Y.3d 364, 370 (N.Y. 2015) ("New York law provides that covenants not to compete should be strictly construed because of the powerful considerations of public policy which militate against sanctioning the loss of a person's livelihood").

A restrictive covenant in an employment agreement is reasonable and enforceable only if three conditions are met: it "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, (3) is not injurious to the public." *BDO Seidman v. Hirshberg,* 93 NY2d 382, 388-89, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999). Such covenants must be reasonably limited as to time and geographical scope. *Am. Para Professional Sys. v. Examination Mgmt. Servs., Inc.,* 214 A.D.2d 413, 625 N.Y.S.2d 33 (1st Dep't 1995). The Employment Agreement fails this test in many ways.

  1.  The Geographical Scope of the Restrictive Covenants Is Unreasonable.

A restrictive covenant is unreasonable and unenforceable if its geographical scope extends beyond where the employer does business and where the employee serviced that employer within that scope. *See Good Energy, L.P. v. Kosachuk,* 49 A.D.3d 331, 332, 853 N.Y.S.2d 75 (1st Dep't 2008); *Sontag v. Cook,* Index No. 600102/04, 2005 N.Y. Misc. Lexis 3256 (N.Y. Sup. Crt. N.Y. Cty. 2005) (holding on motion to dismiss geographical scope unreasonably broad because it extends beyond where the company does business); *see also Business Intelligence Servs., Inc. v. Hudson,* 580 F. Supp. 1068 (S.D.N.Y. 1984) (equating the reasonableness of the geographical restriction with the scope of plaintiff's business activity). The First Department held, for example, the geographical scope of a restrictive covenant was unenforceable because it was

nationwide, when the company operated in only eight states. *Good Energy, L.P.*, 49 A.D.3d at 332.

No discovery is necessary to show the unreasonableness of the geographical scope. AppealTech lists where it does business: New York City, Rochester, New York, Los Angeles, California and "surrounding areas, including New Jersey."[16] It further states where Mynes worked: New York.[17] But the Agreement goes beyond where AppealTech does business and where Mynes worked. It covers "any geographic area in which the Company does or is actively seeking to do business."[18] This is effectively a non-compete with no borders. That is impermissible and unenforceable.

2.    The Non-Solicitation Provision Extends Too Far, Covering Individuals With Whom Mynes Had No Contact.

The non-solicit provision impermissibly extends beyond any legitimate interest AppealTech needs to protect. The First Department has delineated the parameters of permissible non-solicitation provisions: a provision is permissible if it prevents a former employee from competing for the business of customers with whom he had a relationship with while at his former employer. *Healthworld Corp. v. Gottlieb,* 12 A.D.3d 278, 279, 786 N.Y.S.2d 8, (1st Dep't 2004); *Willis of New York Inc., v. Defelice*, 299 A.D.2d 240, 242, 750 N.Y.S.2d 39 (1st Dep't 2002); *Contempo Communications, Inc. v. MJM Creative Services, Inc.*, 182 A.D.2d 351, 354, 582 N.Y.S2d 667 (1st Dep't 1992) (explaining the non-solicit is enforceable because it barred the employee from "competing with those companies with whom they had worked prior to their termination" and did not bar them from "soliciting those of plaintiff's clients for whom they had not

---

[16] Compl. ¶¶ 13-14.
[17] Compl. ¶ 28.
[18] Agreement ¶ 12(a) (emphasis added).

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34

INDEX NO. 650620/2018

RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G -
Lipsky MOL re dismiss.    Pg 15 of 25

worked."). A provision is, conversely, impermissible if it seeks to prevent an employee from soliciting customers with whom he never had a relationship while at his former employer or customers with whom he had a relationship with prior to his employment there. *Id.; see also Good Energy, L.P.*, 49 A.D.3d at 332 ("the covenant not to compete is unreasonable because it purports to prohibit defendant from dealing with Good Energy's entire client base, thus including not only those clients or customers that had been created and maintained at Good Energy's expense, but also those clients that were not serviced by defendant during his tenure at Good Energy and those that came to Good Energy solely because of a preexisting relationship with him").

