# Exhibit I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x
                                  :

Z & J LLC d/b/a APPEALTECH

                                    :   Index No. 650620/2018

                          Plaintiff,

                                    :

              -against-                       **SUPPLEMENTAL SUMMONS**

                                    :

LAURENCE MYNES, COUNSEL PRESS, INC.,
GLADSTONE INVESTMENT CORPORATION,      :
GLADSTONE MANAGEMENT CORPORATION,
GLADSTONE ADMINISTRATION, LLC and         :
JONATHAN WALLACH,

                         Defendants.

------------------------------------------------------------ x

TO THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the verified amended complaint in this
action and to serve a copy of your answer on the plaintiff's attorneys within 20 days after the
service of this supplemental summons, exclusive of the day of service (or within 30 days after the
service is complete if the supplemental summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded herein.

     The plaintiff designates New York County as the place of trial pursuant to CPLR §§ 501
and 503 and based on the residence of the plaintiff and location of the facts underlying the verified
amended complaint.

Dated: New York, New York
         April 6, 2018

                               MICHELMAN & ROBINSON, LLP

                               By: /s/: Christopher A. D'Angelo
                                  Christopher A. D'Angelo
                                  Kathryn T. Lundy
                                  Janeen R. Hall
                              800 Third Avenue, 24th Floor
                              New York, New York 10022
                              (212) 730-7700

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM                    INDEX NO. 650620/2018
NYSCEF DOC. NO. 3                                                          RECEIVED NYSCEF: 04/18/2018

19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I -
Supplemental Summons and Verified Amended Complaint.    Pg 3 of 31

Defendants' Addresses:

Laurence Mynes
21 Stall Lane
Lodi, New Jersey 07644

Counsel Press Inc.
Corporate Service Company (via the New York Secretary of State)
80 State Street
Albany, New York 12207-2543

Gladstone Investment Corporation
245 Park Avenue, 39th Floor
New York, New York 10167

Gladstone Management Corporation
245 Park Avenue, 39th Floor
New York, New York 10167

Gladstone Administration, LLC
245 Park Avenue, 39th Floor
New York, New York 10167

Jonathan Wallach
112 W. 72nd Street, Apt. 6G
New York, New York 10023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- x
                                                              :
Z & J LLC d/b/a APPEALTECH                                    :
                                                              :   Index No. 650620/2018
                              Plaintiff,                      :
                                                              :
             -against-                                        :   **VERIFIED AMENDED**
                                                              :   **COMPLAINT**
LAURENCE MYNES, COUNSEL PRESS, INC.,                          :
GLADSTONE INVESTMENT CORPORATION,                             :
GLADSTONE MANAGEMENT CORPORATIONS,                            :
GLADSTONE ADMINISTRATION, LLC and                             :
JONATHAN WALLACH,                                             :
                                                              :
                              Defendants.                     :
------------------------------------------------------------- x

Plaintiff Z&J LLC d/b/a AppealTech ("Plaintiff" or "AppealTech"), by and through its

attorneys Michelman & Robinson, LLP, for its Verified Amended Complaint ("Complaint") in the

above-captioned action against Defendants Laurence Mynes ("Mynes"), Counsel Press Inc.

("Counsel Press"), Gladstone Investment Corporation ("Gladstone Investment"), Gladstone

Management Corporation ("Gladstone Management") and Gladstone Administration, LLC

("Gladstone Administration") (Gladstone Investment, Gladstone Management and Gladstone

Administration collectively referred to herein as the "Gladstone Entities") and Jonathan Wallach

("Wallach") (Mynes, Counsel Press, the Gladstone Entities and Wallach are collectively referred

to herein as "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This action arises from Defendants' malicious attempt to destroy AppealTech as a

reputable, viable competitor in the appellate service provider and printer industry, as evidenced by

a statement from the Chief Executive Officer of Counsel Press that targeting and hiring Plaintiffs'

key personnel would result in "one less competitor" in the market.

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
NYSCEF DOC. NO. 3
INDEX NO. 650620/2018
RECEIVED NYSCEF: 04/18/2018

19-01435-jlg   Doc 5-10   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit I -
Supplemental Summons and Verified Amended Complaint.   Pg 5 of 31

2.      Defendants' scheme began in 2016, when Counsel Press raided AppealTech, hiring three of its four Senior Appellate Consultants, one of its nine paralegals, and two of its six production specialists, by offering compensation well above market, and with the intent of driving AppealTech out of business, thereby causing Counsel Press to contend with "one less competitor."

3.      AppealTech did not seek judicial relief at the time, opting instead to focus on protecting and preserving its business.

4.      AppealTech did so by significantly increasing its compensation to correspond to the above market compensation paid by Counsel Press, and entering into Employment Agreements with key employees, including Defendant Mynes, which contained post-termination restrictive covenants.

5.      Despite entering into an employment agreement with AppealTech and acknowledging that he would not compete with AppealTech's business in a way that is harmful to its client relationships and sensitive business information, Mynes deliberately breached his Employment Agreement in order to work for Counsel Press, a direct competitor in AppealTech's key markets.

6.      Mynes also breached his Employment Agreement, as well as his fiduciary obligation and duty of loyalty, and engaged in other tortious conduct, by transferring confidential information and client lists for his use at Counsel Press, in a position with the same title as that he held at AppealTech – Senior Appellate Consultant.

