# Exhibit J

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jig   Doc 5-11   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit J -
Mynes Answer and Cross Claims.   Pg 2 of 16

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Z & J LLC d/b/a APPEALTECH,<br><br>                    Plaintiff,<br><br>v.<br><br>LAURENCE MYNES, COUNSEL PRESS INC., GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATIONS, GLADSTONE ADMINISTATION, LLC AND JONATHAN WALLACH,<br><br>                    Defendants. | NYSCEF CASE<br><br>Hon. Doris Ling-Cohan, J.S.C<br><br>No. 650620/2018<br><br>VERIFIED COUNTERCLAIMS ON BEHALF OF LAURENCE MYNES<br><br>JURY TRIAL DEMANDED |
| LAURENCE MYNES AND JONATHAN WALLACH,<br><br>                    Counterclaim Plaintiffs,<br><br>v.<br><br>Z & J LLC d/b/a APPEALTECH AND MICHAEL KESTAN, Jointly and Severally,<br><br>                    Counterclaim Defendants. | |

Defendant and Counterclaim Plaintiff Laurence Mynes, by and through his attorneys, Lipsky Lowe LLP, asserts the following counterclaims against Counterclaim Defendants Z & J LLC d/b/a AppealTech and Michael Kestan.

NATURE OF ACTION

1.      These counterclaims arise from Counterclaim Defendants Z & J LLC d/b/a AppealTech and Michael Kestan employment of Counterclaim Plaintiff Laurence Mynes. Mynes asserts claims of unpaid commissions under the New York Labor Law, breach of contract under New York common law and unpaid regular wages under the Labor Law.

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit J -
Mynes Answer and Cross Claims.    Pg 3 of 16

2. On February 7, 2018, AppealTech filed the Complaint against Mynes. (Doc. No. 1).

3. On April 18, 2018, AppealTech filed the First Amended Complaint against Mynes. (Doc. No. 36).

4. On September 18, 2018, Mynes filed a Motion to Dismiss each claim asserted against him in the First Amended Complaint, preserving his right to file an Answer if any part of that Motion and subsequent appeal, if any, is denied.

## JURISDICTION, VENUE & JURY DEMAND

5. This Court has jurisdiction over this matter because AppealTech is, upon information and belief, licensed to and does do business in the State of New York, and a substantial part of the events or omissions giving rise to the claims occurred in this state.

6. Venue is proper in this County and this Court under C.P.L.R. § 503(c) because AppealTech's headquarters is in this County at 7 W. 36th Street, New York, New York

7. Mynes demands a trial by jury.

## THE PARTIES

8. Mynes was, at all relevant times, an adult individual, residing in the State of New Jersey.

9. AppealTech is a Delaware limited liability company that is authorized to do business in the State of New York.

10. Kestan was, at all relevant times, an adult individual, residing in New York, New York.

## STATEMENT OF FACTS

11. AppealTech is an appellate service provider.

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jig    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit J -
Mynes Answer and Cross Claims.    Pg 4 of 16

12. Kestan is the sole owner of ApealTech.

13. Mynes commenced employment with AppealTech in 2006 in the Senior Appellate Consultant position and reported to Kestan.

14. Mynes' primary duties were selling AppealTech's services to law firms and his earnings were largely based on commissions.

15. Kestan had the authority to discipline Mynes, review his performance, fire him, hire him, and affect his compensation and promotional opportunities.

16. AppealTech and Mynes entered into November 16, 2016 Employment Agreement that sets forth material terms of his employment (the "Agreement"), including his commission schedule:

| Net Sales | Commission Rate |
| --- | --- |
| $1 to $700,000 | 10% |
| $700,0001 to $1,100,000 | 12% |
| $1,100,001 to $1,300,000 | 13% |
| $1,300,001 and up | 14% |

A true and correct copy of the Agreement is attached as Exhibit A to this Counterclaim.

17. Commissions are earned under the Agreement when AppealTech receives full payment and those earned commissions are to be paid within one month after the month in which it is earned. (Agreement ¶ 3).

18. AppealTech did not always pay Mynes his commissions within one month after the month in which his commissions were earned.

