# Exhibit M

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Z & J LLC d/b/a APPEALTECH,<br><br>         Plaintiff,<br><br>         v.<br><br>LAURENCE MYNES and COUNSEL PRESS, INC., GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATION, GLADSTONE ADMINISTRATION, LLC and JONATHAN WALLACH,<br><br>         Defendants. | NYSCEF CASE<br><br>Hon. Doris Ling-Cohan, J.S.C.<br><br>No. 650620/2018 |

## AFFIRMATION OF RYAN E. CRONIN IN SUPPORT OF DEFENDANT COUNSEL PRESS INC.'S MOTION TO DISMISS AMENDED COMPLAINT

**RYAN E. CRONIN**, an attorney duly admitted to practice in the courts of the

State of New York, affirms under the penalties of perjury as follows:

1.     I am of counsel at the law firm of Blank Rome LLP, attorneys for

Defendants Counsel Press, Inc., Gladstone Investment Corporation, Gladstone

Management Corporations, and Gladstone Administration, LLC (together, "Movants")

and submit this Affirmation in support of Movants' Motion to Dismiss Amended

Complaint under C.P.L.R. § 3211.

2.     Attached hereto as Exhibit A is a copy of the Amended Summons and

Complaint dated April 6, 2018 (Dkt. No. 36).

3.     Attached hereto as Exhibit B is copy of the Affidavit of Michael Kestan

dated February 7, 2018 ("Kestan Affidavit") (Dkt. No. 6), without exhibits, which was

filed by Plaintiff on February 8, 2018.

4.      Attached hereto as Exhibit C is copy of the "Employment Agreement" between Plaintiff Z&J LLC d/b/a AppealTech and Defendant Laurence Mynes dated November 16, 2016 (Dkt. No. 12) which was attached as Exhibit 6 to the Kestan Affidavit.

5.      Attached hereto as Exhibit D is copy of the so-ordered Stipulation dated February 9, 2018 (Dkt. No. 22).

6.      Attached as Exhibit E are copies of the cover pages to publicly filed appeal briefs which contain Plaintiff's unique printer's mark.

7.      Attached as Exhibit F are copies of the cover pages to publicly filed appeal briefs which contains Defendant Counsel Press Inc.'s unique printer's mark.

8.      Attached hereto as Exhibit G is a copy of the original Summons and Complaint dated February 7, 2018 (Dkt. No. 1).

Dated:  New York, New York
        September 18, 2018

_____
        RYAN E. CRONIN

151526.00601/112530753v.1

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x
                        :

Z & J LLC d/b/a APPEALTECH

                        :   Index No. 650620/2018

                      Plaintiff,

                        :

         -against-              **SUPPLEMENTAL SUMMONS**

                        :

LAURENCE MYNES, COUNSEL PRESS, INC.,
GLADSTONE INVESTMENT CORPORATION,
GLADSTONE MANAGEMENT CORPORATION,    :
GLADSTONE ADMINISTRATION, LLC and
JONATHAN WALLACH,

                   Defendants.

------------------------------------------------------------ x

TO THE ABOVE-NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the verified amended complaint in this action and to serve a copy of your your answer on the plaintiff's attorneys within 20 days after the service of this supplemental summons, exclusive of the day of service (or within 30 days after the service is complete if the supplemental summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

      The plaintiff designates New York County as the place of trial pursuant to CPLR §§ 501 and 503 and based on the residence of the plaintiff and location of the facts underlying the verified amended complaint.

Dated: New York, New York
       April 6, 2018

                             MICHELMAN & ROBINSON, LLP

                             By: /s/: Christopher A. D'Angelo
                                 Christopher A. D'Angelo
                                 Kathryn T. Lundy
                                 Janeen R. Hall
                          800 Third Avenue, 24th Floor
                          New York, New York 10022
                          (212) 730-7700

FILED: NEW YORK COUNTY CLERK 04/18/2018 05:48 PM     INDEX NO. 650620/2018
NYSCEF DOC. NO. 49     Exhibit M -     RECEIVED NYSCEF: 09/18/2018
RECEIVED NYSCEF: 04/18/2018

Defendants' Addresses:

Laurence Mynes
21 Stall Lane
Lodi, New Jersey 07644

Counsel Press Inc.
Corporate Service Company (via the New York Secretary of State)
80 State Street
Albany, New York 12207-2543

Gladstone Investment Corporation
245 Park Avenue, 39th Floor
New York, New York 10167

Gladstone Management Corporation
245 Park Avenue, 39th Floor
New York, New York 10167

Gladstone Administration, LLC
245 Park Avenue, 39th Floor
New York, New York 10167

Jonathan Wallach
112 W. 72nd Street, Apt. 6G
New York, New York 10023

Exhibit M -
RECEIVED NYSCEF: 09/18/2018
RECEIVED NYSCEF: 04/18/2018
NYSCEF DOC. NO. 36

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------- x
                                                :

Z & J LLC d/b/a APPEALTECH

                        :    Index No. 650620/2018

                         Plaintiff,

                        :

        -against-                   :    **VERIFIED AMENDED**
                                                    **COMPLAINT**

LAURENCE MYNES, COUNSEL PRESS, INC.,
GLADSTONE INVESTMENT CORPORATION,     :
GLADSTONE MANAGEMENT CORPORATIONS,
GLADSTONE ADMINISTRATION, LLC and       :
JONATHAN WALLACH,

                        Defendants.

-------------------------------------------------------------- x

        Plaintiff Z&J LLC d/b/a AppealTech ("Plaintiff" or "AppealTech"), by and through its

attorneys Michelman & Robinson, LLP, for its Verified Amended Complaint ("Complaint") in the

above-captioned action against Defendants Laurence Mynes ("Mynes"), Counsel Press Inc.

("Counsel Press"), Gladstone Investment Corporation ("Gladstone Investment"), Gladstone

Management Corporation ("Gladstone Management") and Gladstone Administration, LLC

("Gladstone Administration") (Gladstone Investment, Gladstone Management and Gladstone

Administration collectively referred to herein as the "Gladstone Entities") and Jonathan Wallach

("Wallach") (Mynes, Counsel Press, the Gladstone Entities and Wallach are collectively referred

to herein as "Defendants"), allege as follows:

### NATURE OF THE ACTION

       1.      This action arises from Defendants' malicious attempt to destroy AppealTech as a

reputable, viable competitor in the appellate service provider and printer industry, as evidenced by

a statement from the Chief Executive Officer of Counsel Press that targeting and hiring Plaintiffs'

key personnel would result in "one less competitor" in the market.

19-01435-jlg   Doc 5-14   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.   Pg 8 of 61

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 50                                                                          RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 9 of 61

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
NYSCEF DOC. NO. 60

INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 10 of 61

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------- x
                    :

Z & J LLC d/b/a APPEALTECH

                    :   Index No. 650620/2018

                Plaintiff,

                    :

      -against-          :   **AFFIDAVIT OF MICHAEL**
                       **KESTAN IN SUPPORT**

LAURENCE MYNES and COUNSEL PRESS INC.,

                    :

              Defendants.   :

----------------------------------------------------------------- x

STATE OF NEW YORK   )
                      ) s.s:
COUNTY OF NEW YORK  )

     I, **MICHAEL KESTAN**, being duly sworn, deposes and says:

     1.     I am the President and owner of Plaintiff Z&J LLC d/b/a AppealTech ("AppealTech"). I submit this Affidavit in Support of AppealTech's application, by Order to Show Cause, for a preliminary injunction and temporary restraining order, pursuant to §§ 6301 and 6313 of the Civil Practice Law and Rules, against Defendants Laurence Mynes ("Mynes") and Counsel Press Inc. ("Counsel Press") (Mynes and Counsel Press collectively referred to herein as the "Defendants") arising from the Employment Agreement between Mynes and AppealTech dated November 16, 2016 (the "Employment Agreement"). I am familiar with the facts and circumstances set forth below.

     2.     As set forth more fully below, Counsel Press embarked on a scheme to eliminate AppealTech as a competitor approximately 18 to 24 months ago. The motivation for this predatory conduct probably arises out of the highly leveraged purchase price paid by Counsel Press's owner, Gladstone Investment Corporation. It is evidenced by the unfair competitive practices that have

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
NYSCEF DOC. NO. 60
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018
19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M
Cronin Affirm to Dismiss Amend. Complaint.    Pg 11 of 61

occurred since in or about July 2016, if not sooner, with the hiring of multiple, long-term AppealTech Appellate Consultants, paralegals and production staff as well as the attempted hiring of sixty-five (65%) of all AppealTech employees. It is further evidenced by the successful efforts of Counsel Press and those departing employees to misappropriate AppealTech's confidential and proprietary information, and the statements of Scott Thompson, CEO and President of Counsel Press, who told Counsel Press employees, in sum or substance, that their goal was to drive AppealTech out of business. *See* Affidavit of Jacquelyn L. Mouquin dated February 6, 2018 ("Mouquin Aff.") at ¶ 5.

**The Parties**

3.    AppealTech is a comprehensive appellate services provider that has been in operation for approximately twenty (20) years. It maintains offices in New York City, Rochester, New York and Los Angeles, California, and also services surrounding areas, including New Jersey.

