# Exhibit N

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 56
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 2 of 29

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

Z & J LLC d/b/a APPEALTECH,

                    Plaintiff,

      -against-

LAURENCE MYNES and COUNSEL PRESS, INC.,
GLADSTONE INVESTMENT CORPORATION,
GLADSTONE MANAGEMENT CORPORATION,
GLADSTONE ADMINISTRATION, LLC and
JONATHAN WALLACH

                  Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

Index No. 650620/2018

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND.................................................................................................... 2

A. AppealTech ...................................................................................................................... 2

B. Counsel Press.................................................................................................................... 3

C. The Employees ................................................................................................................. 3

    1.   Jonathan Wallach ...................................................................................................... 3

    2.   Debra Rudoltz and Tina Fisher .................................................................................. 4

    3.   Laurence Mynes......................................................................................................... 5

D. AppealTech's Speculative Allegations ........................................................................... 7

E. The Current Motion .......................................................................................................... 9

ARGUMENT ......................................................................................................................... 10

    POINT ONE APPEALTECH FAILED TO ALLEGE CLAIMS AGAINST
    MOVANTS FOR TORTIOUS INTERFERENCE.......................................................... 10

        A. AppealTech Failed to Allege a Claim for Tortious Interference with
            Contract.................................................................................................................. 10

            1. AppealTech Failed to Allege the Existence of a Valid Contract ................... 11

            2. AppealTech Failed to Allege Its Claims with Specificity .............................. 13

            3. AppealTech Has Not Alleged a Breach of the Confidentiality Provisions .... 16

        B. AppealTech Failed to Allege a Claim for Tortious Interference with
            Business Relationships............................................................................................ 18

    POINT TWO APPEALTECH FAILED TO ALLEGE A CLAIM AGAINST
    MOVANTS FOR UNFAIR COMPETITION ................................................................. 20

CONCLUSION........................................................................................................................ 21

i

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
INDEX NO. 650620/2018
19-01435-jlg   Doc 5-15   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit N -
NYSCEF DOC. NO. 56
MOL re Motion to Dismiss.   Pg 4 of 29
RECEIVED NYSCEF: 09/18/2018

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy Orthotic & Prostehetic Assoc. IPA, Inc. v. Healthfirst PHSP, Inc.,*
2016 N.Y. Misc. LEXIS 2734 (Sup. Ct. N.Y. Cnty. 2016) ..........................18, 19, 20

*Algomod Tech. Corp. v. Price,*
65 A.D.3d 974 (1st Dep't 2009) ......................................................................19

*Amaranth LLC v. J.P. Morgan Chase & Co.,*
71 A.D.3d 40 (1st Dep't 2009) ........................................................................18

*Angel v. Bank of Tokyo-Mitsubishi. Ltd.,*
39 A.D.3d 368 (1st Dep't 2007) ......................................................................15

*BDO Seidman v. Hirshberg,*
93 N.Y.2d 382 (1999) ..............................................................................11, 12

*Beverage Mktg. USA v. South Beach Bev. Co.,*
20 A.D.3d 439 (2d Dep't 2005) ........................................................................21

*Black Car and Livery Ins., Inc. v H&W Brokerage. Inc.,*
28 AD3d 595 (2d Dep't 2006) ..........................................................................14

*Blackman Plumbing Supply Co. v. Connelly,*
2011 N.Y. Misc. LEXIS 4352 (Sup. Ct. Nassau Cnty. 2011) ................................12

*Bonanni v. Straight Arrow Publishers, Inc.,*
133 A.D.2d 585 (1st Dep't 1987) ......................................................1, 10, 13, 19

*Brown & Brown, Inc. v. Johnson,*
115 A.D.3d 162 (4th Dep't 2014) ......................................................................13

*Burrowes v. Combs,*
25 A.D.3d 370 (1st Dep't 2006) ..................................................................13, 14

*Carvel Corp. v. Noonan,*
3 N.Y.3d 182 (2004) ......................................................................................18

*CDR Creances S.A. v. Euro-American Lodging Corp.,*
40 AD3d 421 (1st Dep't 2007) ........................................................................16

*Chestnut Hill Partners, LLC v. Van Raalte,*
45 AD3d 434 (1st Dep't 2007) ........................................................................14

ii

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 56    19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -    RECEIVED NYSCEF: 09/18/2018

MOL re Motion to Dismiss.    Pg 5 of 29

*Columbia Ribbon and Carbon Manuf. Co. v. A-1-A Corp.*,
42 N.Y.2d 496 (1977) ...........................................................................11

*Comcast Sound Commc'ns, Inc. v. Hoeltke*,
572 N.Y.S.2d 189 (4th Dep't 1991).......................................................17

*Constantin Assocs. v. Kapetas*,
17 Misc 3d 1137(A) (Sup. Ct., N.Y. Cnty. 2007)....................................16

*Crown It Servs., Inc. v. Koval-Olsen*,
11 A.D.3d 263 (1st Dep't 2004) ............................................................12

*Don Buchwald & Assoc., Inc. v. Rich*,
281 A.D.2d 329 (1st Dep't 2001) ..........................................................18

*Eagle Comtronics v. Pico Prods.*,
256 A.D.2d 1202 (4th Dep't 1998)........................................................21

*ENV Servs., Inc. v. Alesia*,
10 Misc. 3d 1054(A) (Sup. Ct. Nassau Cnty. 2005).................................12

*Geffert Co., Inc. v. Fratelli Bonella, SRL*,
2015 N.Y. Misc. LEXIS 3699 (Sup. Ct. Nassau Cnty. 2015) ...................19

*Good Energy, L.P. v. Kosachuk*,
49 A.D.3d 331 (1st Dep't 2008) .......................................................11, 12

*Goodman v. N.Y. Oncology Hematology, P.C.*,
101 A.D.3d 1524 (3d Dep't 2012) .........................................................11

*Greystone Staffing, Inc. v. Warner*,
106 A.D.3d 954 (2d Dep't 2013) ...........................................................16

*Headquarters Buick-Nissan, Inc. v. Michael Oldsmobile*,
149 A.D.2d 303 (1st Dep't 1989) ..........................................................20