The Employment Agreement goes beyond what the First Department has held is permissible. It, as written, precludes Mynes from soliciting any individual, who during his last six months of employment, was an AppealTech customer or a potential customer.[19] It is noticeably not limited to customers he directly serviced or recruited while at AppealTech. It goes further: it covers any actual customer that any AppealTech employee serviced during Mynes' last six months; and it covers any prospective customer that any AppealTech employee solicited during Mynes' last six months. That is impermissible on its face. *Healthworld Corp.*, 12 A.D.3d at 279; *Willis of New York Inc.* 299 A.D.2d at 242; *Contempo Communications, Inc.*, 182 A.D.2d at 354.

>    3. The Court Should Decline AppealTech's Likely Request to Modify the Covenants And, Instead, Categorically Bar Their Enforcement.

The Court should reject AppealTech's likely argument to modify or "blue pencil" the covenants. Faced with similarly overly broad covenants, the First Department declined to modify covenants that were "unreasonably broad on [their] face." *Crippen v.*

---

[19] Agreement ¶ 12.

*United Petroleum Feedstocks*, 245 A.D.2d 152, 153, 666 N.Y.S.2d 156 (1st Dep't 1997). The First Department, in reaching that holding, held the modifications would have meaningfully altered the original contract and the employer "should have drafted the agreement to include [reasonable] provisions from the start." *Id.*; *Bower v. FDR Servs. Corp.*, Index No. 651420/2016, 2016 N.Y. Misc. LEXIS 2400 (N.Y. Sup. Crt. N.Y. Cty. June 28, 2016) (holding "this Court declines Defendant's proposal to modify the restrictive covenant so as to restrict Plaintiff only from working for defendant's two direct competitors in the hospital laundry"). That same logic applies here.

      B.      AppealTech Fails to Show Mynes Breached the Agreement By Commencing Employment With Counsel Press and With The Disclosure of Supposed Confidential Information.

          1.      The Agreement Does Not Prohibit Mynes From Being A Counsel Press Employee.

In claiming he breached the Employment Agreement by "providing services" to Counsel Press, AppealTech is asserting the non-compete categorically prohibits Counsel Press from employing Mynes. [20] But that is not prohibited under the Employment Agreement. AppealTech, furthermore, fails to show Mynes violated what is actually prohibited.

The breach of contract elements are well known: (1) formation of a contract between plaintiff and defendant; (2) plaintiff performed; (3) defendant failed to perform; and (4) resulting damages. *VisionChina Media Inc. v. Shareholder Representative Servs., LLC*, 109 A.D.3d 49, 58 967 N.Y.S.2d 338 (1st Dep't 2013). Absent any of these elements, the claim fails. *Id.*

The natural starting point for any breach of contract claim is the agreement.

---

[20] Compl. ¶ 63.

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 34    19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G    RECEIVED NYSCEF: 03/30/2018
Lipsky MOL re dismiss.    Pg 17 of 25

Mynes' Employment Agreement, importantly, does not prohibit Counsel Press from employing him. It, instead, limits his ability to provide services for a company, which provides similar services as AppealTech, in any geographic area in which AppealTech does business or is seeking to do business.[21] Applying this term to its description of its business, Mynes is prohibited from "advis[ing] clients on the technical and procedural aspects of appellate practice, including court rules specific to each appellate jurisdiction"[22] in New York City, Rochester, New York, Los Angeles, California or New Jersey and wherever AppealTech is seeking to do business.

The Complaint does not show that Mynes has violated this provision. It does not assert he is advising clients on appellate practice or on anything else – let alone in any of the prohibited geographical areas. It, instead, asserts only that he commenced employment with Counsel Press in its New York City Office with the Senior Appellate Consultant title.[23] Nothing more. For that that threadbare allegation to support this claim, the Employment Agreement would have to be rewritten to categorically prohibit Counsel Press from employing him. But that is not what it says and AppealTech fails to show that he has violated what the Agreement actually prohibits. This part of the claim accordingly fails as a matter of law.