7.      It is this recent misconduct by Counsel Press and Mynes that has compelled AppealTech to seek judicial intervention

8.      As indicated above, the defection of Mynes to Counsel Press followed the poaching of many other key employees at AppealTech, by Counsel Press and the Gladstone Entities, in a

2

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
NYSCEF DOC. NO. 36

INDEX NO. 650620/2018
RECEIVED NYSCEF: 04/18/2018

19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I -
Supplemental Summons and Verified Amended Complaint.    Pg 6 of 31

knowing and willful effort to remove AppealTech as a viable competitor and drive it out of business.

9.    Like Mynes, defendant Jonathan Wallach breached his employment agreement with AppealTech as well as his fiduciary obligations and duty of loyalty, and engaged in tortious conduct, by, among other things, misappropriating AppealTech's confidential information, and disclosing that confidential information to Counsel Press. Mynes and Wallach, used that confidential information while working at Counsel Press, with the knowledge and consent of, or at the direction of, Counsel Press and/or the Gladstone Defendants, with the intent to cripple AppealTech and drive it out of business, causing there to be "one less competitor" in the market.

10.    As a result of the foregoing, AppealTech has suffered substantial harm.

**THE PARTIES**

11.    Plaintiff Z&J LLC d/b/a AppealTech was and still is a Delaware limited liability company authorized to do business in the State of New York, with a principal place of business at 7 West 36th Street, 10th Floor, New York, New York.

12.    Defendant Laurence Mynes ("Mynes") is an individual whose employment at both AppealTech and Counsel Press is at issue in this action, and who resides at 21 Stall Lane, Lodi, New Jersey 07644.

13.    Defendant Counsel Press, Inc. ("Counsel Press") is a Delaware corporation headquartered in New York City, with a principal place of business at 460 West 34th Street, New York, New York.

14.    Gladstone Investment Corporation ("Gladstone Investment") is a business development company ("BDC") incorporated under the General Corporation Law of the State of

3

Delaware, which conducts business in the State of New York and maintains offices in the County of New York, State of New York.

15.     Gladstone Management Corporation ("Gladstone Management") is an affiliate of Gladstone Investment, incorporated under the General Corporation Law of the State of Delaware, which conducts business in the State of New York and maintains offices in the County of New York, State of New York.

16.     Gladstone Administration, LLC ("Gladstone Administration") is an affiliate of Gladstone Investment, incorporated under the General Corporation Law of the State of Delaware, which conducts business in the State of New York and maintains offices in the County of New York, State of New York.

17.     Gladstone Investment is externally managed by Gladstone Management and Gladstone Administration.

18.     Jonathan Wallach is an individual whose principal place of business is located in New York County, New York, who regularly transacts business in the State of New York, whose actions in the State of New York gives rise to the claims set forth herein and who resides in New York County, State of New York.

### JURISDICTION AND VENUE

19.     Jurisdiction and venue in this Court are proper because the Defendants either have their principal place of business in New York County, reside in New York and/or transact business within New York, and the claims referred to herein arose in the County of New York, State of New York.

4

20.     Pursuant to paragraph 14 of the November 16, 2016 Employment Agreement between Mynes and AppealTech ("Mynes' Employment Agreement"), Mynes consents to the exclusive jurisdiction of the state or federal courts located in New York County for all purposes.

21.     Pursuant to paragraph 14 of the March 5, 2014 Employment Agreement between Wallach and AppealTech ("Wallach's Employment Agreement"), Wallach consents to the exclusive jurisdiction of the state or federal courts located in New York County with respect to any dispute arising under the agreement.

## FACTUAL ALLEGATIONS

22.     AppealTech is a comprehensive appellate services provider that has been in operation for approximately twenty (20) years.

23.     AppealTech maintains offices in New York City, Rochester, New York and Los Angeles, California.

24.     AppealTech also services surrounding areas, including New Jersey.

25.     AppealTech is retained by attorneys and law firms during the appellate process to guide them through appellate court procedures in various jurisdictions for both state and federal appellate courts.

26.     AppealTech's employees advise clients on the technical and procedural aspects of appellate practice, including court rules specific to each appellate jurisdiction.

27.     The relationships that AppealTech establishes with attorneys and law firms is critical to AppealTech's success. AppealTech relies on client referrals to establish its goodwill and build its reputation as an appellate services provider. Without client relationships, AppealTech would struggle to promote its services in various jurisdictions.

5

28.  To survive, it is imperative for AppealTech to maintain its client relationships without malicious, unlawful interference from former employees and competitors.

29.  Counsel Press is also an appellate services provider.

30.  Like AppealTech, Counsel Press focuses on the preparation of appellate documents, printing services and electronic filing services.

31.  Like AppealTech, Counsel Press also advises law firms and attorneys on procedural court rules by jurisdiction.

32.  Both AppealTech and Counsel Press hire employees to work as appellate consultants to develop relationships with lawyers, litigation clerks, and other key personnel in law firms to develop business, shepherd client projects through the appellate process, and advise clients and prospective clients on the intricacies of the appellate process in the jurisdictions in which they do business,  all of which creates goodwill with clients and prospects, with the goal being to develop initial and repeat business through the development and maintenance of these relationships.