19. On more than occasion, AppealTech did not timely pay Mynes his commissions.

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40

19-01435-jig    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit J -
Mynes Answer and Cross Claims.    Pg 5 of 16

INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

20. Mynes, for example, did not receive his commissions for 2015 until August 2016.

21. On or about January 17, 2018, Mynes voluntarily terminated his employment with AppealTech.

22. To date, AppealTech has not paid Mynes all of his earned commissions for 2017.

23. AppealTech owes Mynes approximately $26,000 in unpaid, earned commissions.

24. Under the Agreement, AppealTech was to provide Mynes and other sales peoples monthly commission statements. (Agreement ¶ 3).

25. AppealTech did not provide Mynes a commission statement every month during his employment.

26. AppealTech regularly did not provide the salespeople the monthly commission sales report as required under the Agreement.

27. AppealTech did not provide Mynes and other sales employees commission reports for November and December 2017.

28. In failing to pay him his earned commissions, AppealTech breached the Agreement.

29. In failing to timely provide the monthly commission reports, AppealTech breached the Agreement.

30. Under the Agreement, Mynes received a $120,000 annualized draw, which was to be paid bi-weekly. (Agreement ¶ 2).

31. On three separation occasions, AppealTech failed to timely pay Mynes and other AppealTech employees their bi-weekly salary: payroll due on July 14, 2018 was paid on July 18; payroll due on October 6, 2017 was paid on October 11; payroll due on November 3 was paid on November 8.

32. Mynes' bi-weekly salary for his employment with AppealTech from January 8 to

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018
19-01435-jig   Doc 5-11   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit J -
Mynes Answer and Cross Claims.   Pg 6 of 16

January 18, 2018 was $4,615.

33. On January 26, 2018, AppealTech paid, via direct deposit, Mynes his bi-weekly salary of $4,615, minus withholdings and deductions, for January 8 to January 18, 2018.

34. Shortly after directly depositing his bi-weekly salary for January 8 to January 18, 2018, on January 26, 2018, AppealTech withdrew that amount from Mynes' account.

35. AppealTech did not pay Mynes his salary for January 8 to January 18, 2018.

36. AppealTech did not, in his January 26, 2018 paycheck, make an employee 401(k) contribution of approximately $1,292 to Mynes.

37. Mynes' final paycheck of January 26, 2018 should have included an employee 401(k) plan contribution of approximately $1,292.

38. As of May 24, 2017, AppealTech, unannounced, ceased making the required employer-matching contributions to Mynes' 401(k) plan.

39. The Agreement contains a severability paragraph, stating the remainder of the Agreement will be enforceable if any part of it is "deemed illegal or unenforceable." (Agreement ¶ 16).

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT UNDER NEW YORK COMMON LAW

40. Mynes repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

41. The Agreement, except for unenforceable restrictive covenants, constitutes a valid contract.

42. Mynes performed under the Agreement.

43. AppealTech breached the Contract by failing to pay Mynes his earned commissions based on the percentages set forth in the Agreement.

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM                INDEX NO. 650620/2018
NYSCEF DOC. NO. 40                                                               RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-11   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit J -
                          Mynes Answer and Cross Claims.   Pg 7 of 16

44. AppealTech breached the Contract by failing to pay Mynes his bi-weekly salary.

45. AppealTech's breaches have financially damaged Mynes.

46. AppealTech is liable to Mynes for his damages, prejudgment interest and all other relief the Court affords.

## SECOND CAUSE OF ACTION
### UNPAID COMMISSIONS UNDER THE NEW YORK LABOR LAW

47. Mynes repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

48. AppealTech and Kestan are "employers" within the meaning of N.Y. LAB. LAW §§ 190, 196-d, 615(5), 652 and supporting New York State Department of Labor Regulations and employed Mynes.

49. Mynes' principal duties for AppealTech were the selling of services and his earnings were paid in part on commissions. Mynes is a "commissioned salesperson" within the meaning of the Labor Law. N.Y. Lab. Law § 190.

50. After terminating his employment, AppealTech and Kestan was required to pay Mynes his "wages not later than the regular pay day for the pay period during which the termination occurred . . ." N.Y. Lab. Law § 191(3).

51. Commissions constitute "wages." N.Y. Lab. Law § 190(1).

52. AppealTech and Kestan violated the Labor Law by not paying Mynes his commissions by the first regular payday that followed the termination of his employment. N.Y. Lab. Law § 191(3).