4.    AppealTech is retained during the appellate process to guide attorneys and law firms through appellate court procedures in various jurisdictions, including New York, New Jersey and California. AppealTech employees advise clients on the technical and procedural aspects of appellate practice, including court rules specific to each appellate jurisdiction. AppealTech also functions as an appellate printer and as an electronic filing service. A list of appellate services offered by AppealTech is annexed hereto as Exhibit 1.

5.    AppealTech's goodwill and the confidential information it shares with its employees is necessary to cultivate its client relationships and tantamount to the company's success.

6.    Indeed, a critical component of the appellate practice service industry is reputation and the goodwill it generates with its customers. For example, a lawyer who has a positive and

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 60
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg   Doc 5-14   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.   Pg 12 of 61

successful experience with an AppealTech consultant will likely utilize the company's services for all appellate filings in the future. The process of cultivating such relationships requires trust and, ultimately, generates loyalty to the company.

7.      Given its commitment to excellent customer service and support, AppealTech has consistently been voted by the New York Law Journal and the Corporate Counsel as one of the top appellate printers and appellate service providers in the industry. Excerpts from AppealTech's website are annexed hereto as Exhibit 2.

8.      Defendant Counsel Press Inc. ("Counsel Press") is also an appellate service provider and national competitor of AppealTech. It is headquartered in New York City. Like AppealTech, Counsel Press focuses on the preparation of appellate documents, printing services, electronic filing services, and advises law firms and attorneys on procedural court rules by jurisdiction. Excerpts from Counsel Press's website are annexed hereto as Exhibit 3.

9.      Defendant Laurence Mynes ("Mynes") was hired by AppealTech as a Senior Appellate Consultant in January 2006, following a long career in the marketing and advertising industry. A copy of Mynes' publicly available LinkedIn page is annexed hereto as Exhibit 4.

10.      Although most of AppealTech's consultants are licensed attorneys, Mynes is not. Indeed, Mynes arrived at AppealTech as a blank slate, with no legal experience and no experience in the industry.

11.      Accordingly, Mynes learned the appellate services industry solely from his employment with AppealTech.

12.      Prior to joining AppealTech, Mynes did not maintain any client or customer relationships relating to the appellate services industry.

3

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
NYSCEF DOC. NO. 60
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 13 of 61

13.     As a Senior Appellate Consultant, Mynes assisted AppealTech's clients in perfecting thousands of appeals in state and federal appellate courts nationwide. He specialized in New York State Appellate Divisions, the New York State Court of Appeals, and the Second Circuit Court of Appeals.

14.     AppealTech trained and educated Mynes over the course of twelve (12) years, developing and maintaining goodwill with AppealTech's clients in the process. Indeed, during Myne's employment with AppealTech he had access to and dealt with most clients of AppealTech's client, including those that were not necessarily his assigned clients.

15.     Through the resources and training provided to him by AppealTech, Mynes' developed significant knowledge and skill in the appellate services industry, working closely with attorneys and managing clerks at law firms to generate sales revenue for the company. With AppealTech's help, Mynes was successful, increasing his sales significantly from 2011 through 2017 as he developed client relationships and acquired a deeper and more complete understanding and knowledge of appellate procedure.

16.     All of Mynes' present customer relationships were cultivated by AppealTech's contacts, resources and relationships and, as such, are AppealTech's clients, as defined under the express terms of the Employment Agreement.

**Counsel Press Solicits AppealTech Employees in a Calculated Scheme to Undermine AppealTech's Sales and Acquire Confidential Information Through Unlawful Means**

17.     On March 31, 2015, Gladstone Investment Corporation ("Gladstone") announced its acquisition of Counsel Press by investing an aggregate of $32.5 million in a combination of equity and debt into the company. A copy of Gladstone's press release is annexed hereto as Exhibit 5.

4

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 60

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M

Cronin Affirm to Dismiss Amend. Complaint.    Pg 14 of 61

RECEIVED NYSCEF: 02/08/2018

18.    Upon information and belief, due to the financial stress caused by the high acquisition cost, Counsel Press sought to increase its overall sales and performance.

19.    To reach this goal, in or around the Summer of 2016, Counsel Press initiated a directed and concerted effort to poach AppealTech employees and obtain AppealTech's confidential and proprietary information to undermine its operation and standing in the industry.

20.    Upon information and belief, Counsel Press embarked on this course of conduct with the goal of removing AppealTech as a competitor. *See* Mouquin Aff. at ¶ 5.

21.    In other words, Counsel Press intended to put AppealTech out of business. *Id.*

22.    Thus, on or before August 4, 2016, Jonathan Wallach ("Wallach"), a Senior Appellate Consultant for AppealTech, accepted an offer of employment from Counsel Press. Upon information and belief, that same day, Wallach sent Counsel Press, a file detailing AppealTech's confidential client information. *See* Mouquin Aff. at ¶ 6.

23.    Shortly thereafter, Counsel Press hired two other senior appellate consultants employed by AppealTech.

24.    On August 19, 2016, Wallach resigned from AppealTech and, within an hour, Counsel Press announced his employment.

25.    Similarly, Debra Rudoltz ("Rudoltz") and Tina Fisher ("Fisher"), also Appellate Consultants of AppealTech, resigned from AppealTech in August 2016 and immediately began working for Counsel Press.

26.    Upon information and belief, prior to Fisher's resignation, she contacted Scott Thompson, CEO and President of Counsel Press, to advise him she was gathering AppealTech's confidential information.

5

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO.: 60
19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 15 of 61
RECEIVED NYSCEF: 02/08/2018

27.    Upon information and belief, Counsel Press also attempted to poach approximately sixty-five percent (65%) of AppealTech's employees. Counsel Press was successful in hiring seven (7) employees since in or about the August/September 2016 timeframe.

**Mynes November 16, 2016 Employment Agreement**

28.    Given Counsel Press's blatant effort to raid AppealTech of its talent and steal confidential and proprietary information, AppealTech immediately approached Mynes, among other key AppealTech employees, to negotiate the terms of his employment and ensure that AppealTech's confidential and proprietary information was properly safeguarded from its competitor.

29.    In consideration of the proposed restrictive "non-competition" covenant, AppealTech offered Mynes a significant increase in compensation through a draw, which was increased from $80,000 to $120,000 and a commission on net sales.   AppealTech offered to increase his commission by directing certain house accounts to him (thereby increasing his overall sales and his percent on commission).   Mynes accepted the offer (and his sales almost doubled because of this new structure).

30.    On or about November 16, 2016, Mynes signed the Employment Agreement which contained a restrictive "non-competition" covenant and a confidentiality clause.  A copy of Mynes' Employment Agreement is annexed hereto as Exhibit 6.

31.    Paragraph 10 of the Employment Agreement provides, in relevant part, as follows:

> 10.   **Confidential Information.**   You agree not to, directly or indirectly, disclose or use any of the Company's Confidential Information (defined below) during or after your employment, except to the extent necessary to perform your job duties ....
> Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Sections 10-13 of this Agreement only.

6

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 60
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 16 of 61

32.    Paragraph 12 of the Employment Agreement provides, in relevant part, as

follows:

> 12. **Non-Competition.** You agree that during your employment
> and for a period of six (6) months after your employment terminates
> ("**Restricted Period**") for any reason, you will not, except as
> necessary to perform your job duties for the Company, directly or
> indirectly, on your own behalf or on behalf of any individual or
> entity, as an employee, owner, joint venturer, consultant, contractor,
> volunteer, or otherwise: (a) provide services for any individual,
> entity, or other third party that is engaged or seeks to engage in the
> same or similar business as that of the Company in any geographic
> area in which the Company does or is actively seeking to do
> business; (b) solicit or accept the business of any Client (defined
> below), to the extent such business involves services that are the
> same or similar to those that the Company provides or has provided
> within six (6) months prior to the termination of your employment;
> (c) interfere with the Company's relationship with any Client or
> induce or attempt to induce any Client to change the nature, terms,
> or amount of business it conducts with the Company; or (d) solicit,
> hire, or attempt to solicit or hire, any individual who is an employee,
> consultant, or contractor of the company or who was an employee,
> consultant, or contractor of the Company at any time during the six
> (6) months preceding the termination of this Agreement .... You
> acknowledge and agree that each restriction contained in this
> Section is necessary to protect the Confidential Information,
> goodwill, relationships, and other legitimate business interests of the
> Company and is reasonable in scope, duration, and geography.

33.    Paragraph 15 of the Employment Agreement provides, in relevant part, as

follows:

> 15. **Injunctive Relief.** You acknowledge and agree that if you
> breach, or attempt or threaten to breach, any part of Sections 10-13,
> the Company shall be entitled, in addition to any other right or
> remedy it may have, to an order enjoining or restraining you from
> any breach, or attempted or threatened breach, without having to
> post a bond or other security or prove damages and you hereby
> consent to the issuance of such an order .... If you violate any of the
> provisions of Section 12 ... the duration of the covenants shall be
> extended for the period of time when the violation began until you
> permanently cease such violation. Nothing set forth in this Section
> shall prevent the Company from seeking money damages or other
> relief instead of or in addition to injunctive relief.