*Jonas v. Newedge USA, LLC*,
2008 N.Y. Misc. LEXIS 9805 (Sup. Ct. N.Y. Cnty. 2008) ...............13, 14, 15, 16

*Jurlique, Inc. v. Austral Biolab Pty., Ltd.*,
187 A.D.2d 637 (2d Dep't 1992)...........................................................18

*Kickertz v. N.Y. Univ.*,
110 A.D.3d 268 (1st Dep't 2013) ..........................................................19

*Korangy Publ., Inc. v. Miceli*,
22 Misc. 3d 1130(A) (Sup. Ct. N.Y. Cnty. 2009)..................................1, 10

iii

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56

INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 6 of 29

*Lama Holding Co. v. Smith Barney,*
   88 N.Y.2d 413 (1996) ..............................................................................................11

*Lau v. Lazar,*
   130 A.D.3d 413(1st Dep't 2015) ..........................................................................11

*Leon v. Martinez,*
   84 N.Y.2d 83 (1994) ..............................................................................................10

*Maltby v. Harlow Meyer Savage, Inc.,*
   166 Misc.2d 481 (1995) .........................................................................................11

*Mandarin Trading Ltd. v. Wildenstein,*
   17 Misc 3d 1118(A) (Sup. Ct., N.Y. Cnty. 2007) ...............................................15

*Martian Entertainment, LLC v Harris,*
   12 Misc 3d 1190[A] (Sup. Ct., NY Cnty 2006) .......................................10, 14, 18

*Morone v. Morone,*
   50 N.Y.2d 481 (1980) ............................................................................................10

*Morris v. Schroder Capital Mgt. Intl.,*
   7 N.Y.3d 616 (2006) ..............................................................................................11

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,*
   87 N.Y.2d 614 (1996) ......................................................................................10, 19

*Purchasing Assocs. v. Weitz,*
   13 N.Y.2d 267 (1963) ............................................................................................11

*Reed, Roberts Assocs. Inc. v. Strauman,*
   40 N.Y.2d 303 (1976) ............................................................................................12

*Rescomcleaning, Inc. v. Ulloa,*
   5 Misc 3d 1003[A] (Sup Ct. Suff. Co. 2004) ........................................................12

*Roy Export Co. Establishment v. CBS, Inc.,*
   672 F.2d 1095 (2d Cir. 1982) ...............................................................................20

*Snyder v. Sony Music Entertainment, Inc.,*
   252 A.D.2d 292 (1st Dep't 1999) .........................................................................18

*Telecom Int'l Am., Ltd. v. AT&T Corp.,*
   280 F.3d 175 (2d Cir. 2001) .................................................................................20

*TSIG Consulting, Inc. v. ACP Consulting LLC,*
   2014 N.TY. Misc. LEXIS 3788 (Sup. Ct. N.Y. Cnty. 2014) ................................13

iv

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 7 of 29

*Vigoda v. DCA Prods. Plus*,
  293 A.D.2d 265 (2002) ...........................................................................................19

*Volt Delta Res. LLC v. Soleo Commc'ns, Inc.*,
  816 N.Y.S.2d 702 (Sup. Ct. N.Y. Cnty. 2006) .......................................................21

*Washington Ave. Assocs. v. Euclid Equip.*,
  229 A.D.2d 486.........................................................................................................19

*Yeldin v. Lieberman*,
  102 A.D.3d 769 (2d Dep't 2013) ............................................................................13

v

Defendants Counsel Press, Inc. ("Counsel Press"), Gladstone Investment Corporation ("Gladstone Investment"), Gladstone Management Corporations ("Gladstone Management"), and Gladstone Administration, LLC ("Gladstone Administration" and, together with Gladstone Investment and Gladstone Management, the "Gladstone Entities") (Counsel Press and the Gladstone Entities are collectively referred to herein as "Movants") submit this Memorandum of Law in support of their motion (the "Motion") to dismiss Plaintiff Z & J LLC d/b/a AppealTech's ("AppealTech") claims against Movants pursuant to New York Civil Practice Law and Rules §§ 3211(a)(1) and (7).

## PRELIMINARY STATEMENT

AppealTech alleges vexatious claims for tortious interference and unfair competition against Counsel Press, its primary competitor in the appellate services industry. AppealTech's business has declined in recent years and certain of its employees have left AppealTech to join Counsel Press. Such competitive behavior is vital in a free market economy and, absent wrongful means, is not actionable in tort. Nonetheless, AppealTech has asserted claims based on the departure of these employees. These claims amount to no more than frivolous retaliation against a competitor and its employees for succeeding in a marketplace where AppealTech has been unsuccessful.

Under New York law, tortious interference claims must be pleaded with specificity. *Korangy Publ., Inc. v. Miceli*, 22 Misc. 3d 1130(A) (Sup. Ct. N.Y. Cnty. 2009) (*Bonanni v. Straight Arrow Publishers, Inc.*, 133 A.D.2d 585, 587 (1st Dep't 1987) (citation omitted). In the Amended Complaint, however, AppealTech does not identify a single customer or other business relationship with which Counsel Press interfered, nor does it identify a single piece of confidential information misappropriated by the Employees (defined below). Rather, AppealTech makes conclusory allegations based largely "upon information and belief."

151526.00601/111969239v.1

AppealTech's claims amount to speculation that: (i) the Employees <u>may</u> have retained information from their employment at AppealTech and, <u>if</u> they did, (ii) they <u>may</u> also have shared that information with Counsel Press and, <u>if</u> they did, (iii) Counsel Press <u>may</u> have misused that information. These speculative allegations fail as a matter of law.

But even if AppealTech's allegations were facially adequate, which they are not, the underlying employment agreements with which Counsel Press allegedly interfered are unenforceable because their scope far exceeds any legitimate interest AppealTech may have. For example, despite that defendant-employees Wallach and Mynes work in the New York market, the employment agreements purport to bar them from working in the appellate services industry nationwide.   The employment agreements also purport to bar Wallach and Mynes from servicing all AppealTech clients regardless of whether they had worked with them.  New York law is clear that such expansive restrictions on a person's livelihood are unenforceable. Accordingly, the Court should dismiss AppealTech's claims against Counsel Press.