> 2.    AppealTech Fails to Show That He Disclosed Any Confidential Information to Counsel Press.

The breach of contract claim fails to assert Mynes has actually disclosed any confidential information to Counsel Press – let alone identify what information was disclosed. This warrants dismissing this claim.

---

[21] Agreement ¶ 12, Lipsky Dec. Ex. B.
[22] Compl. ¶ 16.
[23] Compl. ¶ 57.

Where, like here, a party is asserting a breach exists from disclosing confidential information, "vague and conclusory allegations are insufficient to sustain a breach of contract cause of action." *Gino v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436, 529 N.Y.S.2d 777 (1st Dep't 1988) (reversing and dismissing on a motion to dismiss a breach of contract claim); *see also Anonymous v. Anonymous*, 233 A.D.2d 162, 166, 649 N.Y.S.2d 665 (1st Dep't 1996) ("Vague and conclusory allegations concerning disclosures of confidential information are not a sufficient basis upon which to base a claim that a confidentiality agreement has been breached"). A party must, instead, identify the confidential information "impart[ed] to" the third-party. *Gino*, 141 A.D.2d at 436. AppealTech does not meet this standard for various reasons.

The heart of this claim is that Mynes has used AppealTech's confidential information, breaching the Agreement. But the allegations are not enough to support that claim. The Complaint alleges – at most – that he emailed AppealTech's confidential information to his personal email address;[24] that he had conversations with Counsel Press' head of sales;[25] that he retained confidential information;[26] and that, while an AppealTech employee, he uploaded confidential information to his company-issued cell phone.[27]

Noticeably absent is any allegation – vague or otherwise – that he actually disclosed confidential information to any third-party. Equally absent is any allegation identifying what information was or will be disclosed.[28] This is naturally fatal to this

---

[24] Compl. ¶ 49.
[25] Compl. ¶ 50.
[26] Compl. ¶ 51.
[27] Compl. ¶ 52.
[28] Compl. ¶ 62.

claim. *See Gino*, 141 A.D.2d at 436.

C.    The Single, Boilerplate Allegation On Damages Is Insufficient to Survive
A Motion to Dismiss.

AppealTech claims at least $100,000 in damages for this claim, without providing any supporting allegation. That is insufficient.

The First Department considered and rejected a damages claim similar to this. *See Gordon*, 141 A.D.2d 435. There, the parties were engaged in negotiations to purchase a subsidiary of the Coca-Cola Company and entered into a confidentiality agreement requiring each party to refrain from using confidential information obtained from the other during the negotiations. *Id.* at 435. The negotiations fell apart and *Dino De Laurenttis* alone purchased the subsidiary. The defendant then filed suit and asserted a claim for *Dino De Laurentiis* breaching the confidentiality agreement and sought $35 million in damages, apparently representing the lost opportunity of obtaining the subsidiary. *Id.* at 436. The First Department reversed the Supreme Court and dismissed the claim:

> The complaint is fatally deficient because it does not demonstrate how the defendant's alleged breach of the confidentiality agreement caused plaintiffs any injury. The complaint contains only boilerplate allegations of damages. In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based.

*Id.* at 436 (emphasis added).

The breach of contract claim suffers the same flaws. The only allegation discussing damages is boilerplate language asserting its purported $100,000 in

damages.[29] It does not, fatally, show how the alleged breach caused this injury or show

how it arrives at that figure. *See Gordon*, 141 A.D.2d at 436. For this additional reason,

the breach of contract claim should be dismissed.

III.   APPEALTECH'S BREACH OF THE DUTY OF LOYALTY CLAIM
       DUPLICATES ITS BREACH OF CONTRACT CLAIM, WARRANTING ITS
       DISMISSAL AS A MATTER OF LAW

AppealTech's breach of duty of loyalty claim is nothing more than a rebranding

of its breach of contract claim. It does not identify any duty that arises separate and apart

from the Employment Agreement. It should therefore be dismissed as duplicative of the

breach of contract claim.