### FACTS COMMON TO ALL CAUSES OF ACTION

#### Counsel Press and the Gladstone Entities Engineer a Scheme to of Raid AppealTech

33.  On or about March 31, 2015, Gladstone Investment announced its acquisition of Counsel Press by investing an aggregate of $32.5 million in a combination of equity and debt into the company.

34.  Gladstone Investment, as a BDC, is required to provide significant management assistance to its portfolio companies, such as Counsel Press, including guidance and counsel concerning management and operations of the company. As a result, following the acquisition,

6

Gladstone Investment, through its affiliates, Gladstone Management and Gladstone Administration, has provided significant managerial assistance to Counsel Press.

35.     Specifically, upon information and belief, Gladstone Management and Gladstone Administration entered a service agreement with Counsel Press wherein Gladstone Management and Gladstone Administration agreed to advise and provide management and consulting services to the company.

36.     Upon information and belief, Gladstone Investment, through its affiliates Gladstone Management and Gladstone Administration, are involved in the day to day business operations and management of Counsel Press.

**Counsel Press and the Gladstone Defendants Begin Raiding AppealTech for Key Employees**

37.     In or around the Summer of 2016, Counsel Press and the Gladstone Entities initiated a directed and concerted effort to poach AppealTech employees and obtain AppealTech's confidential and proprietary information to undermine its operation and standing in the industry.

38.     Upon information and belief, Counsel Press and the Gladstone Entities embarked on a corporate raid of AppealTech with the single goal of removing AppealTech as a competitor.

39.     Upon information and belief, Counsel Press' solicitation of AppealTech's employees was part of a scheme designed solely to damage AppealTech and put it out of business.

**Defendant Jonathan Wallach**

40.     Thus, on or before August 4, 2016, Jonathan Wallach ("Wallach") a Senior Appellate Consultant for AppealTech, accepted an offer of employment from Counsel Press.

41.     Wallach had previously signed an Employment Agreement with AppealTech, on or about March 5, 2014.

7

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
NYSCEF DOC. NO. 32
INDEX NO. 650620/2018
RECEIVED NYSCEF: 04/18/2018
19-01435-jlg   Doc 5-10   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit I
Supplemental Summons and Verified Amended Complaint.   Pg 11 of 31

42.     Paragraph 10 of Wallach's Employment Agreement provides, in relevant part, as follows:

> 10. **Confidential Information.** You agree not to, directly or indirectly, disclose or use any "Confidential Information" during or after your employment, except as required to do your job for the Company…Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Section 10-13 of this Agreement only.

43.     Paragraph 12 of Wallach's Employment Agreement provides, in relevant part, as follows:

> 12. **Non-Solicitation.** You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships and other legitimate business interests of the Company and is reasonable in scope, duration, and geography. You agree that, during your employment and for twelve (12) months after your employment termination, voluntarily or involuntarily, you will not, directly or indirectly, on your own behalf or on behalf of any individual or entity, in any geographic area in which the Company does or is seeking to do business…(a) encourage, induce or attempt to encourage or induce any Client to change the nature, terms or amount of business it conducts with the Company."

44.     The "non-competition" covenant was in exchange for an annualized draw of $140,000, in addition to a commission.

45.     Despite these contractual provisions, prior to his resignation from AppealTech, Wallach began emailing AppealTech's confidential information to his personal email address including, but not limited to, sales reports, clients lists, client documents, upcoming client deadlines, lists of "active accounts" and other related information.

46.     The foregoing documents constitute "Confidential Information," as defined in Wallach's Employment Agreement.

8

47.    Upon information and belief, Wallach sent AppealTech's client lists and other confidential and proprietary information to Counsel Press, and Counsel Press uploaded it to its system.

48.    Upon information belief, and at the direction of Counsel Press and/or the Gladstone Entities, Wallach remained employed at AppealTech for several months after he decided to join Counsel Press for the sole purpose of continuing to refer existing and prospective clients of AppealTech to Counsel Press and to acquire and misappropriate AppealTech's confidential information and providing the same to Counsel Press.

49.    During this time, when Wallach received calls from AppealTech's current or prospective clients, he would refer the work to Counsel Press instead.

50.    The foregoing was done at the direction of Counsel Pres and/or the Gladstone Entities to injure AppealTech.

51.    In essence, Wallach served as a "mole" for Counsel Press and/or the Gladstone Entities.

52.    Upon information and belief, Counsel Press and the Gladstone Entities have used and continue to use AppealTech's confidential information provided by Wallach for the purpose of damaging AppealTech's goodwill.

53.    Specifically, Counsel Press and the Gladstone Entities have used AppealTech's client lists and other confidential and proprietary information provided by Wallach to solicit new clients and drive AppealTech out of business.

**Debra Rudoltz and Tina Fisher**

54.    Shortly thereafter, Counsel Press hired two other senior appellate consultants employed by AppealTech, Debra Rudoltz ("Rudoltz") and Tina Fisher ("Fisher").

9

55.     On or about June 13, 2014 and June 17, 2014, Rudoltz and Fisher signed an Employment Agreement with AppealTech, respectively.