53. AppealTech and Kestan are jointly and severally liable to Mynes for all unpaid commissions, attorneys' fees and expenses, prejudgment interest and liquidated damages. N.Y. Lab. Law § 198.1-a.

## THIRD CAUSE OF ACTION
## UNPAID REGULAR WAGES UNDER NEW YORK LABOR LAW

54. Mynes repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

55. AppealTech and Kestan did not pay Mynes his wages owed semi-monthly or on the designated regular pay days, violating NYLL § 191(1-d).

56. Mynes is entitled to his unpaid wages under NYLL § 1981(1).

57. AppealTech and Kestan have willfully violated the Labor Law by knowingly and intentionally failing to pay Mynes his regular wages.

58. Due to AppealTech and Kestan's violations of the Labor Law, Mynes is entitled to recover from them his unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Mynes respectfully requests that this Court grant the following relief:

1. Accepts jurisdiction over this matter.

2. Impanels and charges a jury with respect to the causes of action.

3. An award of unpaid commissions under the Labor Law that exceeds $26,000;

4. An award of breach of contract damages that exceeds $26,000;

5. An award of unpaid wages that exceeds $2,307.18;

6. An award of liquidated damages, prejudgment and post-judgment interest

7. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40

INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jig   Doc 5-11   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit J -
Mynes Answer and Cross Claims.   Pg 9 of 16

8. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 18, 2018

                              LIPSKY LOWE LLP

                              s/ Douglas B. Lipsky
                              Douglas B. Lipsky
                              630 Third Avenue, Fifth Floor
                              New York, New York 10017-6705
                              212.392.4772
                              doug@lipskylowe.com
                              *Attorneys for Counterclaim Plaintiff Mynes*

<u>VERIFICATION</u>

STATE OF NEW YORK )
) ss:
COUNTY OF NEW YORK )

LAURENCE MYNES, being duly sworn and says:

1. I have read and know the contents of these Counterclaims are true to my knowledge, except as to matters stated to be on information and belief and, with respect to those matters, I believe them to be true.

2. My knowledge as to the factual matters in the Counterclaims is based upon my personal involvement in the underlying facts.

_____
Laurence Mynes

Subscribed to before me this
18 day of September 2018

_____
Notary Public

Elias Melendez
Notary Public, State of New York
No. 24-4799601
Qualified in Kings County
Commission Expires Aug. 31, 20 21

FILED: NEW YORK COUNTY CLERK 09/18/2018 03:36 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jig    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit J -
Mynes Answer and Cross Claims.    Pg 11 of 16

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 02/08/2018 01:38 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018
19-01435-jlg    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit 1 -
Mynes Answer and Cross Claims.    Pg 12 of 16



YOUR APPELLATE PARTNER

EMPLOYMENT AGREEMENT

This Employment Agreement ("**Agreement**") is between **Z&J LLC d/b/a AppealTech** (the "**Company**") and **Laurence Mynes** ("**you**").

1. **Employment.** You will be employed as Senior Appellate Consultant. Your employment will be **at will** and may be terminated at any time by you or the Company, with or without reason, and with or without advance notice.

2. **Draw.** Your annualized draw will be $120,000 ("**Draw**"), paid pro rata, less applicable withholdings, in accordance with the Company's regular payroll practices. Any change to your Draw shall be deemed an automatic amendment to this Agreement.

3. **Commissions.** You will be eligible to earn a "**Commission**" at the rate set forth below on Your Net Sales. "**Your Net Sales**" are the fees less the Expenses (defined below) that the Company receives from jobs due solely to your efforts, which have been completed and fully paid for by the client(s), on a calendar year basis, during the term of your employment.

In the event Your Net Sales in a calendar year are between the following amounts, the corresponding Commission rate shall apply:

| Your Net Sales | Commission rate |
| --- | --- |
| $1 and $700,000 | 10% |
| $700,001 and $1,100,000 | 12% |
| $1,100,001 and $1,300,000 | 13% |
| $1,300,001 and up | 14% |

For illustrative purposes only, to the extent Your Net Sales in a calendar year are $1,400,000, you will be eligible to earn a Commission of $157,999.60 [(700,000*0.10) + (399,999*0.12) + (199,999*0.13) + (99,999*0.14)].