7

**Mynes' Breach of the Employment Agreement**

34.    Upon information and belief, in or about June 2017, Mynes began to communicate with Counsel Press and provide it with AppealTech's client and business information, in blatant violation of Paragraphs 10 and 12 of the Employment Agreement, in furtherance of a calculated scheme to use this information to his competitive advantage (as well as the competitive advantage of Counsel Press) when he defected to Counsel Press.

35.    Specifically, like Wallach, Mynes began emailing AppealTech's confidential information to his personal email address including, but not limited to, AppealTech's 2017 sales budget, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related goodwill. Copies of these emails and screenshots are collectively annexed hereto as Exhibit 7.

36.    Our internal investigation also reveals that Mynes uploaded confidential and client information from his company-issued cell phone to his personal cloud account. Our conclusion is based on the following information.

37.    In order to protect and preserve sensitive documents, confidential information and client relationships, Mynes' company-issued cell phone should have been registered with an AppealTech Apple ID, which would cause the data on his company-issued iPhone to be uploaded to a cloud account owned by AppealTech. Upon Mynes' resignation from the company, AppealTech learned that Mynes had not been using the AppealTech Apple ID. Instead, Mynes had been using his personal Apple ID number instead of the company's ID, meaning that his company-issued cell phone had the capability of syncing AppealTech's data to Mynes' *personal* cloud account.

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
NYSCEF DOC. NO. 60

INDEX NO. 650620/2018

RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 18 of 61

38.    By utilizing his own Apple ID, Mynes has caused AppealTech's confidential and proprietary information to be uploaded to his personal cloud account, and retained it following his resignation, in direct breach of the Employment Agreement.  Notably, when Mynes returned the company-issued iPhone at the time of his resignation, all content on the phone had been erased.

39.    The conclusion follows that Mynes began storing AppealTech's confidential and proprietary information for the purpose of using this sensitive data and goodwill when he joined AppealTech's competitor, Counsel Press.

40.    Indeed, we have learned that between September 2017 and December 2017, Mynes engaged in conversations with Counsel Press's head of sales.

41.    On January 17, 2018, Mynes abruptly announced his resignation from AppealTech. He refused to disclose where he would be employed or whether he had found other employment.

42.    Shortly thereafter, on or about January 29, 2018, Counsel Press announced that Mynes had joined the company as a Senior Appellate Consultant in their New York City office, in direct breach of paragraph 12 of the Employment Agreement.

43.    By January 31, 2018, Counsel Press listed Mynes as an employee of Counsel Press on its website, in their New York office, adding his picture to the site on February 1, 2018.

44.    Notably, the title Mynes accepted at Counsel Press, Senior Appellate Consultant, is identical to the title he held at AppealTech.  A copy of Mynes' Counsel Press biography page is annexed hereto as Exhibit 8.

45.    On or about January 19, 2018, AppealTech sent Mynes a demand letter to comply with the restrictive "non-competition" covenant and confidentiality provision contained within the Employment Agreement.  Mynes never responded.  A copy of the letter is annexed hereto as Exhibit 9.

9

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 60
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M
Cronin Affirm to Dismiss Amend. Complaint.    Pg 19 of 61

46.    On or about January 29, 2018, AppealTech sent Counsel Press a cease and desist letter concerning its deliberate effort to poach AppealTech's employees and breach of the restrictive covenant contained in Mynes' Employment Agreement. A copy of the letter is annexed hereto as Exhibit 10.

47.    On February 2, 2018, Counsel Press, through its counsel, Blank Rome, responded to the January 29, 2018 correspondence advising it will not comply with restrictive covenant, refusing to remove Mynes from its website and maintaining he is "an employee of Counsel Press." A copy of the February 2, 2018 correspondence is annexed hereto as Exhibit 11.

48.    As a result of the foregoing, AppealTech has been severely damaged. Specifically, following the departure of the foregoing key employees, AppealTech's profit has significantly decreased.

49.    Indeed, Counsel Press' ongoing scheme to raid AppealTech of key employees and utilize the Company's confidential information and goodwill is a transparent effort to put AppealTech out of business.

50.    If Mynes' restrictive covenant is not enforced, it is unquestionable that AppealTech will suffer irreparable harm. The trust, confidence and loyalty of its customers and its key employees are quickly eroding.

51.    The necessary six-month restraint of Mynes will provide AppealTech an opportunity to restructure its team and repair its relationships with its customers.

52.    If Mynes' restrictive covenant is not enforced, AppealTech will be in serious risk of injury to its reputation and goodwill.

53.    Given the foregoing, the enforcement of the restrictive "non-compete" covenant in Mynes' Employment Agreement is critical to protect the legitimate interests of AppealTech.

10

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM

NYSCEF DOC. NO. 60

INDEX NO. 650620/2018

RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 20 of 61

54.    For all the reasons set forth above and in the accompanying Memorandum of Law,

AppealTech's application should be granted, in its entirety.


Dated: New York, New York
        February ___, 2018

_____
MICHAEL KESTAN

SONJIA R. RICHARDS
Notary Public, State of New York
No. 83-4998375
Qualified in Bronx County
Commission Expires June 29, 2018

Subscribed to before me this 7th day of

_____, 2018
Fcbruary

_____
NOTARY PUBLIC

11

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 51
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-14   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.   Pg 21 of 61

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM    INDEX NO. 650620/2018
NYSCEF DOC. NO. 12                                 RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 22 of 61



## YOUR APPELLATE PARTNER

### EMPLOYMENT AGREEMENT

This Employment Agreement ("**Agreement**") is between **Z&J LLC d/b/a AppealTech** (the "**Company**") and **Laurence Mynes** ("**you**").

1. **Employment**. You will be employed as Senior Appellate Consultant. Your employment will be **at will** and may be terminated at any time by you or the Company, with or without reason, and with or without advance notice.

2. **Draw**. Your annualized draw will be $120,000 ("**Draw**"), paid pro rata, less applicable withholdings, in accordance with the Company's regular payroll practices. Any change to your Draw shall be deemed an automatic amendment to this Agreement.

3. **Commissions**. You will be eligible to earn a "**Commission**" at the rate set forth below on Your Net Sales. "**Your Net Sales**" are the fees less the Expenses (defined below) that the Company receives from jobs due solely to your efforts, which have been completed and fully paid for by the client(s), on a calendar year basis, during the term of your employment.

In the event Your Net Sales in a calendar year are between the following amounts, the corresponding Commission rate shall apply:

| Your Net Sales | Commission rate |
|---|---|
| $1 and $700,000 | 10% |
| $700,001 and $1,100,000 | 12% |
| $1,100,001 and $1,300,000 | 13% |
| $1,300,001 and up | 14% |

For illustrative purposes only, to the extent Your Net Sales in a calendar year are $1,400,000, you will be eligible to earn a Commission of $157,999.60 [(700,000*0.10) + (399,999*0.12) + (199,999*0.13) + (99,999*0.14)].

"**Expenses**" are costs that the Company incurs related to the sales that are included in Your Net Sales, including your pro-rated Draw, mailing, courier, and delivery charges to clients, and any discounts or refunds to clients. If Expenses in a given month exceed Your Net Sales, then the excess of the Expenses will be carried over and included in Expenses when calculating subsequent Commissions until such time as Your Net Sales exceed Expenses. To the extent Expenses exceed Your Net Sales when your employment terminates, you will not be required to reimburse the Company for such deficit.

A Commission is calculated and Earned when the Company receives full payment from the applicable clients during the term of your employment. A Commission will be paid, less applicable withholdings,

within one month after the month in which it is Earned. You will receive a monthly reconciliation statement reflecting any Commission that you Earned.

4. **Benefits.** You will be eligible to take 15 vacation and 5 sick days per year, pro-rated for partial years, in accordance with the Company's policies. Accrued, unused vacation and sick days do not carry over from year to year (except to the extent provided otherwise by applicable law) and are forfeited upon termination of employment. You also will be eligible for fringe benefits that are made available to employees of the Company generally in accordance with the terms of the applicable plans or policies.

5. **Expenses.** You will be reimbursed for reasonable and necessary business expenses, provided you submit appropriate documentation and receipts within 30 days of incurring the expense.

6. **Equipment.** The Company will provide a mobile device for you to use to perform your job duties. The device will remain the Company's property and your use will be subject to all Company policies. You may choose to use your own device and have the company reimburse your mobile phone charges each month.

7. **Termination.** In the event your employment terminates for any reason, the Company will pay your pro-rated Draw through your last day worked. You will be paid any Commissions that you Earned through your last day worked on the terms set forth in Section 3.

8. **Return of Property.** You agree to return all Company property, including without limitation mobile devices, keys, access cards, passwords, and all Confidential Information (defined in Section 10) and copies thereof, upon termination of employment or at the Company's request at any time.

9. **No Restrictions.** You acknowledge and agree that in offering employment to you, the Company has reasonably relied upon your representations that: (a) you do not have any legal restrictions that would prohibit you from working for the Company or fully performing the duties of a Staff Counsel for the Company; and (b) you will not bring or disclose to the Company, or use in your employment with the Company, any confidential or proprietary information that is the property of any other person or entity, including any such information that you may be restricted from disclosing or using under any agreement with any current or prior employer.