## **FACTUAL BACKGROUND**

### *A.    AppealTech*

AppealTech is an appellate services provider with offices in New York, New York, Rochester, New York and Los Angeles, California. *See* Affirmation of Ryan E. Cronin dated September 14, 2018 ("Cronin Aff."), Exh. A (the "Amended Complaint"), ¶¶ 22-23. AppealTech also services various surrounding jurisdictions for both state and federal appellate courts. *Id.,* ¶¶ 24-25.  As an appellate services provider, AppealTech "is retained during the appellate process to guide attorneys and law firms through appellate court procedures…" *See* Cronin Aff., Exh. B ("Kestan Aff."), ¶ 4.  AppealTech also provides appellate printing and electronic filing services. *Id.*

2

In recent years, AppealTech's business has experienced a significant downturn. For example, in August 2016, AppealTech's employees began to leave AppealTech to work for its competitor, Counsel Press. Am. Cmplt., ¶ 40. In 2016, six employees had left AppealTech to work for Counsel Press. *Id.*, ¶¶ 2, 59, 63. After the departure of these employees, AppealTech's revenues "significantly decreased." *See* Kestan Aff. ¶ 48. And, by the end of 2017, "AppealTech's revenue declined substantially." *See* Am. Cmplt., ¶ 70.

### B.    *Counsel Press*

Counsel Press is an appellate services provider that competes with AppealTech. Am. Cmplt., ¶¶ 29-32. Like AppealTech, Counsel Press focuses on the preparation of appellate documents, printing services, and electronic filing services, and it also advises law firms and attorneys on procedural court rules by jurisdiction. *Id.*, ¶¶ 30-31. Gladstone Investment acquired Counsel Press in March 2015. *Id.*, ¶ 33. Gladstone Management and Gladstone Administration are affiliates of Gladstone Investment. *Id.*, ¶ 34. AppealTech alleges, "upon information and belief," that the Gladstone Entities "are involved in the day to day business operations and management of Counsel Press" *Id.*, ¶ 36.

### C.    *The Employees*

AppealTech's claims are based on allegations relating to four employees who, as AppealTech's business declined from 2016 through 2018, left AppealTech to join its competitor, Counsel Press.    The four employees are Jonathan Wallach ("Wallach"), Laurence Mynes ("Mynes"), Debra Rudoltz ("Rudoltz") and Tina Fisher ("Fisher" and, together with Mynes, Wallach, and Rudoltz, the "Employees").

### 1.    Jonathan Wallach

Wallach was a Senior Appellate Consultant for AppealTech who was based in New York. *See* Am. Cmplt., ¶¶ 18, 40. He signed an employment agreement with AppealTech on March 5,

3

2014 (the "Wallach Employment Agreement"). *Id.*, ¶ 41. The Wallach Employment Agreement

contained, among other things, a restrictive "Non-Solicitation" provision (the "Wallach Non-

Solicitation Provision") and a confidentiality provision (the "Wallach Confidentiality Provision"

and, together with the Wallach Non-Solicitation Provision, the "Wallach Restrictive

Covenants"). *Id.*, ¶¶ 42-43.

    The Wallach Non-Compete Provision provides that, for a period of twelve (12) months

after Wallach's employment with AppealTech, Wallach may not "in <u>any geographic area</u> in

which the Company does or is seeking to do business … encourage, induce or attempt to

encourage or induce <u>any Client</u> to change the nature, terms or amount of business it conducts

with the Company." *See* Am. Cmplt., ¶ 43 (emphasis added). And the Wallach Confidentiality

Provision provides that Wallach may not "disclose or use any 'Confidential Information' during

or after [his] employment, except to the extent necessary to do [his] job [for AppealTech] ...."

*See* Am. Cmplt., ¶ 42.

    In August 2016, Wallach resigned from AppealTech and agreed to join Counsel Press on

August 4, 2016. Am. Cmplt., ¶ 40.

    **2.**    **Debra Rudoltz and Tina Fisher**

    Rudoltz and Fisher worked for AppealTech until 2016 when they joined Counsel Press.

Am. Cmplt., ¶ 54. Rudoltz signed an employment agreement with AppealTech on June 13,

2014, and Fisher signed an Employment Agreement with AppealTech on June 17, 2014. *Id.,*

¶ 55. Rudoltz and Fisher are not parties to this lawsuit. Nonetheless, AppealTech speculates,

"<u>upon information and belief</u>," that Rudoltz and Fisher breached the confidentiality provisions of

their employment agreements with AppealTech (the "Non-Party Confidentiality Provisions") by

providing confidential information to Movants, and they were directed to do so by the Movants.

4

*Id.,* ¶¶ 56-58 (emphasis added). AppealTech does not specify any confidential information taken or otherwise misappropriated by Rudoltz or Fisher.

### 3.   Laurence Mynes

AppealTech hired Mynes in 2006 to serve as a Senior Appellate Consultant. Am. Cmplt., ¶ 76. As a Senior Appellate Consultant, Mynes assisted AppealTech's clients in perfecting appeals, specializing in the New York State Appellate Divisions, the New York State Court of Appeals, and the Second Circuit Court of Appeals. *Id.,* ¶¶ 83-84.

By September 2016, Mynes was AppealTech's only remaining appellate consultant. Am. Cmplt., ¶ 87. Before transferring client accounts to Mynes, AppealTech compelled him to enter into an employment agreement on November 16, 2016 (the "Mynes Employment Agreement"). *Id.,* ¶¶ 87-89, 93. The Employment Agreement with AppealTech contained, among other things, a restrictive "non-competition" covenant (the "Mynes Non-Compete Provision") and a confidentiality provision (the "Mynes Confidentiality Provision" and, together with the Mynes Non-Compete Provision, the "Mynes Restrictive Covenants").[1] *Id.,* ¶ 89.