A breach of fiduciary duty claim cannot stand, as a matter of law, when it merely

duplicates a breach of contract claim. *Centro Empresarial Cempresa S.A. v. Am. Movil,*

*S.A.B. de C.V.*, 76 A.D.3d 310, 333-34, 910 N.Y.S.2d 618 (1st Dep't 2010) ("Generally, a

cause of action for breach of fiduciary duty that is merely duplicative of a breach of

contract claim cannot stand."); *Granirer v. Bakery, Inc.*, 54 A.D.3d 269, 272, 863

N.Y.S.2d 396 (1st Dep't 2008) ("The cause of action for breach of fiduciary duty should

have been dismissed as against the cooperative, as well as the individual defendants,

because it is merely duplicative of the cause of action for breach of the proprietary

lease."). The pleading must go further. To assert both claims, the plaintiff must identify a

duty that exists independent of the agreement. *Id.*

AppealTech's Complaint does not go further and, as required, identify any duty

that exists separate from the Employment Agreement. It, instead, asserts Mynes breached

---

[29] Compl. ¶ 65.

his fiduciary duty to AppealTech by "appropriat[ing]" its confidential information.[30] The

purported duty that Mynes breached with these alleged acts is, however, found in one

place: Paragraph 10 of the Employment Agreement. Indeed, while it changes the

verbiage, this claim mirrors the breach of contract claim, which is entirely dependent on

Paragraph 10.[31] This fact underscores the fiduciary duty claim duplicates the breach of

contract claim, warranting its dismissal. *See Centro Empresarial Cempresa S.A.*, 76

A.D.3d at 333-334.

IV.   **FATAL TO ITS TORTIOUS INTERFERENCE CLAIM, APPEALTECH DOES
      NOT CLAIM MYNES DIRECTED ANY TORTIOUS CONDUCT AT
      APPEALTECH CLIENTS, NOR DOES IT CLAIM THE ALLEGED
      CONDUCT WAS SOLELY INTENDED TO HARM IT.**

The tortious interference with business relationship claim wildly misses the mark,

as it focuses only on Mynes' conduct towards AppealTech. Yet a tortious interference

claim concerns a party's conduct towards existing or prospective clients. On this, the

Complaint is silent. Equally problematic, the claim asserts he acted to harm AppealTech

without identifying how he did so and without claiming he acted solely to harm

AppealTech.

A tortious interference with business relationship claims requires showing four

elements: (1) "the plaintiff had business relations with a third party"; (2) "the defendant

interfered with those business relations"; (3) "the defendant acted for a wrongful purpose

or used dishonest, unfair, or improper means"; and (4) "the defendant's acts injured the

relationship." *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108, 890

N.Y.S.2d 16, 31 (1st Dep't 2009). AppealTech cannot carry this burden for two separate

---

[30] Compl. ¶ 71.
[31] Compl. ¶ 62.

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM INDEX NO. 650620/2018
NYSCEF DOC. NO.: 34                                                    RECEIVED NYSCEF: 03/30/2018

19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G -
Lipsky MOL re dismiss.    Pg 22 of 25

reasons.

A.    The Tortious Interference Claim Is Misdirected.

As a preliminary manner, the claim totally misses the mark. A tortious interference claim focuses on conduct directed at existing or prospective customers; it does not concern conduct directed at the plaintiff. *See Carvel Corp.*, 3 N.Y.3d at 190 ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."); *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d Cir 1995) (claim dismissed because alleged conduct was not directed at plaintiff's customers); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) ("[U]nder New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must . . . direct some activities towards the third party . . .").

Despite this, the only supposed tortious conduct AppealTech identifies is Mynes "appropriating confidential and propriety information and acquiring Plaintiff's client lists."[32] This conduct is all directed at AppealTech; the Complaint is completely silent on any conduct Mynes directed at AppealTech's existing or prospective customers. This is fatal. *See Carvel Corp.*, 3 N.Y.3d at 190.