56.     Paragraph 9 of Rudoltz' and Fisher's Employment Agreements provide, in relevant part, as follows:

> 9. **Confidential Information.** You agree to keep the terms of this Agreement confidential…you further agree not to, directly or indirectly, disclose or use any "Confidential Information" during or after your employment, except as required to do your job for the Company…"

57.     Upon information and belief, at Counsel Press and the Gladstone Entities direction, Rudoltz and Fisher retained AppealTech's Confidential Information, as defined in the Rudoltz and Fisher Employment Agreements, and provided the information to them.

58.     Upon information and belief, Counsel Press and the Gladstone Entities have used AppealTech's Confidential Information for the purpose of damaging AppealTech's business relationships.

## The 2016 Counsel Press Raid on AppealTech Includes Critical Paralegals and Production Employees

59.     At or about the same time in 2016 that Counsel Press was hiring 3 of AppealTech's 4 Senior Appellate Consultants, Counsel Press also attempted to poach approximately sixty-five percent (65%) of AppealTech's other employees.

60.     Specifically, at or about the same time, Counsel Press approached five out of AppealTech's nine paralegal staff and made offers to four of them, with one paralegal accepting Counsel Press's offer.

10

61.    Given the threat of losing approximately fifty-five percent (55%) of AppealTech's

paralegal staff, AppealTech was forced to dramatically raise the paralegal's salaries and match

Counsel Press' offer of employment.

62.    Upon information and belief, the offers presented by Counsel Press to

AppealTech's paralegal staff were significantly above market value and were designed exclusively

to injure AppealTech and drive it out of business by either paying its employees significantly above

market to retain them or lose vital components of its staff.

63.    At or about the same time, Counsel Press approached four out of the six employees

at AppealTech's production shop and made offers to three of them, with two accepting Counsel

Press' offer of employment.

64.    The production employees were vital to AppealTech's production shop.

65.    By losing so many of these employees in such a short period of time, AppealTech's

ability to accept and timely complete print orders was significantly impaired.

66.    Upon information and belief, Counsel Press and the Gladstone Entities have

obtained AppealTech's confidential and proprietary information from the employees it hired away

from AppealTech and have used and continue to use that information to the competitive

disadvantage of AppealTech.

67.    Upon information and belief, Counsel Press and the Gladstone Entities knew and

encouraged AppealTech employees to violate their respective employment agreements by

breaching the confidentiality provision and soliciting, either directly or indirectly, key clients of

AppealTech.

68.    During a meeting in or about August 2016, Scott Thompson, Chief Executive

Officer and President of Counsel Press, referred to this strategy of raiding AppealTech and

11

poaching so many of its employees, stating that there was going to be "one less competitor" in the market.

69.     The corporate raid by Counsel Press and the Gladstone Entities that began in 2016 had a direct and devastating impact on AppealTech's business operation, as intended.

70.     As a result of the foregoing, AppealTech's revenue declined substantially in 2017 and is currently operating at a loss.

71.     Upon information and belief, Counsel Press and the Gladstone Entities have not made any effort to poach any employees from any other competitor.

72.     Indeed, Counsel Press's efforts to damage AppealTech has been a directed effort exclusively targeting AppealTech in particular.

**Counsel Press Targets Defendant Lawrence Mynes in the Summer of 2017**

73.     Counsel Press and the Gladstone Defendants continued their scheme to poach AppealTech employees and drive AppealTech out of business through the end of 2017 and into early 2018, targeting a fourth Senior Appellate Consultant, Lawrence Mynes ("Mynes").

74.     On January 17, 2018, Mynes announced he was leaving AppealTech, but declined to reveal where he was moving to.

75.     AppealTech learned the next day that Mynes had accepted a position as an Appellate Consultant at Counsel Press.

76.     Mynes began his employment with AppealTech in 2006.

77.     Prior to working in the appellate services industry, Mynes worked in the marketing and advertising industry, focusing on general sales promotion and event marketing for various advertising and marketing consultant companies for approximately twenty-five (25) years.

12

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 38    19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I    RECEIVED NYSCEF: 04/18/2018

Supplemental Summons and Verified Amended Complaint.    Pg 16 of 31

78.    Mynes had no background or experience with law firms in connection with appellate services, practice, and procedure prior to his employment with AppealTech. He was a "blank slate."

79.    Mynes did not maintain any client or customer relationships relating to the appellate services industry.

80.    Prior to his defection to Counsel Press, the only experience Mynes had in the appellate services industry came from his employment with AppealTech.

81.    Over the course of twelve (12) years, AppealTech trained, supported and educated Mynes, allowing Mynes to develop critical relationships with law firms and key personnel within those firms who were responsible for selecting appellate service providers in the open market.

82.    The training, support and education AppealTech provided to Mynes enhanced the goodwill and reputation that AppealTech had nurtured and developed with AppealTech's clients and prospects.

83.    As a Senior Appellate Consultant, Mynes assisted AppealTech's clients in perfecting thousands of appeals in state and federal appellate courts nationwide.

84.    Mynes specialized in New York State Appellate Divisions, the New York State Court of Appeals and the Second Circuit Court of Appeals.

85.    As a Senior Appellate Consultant, Mynes was privy to AppealTech's confidential and proprietary information including, but not limited to, its sales and marketing strategies, proprietary sales practices, general and specific client pricing data, know-how, good will and client lists.