"**Expenses**" are costs that the Company incurs related to the sales that are included in Your Net Sales, including your pro-rated Draw, mailing, courier, and delivery charges to clients, and any discounts or refunds to clients. If Expenses in a given month exceed Your Net Sales, then the excess of the Expenses will be carried over and included in Expenses when calculating subsequent Commissions until such time as Your Net Sales exceed Expenses. To the extent Expenses exceed Your Net Sales when your employment terminates, you will not be required to reimburse the Company for such deficit.

A Commission is calculated and Earned when the Company receives full payment from the applicable clients during the term of your employment. A Commission will be paid, less applicable withholdings,

Page 1 of 5
7 WEST 36TH STREET ● 12TH FLOOR ● NEW YORK, NEW YORK 10018 ● TEL. 212-213-3222 ● FAX 212-213-9702
8 EXCHANGE BLVD. ● SUITE 170 ● ROCHESTER, NEW YORK 14614 ● TEL. 585-802-9837 ● FAX 585-295-9652
www.appealtech.com

FILED: NEW YORK COUNTY CLERK 02/08/2018 01:38 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit 1 -
Mynes Answer and Cross Claims.    Pg 13 of 16

within one month after the month in which it is Earned. You will receive a monthly reconciliation statement reflecting any Commission that you Earned.

4. **Benefits.** You will be eligible to take 15 vacation and 5 sick days per year, pro-rated for partial years, in accordance with the Company's policies. Accrued, unused vacation and sick days do not carry over from year to year (except to the extent provided otherwise by applicable law) and are forfeited upon termination of employment. You also will be eligible for fringe benefits that are made available to employees of the Company generally in accordance with the terms of the applicable plans or policies.

5. **Expenses.** You will be reimbursed for reasonable and necessary business expenses, provided you submit appropriate documentation and receipts within 30 days of incurring the expense.

6. **Equipment.** The Company will provide a mobile device for you to use to perform your job duties. The device will remain the Company's property and your use will be subject to all Company policies. You may choose to use your own device and have the company reimburse your mobile phone charges each month.

7. **Termination.** In the event your employment terminates for any reason, the Company will pay your pro-rated Draw through your last day worked. You will be paid any Commissions that you Earned through your last day worked on the terms set forth in Section 3.

8. **Return of Property.** You agree to return all Company property, including without limitation mobile devices, keys, access cards, passwords, and all Confidential Information (defined in Section 10) and copies thereof, upon termination of employment or at the Company's request at any time.

9. **No Restrictions.** You acknowledge and agree that in offering employment to you, the Company has reasonably relied upon your representations that: (a) you do not have any legal restrictions that would prohibit you from working for the Company or fully performing the duties of a Staff Counsel for the Company; and (b) you will not bring or disclose to the Company, or use in your employment with the Company, any confidential or proprietary information that is the property of any other person or entity, including any such information that you may be restricted from disclosing or using under any agreement with any current or prior employer.

10. **Confidential Information.** You agree not to, directly or indirectly, disclose or use any of the Company's Confidential Information (defined below) during or after your employment, except to the extent necessary to perform your job duties for the Company. **Confidential Information** means any and all proprietary, confidential, or sensitive information, and any and all data, trade secrets, or know-how of the Company, including, but not limited to: client and potential client identities and lists; contact details for, personal data concerning, and needs, preferences, and specifications of clients and potential clients; product/services lists; relationships and arrangements with vendors; marketing strategies and plans; operating strategies and plans; finances; financing strategies and plans; pricing; commissions; relationships, methodologies; processes; research; business plans; alliances; technology; software; databases; source code; planned technology or software improvements or changes; developments; Inventions (defined in Section 11); designs; and any other technical, financial, or business information or plans pertaining to the Company's business. Confidential Information does not include information that is or has become publicly known or made generally available through no wrongful act of you or anyone else who had confidentiality obligations

Page 2 of 5
7 WEST 36TH STREET ● 12TH FLOOR ● NEW YORK, NEW YORK 10018 ● TEL. 212-213-3222 ● FAX 212-213-9702
8 EXCHANGE BLVD. ● SUITE 170 ● ROCHESTER, NEW YORK 14614 ● TEL. 585-802-9837 ● FAX 585-295-9652
www.appealtech.com