10. **Confidential Information.** You agree not to, directly or indirectly, disclose or use any of the Company's Confidential Information (defined below) during or after your employment, except to the extent necessary to perform your job duties for the Company. **Confidential Information** means any and all proprietary, confidential, or sensitive information, and any and all data, trade secrets, or know-how of the Company, including, but not limited to: client and potential client identities and lists; contact details for, personal data concerning, and needs, preferences, and specifications of clients and potential clients; product/services lists; relationships and arrangements with vendors; marketing strategies and plans; operating strategies and plans; finances; financing strategies and plans; pricing; commissions; relationships, methodologies; processes; research; business plans; alliances; technology; software; databases; source code; planned technology or software improvements or changes; developments; Inventions (defined in Section 11); designs; and any other technical, financial, or business information or plans pertaining to the Company's business. Confidential Information does not include information that is or has become publicly known or made generally available through no wrongful act of you or anyone else who had confidentiality obligations

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM          INDEX NO. 650620/2018

NYSCEF DOC. NO. 12     19-01435-jlg   Doc 5-14   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit M -
                                                                  RECEIVED NYSCEF: 02/08/2018

Cronin Affirm to Dismiss Amend. Complaint.   Pg 24 of 61

to the Company. Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Sections 10-13 of this Agreement only. You acknowledge and agree that nothing in this Agreement shall preclude you or the Company from providing truthful information: (a) in response to lawful inquiries from governmental, regulatory, or self-regulatory agencies; (b) in response to a valid subpoena, court order or other legal process; (c) in connection with lawful governmental, regulatory, or self-regulatory agency investigations; or (d) to any governmental, regulatory, or self-regulatory agency, including the Securities and Exchange Commission, about a possible violation of law. You further agree to provide the Company with the opportunity to seek a protective order or other relief prior to making any disclosure required by subpoena, court order, legal process, or a governmental, regulatory, or self-regulatory agency investigation.

11. **Intellectual Property.** You will not, directly or indirectly, on your own or by, through or for any other person or entity, claim ownership of any product, technology, automation, computer, or software development efforts undertaken while employed by the Company. You acknowledge and agree that all concepts, designs, work product, improvements, modifications, and finished product are the sole and exclusive property of the Company. You will hold in trust for the sole right and benefit of the Company, and hereby irrevocably and perpetually assign to the Company, or its designee, all of your right, title, and interest, if any, in any and all Inventions (defined below). You acknowledge and agree that the decision whether or not to commercialize any Invention is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other payment will be due to you as a result of the Company's efforts to commercialize any Invention. You further acknowledge that all original works of authorship that are made by you, solely or jointly with others, related in any way to services provided during the course of your employment with the Company that are protectable by copyright are "works made for hire," as that term is defined in the U.S. Copyright Act. You agree not to seek injunctive relief against the Company related to its use of any material on which you have worked.  **Inventions** means any and all inventions, products, processes, original works of authorship, developments, concepts, improvements, modifications, designs, discoveries, techniques, methods, technologies, software, automation, data, databases, media, derivative works, ideas, trademarks, or trade secrets, whether or not patentable or registrable under copyright or other laws, rules or regulations, of the Company, including without limitation those that you may, solely or jointly, conceive, develop, or reduce to practice, or cause to be conceived, developed, or reduced to practice, during or in the scope of your employment.

12. **Non-Competition.** You agree that during your employment and for a period of six (6) months after your employment terminates ("**Restricted Period**") for any reason, you will not, except as necessary to perform your job duties for the Company, directly or indirectly, on your own behalf or on behalf of any individual or entity, as an employee, owner, joint venturer, consultant, contractor, volunteer, or otherwise: (a) provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of the Company in any geographic area in which the Company does or is actively seeking to do business; (b) solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those that the Company provides or has provided within the six (6) months prior to the termination of your employment; (c) interfere with the Company's relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with the Company; or (d) solicit, hire, or attempt to solicit or hire, any individual who is an employee, consultant, or contractor of the Company or who was an employee, consultant, or contractor of the Company at any time during the six (6) months preceding the termination of this

Agreement. "**Client**" means any individual or entity that is, or during the last six (6) months of your employment was, a customer of the Company or a potential customer from whom the Company actively sought business. Notwithstanding the foregoing: (i) you may be a passive owner of up to 5% of the outstanding stock of any publicly traded corporation that competes with the Company; and (ii) the terms of Section 12(a) shall not apply if the Company terminates your employment without Cause (defined below). You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships, and other legitimate business interests of the Company and is reasonable in scope, duration, and geography. "**Cause**" means your: (i) material breach of this Agreement or any other agreement with, or policy of, the Company; (ii) failure or refusal to perform your job duties or follow a lawful directive; (iii) unsatisfactory performance; (iv) fraud, disloyalty, negligence, misconduct, or dishonesty with respect to the Company, a client of the Company, or your job duties; (v) illegal conduct involving dishonesty, fraud or theft; (vi) any act that could reasonably be expected to harm the reputation of the Company or any of its owners; (vii) misappropriation or diversion of any of the Company's assets or business opportunities; (viii) failure to disclose to the Company information material to its business; or (ix) excessive absences or tardiness.

13. **Non-disparagement.** During and after your employment, you agree not to make any statements (verbally, in writing, or electronically) that are disparaging, untrue, or that could reasonably be expected to impair the business, goodwill, or reputation of the Company or its owners, officers, or employees.

14. **Law.** This Agreement shall be governed by New York law without regard to choice of law principles. You hereby consent to the exclusive jurisdiction of the state or federal courts located in New York County with respect to any dispute arising hereunder. The prevailing party in any dispute arising out of this Agreement shall be reimbursed by the other party for all reasonable attorneys' fees and costs.

15. **Injunctive Relief.** You acknowledge and agree that if you breach, or attempt or threaten to breach, any part of Sections 10-13, the Company shall be entitled, in addition to any other right or remedy it may have, to an order enjoining or restraining you from any breach, or attempted or threatened breach, without having to post a bond or other security or prove damages and you hereby consent to the issuance of such an order. If you violate any of the provisions of Section 12, then in addition to all other remedies available to Company, the duration of the covenants shall be extended for the period of time when the violation began until you permanently cease such violation. Nothing set forth in this Section shall prevent the Company from seeking money damages or other relief instead of or in addition to injunctive relief.

16. **Miscellaneous.** The parties waive any rule of construction that would require an interpretation against the drafter. Headings are for convenience only. If either party waives or fails to dispute a breach of this Agreement, such party will not be deemed to have waived any other breach of this Agreement. If any provision of this Agreement is deemed illegal or unenforceable, that provision shall be limited to the extent required to be enforced, and, if necessary, severed, and all other provisions will remain effective. The obligations herein, which, by their terms, extend beyond termination of this Agreement and/or your employment, and all provisions necessary to enforce such obligations, shall survive such termination. This Agreement states the entire agreement and

Page 4 of 5

7 West 36th Street ● 12th Floor ● New York, New York 10018 ● Tel. 212-213-3222 ● Fax 212-213-9702
8 Exchange Blvd. ● Suite 170 ● Rochester, New York 14614 ● Tel. 585-802-9837 ● Fax 585-295-9652
www.appealtech.com

FILED: NEW YORK COUNTY CLERK 02/08/2018 04:38 PM
NYSCEF DOC. NO. 12

INDEX NO. 650620/2018

RECEIVED NYSCEF: 02/08/2018

19-01435-jlg   Doc 5-14   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.   Pg 26 of 61

supersedes all prior agreements, statements, and negotiations with respect to the subject matter hereof. This Agreement may only be modified in a writing signed by both parties.

17. **Acknowledgements.** You acknowledge and agree that: (a) you understand all of the terms and conditions of this Agreement, including the restrictions in Section 12; (b) you had sufficient opportunity to consult legal counsel regarding this Agreement; (c) the benefits you are receiving are sufficient consideration for the promises you are making in this Agreement; and (d) you are freely and voluntarily entering into this Agreement and agreeing to be bound by all of its terms.

ACCEPTED AND AGREED:

Laurence Mynes

Date: 11/16/16

Z&J LLC d/b/a AppealTech

By: James Wagner

Date: 9/13/16

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 27 of 61

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 02/15/2018 02:23 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 12 RECEIVED NYSCEF: 02/15/2018

-01435-llg Doc 5-14 Filed 12/23/19 Entered 12/23/19 16:01:58 Exhibit L
Confirm to Dismiss Amend Complaint NEW Pg 28 of 61

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:** _LEBOVITS_                          **PART** _7_
                    *Justice*

Z. + S., LLC

       -v-

LAWRENCE MYERS, ETAL.