The Mynes Non-Compete Provision provides that, for a period of six (6) months after Mynes' employment with AppealTech, Mynes may not: (a) "provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of [AppealTech] in any geographic area in which [AppealTech] does or is actively seeking to do business;" (b) "solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those [AppealTech] provides or has provided within six (6) months prior to the termination of [Mynes'] employment;" or

---

[1]   The Mynes Restrictive Covenants and the Wallach Restrictive Covenants are referred to collectively herein as the "Restrictive Covenants." The Wallach Confidentiality Provision, the Non-Party Confidentiality Provision, and the Mynes Confidentiality Provision are referred to collectively herein as the "Confidentiality Provisions."

151526.00601/111969239v.1

(c) "interfere with the [AppealTech]'s relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with [AppealTech]." Am. Cmplt., ¶ 91. The Mynes Employment Agreement defines "Client" as "any individual or entity that is, or during the last six (6) months of [Mynes'] employment was a customer of [AppealTech] or a potential customer from whom [AppealTech] actively sought business." *See* Cronin Aff., Exh. C, ¶ 12. The Mynes Non-Compete Provision is not limited to "Clients" with whom Mynes did business; it includes all of AppealTech's customers regardless of whether Mynes worked with them. *Id.*

The Mynes Confidentiality Provision provides that Mynes may not "disclose or use any of [AppealTech]'s Confidential Information (defined below) during or after [his] employment, except to the extent necessary to perform [his] job duties ...." Am. Cmplt., ¶ 90. The Employment Agreement's expansive definition of "Confidential Information" specifically excludes "information that is or has become publicly known or made generally available..."[2]

After AppealTech's poor performance in 2017, Mynes announced his resignation on January 17, 2018. Am. Cmplt., ¶ 101. Soon thereafter, Mynes joined Counsel Press on January 29, 2018 as a Senior Appellate Consultant. *Id.,* ¶ 107.

---

[2]    The Mynes Employment Agreement defines "Confidential Information" as:

any and all proprietary, confidential, or sensitive information, and any and all data, trade secrets, or know-how of the Company, including, but not limited to: client and potential client identities and lists; contact details for, personal data concerning, and needs, preferences, and specifications of clients and potential clients; product/services lists; relationships and arrangements with vendors; marketing strategies and plans; operating strategies and plans; finances; financing strategies and plans; pricing; commissions; relationships, methodologies; processes; research; business plans; alliances; technology; software; databases; source code; planned technology or software improvements or changes; developments; Inventions (defined in Section 11); designs; and any other technical, financial or business information or plans pertaining to the Company's business. Confidential Information does not include information that is or has become publicly known or made generally available through no wrongful act of you or anyone else who had confidentiality obligations to the Company.

*See* Mynes Employment Agreement, ¶ 10.

6

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56

INDEX NO. 650620/2018

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 14 of 29

RECEIVED NYSCEF: 09/18/2018

**D.    AppealTech's Speculative Allegations**

AppealTech filed its initial Complaint on February 7, 2018 alleging claims against

Counsel Press and Mynes. [Dkt. No. 1]. The defendants each moved to dismiss for failure to

state a cause of action. [Dkt. No. 25-35]. In their motions, Counsel Press and Mynes pointed out

that "AppealTech [did] not identify a single customer or other business relationship with which

Counsel Press interfered, nor [did] it identify a single piece of confidential information Mynes

wrongfully disclosed." [Dkt. No. 26, p. 4]. AppealTech then filed the Amended Complaint on

April 18, 2018 which is largely based on the same vague, conclusory, and speculative allegations

asserted in the original complaint. [Dkt. No. 36].

AppealTech's first two causes of action are alleged against Wallach and Mynes for

breach of the Restrictive Covenants. Am. Cmplt., p. 18-20. Specifically, AppealTech alleged

that Mynes breached the Mynes Non-Compete Provision by providing services and, "upon

information and belief," by soliciting AppealTech clients for Counsel Press less than six months

after his resignation from AppealTech. *Id.*, ¶¶ 103, 116-17. AppealTech also vaguely alleged

that Wallach breached the Wallach Employment Agreement by soliciting unspecified

AppealTech clients for Counsel Press less than twelve months after his resignation from

AppealTech. *Id.*, ¶ 117. In the amended Complaint, AppealTech did not specify a single

AppealTech client that was improperly solicited by Wallach or Mynes.

AppealTech further alleged that Mynes and Wallach breached the Restrictive Covenants

by disclosing AppealTech's confidential information to Counsel Press. Am. Cmplt., ¶¶ 115, 125.

AppealTech did not specify the information that was allegedly taken. Nor has it done so since.

Rather, AppealTech vaguely stated, "upon information and belief," that Wallach "sent client lists

and other confidential and proprietary information to Counsel Press…" *Id.*, ¶¶ 45-51.

7

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 15 of 29

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

AppealTech has not specified a single piece of confidential information that was allegedly

misappropriated. Similarly, AppealTech alleged, "upon information and belief," that, beginning

in June 2017 (three months before Mynes is alleged to have first spoken with Counsel Press and

seven months before he resigned from AppealTech), Mynes accessed client lists and other client

and sales information, as well as presentation materials. Am. Cmplt., ¶¶ 95-100, 136.

AppealTech did not specify what confidential information was allegedly taken. Instead, it lists

broad categories of purported confidential information which, "upon information and belief,"

were given to AppealTech. *Id.,* ¶¶ 97, 104.

AppealTech's third, fourth, and fifth causes of action allege claims against Counsel Press

and the Gladstone Entities for tortious interference with contract, unfair competition, and tortious

interference with business relationships. Am. Cmplt., p. 20-22. AppealTech alleges that

Counsel Press, "with advice and guidance" from the Gladstone Entities: (i) induced the

Employees to resign from AppealTech and work for Counsel Press, (ii) induced the Employees

"to appropriate AppealTech's confidential and proprietary business information, and confidential

information for its own use," (iii) interfered with AppealTech's business relationships by

appropriating confidential information and, (iv) "[u]pon information and belief," utilized this

information to further its own business interests. *Id.,* ¶¶ 52, 66, 103, 132-134, 154. AppealTech

alleged no further specifics with regard to these allegations.