B.    AppealTech Fails To Plead With Specificity The Third Element To This Claim.

The third element is satisfied if defendant's conduct amounts to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 785

---

[32] Compl. ¶¶ 49, 51, 52, 88.

19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G
Lipsky MOL re dismiss.    Pg 23 of 25

N.Y.S.2d 359 (2004). It may also be satisfied if plaintiff shows the "defendant engage[d] in conduct for the sole purpose of inflicting intentional harm on plaintiffs." *Id.* These wrongful means cannot, importantly, be conclusively pleaded. *Kickertz v. New York Univ.*, 110 A.D.3d 268,275. 971 N.Y.S.2d 271 (1st Dep't 2013). The complaint must, at a minimum, "plead in nonclusory language facts" that give rise to a reasonable inference of the alleged wrongful means. *Bonanni v. Straight Arrow Publishers, Inc.*, 133 A.D.2d 585, 520 N.Y.S.2d 7 (1st Dep't 1987). AppealTech cannot carry this burden.

First, it does not identify what supposed prospective customers Mynes interfered with. It – at most – alleges he acted "to harm Plaintiff and diminish its standing as Counsel Press's competitor."[33] And nothing more. This is hardly specific pleading.

Next, it does not "plead in nonclusory language facts" showing his conduct was criminal or independently tortious. It – at most – alleges he interfered with these unidentified customers by "appropriating confidential and propriety information."[34] And nothing more. That is insufficient.

Finally, it does not show that he acted only to harm AppealTech. It – at most – asserts that he "acted to harm" it and "diminish its standing as Counsel Press's competitor."[35] And nothing more. That is not enough to be tortious. It instead describes fair competition.

The Fourth Cause of Action should accordingly be dismissed as against Mynes.

---

[33] Compl. ¶ 89.
[34] Compl. ¶88.
[35] Compl. ¶ 89.

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34

19-01435-jlg    Doc 5-8    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit G -
Lipsky MOL re dismiss.    Pg 24 of 25

INDEX NO. 650620/2018

RECEIVED NYSCEF: 03/30/2018

V.    WITH THE FAILED SUBSTANTIVE CLAIMS, APPEALTECH CANNOT SEEK A PERMANENT INJUNCTION NOR FEES.

Permanent injunctive relief is, logically, unavailable when the plaintiff does not have any remaining substantive claims against that defendant. *Weinreb v. 37 Apts. Corp.*, 97 A.D.3d 54, 943 N.Y.S.2d 519 (1st Dep't 2012) ("Although it is permissible to plead a cause of action for a permanent injunction . . . permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted"). As the substantive claims against him fail, its injunctive relief claim against Mynes is thus unavailable. Similarly, with those claims failing, AppealTech cannot obtain any of the relief it seeks and is thus not a prevailing party under the Agreement, warranting the dismissal of its claim for fees. *See Wiederhorn v. J. Ezra Merkin,* 98 A.D.3d 859, 863, 952 N.Y.S.2d 478 (1st Dep't 2012) ("The party who prevails with respect to the central relief sought is considered the prevailing party.").

VI.    COUNSEL PRESS'S MOTION.

Mynes incorporates by reference the arguments Counsel Press makes in its motion.

-18-

FILED: NEW YORK COUNTY CLERK 03/30/2018 02:37 PM
NYSCEF DOC. NO. 34

INDEX NO. 650620/2018

RECEIVED NYSCEF: 03/30/2018

19-01435-jlg   Doc 5-8   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit G -
Lipsky MOL re dismiss.   Pg 25 of 25

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an

Order dismissing the Claims against Defendant Laurence Mynes and grant any other

relief the Court deems appropriate.


   Dated: New York, New York
          March 30, 2018

                              Respectfully submitted,
                              LIPSKY LOWE LLP


                              s/ Douglas B. Lipsky
                              Douglas B. Lipsky
                              630 Third Avenue, Fifth Floor
                              New York, New York 10017
                              Tel: 212.392.4772
                              doug@lipskylowe.com
                              *Counsel for Defendant Mynes*

-19-