13

86.    As a result of AppealTech's investment into Mynes' growth as a consultant, Mynes'

sales increased from 2011 through 2017 as he developed client relationships and acquired

knowledge of appellate procedure.

87.    In August 2016, with the departure of the three Senior Appellate Consultants, the

paralegal and two production staff members, AppealTech immediately approached Mynes, as the

only remaining Senior Appellate Consultant, along with other key AppealTech employees, to

negotiate significantly increased compensation in exchange for written promises from Mynes and

the other employees to protect and preserve AppealTech's confidential and proprietary

information, ensuring that it would not fall into the hands of the competition.

### Mynes' Employment Agreement

88.    On or about November 16, 2016, Mynes signed an Employment Agreement with

AppealTech.

89.    The Employment Agreement provided Mynes with a significant increase in

compensation through a draw, which was increased from $80,000 to $120,000.  It also contained

a restrictive "non-competition" covenant and a confidentiality clause.

90.    Paragraph 10 of the Employment Agreement provides, in relevant part, as follows:

> 10.  **Confidential Information.**  You agree not to, directly or
> indirectly, disclose or use any of the Company's Confidential
> Information (defined below) during or after your employment,
> except to the extent necessary to perform your job duties ....
> Notwithstanding the foregoing, you agree to notify any prospective
> or actual future employer of Sections 10-13 of this Agreement only.

91.    Paragraph 12 of the Employment Agreement provides, in relevant part, as follows:

> 12.  **Non-Competition.**  You agree that during your employment
> and for a period of six (6) months after your employment terminates
> ("**Restricted Period**") for any reason, you will not, except as
> necessary to perform your job duties for the Company, directly or

14

indirectly, on your own behalf or on behalf of any individual or entity, as an employee, owner, joint venturer, consultant, contractor, volunteer, or otherwise: (a) provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of the Company in any geographic area in which the Company does or is actively seeking to do business; (b) solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those that the Company provides or has provided within six (6) months prior to the termination of your employment; (c) interfere with the Company's relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with the Company; or (d) solicit, hire, or attempt to solicit or hire, any individual who is an employee, consultant, or contractor of the company or who was an employee, consultant, or contractor of the Company at any time during the six (6) months preceding the termination of this Agreement .... You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships, and other legitimate business interests of the Company and is reasonable in scope, duration, and geography.

92.     Paragraph 15 of the Employment Agreement provides, in relevant part, as follows:

15.  **Injunctive Relief.**  You acknowledge and agree that if you breach, or attempt or threaten to breach, any part of Sections 10-13, the Company shall be entitled, in addition to any other right or remedy it may have, to an order enjoining or restraining you from any breach, or attempted or threatened breach, without having to post a bond or other security or prove damages and you hereby consent to the issuance of such an order .... If you violate any of the provisions of Section 12 ... the duration of the covenants shall be extended for the period of time when the violation began until you permanently cease such violation. Nothing set forth in this Section shall prevent the Company from seeking money damages or other relief instead of or in addition to injunctive relief.

93.     The "non-competition" covenant was in exchange for the significant increase in compensation. AppealTech also directed certain house accounts to him, thereby increasing his overall sales and his percent on commission, resulting in even higher total compensation.

15

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM INDEX NO. 650620/2018
NYSCEF DOC. NO: 35 RECEIVED NYSCEF: 04/18/2018

19-01435-jlg   Doc 5-10   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit I -
Supplemental Summons and Verified Amended Complaint.   Pg 19 of 31

94.     Mynes accepted AppealTech's offer, increasing his compensation by more than thirty (30%) percent. His sales almost doubled as a result of the foregoing.

**Mynes' Breach of the Employment Agreement**

95.     Upon information and belief, in or about June 2017, Counsel Press renewed its effort to raid AppealTech's business, with the sole and exclusive goal of putting AppealTech out of business.

96.     Thus, upon information and belief, at or about the time Mynes and Counsel Press began to communicate, Mynes began to provide Counsel Press and the Gladstone Entities with AppealTech's confidential client and other confidential and proprietary information.

97.     Mynes began emailing AppealTech's confidential information to his personal email address including, but not limited to: AppealTech's 2017 sales budget, AppealTech checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information and/or goodwill.

98.     Upon information and belief, between September 2017 and December 2017, Mynes engaged in multiple conversations with Counsel Press's head of sales, with the goal of misappropriating AppealTech's confidential and proprietary information and joining Counsel Press, in furtherance of Counsel Press's scheme to put AppealTech out of business.

99.     From June 2017 through January 2018, Mynes retained AppealTech's client information and other confidential and proprietary information.

100.     During the relevant period of time herein, Mynes uploaded confidential and client information from his company-issued cell phone to his personal cloud account.

16

101.    On January 17, 2018, Mynes abruptly announced his resignation from AppealTech.

102.    Mynes refused to disclose where he would be employed or whether he had found other employment.

103.    Upon information and belief, immediately upon Mynes' resignation from AppealTech and for the twelve (12) months preceding his resignation, Mynes solicited, directly and indirectly, AppealTech's clients to change the nature, terms or amount of business it conducted with AppealTech.

104.    Upon information and belief, Mynes shared AppealTech's confidential and proprietary information with Counsel Press and/or the Gladstone Entities.