12 of 15

FILED: NEW YORK COUNTY CLERK 02/08/2018 01:38 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit 1 -
Mynes Answer and Cross Claims.    Pg 14 of 16

to the Company. Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Sections 10-13 of this Agreement only. You acknowledge and agree that nothing in this Agreement shall preclude you or the Company from providing truthful information: (a) in response to lawful inquiries from governmental, regulatory, or self-regulatory agencies; (b) in response to a valid subpoena, court order or other legal process; (c) in connection with lawful governmental, regulatory, or self-regulatory agency investigations; or (d) to any governmental, regulatory, or self-regulatory agency, including the Securities and Exchange Commission, about a possible violation of law. You further agree to provide the Company with the opportunity to seek a protective order or other relief prior to making any disclosure required by subpoena, court order, legal process, or a governmental, regulatory, or self-regulatory agency investigation.

11. **Intellectual Property.** You will not, directly or indirectly, on your own or by, through or for any other person or entity, claim ownership of any product, technology, automation, computer, or software development efforts undertaken while employed by the Company. You acknowledge and agree that all concepts, designs, work product, improvements, modifications, and finished product are the sole and exclusive property of the Company. You will hold in trust for the sole right and benefit of the Company, and hereby irrevocably and perpetually assign to the Company, or its designee, all of your right, title, and interest, if any, in any and all Inventions (defined below). You acknowledge and agree that the decision whether or not to commercialize any Invention is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other payment will be due to you as a result of the Company's efforts to commercialize any Invention. You further acknowledge that all original works of authorship that are made by you, solely or jointly with others, related in any way to services provided during the course of your employment with the Company that are protectable by copyright are "works made for hire," as that term is defined in the U.S. Copyright Act. You agree not to seek injunctive relief against the Company related to its use of any material on which you have worked. <u>Inventions</u> means any and all inventions, products, processes, original works of authorship, developments, concepts, improvements, modifications, designs, discoveries, techniques, methods, technologies, software, automation, data, databases, media, derivative works, ideas, trademarks, or trade secrets, whether or not patentable or registrable under copyright or other laws, rules or regulations, of the Company, including without limitation those that you may, solely or jointly, conceive, develop, or reduce to practice, or cause to be conceived, developed, or reduced to practice, during or in the scope of your employment.

12. **Non-Competition.** You agree that during your employment and for a period of six (6) months after your employment terminates ("<u>Restricted Period</u>") for any reason, you will not, except as necessary to perform your job duties for the Company, directly or indirectly, on your own behalf or on behalf of any individual or entity, as an employee, owner, joint venturer, consultant, contractor, volunteer, or otherwise: (a) provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of the Company in any geographic area in which the Company does or is actively seeking to do business; (b) solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those that the Company provides or has provided within the six (6) months prior to the termination of your employment; (c) interfere with the Company's relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with the Company; or (d) solicit, hire, or attempt to solicit or hire, any individual who is an employee, consultant, or contractor of the Company or who was an employee, consultant, or contractor of the Company at any time during the six (6) months preceding the termination of this

Page 3 of 5
7 West 36th Street • 12th Floor • New York, New York 10018 • Tel. 212-213-3222 • Fax 212-213-9702
8 Exchange Blvd. • Suite 170 • Rochester, New York 14614 • Tel. 585-802-9837 • Fax 585-295-9652
www.appealtech.com

13 of 15

FILED: NEW YORK COUNTY CLERK 02/08/2018 01:38 PM
NYSCEF DOC. NO. 40
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018
19-01435-jlg    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit 1 -
Mynes Answer and Cross Claims.    Pg 15 of 16