**INDEX NO.** 650620/18

**MOTION DATE** _____

**MOTION SEQ. NO.** _01_

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s)._____

Answering Affidavits — Exhibits _____ | No(s)._____

Replying Affidavits _____ | No(s)._____

Upon the foregoing papers, it is ordered that this motion is    granted per

St. y-lation or 2/9/18

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____
FOR THE FOLLOWING REASON(S): _____

Dated: _2/9/18_

**HON. ~~GERALD LEBOVITS~~** , J.S.C.
                                **J.S.C.**

1. CHECK ONE: .................................................. ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☒ GRANTED ☐ DENIED ☐ GRANTED IN PART ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................. ☐ SETTLE ORDER    ☐ SUBMIT ORDER

                        ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

FILED: NEW YORK COUNTY CLERK 02/15/2018 04:25 PM

NYSCEF DOC. NO. 22

Cronin Affirm to Dismiss Amend. Complaint. Pg 29 of 61

01435-10 Doc 5-14 Filed 12/23/19 Entered 12/23/19 16:01:58 Exhibit
NYSCEF DOC. NO. 22 RECEIVED NYSCEF: 02/15/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

Z+J LLC d/b/a AppealTech

- v -

Laurence Mynes and Counsel Press Inc.

---

**INDIVIDUAL ASSIGNMENT PART** 7
SO ORDERED
**STIPULATION**

**INDEX NO.** 650620/2018

**MOTION CALENDAR NO.** 01

**DATE** 2/9/18

ORDERED ~~and SO ORDERED~~
IT IS HEREBY ~~STIPULATED AND AGREED~~ by and between the below-named attorney(s) as follows:

_Plaintiff Z+J LLC d/b/a AppealTech's application, by Order to Show Cause, for a temporary restraining order and preliminary injunction (motion Seq. No. 01) is resolved as follows: (i) Laurence Mynes ("Mynes") will not provide any services, as an employee, owner, joint venture, consultant, contractor, volunteer or otherwise, to Counsel Press Inc. ("Counsel Press") from any Counsel Press office locations in the State of New York, except that Mynes may attend onboard training and/or any other meeting, not related to the restrictions set forth herein, where other remote employees or new employees would attend in-person in the New York City office; [continued next page]_

**Attorney for Plaintiff**

Date:

**Attorney for Defendant**

So Ordered.

**Attorney for Defendant**

ENTER:

HON. GERALD LEBOVITS
J.S.C.

2/9/18

SC-80 (rev 2/85)

Page 1 of 3

2 of 4

PRELIMINARY CONFERENCE ORDER

X. ADDITIONAL DIRECTIVES: (2) Mynes shall not provide any services, as an employee, owner, joint venture, consultant, contractor, volunteer or otherwise, to any individual, entity or other third party that is engaged or seeks to engage in the same or similar business as that of AppealTech in the States of New York and California for a period of six (6) months from January 19, 2018; (3) Mynes shall not utilize or list, for purposes of any services provided to, or on behalf of Counsel Press Inc. ("Counsel Press"), or any other individual, entity or third party (in the appellate service industry), a telephone number with an area code from the State of New York for a period of six (6) months from January 19, 2018; (4) Mynes' online Bio on LinkedIn and Counsel Press may only expressly state that his work consists of listed jurisdictions other than the States of New York for a period of six (6) months from January 19, 2018. If the Bio includes a telephone number and office location it will be consistent with Points 2 + 3, above; (5) Mynes shall return, destroy or delete all Confidential information, as defined in the November 16, 2016 Employment Agreement between Mynes + AppealTech (the "Employment Agreement"), to Appeal Tech within five (5) days of this So ordered Stipulation and provide evidence to AppealTech demonstrating he has done so within five (5) days of this So ordered Stipulation. Information relating to account receivables arising from Mynes' work at AppealTech shall be held by Mynes' counsel only, for the purpose of retaining commissions owed to Mynes (which AppealTech neither admits or denies). Counsel Press shall not receive, or have access to, such documents; (6) Mynes shall sign an Affirmation stating that he did not use any Confidential information, as defined in the Employment Agreement, to AppealTech's competitive disadvantage and that all Confidential information has been returned, destroyed or deleted per point 5, above; (7) Counsel Press shall sign an Affirmation stating it did not receive any Confidential information, as defined in the Employment Agreement, from Mynes and, to the extent it did receive such information, it has been destroyed and deleted; (continued next page)

X. ADDITIONAL DIRECTIVES

FILED: NEW YORK COUNTY CLERK 02/18/2018 04:23 PM

NYSCEF DOC. NO. 5-14    Filed 12/23/19    Entered 12/23/19 16:01:28    Exhibit
RECEIVED NYSCEF: 02/18/2018

Cronin Affirm to Dismiss Amend. Complaint.    Pg 31 of 61
California

PRELIMINARY CONFERENCE ORDER

X. ADDITIONAL DIRECTIVES: (8) Mynes, directly or indirectly, shall not solicit, accept the business of or provide any services to any client of Appeal Tech, as defined in the Employment Agreement, in areas where Appeal Tech does business for a period of six (6) months from January 19, 2018 *unless otherwise directed by the court*; (9) Mynes, directly or indirectly, shall not interfere with Appeal Tech's relationship with any client, as defined in the Employment Agreement, or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with Appeal Tech *unless otherwise directed by the court* for a period of six (6) months from January 19, 2018; (10) Mynes, directly or indirectly, shall not solicit, hire or attempt to solicit or hire, any individual who is an employee, consultant or contractor of Appeal Tech or who was an employee, consultant or contractor of Appeal Tech for a period of 6 months from January 19, 2018, unless otherwise directed by the court

This Stipulation and Order is without prejudice to any arguments, by any party, regarding the enforceability or unenforceability of the Employment Agreement

_Kathryn T. Lundy_
Kathryn T. Lundy
Attorneys for Plaintiff

_Blake Rome LLP_
Anthony Viaggiore,
Attorneys for Defendant Counsel Press, Inc.

_Lipsky Lome LLP_
Douglas Lipsky
Attorneys for Mynes

SO ORDERED

2/9/18

GERALD LEBOVITS, J.S.C.

X. ADDITIONAL DIRECTIVES    HON. GERALD LEBOVITS
                                                    J.S.C.

SC-8F (REV 2/86)

Page 3 of 3
4 of 4

# Exhibit E

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 53    19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M    RECEIVED NYSCEF: 09/18/2018

Cronin Affirm to Dismiss Amend. Complaint.    Pg 33 of 61

14479 80

*To be Argued by:*
NILES C. WELIKSON

# MICRO-FICHE

New York County Clerk's Index No. 116747/10

# New York Supreme Court
## Appellate Division – First Department

————◆❮❯◆————

MARCIA MEYERS,

*Plaintiff-Respondent,*

– against –

FOUR THIRTY REALTY,

*Defendant-Appellant.*

## BRIEF FOR DEFENDANT-APPELLANT

HORING WELIKSON & ROSEN, P.C.
*Attorneys for Defendant-Appellant*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
nwelikson@hwrpc.com

Printed on Recycled Paper

Bronx County Clerk's Index No. 309332/12

# New York Supreme Court
## Appellate Division – First Department

＋●＋

PANAGIOTIS SAVLAS,

*Plaintiff-Respondent-Appellant,*

– against –

THE CITY OF NEW YORK, MALCOLM PIRNIE, INC., URS CORPORATION–
NEW YORK and URS CORPORATION,

*Defendants-Appellants-Respondents,*

– and –

**ORIGINAL
WITH PROOF OF
SERVICE**

CSM ENGINEERING, P.C.,

*Defendant-Respondent.*

*(For Continuation of Caption See Reverse Side of Cover)*

## JOINT RECORD ON APPEAL
## Volume XI of XI (Pages 5111–5555)

LEWIS JOHS AVALLONE AVILES, LLP
*Attorneys for Defendants-Appellants-*
*Respondents and Third-Party Plaintiffs-*
*Appellants URS Corporation–New York*
*and URS Corporation*
61 Broadway, Suite 2000
New York, New York 10008
(212) 233-7195
kgmescall@lewisjohs.com

LAWRENCE, WORDEN, RAINIS & BARD, P.C.
*Attorneys for Defendant-Appellant-*
*Respondent and Third-Party Plaintiff-*
*Appellant Malcolm Pirnie, Inc.*
225 Broad Hollow Road, Suite 105E
Melville, New York 11747
(631) 694-0033
gmcnally@lwrlawyer.com

**FILED**

FEB 16 2018

SUP. COURT APP. DIV.
FIRST DEPT.