AppealTech further claims that Defendants' conduct caused it to lose "key clients and

business" in 2016 and 2017, yet it neglects to identify a single such client that was lost. Am.

Cmplt., ¶ 155. AppealTech does, however, identify one client it lost in 2018. It alleges that the

law firm of Horing Welikson & Rosen, P.C. ("Horing") advised that it was transferring its

account to Counsel Press. *Id.,* ¶ 157. AppealTech speculates that Counsel Press utilized

8

confidential information retained by Mynes to entice Horing to move its business to Counsel

Press in 2018. *Id.,* ¶ 158. However, it is public knowledge that Horing has been a Counsel Press

client for years, because Counsel Press put its logo on Horing's appeal briefs prepared by

Counsel Press in the form of a unique printer's mark on the cover page, and each filing is public.

*See, e.g.* Cronin Aff., Exh. E. Moreover, AppealTech does not specify what "confidential

information" might have been used, and the fact that Horing was an AppealTech client was

publicly available because AppealTech also put its logo on Horing's appeal briefs prepared by

AppealTech in the form of a unique printer's mark on the cover page, and each filing is public.

*Id.,* Exh. F. As a result, AppealTech's customer list is not only publicly available, but

AppealTech advertises it.

AppealTech also alleges a sixth cause of action seeking a permanent injunction against

Mynes' future breach of the Employment Agreement and a sixth cause of action against Mynes

and Wallach for attorneys' fees and costs.[3] Am. Cmplt., p. 24-25.

**E.      The Current Motion**

Counsel Press and the Gladstone Entities bring this Motion to have the third, fourth, and

fifth causes of action in the Complaint dismissed. The Motion also seeks dismissal of the

seventh causes of action to the extent it is alleged against Counsel Press and/or the Gladstone

Entities.

---

[3]      AppealTech's cause of action for a permanent injunction has, for the most part, been rendered moot. In the February 8, 2018 so-ordered Stipulation, the parties agreed that Mynes work for Counsel Press would be largely limited for the period of six (6) months from January 19, 2018, and if Counsel Press has any of AppealTech's confidential information, that information would be destroyed. *See* Cronin Aff., Exh. D.

9

## ARGUMENT

## POINT ONE

## APPEALTECH FAILED TO ALLEGE CLAIMS
## AGAINST MOVANTS FOR TORTIOUS INTERFERENCE

AppealTech's claims for tortious interference against Counsel Press and the Gladstone

Entities are deficient for a multitude of reasons. In deciding the Motion, the Court must "accept

the facts as alleged in the complaint as true" and "determine only whether the facts as alleged fit

within any cognizable legal theory." *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 (1994) (citing

*Morone v. Morone*, 50 N.Y.2d 481 (1980)). "[A] plaintiff's failure to plead each element of a

tortious interference claim with specificity requires dismissal of that claim." *Korangy Publ., Inc.*

*v. Miceli*, 22 Misc. 3d 1130(A) (Sup. Ct. N.Y. Cnty. 2009) (citing *Bonanni*, 133 A.D.2d at 587).

AppealTech's allegations of tortious interference both fail to allege a cognizable legal theory and

fail to satisfy the requirement of pleading with specificity. Therefore, they are insufficient as a

matter of law and should be dismissed.

A.    *AppealTech Failed to Allege a Claim for Tortious Interference with Contract*

To adequately plead a claim for tortious interference with contract, AppealTech must

allege these elements with specificity: "(1) a valid contract between the plaintiff and a third

party; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of a

breach of that contract without justification; (4) actual breach; and (5) damages." *Martian*

*Entertainment, LLC v. Harris*, 12 Misc. 3d 1190(A) (Sup. Ct. N.Y. Cnty. 2006) (citing *NBT*

*Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 620-21 (1996)). AppealTech

failed to satisfy these requirements for at least three reasons. First, the allegations fail to allege

the existence of a valid contract because the Employment Agreements are unenforceable.

Second, AppealTech's claims improperly rely on speculative and conclusory allegations

10

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 56    19-01435-jlg   Doc 5-15   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit N - RECEIVED NYSCEF: 09/18/2018
MOL re Motion to Dismiss.   Pg 18 of 29

predominantly alleged "upon information and belief." Third, AppealTech failed to allege a breach of the Confidentiality Provisions, because it does not identify any confidential information that was allegedly disclosed to Counsel Press.

### 1.   AppealTech Failed to Allege the Existence of a Valid Contract

AppealTech's claims for tortious interference should be dismissed because the underlying Employment Agreements are not valid contracts. *Lau v. Lazar*, 130 A.D.3d 413(1st Dep't 2015)(citing *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996)). Agreements, such as the Employment Agreements, which "restrict[] an individual's right to work or compete are not favored and thus are strictly construed." *Goodman v. N.Y. Oncology Hematology, P.C.*, 101 A.D.3d 1524, 1526 (3d Dep't 2012) (citing *Morris v. Schroder Capital Mgt. Intl.*, 7 N.Y.3d 616, 620 (2006); (*BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999)); *see also Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 332 (1st Dep't 2008) (the "stricter" reasonableness standard applies to restrictive covenants in employment agreements.). Indeed, "powerful public policy considerations militate against enforcement of restrictive covenants." *Maltby v. Harlow Meyer Savage, Inc.*, 166 Misc.2d 481, 485 (1995) (citing *Columbia Ribbon and Carbon Manuf. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977); *Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267, 272 (1963)).

Under New York law, the Restrictive Covenants must be reasonable, and they will only be deemed reasonable if they: "(1) [are] no greater than is required for protection of the legitimate interest of the employer, (2) do[] not impose undue hardship on the employee, and (3) [are] not injurious to the public." *BDO Seidman*, 93 N.Y.2d at 388-89. "Violating 'any prong renders the covenant invalid." *Goodman*, 101 A.D.3d at 1526 (citing *BDO Seidman*, 93 N.Y.2d at 388-89). Restrictive covenants provoke "undoubted judicial disfavor" and must be

11

"reasonable in time and area…" *Crown It Servs., Inc. v. Koval-Olsen*, 11 A.D.3d 263, 264 (1st

Dep't 2004) (citing *BDO Seidman*, 93 N.Y.2d at 382; *see also Reed, Roberts Assocs. Inc. v.*

*Strauman*, 40 N.Y.2d 303, 307 (1976) ("In order to be enforceable, an anticompetitive covenant

ancillary to an employment agreement must be reasonable in time and area, necessary to protect

the employer's legitimate interests, not harmful to the public, and not unreasonably burdensome

to the employee.")).