105.    On or about January 19, 2018, AppealTech sent Mynes a demand letter to comply with the restrictive "non-competition" covenant and confidentiality provision contained within the Employment Agreement.  Mynes never responded.

106.    On or about January 29, 2018, AppealTech sent Counsel Press a cease and desist letter concerning its deliberate effort to poach AppealTech's employees.

107.    Shortly thereafter, Counsel Press announced that Mynes had joined the company, effective January 29, 2018, in Counsel Press's New York City office.  Counsel Press immediately listed Mynes on the website as a Senior Appellate Consultant, which was the same title that he held at AppealTech.

108.    On February 2, 2018, Counsel Press, through its counsel, responded to the January 29, 2018 correspondence refusing to remove Mynes from the website and maintaining that he is an employee of Counsel Press.

109.    Defendants have utilized AppealTech's confidential information and goodwill obtained by Mynes to damage AppealTech's business interests.

17

RECEIVED NYSCEF: 04/18/2018

110.   As a result of Defendants' conduct, AppealTech has been severely damaged.   In particular, AppealTech has suffered dramatically decreased profits and is currently operating at a loss.

111.   In addition to decreased profits, AppealTech has also lost clients as a result of Defendants' improper conduct.

112.   For example, on or about February 1, 2018, AppealTech was advised that the law firm of Horing Welikson & Rosen, P.C., a long-standing client of AppealTech, was transferring its account to Counsel Press.

113.   But for Counsel Press' effort to put AppealTech out of business, AppealTech would still have Horing Welikson & Rosen, P.C.'s account.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Breach of Contract Against Mynes and Wallach)

114.   AppealTech repeats and realleges paragraphs 1-113 of this Complaint as if fully restated herein.

115.   Defendants Mynes and Wallach breached their respective employment agreements (collectively the "Employment Agreements") with AppealTech by, among other things, removing AppealTech's confidential and proprietary business information and client information, to disclose and or use the same in connection with their employment with Defendant Counsel Press in direct violation of their Employment Agreement.

116.   Defendant Mynes also breached his employment agreement by, among other things, providing services for Counsel Press in the same geographic area as AppealTech does or is actively seeking to do business less than six months after his resignation from AppealTech in direct violation of the restrictive "non-competition" covenant.

18

117.    Defendants Wallach and Mynes also breached their respective employment agreements by, among other things, soliciting, both directly and indirectly, AppealTech's Clients within twelve (12) months of their resignation from the company.

118.    Mynes and Wallach have damaged AppealTech by breaching their respective Employment Agreements including, but not limited to, causing AppealTech to lose profit and good will.

119.    As a result of the foregoing, Mynes and Wallach are liable for damages in an amount to be determined at trial.

120.    Pursuant to their respective employment agreements, AppealTech is entitled to recover all reasonable attorneys' fees and costs with respect to any dispute arising thereunder.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Breach of the Duty of Loyalty Against Mynes and Wallach)

121.    AppealTech repeats and realleges paragraphs 1-120 of this Complaint is if fully restated herein.

122.    Mynes and Wallach owed a duty of loyalty as an employee of AppealTech.

123.    Pursuant to their respective Employment Agreements, and as a matter of common law, Mynes and Wallach are obligated to protect AppealTech's "confidential information."

124.    Mynes and Wallach breached that duty by acting to advance their own personal interest, and the interests of Counsel Press and the Gladstone Entities at the expense of AppealTech's interests.

125.    Specifically, Mynes and Wallach intentionally and knowingly appropriated AppealTech's proprietary and confidential information in an effort to undermine AppealTech's sales and hurt AppealTech as Counsel Press's competitor.

19

126.    The foregoing breach by Mynes and Wallach has harmed AppealTech.

127.    As a result of the foregoing, Mynes and Wallach are liable for damages in an amount to be determined at trial.

128.    Pursuant to the Employment Agreements of Mynes and Wallach, AppealTech is entitled to recover all reasonable attorneys' fees and costs with respect to any dispute arising thereunder.

### AS AND FOR THE THIRD CAUSE OF ACTION
(Tortious Interference with Contract Against Counsel Press and
the Gladstone Entities)

129.    AppealTech repeats and realleges paragraphs 1-128 of this Complaint as if fully restated herein.

130.    Valid Employment Agreements existed between AppealTech and Mynes, Wallach, Rudoltz and Fisher, respectively.

131.    Defendants Counsel Press and the Gladstone Entities knew, or had constructive knowledge of, the Employment Agreements between AppealTech and Mynes, Wallach, Rudoltz and Fisher, respectively.

132.    Nevertheless, Counsel Press, with the advice and guidance of the Gladstone Entities, knowingly, intentionally, improperly, tortuously and in bad faith, caused, induced and/or procured Mynes, Wallach, Rudoltz and Fisher to resign from AppealTech and work for Counsel Press, AppealTech's known competitor.

133.    Defendant Counsel Press induced these individuals to join its company by, among other things, offering above market compensation packages.

134.    Defendant Counsel Press, with the advice and guidance of the Gladstone Entities, further intentionally, knowingly, improperly, tortuously and in bad faith caused and induced

20

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
NYSCEF DOC. NO: 38
INDEX NO. 650620/2018
RECEIVED NYSCEF: 04/18/2018

19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I -
Supplemental Summons and Verified Amended Complaint.    Pg 24 of 31

Mynes, Wallach, Rudoltz and Fisher to appropriate AppealTech's confidential and proprietary business information and confidential information for its own use.