Agreement. "**Client**" means any individual or entity that is, or during the last six (6) months of your employment was, a customer of the Company or a potential customer from whom the Company actively sought business. Notwithstanding the foregoing: (i) you may be a passive owner of up to 5% of the outstanding stock of any publicly traded corporation that competes with the Company; and (ii) the terms of Section 12(a) shall not apply if the Company terminates your employment without Cause (defined below). You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships, and other legitimate business interests of the Company and is reasonable in scope, duration, and geography. "**Cause**" means your: (i) material breach of this Agreement or any other agreement with, or policy of, the Company; (ii) failure or refusal to perform your job duties or follow a lawful directive; (iii) unsatisfactory performance; (iv) fraud, disloyalty, negligence, misconduct, or dishonesty with respect to the Company, a client of the Company, or your job duties; (v) illegal conduct involving dishonesty, fraud or theft; (vi) any act that could reasonably be expected to harm the reputation of the Company or any of its owners; (vii) misappropriation or diversion of any of the Company's assets or business opportunities; (viii) failure to disclose to the Company information material to its business; or (ix) excessive absences or tardiness.

13. **Non-disparagement.** During and after your employment, you agree not to make any statements (verbally, in writing, or electronically) that are disparaging, untrue, or that could reasonably be expected to impair the business, goodwill, or reputation of the Company or its owners, officers, or employees.

14. **Law.** This Agreement shall be governed by New York law without regard to choice of law principles. You hereby consent to the exclusive jurisdiction of the state or federal courts located in New York County with respect to any dispute arising hereunder. The prevailing party in any dispute arising out of this Agreement shall be reimbursed by the other party for all reasonable attorneys' fees and costs.

15. **Injunctive Relief.** You acknowledge and agree that if you breach, or attempt or threaten to breach, any part of Sections 10-13, the Company shall be entitled, in addition to any other right or remedy it may have, to an order enjoining or restraining you from any breach, or attempted or threatened breach, without having to post a bond or other security or prove damages and you hereby consent to the issuance of such an order. If you violate any of the provisions of Section 12, then in addition to all other remedies available to Company, the duration of the covenants shall be extended for the period of time when the violation began until you permanently cease such violation. Nothing set forth in this Section shall prevent the Company from seeking money damages or other relief instead of or in addition to injunctive relief.

16. **Miscellaneous.** The parties waive any rule of construction that would require an interpretation against the drafter. Headings are for convenience only. If either party waives or fails to dispute a breach of this Agreement, such party will not be deemed to have waived any other breach of this Agreement. If any provision of this Agreement is deemed illegal or unenforceable, that provision shall be limited to the extent required to be enforced, and, if necessary, severed, and all other provisions will remain effective. The obligations herein, which, by their terms, extend beyond termination of this Agreement and/or your employment, and all provisions necessary to enforce such obligations, shall survive such termination. This Agreement states the entire agreement and

Page 4 of 5
7 WEST 36TH STREET ● 12TH FLOOR ● NEW YORK, NEW YORK 10018 ● TEL. 212-213-3222 ● FAX 212-213-9702
8 EXCHANGE BLVD. ● SUITE 170 ● ROCHESTER, NEW YORK 14614 ● TEL. 585-802-9837 ● FAX 585-295-9652
www.appealtech.com

14 of 15

FILED: NEW YORK COUNTY CLERK 02/08/2018 01:38 PM
NYSCEF DOC. NO. 40

19-01435-jig    Doc 5-11    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit 1 -
Mynes Answer and Cross Claims.    Pg 16 of 16

INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

supersedes all prior agreements, statements, and negotiations with respect to the subject matter hereof. This Agreement may only be modified in a writing signed by both parties.

17. **Acknowledgements.** You acknowledge and agree that: (a) you understand all of the terms and conditions of this Agreement, including the restrictions in Section 12; (b) you had sufficient opportunity to consult legal counsel regarding this Agreement; (c) the benefits you are receiving are sufficient consideration for the promises you are making in this Agreement; and (d) you are freely and voluntarily entering into this Agreement and agreeing to be bound by all of its terms.

ACCEPTED AND AGREED:

Laurence Mynes

[signature]

Date: 9/16/16

Z&J LLC d/b/a AppealTech

By: [signature]

Date: 9/13/16

Page 5 of 5
7 WEST 36TH STREET ● 12TH FLOOR ● NEW YORK, NEW YORK 10018 ● TEL. 212-213-3222 ● FAX 212-213-9702
8 EXCHANGE BLVD. ● SUITE 170 ● ROCHESTER, NEW YORK 14614 ● TEL. 585-802-9837 ● FAX 585-295-9652
www.appealtech.com

15 of 15