*(For Further Appearances See Reverse Side of Cover)*

Printed on Recycled Paper

New York County Clerk's Index Nos. 650205/11 and 950354/13

# New York Supreme Court
## Appellate Division – First Department

———●○●———

ROSEMARIE A. HERMAN, individually, as beneficiary of the trust created by
Harold Herman as Grantor under agreement dated March 1, 1990 and as beneficiary
of the trust created by Rosemarie A. Herman as Grantor dated November 27, 1991 and on
behalf of MAYFAIR YORK LLC, WINDSOR PLAZA LLC, a New York Limited
Liability Company, AVON BARD LLC, MERIT MANAGEMENT, LLC, PRIMROSE
MANAGEMENT LLC, KEYSTONE MANAGEMENT LLC by their 50% owner of
their membership interests; ROSEMARIE A. HERMAN as Natural Guardian for GAVIN
I. ESMAIL and JESSE A. ESMAIL, individually, as beneficiaries of the trust created by
Harold Herman as Grantor under agreement dated March 1, 1990 and as beneficiaries of
the trust created by Rosemarie A. Herman as Grantor dated November 27, 1991,

Index No.
650205/11

*Plaintiffs-Respondents,*

*(For Continuation of Caption See Reverse Side of Cover)*

## RECORD ON APPEAL
## Volume VI of VI (Pages 2929–3523)

LAW OFFICES OF CRAIG AVEDISIAN, P.C.
One Grand Central Place
60 East 42nd Street, 40th Floor
New York, New York 10165
(212) 687-8360
craig@avedisian.net

– and –

JASPAN SCHLESINGER, LLP
300 Garden City Plaza, 5th Floor
Garden City, New York 11530
(516) 746-8000
sschlesinger@jaspanllp.com
nshishov@jaspanllp.com

*Attorneys for Plaintiffs-Respondents*

AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
(212) 880-3800
darren.traub@akerman.com
matthew.diblasi@akerman.com

*Attorneys for Defendants-Appellants*

2 – 20

Printed on Recycled Paper

WITH PROOF OF SERVICE

New York County Clerk's Index No. 155793/14

# New York Supreme Court
## Appellate Division – First Department

————•❚•————

FRANK ASPROMONTE,

*Plaintiff-Appellant,*

— against —

JUDLAU CONTRACTING, INC., SKANSKA USA CIVIL INC., J.F. SHEA
CONSTRUCTION INC., SCHIAVONE CONSTRUCTION CO. LLC,
THE NEW YORK CITY TRANSIT AUTHORITY, THE METROPOLITAN
TRANSPORTATION AUTHORITY and THE CITY OF NEW YORK,

*Defendants-Respondents.*

**ORIGINAL**
**WITH PROOF OF**
**SERVICE**

## RECORD ON APPEAL
## Volume II of II (Pages 629–1178)

FABIANI COHEN & HALL, LLP
*Attorneys for Defendants-Respondents*
570 Lexington Avenue
New York, New York 10022
(212) 644-4420
pollakk@fcllp.com

HACH & ROSE, LLP
*Attorneys for Plaintiff-Appellant*
112 Madison Avenue, 10th Floor
New York, New York 10016
(212) 779-0057
mr@hachroselaw.com
rgastoria@aol.com

3–14

Printed on Recycled Paper

# Exhibit F

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 54
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 38 of 61

*To be Submitted by:*
NILES C. WELIKSON

New York County Clerk's Index No. 162752/15

# New York Supreme Court

## Appellate Division—First Department

---

NEIL ALTMAN & JILLIAN STILE,

*Plaintiffs-Respondents,*

– against –

GEORGIA PROPERTIES, INC.,

*Defendant-Appellant.*

---

## REPLY BRIEF FOR DEFENDANT-APPELLANT

---

**FILED**

AUG 1 / 2017

SUP COURT, APP. DIV.
FIRST DEPT.

, HORING WELIKSON & ROSEN, P.C.
*Attorneys for Defendant-Appellant*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
nwelikson@hwrpc.com

#275135-MS

---

PRINTED ON RECYCLED PAPER ♻

*To be Argued by:*
JANN S. BRENT

New York County Clerk's Index No. 100643/16

# New York Supreme Court

## Appellate Division—First Department

In the Matter of the Application of

160 EAST 84TH STREET ASSOCIATES LLC,

*Petitioner-Appellant-Respondent,*

For a Judgment Pursuant to Article 78 of the Civil Practice Law and Rules,

– against –

NEW YORK STATE DIVISION OF HOUSING
AND COMMUNITY RENEWAL,

*Respondent-Respondent-Appellant,*

– and –

SHERRY SADO,

*Intervenor-Respondent.*

## BRIEF FOR PETITIONER-APPELLANT-RESPONDENT

HORING WELIKSON & ROSEN, P.C.
*Attorneys for Petitioner-Appellant-*
*Respondent*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
jbrent@hwrpc.com

PRINTED ON RECYCLED PAPER ♻

*To be Argued by:*
NILES C. WELIKSON

New York County Clerk's Index No. 452674/15

# New York Supreme Court

## Appellate Division—First Department

REGINA ALSTON, SANDRA VAUGHN-COOKE
and FAIR HOUSING JUSTICE CENTER,

*Plaintiffs-Respondents,*

– against –

STARRETT CITY, INC. and GRENADIER REALTY CORP.,

*Defendants-Appellants.*

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

HORING WELIKSON & ROSEN, P.C.
*Attorneys for Defendants-Appellants*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
nwelikson@hwrpc.com

# ⟨⟩S⟨⟩-MB

*To be Submitted by:*
ASHKA S. PATWA

District Court, Nassau County Clerk's Index No. L&T 3699/14

# New York Supreme Court

## Appellate Term—Second Department

### 9th & 10th Judicial Districts

---

385 BAYVIEW LLC,

*Petitioner-Respondent,*

– against –

CHARLENE WARREN, "JOHN DOE" and YAZMYN GREEN,

*Respondents-Appellants.*

---

## BRIEF FOR PETITIONER-RESPONDENT

---

HORING, WELIKSON & ROSEN, P.C.
*Attorneys for Petitioner-Respondent*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700

# Exhibit G

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM

NYSCEF DOC. NO. 55

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 43 of 61

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------- X
                                                                     :
Z & J LLC d/b/a APPEALTECH                                           :
                                                                     :    Index No.
                                    Plaintiff,                       :
                                                                     :
                  -against-                                          :    **SUMMONS**
                                                                     :
LAURENCE MYNES and COUNSEL PRESS, INC.,                              :
                                                                     :
                                    Defendants.                      :
                                                                     :
------------------------------------------------------------------- X

TO THE ABOVE-NAMED DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the verified complaint in this action and to
serve a copy of your answer on the plaintiff's attorneys within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if the
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
herein.

        The plaintiff designates New York County as the place of trial pursuant to CPLR § 501,
and based on the residence of the plaintiff and location of the facts underlying the verified
complaint.

Dated: New York, New York
       February 7, 2018

                                        MICHELMAN & ROBINSON, LLP

                                        By: /s/ Christopher A. D'Angelo
                                             Christopher A. D'Angelo
                                             Kathryn T. Lundy
                                             Janeen R. Hall
                                        800 Third Avenue, 24th Floor
                                        New York, New York 10022
                                        (212) 730-7700

FILED: NEW YORK COUNTY CLERK 02/07/2018 04:57 PM

NYSCEF DOC. NO. 1

Cronin Affirm to Dismiss Amend. Complaint.    Pg 45 of 61

Exhibit M -

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

RECEIVED NYSCEF: 02/07/2018

Defendants' Addresses:

Laurence Mynes
21 Stall Lane
Lodi, New Jersey 07644

Counsel Press Inc.
Corporate Service Company (via the New York Secretary of State)
80 State Street
Albany, New York 12207-2543

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------  x
                                                                   :
Z & J LLC d/b/a APPEALTECH                                         :
                                                                   :   Index No.
                                   Plaintiff,                      :
                                                                   :
              -against-                                            :   **VERIFIED COMPLAINT**
                                                                   :
LAURENCE MYNES and COUNSEL PRESS, INC.,                            :
                                                                   :
                                   Defendants.                     :
                                                                   :
------------------------------------------------------------------  x

Plaintiff Z&J LLC d/b/a AppealTech ("Plaintiff" or "AppealTech"), by its attorneys

Michelman & Robinson, LLP, complaining of the Defendants Counsel Press Inc. ("Counsel

Press") and Laurence Mynes ("Mynes") (collectively, "Defendants"), states as follows upon

knowledge as to itself and its conduct, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This complaint arises from Defendants' malicious attempts to destroy Plaintiff as

a reputable competitor in the appellate service provider and printer industry.

2.      Despite entering into an Employment Agreement with AppealTech and

acknowledging that he would not compete with AppealTech's business in a way that is harmful to

its client relationships and sensitive business information, Mynes deliberately breached his

Employment Agreement in order to work for Counsel Press, a direct appellate service provider

competitor in AppealTech's key markets.

3.      Mynes transferred confidential information and client lists for his use at Counsel

Press in a position with the same title as that he held at AppealTech – Senior Appellate Consultant.

3

FILED: NEW YORK COUNTY CLERK 09/08/2018 04:37 PM
NYSCEF DOC. NO. 15
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.    Pg 47 of 61

4.    Mynes' departure from AppealTech followed that of several employees poached by Counsel Press in an effort to combat their own business decline and steal AppealTech's talent and confidential and proprietary business information.  As a result of Defendants' conduct, AppealTech has suffered substantial harm.

## THE PARTIES

5.    At all times mentioned herein, Plaintiff Z&J LLC d/b/a AppealTech was and still is a Delaware limited liability company authorized to do business in the State of New York, with a principal place of business at 7 West 36th Street, 10th Floor, New York, New York.

6.    At all times mentioned herein, Defendant Counsel Press, Inc. was and still is a Delaware corporation headquartered in New York City, with a principal place of business at 460 West 34th Street, New York, New York.

7.    At all times mentioned herein, Defendant Laurence Mynes was and still is an individual whose employment at both AppealTech and Counsel Press is at issue in this action, and who resides at 21 Stall Lane, Lodi, New Jersey 07644.