The Wallach Non-Solicitation Provision and the Mynes Non-Compete Provisions

(together, the "Non-Compete Provisions") are unenforceable on their face. First, their

nationwide scope is geographically overbroad because Wallach and Mynes were based in the

New York market. The Non-Compete Provisions restrict competition "in any geographic area in

which [AppealTech] does or is actively seeking to do business." *See* Am. Cmplt., ¶ 44. Such a

vast geographic restriction is far greater than required to protect AppealTech's legitimate

interests, and New York courts routinely deem such broad geographic restrictions unenforceable.

*See, e.g., Good Luck, L.P. v. Kosachuk*, 49 A.D.3d 331, 332 (1st Dep't 2008) (holding that

restrictive covenant covering the entire United States was unreasonable); *ENV Servs., Inc. v.*

*Alesia*, 10 Misc. 3d 1054(A) (Sup. Ct. Nassau Cnty. 2005) (citing *Rescomcleaning, Inc. v. Ulloa*,

5 Misc 3d 1003[A] (Sup Ct. Suff. Co. 2004) (holding that the geographic limitation of 100-mile

radius of "any geographic area where former employer is . . . engaged in business, or maintains

sales or service representatives or employees," is unreasonably broad in scope)); *Blackman*

*Plumbing Supply Co. v. Connelly*, 2011 N.Y. Misc. LEXIS 4352, at *6 (Sup. Ct. Nassau Cnty.

2011) (restriction prohibiting competition in area from Manhattan to Montauk is unreasonable).

Second, the Non-Compete Provisions purport to bar Wallach and Mynes from soliciting

any AppealTech customers or potential customers, including customers with whom they never

had a relationship. It is well settled that such a "non-solicitation covenant is overbroad and therefore unenforceable [because] it seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment." *TSIG Consulting, Inc. v. ACP Consulting LLC*, 2014 N.TY. Misc. LEXIS 3788, at *16 (Sup. Ct. N.Y. Cnty. 2014) (citing *Brown & Brown, Inc. v. Johnson*, 115 A.D.3d 162 (4th Dep't 2014)) *see also Yeldin v. Lieberman*, 102 A.D.3d 769, 770 (2d Dep't 2013) (finding restrictive covenant unenforceable where it would have precluded the former employee from merely participating in projects that involved employer's present or former clients). The Non-Compete Provisions' broad-sweeping language is not limited to protect any legitimate interest. Instead, it seeks to baldly restrain competition – which by law it may not do.

Accordingly, the Court should find the Employment Agreements are unenforceable as a matter of law and, as a result, AppealTech's claims that Movants tortiously interfered with the Employment Agreements must be dismissed.

### 2. AppealTech Failed to Allege Its Claims with Specificity

Regardless of whether the Employment Agreements are enforceable, which they are not, AppealTech failed to adequately plead tortious interference with the Employment Agreements. "[T]o avoid dismissal of a tortious interference with contract claim, a plaintiff must support his claim with more than mere speculation." *Jonas v. Newedge USA, LLC*, 2008 N.Y. Misc. LEXIS 9805, at *26 (Sup. Ct. N.Y. Cnty. 2008) (citiong *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006)). "Failure to plead in nonconclusory language facts establishing all the elements of a wrongful and intentional interference in the contractual relationship requires dismissal of the action." *Bonanni*, 133 A.D.2d at 587 (citation omitted). Also, AppealTech must specifically

allege that the contract would not have been breached "but for" the Movants' conduct. *Jonas*, 2008 N.Y. Misc. LEXIS 9805, *26 (citing *Burrowes*, 25 A.D.3d at 373).

The court's holding in *Jonas* is instructive here. In that case, plaintiffs alleged that defendants tortiously interfered with a contract between plaintiffs and co-defendant. There, the court noted despite plaintiff's assertions to the contrary, "in reality, the amended complaint merely speculates, in the most conclusory of terms, that [defendants] induced [co-defendant] to delay signing a definitive agreement and to renege on its existing contractual and other legal obligations..." The court held that "[t]hese conclusory allegations are insufficient to sustain a claim for tortious interference with contract." *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at *26-28 (citing *Chestnut Hill Partners, LLC v. Van Raalte,* 45 AD3d 434, 435 (1st Dep't 2007) ("the speculative allegations set forth by plaintiff are insufficient to sustain a claim for ... tortious interference with contract"); *Black Car and Livery Ins., Inc. v H&W Brokerage. Inc.,* 28 AD3d 595, 595 (2d Dep't 2006) ("The cause of action alleging tortious interference with a contract was properly dismissed as to the respondent, as the allegations in support of this cause of action 'are devoid of a factual basis and are vague and conclusory'") (citation omitted); *Martian Entertainment, LLC v Harris,* 12 Misc 3d 1190[A], (Sup. Ct., NY Cnty 2006) (dismissing tortious interference claim on ground that "plaintiff must support its claim with more than mere speculation")).

Like the allegations in *Jonas*, the allegations in this case merely speculate, in the most conclusory terms, that Counsel Press induced the Employees to breach the Employment Agreements. For example, AppealTech alleges that Counsel Press "intentionally induced" the Employees to breach the Employment Agreements. However, AppealTech fails to specify how this purported inducement was carried out, nor does it allege any wrongful means despite having

14

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM

INDEX NO. 650620/2018

NYSCEF DOC. NO. 56

19-01435-jlg   Doc 5-15   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit N -
MOL re Motion to Dismiss.   Pg 22 of 29

RECEIVED NYSCEF: 09/18/2018

already amended its Complaint once when faced with the lack of specificity on this precise issue.