135.    For example, prior to Wallach's resignation, he sent AppealTech's client list and other proprietary information to Counsel Press, which was uploaded to Counsel Press' system.

136.    Likewise, beginning in or about June 2017, Mynes began emailing AppealTech's confidential information to his personal email address including, but not limited to: AppealTech's 2017 sales budget, AppealTech checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information and/or goodwill.

137.    The foregoing confidential information was procured for the benefit of Mynes, Counsel Press and the Gladstone Entities for the purpose of damaging AppealTech.

138.    The intentional interference by Counsel Press and the Gladstone Entities resulted in a breach of the Employment Agreements of Mynes, Wallach, Rudoltz and Fisher.

139.    Indeed, but for Counsel Press and the Gladstone Entities actions, Mynes, Wallach, Rudoltz and Fisher would not have breached their respective employment agreements.

140.    Counsel Press' and the Gladstone Entities' tortious interference with the Employment Agreements have caused damage to AppealTech including, but not limited to, lost profits.

141.    Specifically, Counsel Pres and the Gladstone Entities' tortious interference with the subject Employment Agreements had a direct and devastating impact on AppealTech's business operation.

21

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM    INDEX NO. 650620/2018
NYSCEF DOC. NO.                                                      RECEIVED NYSCEF: 04/18/2018

19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I -
Supplemental Summons and Verified Amended Complaint.    Pg 25 of 31

142.    As a result of the foregoing, AppealTech's revenue declined substantially in 2017 and is currently operating at a loss.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Unfair Competition Against Counsel Press and the Gladstone Entities)

143.    AppealTech repeats and realleges paragraphs 1-142 of this Complaint as if fully set forth herein.

144.    Counsel Press and the Gladstone Entities have, in bad faith, employed unfair means, including, but not limited to, inducing Mynes, Wallach, Rudoltz and Fisher to violate their respective Employment Agreements to lure away key-employees of AppealTech as part of a deliberate and malicious strategy to destroy AppealTech's business and force it out of business.

145.    During the course of only a few months in 2016, Counsel Press raided and attempted to hire sixty-five (65%) percent of all AppealTech employees.

146.    Counsel Press and the Gladstone Entities raided these employees as part of their scheme to gain access to confidential and proprietary information, including but not limited to AppealTech's goodwill and client opportunities, in furtherance of its exclusive goal to eliminate AppealTech as a competitor.

147.    In concert with Mynes, Wallach, Rudoltz and Fisher, Counsel Press and the Gladstone Entities have acquired and have been using this information to its advantage, and to the competitive disadvantage of AppealTech.

148.    Counsel Press and the Gladstone Entities have no business justification for their actions. These actions were taken in bad faith with the intention to harm AppealTech.

149.    Counsel Press and the Gladstone Entities' unfair competition have caused damage to AppealTech in an amount to be proven at trial.

22

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
NYSCEF DOC. NO. 35
INDEX NO. 650620/2018
RECEIVED NYSCEF: 04/18/2018

19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I -
Supplemental Summons and Verified Amended Complaint.    Pg 26 of 31

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Tortious Interference with Business Relationships Against Defendants)

150.    AppealTech repeats and realleges paragraphs 1-149 of this Complaint as if fully restated herein.

151.    AppealTech established its goodwill as an appellate services provider through developing client relationships with attorneys, litigation clerks and law firms.

152.    As a result of AppealTech's efforts, AppealTech has been voted as one of the best appellate service providers by the New York Law Journal and Corporate Counsel.

153.    The relationships that AppealTech has established with attorneys, litigation clerks and law firms are business relations that foster an expectancy of future contract rights with clients in the legal industry.

154.    Defendants interfered with AppealTech's business relationships by appropriating confidential and proprietary information and acquiring AppealTech's clients.

155.    For example, in the latter half of 2016 and throughout 2017, AppealTech lost key clients and business as a result of Defendants' conduct.

156.    Specifically, for example, while Wallach was still employed at AppealTech, he would refer existing and potential clients of AppealTech to Counsel Press.

157.    More recently, on or about February 1, 2018, AppealTech was advised that the law firm of Horing Welikson & Rosen, P.C., a long-standing client of AppealTech, was transferring its account to Counsel Press.

158.    By utilizing AppealTech's confidential information improperly retained by Mynes, Counsel Press enticed Horing Welikson & Rosen, P.C. to discontinue its relationship with AppealTech.

23

159.    But for Defendants wrongful acts, AppealTech would have retained its relationship with its existing clients, including Horing Welikson & Rosen, P.C., and would have been able to develop other business relationships.

160.    Defendants acted solely to harm AppealTech and diminish its standing as Counsel Press's competitor.

161.    As a result of the foregoing, Defendants are liable for damages in an amount to be determined at trial, because of the lost opportunities for profit that have been diverted away from AppealTech in favor of Counsel Press.

### AS AND FOR THE SIXTH CAUSE OF ACTION
**(Injunctive Relief)**

162.    AppealTech repeats and realleges paragraphs 1-161 of this Complaint as if fully restated herein.

163.    Pursuant to paragraph 15 of Mynes' Employment Agreement, AppealTech is entitled to an order enjoining or restraining Defendant Mynes from any breach, or attempted or threatened breach, of the Employment Agreement, in addition to any other right or remedy it may have. Defendant Mynes expressly agreed and consented to the issuance of such an order.