## JURISDICTION AND VENUE

8.    Jurisdiction is proper over Defendant Counsel Press based on its principal place of business in New York County.

9.    Venue is proper over Defendant Counsel Press based on its principal place of business in New York County, and based on the residence of Plaintiff.

10.    Jurisdiction is proper over Defendant Mynes because he regularly transacts business in New York State.

4

11.     Pursuant to paragraph 14 of the Employment Agreement, Defendant Mynes

consents to the exclusive jurisdiction of the state or federal courts located in New York County for

all purposes.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     Plaintiff is a comprehensive appellate services provider that has been in operation

for approximately twenty (20) years.

13.     Plaintiff maintains offices in New York City, Rochester, New York and Los

Angeles, California.

14.     Plaintiff also services surrounding areas, including New Jersey.

15.     Plaintiff is retained by attorneys and law firms during the appellate process to guide

them through appellate court procedures in various jurisdictions for both state and federal appellate

courts.

16.     Plaintiff's employees advise clients on the technical and procedural aspects of

appellate practice, including court rules specific to each appellate jurisdiction.

17.     The relationships that AppealTech establishes with attorneys and law firms is

critical to AppealTech's success. AppealTech relies on client referrals to establish its goodwill

and build its reputation as an appellate services provider. Without client relationships, AppealTech

would struggle to promote its services in various jurisdictions.

18.     Thus, AppealTech needs to maintain its client relationships without malicious

interference from competitors to survive.

19.     Counsel Press is also an appellate services provider.

20.     Like AppealTech, Counsel Press focuses on the preparation of appellate

documents, printing services and electronic filing services.

5

21. Like AppealTech, Counsel Press also advises law firms and attorneys on procedural court rules by jurisdiction.

22. In or about January 2006, Plaintiff hired Mynes to serve as a Senior Appellate Consultant.

23. Prior to working in the appellate services industry, Mynes worked in the marketing and advertising industry, focusing on general sales promotion and event marketing for various advertising and marketing consultant companies for approximately twenty-five (25) years.

24. Upon information and belief, Mynes had no legal background prior to his employment with AppealTech.

25. Upon information and belief, Mynes did not maintain any client or customer relationships relating to the appellate services industry.

26. AppealTech trained and educated Mynes over the course of twelve (12) years, developing and maintaining goodwill with AppealTech's clients in the process.

27. As a Senior Appellate Consultant, Mynes assisted Plaintiff's clients in perfecting thousands of appeals in state and federal appellate courts nationwide.

28. Mynes specialized in New York State Appellate Divisions, the New York State Court of Appeals and the Second Circuit Court of Appeals.

29. Upon information and belief, Mynes learned the appellate services industry solely from his employment with AppealTech, and through the resources and training provided to him by AppealTech.

30. As a result of AppealTech's investment into Mynes' growth as a consultant, Mynes sales increased from 2011 through 2017 as he developed client relationships and acquired knowledge of appellate procedure.

6

### Counsel Press Solicits AppealTech Employees

31.   On or about March 31, 2015, Gladstone Investment Corporation ("Gladstone") announced its acquisition of Counsel Press by investing an aggregate of $32.5 million in a combination of equity and debt into the company.

32.   Upon information and belief, due to the financial stress caused by the high acquisition cost, Counsel Press sought to increase its overall sales and performance following Gladstone's acquisition.

33.   To reach this goal, in or around the Summer of 2016, Counsel Press initiated a directed and concerted effort to poach AppealTech employees and obtain AppealTech's confidential and proprietary information to undermine its operation and standing in the industry.

34.   Upon information and belief, Counsel Press embarked on this course of conduct with the goal of removing AppealTech as a competitor.

35.   In other words, Counsel Press intended to put AppealTech out of business.

36.   Thus, on or before August 4, 2016, Jonathan Wallach ("Walch") a Senior Appellate Consultant for AppealTech, accepted an offer of employment from Counsel Press.

37.   Upon information and belief, that same day, Wallach sent Counsel Press a file detailing AppealTech's confidential client information. .

38.   Shortly thereafter, Counsel Press hired two other senior appellate consultants employed by AppealTech. Upon information and belief, Counsel Press also attempted to poach five of AppealTech's nine paralegals, and four of the six employees at AppealTech's production shop. In or about the August/September 2016 timeframe, Counsel Press was successful in hiring seven (7) AppealTech employees, including 3 Senior Appellate Consultants, leaving Mynes as the only remaining consultant.

7

39.    Upon information and belief, a principal of Counsel Press stated that Counsel Press intended to put AppealTech out of business by hiring AppealTech employees shortly after it hired the above-referenced individuals.

40.    Given the departure of the three Senior Appellate Consultants, AppealTech immediately approached Mynes, among other key AppealTech employees, to negotiate significantly increased compensation in exchange for written promises from Mynes and the other employees to protect and preserve AppealTech's confidential and proprietary information, ensuring that it would not fall into the hands of the competition.

41.    Despite these efforts, the anti-competitive practices of Counsel Press were having their desired goal. AppealTech's revenue declined substantially in 2017.

**Mynes' Employment Agreement**

42.    On or about November 16, 2016, Mynes signed an Employment Agreement, which contained a restrictive "non-competition" covenant and a confidentiality clause.

43.    Paragraph 10 of the Employment Agreement provides, in relevant part, as follows:

> 10.  **Confidential Information.**  You agree not to, directly or indirectly, disclose or use any of the Company's Confidential Information (defined below) during or after your employment, except to the extent necessary to perform your job duties …. Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Sections 10-13 of this Agreement only.

44.    Paragraph 12 of the Employment Agreement provides, in relevant part, as follows:

> 12.  **Non-Competition.**  You agree that during your employment and for a period of six (6) months after your employment terminates ("**Restricted Period**") for any reason, you will not, except as necessary to perform your job duties for the Company, directly or indirectly, on your own behalf or on behalf of any individual or entity, as an employee, owner, joint venturer, consultant, contractor, volunteer, or otherwise: (a) provide services for any individual, entity, or other third party that is engaged or seeks to engage in the

8

same or similar business as that of the Company in any geographic area in which the Company does or is actively seeking to do business; (b) solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those that the Company provides or has provided within six (6) months prior to the termination of your employment; (c) interfere with the Company's relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with the Company; or (d) solicit, hire, or attempt to solicit or hire, any individual who is an employee, consultant, or contractor of the company or who was an employee, consultant, or contractor of the Company at any time during the six (6) months preceding the termination of this Agreement .... You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships, and other legitimate business interests of the Company and is reasonable in scope, duration, and geography.

45.    Paragraph 15 of the Employment Agreement provides, in relevant part, as follows:

15. **Injunctive Relief.** You acknowledge and agree that if you breach, or attempt or threaten to breach, any part of Sections 10-13, the Company shall be entitled, in addition to any other right or remedy it may have, to an order enjoining or restraining you from any breach, or attempted or threatened breach, without having to post a bond or other security or prove damages and you hereby consent to the issuance of such an order .... If you violate any of the provisions of Section 12 ... the duration of the covenants shall be extended for the period of time when the violation began until you permanently cease such violation. Nothing set forth in this Section shall prevent the Company from seeking money damages or other relief instead of or in addition to injunctive relief.

46.    In consideration of the restrictive "non-competition" covenant, AppealTech offered Mynes a significant increase in compensation by directing certain house accounts to him, thereby increasing his overall sales and his percent on commission.

47.    Mynes accepted the offer, increasing his compensation by more than thirty percent (30%), and his sales almost doubled as a result of the foregoing.

9

## Mynes' Breach of the Employment Agreement

48.    Upon information and belief, in or about June 2017, Mynes began to communicate with Counsel Press and provide it with AppealTech's client and business information.

49.    Mynes began emailing AppealTech's confidential information to his personal email address including, but not limited to: AppealTech's 2017 sales budget, AppealTech checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information and/or goodwill.

50.    Upon information and belief, between September 2017 and December 2017, Mynes engaged in conversations with Counsel Press's head of sales.

51.    Upon information and belief, from June 2017 through January 2018, Mynes retained AppealTech's client information and other confidential and proprietary information.

52.    Upon information and belief, during the relevant period of time herein, Mynes uploaded confidential and client information from his company-issued cell phone to his personal cloud account.

53.    On January 17, 2018, Mynes abruptly announced his resignation from AppealTech.

54.    Mynes refused to disclose where he would be employed or whether he had found other employment.

55.    On or about January 19, 2018, AppealTech sent Mynes a demand letter to comply with the restrictive "non-competition" covenant and confidentiality provision contained within the Employment Agreement. Mynes never responded.

10

56.     On or about January 29, 2018, AppealTech sent Counsel Press a cease and desist letter concerning its deliberate effort to poach AppealTech's employees.

57.     Shortly thereafter, Counsel Press announced that Mynes had joined the company, effective January 29, 2018, in Counsel Press's New York City office. Counsel Press immediately listed Mynes on the website as a Senior Appellate Consultant, which was the same title that he held at AppealTech.

58.     On February 2, 2018, Counsel Press, through its counsel, responded to the January 29, 2018 correspondence refusing to remove Mynes from the website and maintaining that he is an employee of Counsel Press.