Rather, AppealTech's amended claims amount to nothing more than speculation that: (i) the

Employees <u>may</u> have retained certain information from their employment at AppealTech and, <u>if</u>

they did, (ii) they <u>may</u> also have shared that information with Counsel Press and, <u>if</u> they did,

(iii) Counsel Press <u>may</u> have misused that information.  These speculative and conclusory

allegations are insufficient as a matter of law.

The allegations against the Gladstone entities are even more speculative, extending the

already essentially hypothetical claims against Counsel Press to another level of attenuation.

AppealTech merely alleges that the Gladstone Entities provided "advice and guidance" to

Counsel Press.  Such benign allegations are simply not actionable.

The allegations are also insufficient because they are alleged "upon information and

belief."  Indeed, the *Jonas* court noted that dismissal was particularly appropriate given that most

of the allegations in support of the tortious interference claim were made "upon information and

belief" and are therefore insufficient as a matter of law.  *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at

*28 (citing *Angel v. Bank of Tokyo-Mitsubishi. Ltd.,* 39 A.D.3d 368, 369 (1st Dep't 2007)

(allegations in complaint made upon information and belief are insufficient to withstand a

motion to dismiss); *Mandarin Trading Ltd. v. Wildenstein,* 17 Misc 3d 1118(A) (Sup. Ct., N.Y.

Cnty. 2007) (allegation based upon information and belief "is simply a conclusory claim or

statement unsupported by factual evidence," and, as such, "the bald allegation is not entitled to

preferential consideration" on a motion to dismiss)).

Similarly, the majority of AppealTech's allegations of tortious interference are made "on

information and belief."  For example, AppealTech alleges that "upon information and belief,

Counsel Press has used confidential information provided to it by the Employees.  *See, e.g.* Am.

15

151526.00601/111969239v.1

Cmplt. ¶¶ 57-58, 96, 98, 103-104. As New York courts have repeatedly held, these allegations are insufficient.

The *Jonas* court also noted that plaintiffs failed to allege that "but for" the defendants' actions, the contract would not have been breached. The court held that "this omission is fatal to the[] claim." *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at *28-29 (citing *CDR Creances S.A. v. Euro-American Lodging Corp.*, 40 AD3d 421, 422 (1st Dep't 2007) ("The tortious interference cause of action was deficient for failure to allege the required 'but for' causation and intent to induce a breach in nonconclusory fashion"); *Constantin Assocs. v. Kapetas*, 17 Misc 3d 1137(A) (Sup. Ct., N.Y. Cnty. 2007) (stating same)).

Here, AppealTech has not alleged that "but for" Movants' actions, Wallach and Mynes would not have breached the Employment Agreements. To the contrary, AppealTech concedes that there has been an exodus of employees from AppealTech to Counsel Press in the midst of AppealTech's financial struggles. *See, e.g. Greystone Staffing, Inc. v. Warner*, 106 A.D.3d 954 (2d Dep't 2013) (declining to enforce non-compete where former employer was in a financial downturn and enforcement would effectively require employee to endure a year of unemployment). As a result of AppealTech's multiple failures to adequately plead tortious interference with contract, its claim should be dismissed.

### 3.    AppealTech Has Not Alleged a Breach of the Confidentiality Provisions

Finally, AppealTech has not alleged a breach of the Confidentiality Provisions. As an initial matter, the Complaint merely speculates, on information and belief, that certain information may have been shared with Counsel Press. But even if AppealTech's speculative allegations were sufficient, which they are not, the information AppealTech claims to have been disclosed does not constitute confidential information that is subject to protection. To sustain its

16

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 24 of 29

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

claim, AppealTech must allege that Mynes shared confidential information that was not otherwise available through public sources. *See Comcast Sound Commc'ns, Inc. v. Hoeltke*, 572 N.Y.S.2d 189 (4th Dep't 1991) (a nondisclosure provision is unenforceable where a list of customer names is readily ascertainable from sources available to the general public); *see also* Employment Agmt., ¶ 10 (definition of "Confidential Information" specifically excludes "information that is or has become publicly known or made generally available…). AppealTech's allegations fail in this regard.

AppealTech does not identify <u>any</u> specific information it believes the Employees shared with Counsel Press. For example, it lists vague categories of information Mynes allegedly accessed months before he even began discussions with Counsel Press. None of the categories identified by AppealTech are subject to protection as confidential information. For example, the customer lists are publicly available because, when AppealTech prepares an appeal for a client, AppealTech applies its logo to the papers in the form of a unique printer's mark on the cover page, and each filing is public. *See* Cronin Aff., Exh. E. As a result, <u>AppealTech's customer list is not only publicly available, but AppealTech advertises it</u>.

The remainder of the vague categories are likewise unprotected because they are comprised of basic information such as presentation materials and checklists. It strains credulity to characterize this information as confidential. AppealTech has not endeavored to specify a single piece of confidential information it believes to have been misappropriated. Accordingly, its allegations against Movants relating to the Employees' supposed breach of the Confidentiality Provisions should be dismissed.

17

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56

INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 25 of 29

**B.**     ***AppealTech Failed to Allege a Claim for***
***Tortious Interference with Business Relationships***

AppealTech also failed to adequately allege tortious interference with any business relationship. To state a claim for tortious interference with business relationship, AppealTech must plead these elements with specificity: "(1) that it had a business relationship with a third party; (2) that the defendant knew of the relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Academy Orthotic & Prostehetic Assoc. IPA, Inc. v. Healthfirst PHSP, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at *40 (Sup. Ct. N.Y. Cnty. 2016) (citing *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47 (1st Dep't 2009)). The Amended Complaint satisfies none of these elements.