164.    Pursuant to paragraph 15 of Mynes' Employment Agreement, AppealTech agreed that if he breaches, attempts or threatens to breach, any part of Sections 10-13 of the Employment Agreement, AppealTech is entitled to "an order enjoining or restraining [Mynes] from any breach, or attempted or threatened breach [of the Employment Agreement]."

165.    As a result of Defendants' conduct referenced herein, AppealTech will suffer irreparable harm if the restrictive covenant is not enforced, and if Counsel Press is not enjoined from further interfering with AppealTech's business and contracts.

166.    Specifically, the relationships that AppealTech has developed and fostered and the goodwill that AppealTech has nurtured and maintained through its employment and training of Mynes, who had no knowledge, training or experience in this industry prior to his employment with AppealTech, will be irreparably harmed, as will AppealTech's ability to fairly compete as an appellate services provider in its markets.

167.    AppealTech seeks to enjoin Defendants from stealing and/or using its confidential and proprietary information, and customer information.

168.    No adequate remedy exists at law.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Attorneys' Fees and Costs against Mynes and Wallach)

169.    AppealTech repeats and realleges paragraphs 1 - 168 of this Complaint as if fully restated herein.

170.    The Employment Agreements of Mynes and Wallach expressly provide that the prevailing party in any dispute shall be reimbursed by the other party for a reasonable attorneys' fees and costs.

171.    AppealTech is entitled to recover its reasonable attorneys' fees, costs and disbursements against Mynes and Wallach for bringing this action to enforce its rights under the respective Employment Agreements.

**WHEREFORE**, Plaintiff Z & J LLC d/b/a APPEALTECH demands judgment as follows:

a.    On the First Cause of Action, judgment in favor of AppealTech and against Mynes and Wallach in an amount to be proven at trial;

b.    On the Second Cause of Action, judgement in favor of AppealTech and against Mynes and Wallach in an amount to be proven at trial;

25

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
NYSCEF DOC. NO. 34
INDEX NO. 650620/2018
RECEIVED NYSCEF: 04/18/2018
19-01435-jlg    Doc 5-10    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit I -
Supplemental Summons and Verified Amended Complaint.    Pg 29 of 31

c.      On the Third Cause of Action, judgment in favor of AppealTech and against Counsel Press and the Gladstone Entities in an amount to be proven at trial;

d.      On the Fourth Cause of Action, judgment in favor of AppealTech and against Counsel Press and the Gladstone Entities in an amount to be proven at trial;

e.      On the Fifth Cause of Action, judgment in favor of AppealTech and against the Defendants in an amount to be proven at trial;

f.      On the Sixth Cause of Action, injunctive relief;

g.      On the Seventh Cause of Action and as to all causes of action, in favor of AppealTech and against Mynes and Wallach for attorneys' fees, costs and the disbursements of this action; and

h.      Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      April 6, 2018

MICHELMAN & ROBINSON, LLP

By: /s/: Christopher A. D'Angelo
       Christopher A. D'Angelo
       Kathryn T. Lundy
       Janeen R. Hall
      800 Third Avenue, 24th Floor
      New York, New York 10022
      (212) 730-7700

26

## VERIFICATION

STATE OF NEW YORK )
                  ) ss:
COUNTY OF NEW YORK )

MICHAEL KESTAN, being duly sworn, deposes and says:

1.    I am the President and owner of Plaintiff Z&J LLC d/b/a AppealTech.

2.    I have read and know the contents of the foregoing Verified Amended Complaint, and the same is true to my knowledge, except as to matters stated to be on information and belief, and with respect to those matters, I believe them to be true.

3.    My knowledge as to the factual matters in the Verified Amended Complaint is based upon my personal involvement in the underlying facts and my review of the relevant agreement and any relevant correspondence.

                                             _____
                                             MICHAEL KESTAN

Subscribed to before me this
6th day of April, 2018

_____
NOTARY PUBLIC

SONJIA R. RICHARDS
Notary Public, State of New York
No. 03-4998375
Qualified in Bronx County
Commission Expires June 28, 2018

27

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 38
RECEIVED NYSCEF: 04/18/2018

19-01435-jlg   Doc 5-10   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit I -
Supplemental Summons and Verified Amended Complaint.   Pg 31 of 31

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
Z & J LLC d/b/a APPEALTECH

       Plaintiff,

     -against-

 LAURENCE MYNES, COUNSEL PRESS, INC.,
GLADSTONE INVESTMENT CORPORATION,
GLADSTONE MANAGEMENT CORPORATION
and GLADSTONE ADMINISTRATION, LLC and
JONATHAN WALLACH,

      Defendants.

------------------------------------------------------------------x

---

**SUPPLEMENTAL SUMMONS AND VERIFIED AMENDED COMPLAINT**

---

MICHELMAN & ROBINSON, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
(212) 730-7700

Signed and certified pursuant to 22 NYCRR § 130-1.1-a

/s/: Christopher A. D'Angelo
Christopher A. D'Angelo
*Attorneys for Plaintiff*

28