59.     Upon information and belief, Defendants have utilized AppealTech's confidential and client information obtained by Mynes to further Counsel Press's business interests.

60.     As a result of Defendants' conduct, AppealTech has been severely damaged. In particular, AppealTech has suffered dramatically decreased profits, and is currently operating at a loss.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Breach of Contract Against Mynes)

61.     Plaintiff repeats and realleges paragraphs 1-60 of this Complaint as if fully restated herein.

62.     Defendant Mynes breached his Employment Agreement by, among other things, removing Plaintiff's confidential and proprietary business information and client information, to disclose and or use the same in connection with his employment with Defendant Counsel Press in direct violation of the Employment Agreement.

11

63.     Defendant Mynes also breached his Employment Agreement by providing services for Counsel Press less than six months after his resignation from AppealTech in direct violation of the restrictive "non-competition" covenant.

64.     Defendant Mynes' breach has harmed Plaintiff.

65.     As a result of the foregoing, Defendant Mynes is liable for damages in an amount to be determined at trial, but in any event not less than $100,000, plus interest.

66.     Pursuant to the Employment Agreement, Plaintiff is entitled to recover all reasonable attorneys' fees and costs with respect to any dispute arising thereunder.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Breach of the Duty of Loyalty Against Mynes)

67.     Plaintiff repeats and realleges paragraphs 1-66 of this Complaint is if fully restated herein.

68.     Defendant Mynes owed a duty of loyalty as an employee of Plaintiff.

69.     Pursuant to the Employment Agreement, Plaintiff agreed to protect AppealTech's "confidential information" as defined in the Employment Agreement.

70.     Defendant Mynes breached that duty by acting to advance his personal interests, and the interests of Counsel Press at the expense of Plaintiff's interests.

71.     Specifically, Defendant Mynes intentionally and knowingly appropriated Plaintiff's proprietary and confidential information, and client information, in an effort to undermine AppealTech's sales and hurt AppealTech as Counsel Press's competitor.

72.     Defendant Mynes' breach has harmed Plaintiff.

73.     As a result of the foregoing, Defendant Mynes is liable for damages in an amount to be determined at trial, but in any event not less than $100,000, plus interest.

12

74.     Pursuant to the Employment Agreement, Plaintiff is entitled to recover all reasonable attorneys' fees and costs with respect to any dispute arising thereunder.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (Tortious Interference with Contract Against Counsel Press)

75.     Plaintiff repeats and realleges paragraphs 1-74 of this Complaint as if fully restated herein.

76.     A valid Employment Agreement existed between Plaintiff and Defendant Mynes.

77.     The same or similar Employment Agreements existed between Plaintiff and other former AppealTech employees who began working for Defendant Counsel Press in violation of those agreements.

78.     Defendant Counsel Press knew, or had constructive knowledge of, the Employment Agreement between Plaintiff and Defendant Mynes.

79.     Nevertheless, Defendant Counsel Press intentionally induced Mynes to resign from AppealTech and work for Counsel Press, AppealTech's known competitor.

80.     Defendant Counsel Press further intentionally induced Mynes to appropriate Plaintiff's confidential and proprietary business information, and confidential information for its own use.

81.     Defendant Counsel Press's intentional interference resulted in Mynes' breach of the Employment Agreement.

82.     Plaintiff was harmed by Defendant Counsel Press's conduct.

83.     As a result of the foregoing, Defendant Counsel Press is liable for damages in an amount to be determined at trial, but in any event not less than $100,000, plus interest.

13

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Tortious Interference with Business Relationships Against Mynes and Counsel Press)

84.    Plaintiff repeats and realleges paragraphs 1-83 of this Complaint as if fully restated herein.

85.    Plaintiff established its goodwill as an appellate services provider through developing client relationships with attorneys and law firms.

86.    As a result of Plaintiff's efforts, Plaintiff has been voted as one of the best appellate service providers by the New York Law Journal and Corporate Counsel.

87.    The relationships that Plaintiff has established with attorneys and law firms are business relations that foster an expectancy of future contract rights with clients in the legal industry.

88.    Defendants interfered with Plaintiff's business relationships by appropriating confidential and proprietary information and acquiring Plaintiff's client lists.

89.    Defendants acted to harm Plaintiff and diminish its standing as Counsel Press's competitor.

90.    As a result of the foregoing, Defendants are liable for damages in an amount to be determined at trial, but in any event not less than $100,000, plus interest, because of the lost opportunities for profit that have been diverted away from Plaintiff in favor of Counsel Press.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Injunctive Relief)

91.    Plaintiff repeats and realleges paragraphs 1-90 of this Complaint as if fully restated herein.

92.    Pursuant to paragraph 15 of the Employment Agreement, Plaintiff is entitled to an order enjoining or restraining Defendant Mynes from any breach, or attempted or threatened

14

breach, of the Employment Agreement, in addition to any other right or remedy it may have. Defendant Mynes expressly agreed and consented to the issuance of such an order.

93.     Pursuant to paragraph 15 of the Employment Agreement, Plaintiff agreed that if he breaches, attempts or threatens to breach, any part of Sections 10-13 of the Employment Agreement, AppealTech is entitled to "an order enjoining or restraining [Mynes] from any breach, or attempted or threatened breach [of the Employment Agreement]."

94.     As a result of Defendants' conduct referenced herein, Plaintiff will suffer irreparable harm if Mynes' restrictive covenant is not enforced, and if Defendant Counsel Press is not enjoined from further interfering with Plaintiff's business and contracts.

95.     Specifically, the relationships that Plaintiff has developed and fostered and the goodwill that Plaintiff has nurtured and maintained through its employment and training of Mynes, who had no knowledge, training or experience in this industry prior to his employment with Plaintiff, will be irreparably harmed, as will Plaintiff's ability to fairly compete as an appellate services provider in its markets.

96.     Plaintiff seeks to permanently enjoin Defendants from stealing and/or using its confidential and proprietary information, and customer information.

97.     No adequate remedy exists at law.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Attorneys' Fees and Costs)

98.     Plaintiff repeats and realleges paragraphs 1-97 of this Complaint as if fully restated herein.

99.     The Employment Agreement expressly provides that the prevailing party in any dispute arising from the agreement shall be reimbursed by the other party for a reasonable attorneys' fees and costs.

15

FILED: NEW YORK COUNTY CLERK 09/08/2018 04:37 PM
NYSCEF DOC. NO. 15

INDEX NO. 650620/2018

19-01435-jlg    Doc 5-14    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit M -
RECEIVED NYSCEF: 02/08/2018
Cronin Affirm to Dismiss Amend. Complaint.    Pg 59 of 61

100.    Plaintiff is entitled to recover its reasonable attorneys' fees and costs for bringing

this action to enforce its rights under the Employment Agreement.

**WHEREFORE**, Plaintiff Z & J LLC d/b/a APPEALTECH demands judgment as follows:

a.    Awarding monetary damages against each of the Defendants, such amount to be

proven at trial;

b.    Awarding Plaintiff pre-judgment and post-judgment interest;

c.    Permanently enjoining Defendants' use and acquisition of Plaintiff's proprietary

and confidential information, and customer information;

d.    Awarding Plaintiff reasonable attorneys' fees and costs; and

e.    Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
February 7, 2018

MICHELMAN & ROBINSON, LLP

By: Christopher A. D'Angelo
Christopher A. D'Angelo
Kathryn T. Lundy
Janeen R. Hall
800 Third Avenue, 24th Floor
New York, New York 10022
(212) 730-7700

16

FILED: NEW YORK COUNTY CLERK 09/08/2018 04:37 PM
NYSCEF DOC. NO. 15
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/08/2018

19-01435-jlg   Doc 5-14   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit M -
Cronin Affirm to Dismiss Amend. Complaint.   Pg 60 of 61

## VERIFICATION

STATE OF NEW YORK   )
                         ) ss:
COUNTY OF NEW YORK  )

      MICHAEL KESTAN, being duly sworn, deposes and says:

      1.     I am the President and owner of Plaintiff Z&J LLC d/b/a AppealTech.

      2.     I have read and know the contents of the foregoing Verified Complaint, and the same is true to my knowledge, except as to matters stated to be on information and belief, and with respect to those matters, I believe them to be true.

      3.     My knowledge as to the factual matters in the Verified Complaint is based upon my personal involvement in the underlying facts and my review of the relevant agreement and any relevant correspondence.

SONJIA R. RICHARDS
Notary Public, State of New York
No. 83-4998575
Qualified in Bronx County
Commission Expires June 29, 2018

MICHAEL KESTAN

Subscribed to before me this
____ day of February, 2018

NOTARY PUBLIC

17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------- x
                                                    :
Z&J LLC d/b/a APPEALTECH,
                                                    :
                                    Plaintiff,      :
            v.                                      :

LAURENCE MYNES and COUNSEL PRESS            :
INC.
                                                    :
                                    Defendants.     :

---------------------------------------------------------------- x

## VERIFIED COMPLAINT

MICHELMAN & ROBINSON, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
(212) 730-7700

Signed and certified pursuant to 22 NYCRR § 130-1.1-a

/s/: Christopher A. D'Angelo
Christopher A. D'Angelo
*Attorneys for Plaintiff*

18