"The law deliberately makes tortious interference with business relations more difficult to plead and prove by virtue of the requirement that plaintiff establish sufficiently 'culpable conduct' in the form of malice or an independent tort." *Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40 (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004)). Specifically, AppealTech must allege that Counsel Press interfered with a specific business relationship by "wrongful means, consisting of fraud, misrepresentation, physical violence, civil suits, criminal prosecutions and some degree of economic pressure….or that defendant acted for the sole purpose of harming the plaintiff." *Martian Entertainment, LLC*, 12 Misc. 3d 1190(A) (citing *Snyder v. Sony Music Entertainment, Inc.*, 252 A.D.2d 292, 299-300 (1st Dep't 1999); *Don Buchwald & Assoc., Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001); *Jurlique, Inc. v. Austral Biolab Pty., Ltd.*, 187 A.D.2d 637, 639 (2d Dep't 1992)).

18

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56
19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 26 of 29
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

Finally, "[i]t is well settled that 'wrongful means' cannot be conclusorily pleaded." *Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40 (citing *Kickertz v. N.Y. Univ.*, 110 A.D.3d 268, 275 (1st Dep't 2013)(citation omitted)); *see also Geffert Co., Inc. v. Fratelli Bonella, SRL*, 2015 N.Y. Misc. LEXIS 3699, *16-17 (Sup. Ct. Nassau Cnty. 2015) (citing *Washington Ave. Assocs. v. Euclid Equip.*, 229 A.D.2d 486, 487 (2d Dep't) 1996)("generic allegations which vaguely refer to 'wrongful means'… neither particularly describe the misconduct at issue nor disclose precisely how each defendant allegedly committed whatever wrongful acts are being relied upon")).

In sum, AppealTech must allege in nonconclusory language that Movants' acts were accompanied by wrongful means, and that but for such acts AppealTech would have entered into new relationships with a specific client. *Algomod Tech. Corp. v. Price*, 65 A.D.3d 974, 975 (1st Dep't 2009) (citing *Bonanni*, 133 A.D.2d 585, 586-87 (1987); *NBT Bancorp*, 87 N.Y.2d at 621; *Vigoda v. DCA Prods. Plus*, 293 A.D.2d 265 (2002)). AppealTech did not satisfy any of these requirements.

First, AppealTech has not alleged any supposed wrongful means with specificity. Instead, it speculates with no supporting detail that Movants interfered with AppealTech's business relationships by appropriating confidential and proprietary information and acquiring AppealTech's client lists and that, "[u]pon information and belief," Counsel Press has utilized this information to further its own business interests. As a matter of law, these speculative and conclusory statements are insufficient to allege wrongful means. Moreover, as established above, AppealTech makes its customer list public and, as a result, the list cannot be confidential.

Second, AppealTech did not even attempt to allege that Movants acted purely out of malice. To the contrary, it is clear from the Complaint that AppealTech is alleging only that

19

Movants acted in their own economic interest to gain a competitive advantage and expand Counsel Press's market share. *See Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40-41 (a plaintiff fails to plead malice if it alleges that defendant acted in its economic interest).

Third, AppealTech did not identify any client relationships with which Movants improperly interfered. AppealTech does, however, identify Horing which alleged transferred its account to Counsel Press in 2018. AppealTech speculates that Counsel Press utilized confidential information retained by Mynes to entice Horing to move its business to Counsel Press in 2018. However, it is public knowledge that Horing has been a Counsel Press client for years. Moreover, AppealTech does not specify what "confidential information" might have been used, and the fact that Horing had been using AppealTech's services is also publicly available.

AppealTech's allegations fall woefully short of New York's heightened pleading requirement for tortious interference. As a result, AppealTech's claim against Movants for tortious interference with business relationships should be dismissed.

## POINT TWO

### APPEALTECH FAILED TO ALLEGE A CLAIM AGAINST MOVANTS FOR UNFAIR COMPETITION

Finally, AppealTech failed to allege its claim for unfair competition against Movants. Claims for unfair competition under New York law address "commercial immorality." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (citing *Roy Export Co. Establishment v. CBS, Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)). A claim for unfair competition based on "the mere inducement of an at-will employee to join a competitor" is not actionable unless "dishonest means are employed, or the solicitation is part of a scheme designed solely to produce damage." *Headquarters Buick-Nissan, Inc. v. Michael Oldsmobile*, 149 A.D.2d 303,

20

304 (1st Dep't 1989) (citations omitted). A "cause of action for unfair competition is generally predicated on the alleged bad faith misappropriation of a commercial advantage belonging to another 'by exploitation of proprietary information or trade secrets.'" *Volt Delta Res. LLC v. Soleo Commc'ns, Inc.*, 816 N.Y.S.2d 702 (Sup. Ct. N.Y. Cnty. 2006) (dismissing unfair competition counterclaim where defendant "failed to allege that plaintiff exploited any proprietary information or trade secrets.") (citing *Beverage Mktg. USA v. South Beach Bev. Co.*, 20 A.D.3d 439, 440 (2d Dep't 2005); *Eagle Comtronics v. Pico Prods.*, 256 A.D.2d 1202, 1203 (4th Dep't 1998)).

Here, even under AppealTech's theory set forth in the Amended Complaint, Counsel Press hired the Employees to gain a competitive advantage. As a result, it cannot be said that Movants "acted to solely to produce damage." Moreover, AppealTech failed to establish that Movants exploited proprietary information or trade secrets. As established above, the information alleged to have been misappropriated is not proprietary, and much of it is publicly available. As a result, the allegations in the Amended Complaint do not sustain AppealTech's unfair competition claim.

## CONCLUSION

For all the foregoing reasons, Movants respectfully request an order granting their Motion to Dismiss in its entirety, along with such other and further relief as the Court may deem just and proper.

21

151526.00601/111969239v.1

FILED: NEW YORK COUNTY CLERK 09/18/2018 04:37 PM
NYSCEF DOC. NO. 56

INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-15    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit N -
MOL re Motion to Dismiss.    Pg 29 of 29

Dated: New York, New York
        September 18, 2018

                                    BLANK ROME LLP

                                    By: _____

                                         Anthony A. Mingione
                                         Ryan E. Cronin
                                    The Chrysler Building
                                    405 Lexington Avenue
                                    New York, New York 10174
                                    Telephone: (212) 885-5345
                                    Email: amingione@blankrome.com
                                            rcronin@blankrome.com
                                    *Attorneys for Defendant Counsel Press, Inc.*

                                        22