# Exhibit P

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Z & J LLC d/b/a APPEALTECH, | NYSCEF CASE |
| Plaintiff, | Hon. Doris Ling-Cohan, J.S.C |
| v. | No. 650620/2018 |
| LAURENCE MYNES, COUNSEL PRESS INC., GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATIONS, GLADSTONE ADMINISTATION, LLC AND JONATHAN WALLACH, | |
| Defendants. | |
| LAURENCE MYNES AND JONATHAN WALLACH, | |
| Counterclaim Plaintiffs, | |
| v. | |
| Z & J LLC d/b/a APPEALTECH AND MICHAEL KESTAN, Jointly and Severally, | |
| Counterclaim Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LAURENCE MYNES
AND JONATHAN WALLACH'S MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT

Dated: September 18, 2018
    New York, New York

Motion Return Date: October 10, 2018

Douglas B. Lipsky
LIPSKY LOWE LLP
630 Third Avenue, Fifth Floor
New York, New York 10017
*Counsel for Defendants Mynes and Wallach*

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 58
19-01435-jlg   Doc 5-17   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit P -
MOL re Motion to Dismiss.   Pg 3 of 28
RECEIVED NYSCEF: 09/18/2018

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................... 2

    A.    AppealTech and Counsel Press ...................................................... 2

    B.    Laurence Mynes................................................................................ 3

    C.    Jonathan Wallach ............................................................................ 4

    D.    Procedural History. ......................................................................... 5

LEGAL ARGUMENT ....................................................................................... 6

I.      APPEALTECH'S CLAIMS AGAINST MYNES AND WALLACH DO NOT SURVIVE THE MOTION TO DISMISS STANDARD........................................ 6

II.     APPEALTECH'S BREACH OF CONTRACT CLAIM FAILS FOR FUNDAMENTAL REASONS, INCLUDING THE AGREEMENTS ARE UNENFORCEABLE AND NO BREACH OCCURRED .................................... 7

    A.    The Agreements' Non-Compete Provisions Extend Beyond What Is Permissible, Making Them Unenforceable................................................. 7

          1.    The Geographical Scope of the Non-Compete Is Unreasonable. ... 8

          2.    The Non-Solicitation Provisions Extend Too Far, Covering Individuals With Whom Mynes and Wallach Had No Contact...... 9

          3.    The Court Should Decline AppealTech's Likely Request to Modify the Covenants And, Instead, Categorically Bar Their Enforcement. ................................................................................. 11

    B.    AppealTech Fails to Show Mynes Breached the Agreement By Commencing Employment With Counsel Press....................................... 11

    C.    AppealTech Fails to Show Mynes and Wallach Breached The Agreement By Disclosing Confidential Information to Counsel Press. ...................... 13

          1.    The FAC Does Not Sufficiently Show the Information Is Ultimately

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 58
19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 4 of 28
RECEIVED NYSCEF: 09/18/2018

Confidential...................................................................................... 13

2. The FAC Does Not Sufficiently Identify What Supposed Confidential Information Wallach and Mynes Imparted to Counsel Press. ....................................................................................... 15

III. APPEALTECH'S BREACH OF THE DUTY OF LOYALTY CLAIM DUPLICATES ITS BREACH OF CONTRACT CLAIM, WARRANTING ITS DISMISSAL AS A MATTER OF LAW................................................. 16

IV. FATAL TO ITS TORTIOUS INTERFERENCE CLAIM, APPEALTECH DOES NOT CLAIM MYNES AND WALLACH DIRECTED ANY TORTIOUS CONDUCT AT APPEALTECH CLIENTS, NOR DOES IT SUFFICIENTLY IDENTIFY THE SUPPOSED TORTIOUS ACTS. ............................................. 17

A. The Tortious Interference Claim Is Misdirected........................................ 18

B. AppealTech Fails To Plead With Particularly What Wrongful Means, If Any, Mynes and Wallach Used. ............................................................... 19

V. WITH THE FAILED SUBSTANTIVE CLAIMS, APPEALTECH CANNOT SEEK A PERMANENT INJUNCTION AGAINST MYNES NOR FEES AGAINST BOTH. ................................................................................ 20

VI. COUNSEL PRESS, GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATION, GLADSTONE ADMINISTRATION, LLC'S MOTION.............................................................. 21

CONCLUSION.................................................................................................. 21

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 58
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 5 of 28

# TABLE OF AUTHORITIES

## CASES

*1 Model Mgt., LLC v. Kavoussi*,
82 A.D.3d 502 (1st Dep't 2011) ................................................................... 14

*2470 Cadillac Res., Inc. v. DHL Exp. (USA), Inc.*,
84 A.D.3d 697, 923 N.Y.S.2d 530 (1st Dep't 2011) ................................. 13, 14

*Am. Para Professional Sys. v. Examination Mgmt. Servs., Inc.*,
214 A.D.2d 413, 625 N.Y.S.2d 33 (1st Dep't 1995) ...................................... 8

*Anonymous v. Anonymous*,
233 A.D.2d 162, 649 N.Y.S.2d 665 (1st Dep't 1996) ................................... 15

*BDO Seidman v. Hirshberg*,
93 NY2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999) ............................ 8

*Bower v. FDR Servs. Corp.*,
Index No. 651420/2016, 2016 N.Y. Misc. LEXIS 2400 (N.Y. Sup. Crt. N.Y. Cty. June
28, 2016) ...................................................................................................... 11

*Brown & Brown, Inc. v. Johnson*,
25 N.Y.3d 364 (N.Y. 2015) ........................................................................... 8

*Business Intelligence Servs., Inc. v. Hudson*,
580 F. Supp. 1068 (S.D.N.Y. 1984) ............................................................... 8

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004) ........................... 19

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
76 A.D.3d 310, 910 N.Y.S.2d 618 (1st Dep't 2010) ...................................... 16

*Columbia Ribbon & Cabon Mfg. Co. v. A-1-A Corp.*,
42 N.Y.2d 496 (N.Y. 1977) ........................................................................... 8

*Contempo Communications, Inc. v. MJM Creative Services, Inc.*,
182 A.D.2d 351, 582 N.Y.S2d 667 (1st Dep't 1992) .................................... 10

*Crippen v. United Petroleum Feedstocks*,
245 A.D.2d 152, 666 N.Y.S.2d 156 (1st Dep't 1997) .................................... 11

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 58
19-01435-jlg   Doc 5-17   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit P -
RECEIVED NYSCEF: 09/18/2018
MOL re Motion to Dismiss.   Pg 6 of 28

957 F. Supp. 477 (S.D.N.Y. 1997)........................................................................ 18

*G.K.A. Beverage Corp. v. Honickman,*
55 F.3d 762 (2d Cir 1995) ................................................................................... 18

*Gino v. Dino De Laurentiis Corp.,*
141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ...................................... 15

*Good Energy, L.P. v. Kosachuk,*
49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dep't 2008) ...................................... 8, 10

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
98 N.Y.2d 314, 774 N.E.2d 1190 (N.Y. 2002) ................................................... 6

*Granirer v. Bakery, Inc.,*
54 A.D.3d 269, 863 N.Y.S.2d 396 (1st Dep't 2008) ........................................ 16

*Greenapple v. Capital One, N.A.,*
92 A.D.3d 548, 939 N.Y.S.2d 351 (1st Dep't 2012) .......................................... 6

*Healthworld Corp. v. Gottlieb,*
12 A.D.3d 278, 786 N.Y.S.2d 8, (1st Dep't 2004) ........................................... 10

*Kaisman v. Hernandez,*
61 A.D.3d 565, 878 N.Y.S.2d 305 (1st Dep't 2009) .......................................... 6

*Marsh USA, Inc. v. Alliant Ins. Servs., Inc.,*
No. 651994/15, 2015 N.Y. Misc. LEXIS 3814 (N.Y. Sup. Ct. N.Y. Cty. 2015) ............. 13

*McGuire v. Sterling Doubleday Enters., L.P.,*
19 A.D.3d 660, 799 N.Y.S.2d 65 (1st Dep't 2005) ............................................ 7

*Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
48 N.Y.2d 84, 86 (N.Y. 1979) ............................................................................. 7

*Sontag v. Cook,*
Index No. 600102/04, 2005 N.Y. Misc. Lexis 3256 (N.Y. Sup. Crt. N.Y. Cty. 2005) ...... 8

*Thome v. Alexander & Louisa Calder Found.,*
70 A.D.3d 88, 890 N.Y.S.2d 16, 31 (1st Dep't 2009) ...................................... 18

*VisionChina Media Inc. v. Shareholder Representative Servs., LLC,*
109 A.D.3d 49, 967 N.Y.S.2d 338 (1st Dep't 2013) ........................................ 12

*Weinreb v. 37 Apts. Corp.,*
97 A.D.3d 54, 943 N.Y.S.2d 519 (1st Dep't 2012) .......................................... 20

*Williams-Smith v. MTA N.Y.C. Transit,*
82 A.D.3d 512, 918 N.Y.S.2d 345 (1st Dep't 2011) ......................................................... 6

*Willis of New York Inc., v. Defelice*,
299 A.D.2d 240, 750 N.Y.S.2d 39 (1st Dep't 2002) ......................................................... 10

Defendants Laurence Mynes and Jonathan Wallach submit this memorandum of law in support of their motion to dismiss Counts One, Two, Five, Six and Seven of AppealTech's First Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

This lawsuit – at its core – is about AppealTech's downward spiral, losing revenue, clients, market share and employees. Defendants Jonathan Wallach and Laurence Mynes are two of those employees who, between August 2016 and January 2018, quit AppealTech and joined Counsel Press. AppealTech, unhappy about these developments, filed a lawsuit against Mynes and Counsel Press. Then, after Mynes and Counsel Press filed a motion to dismiss that pleading, AppealTech filed the First Amended Complaint ("FAC"), adding Wallach and other entities as defendants and asserting five claims against Wallach and Mynes: breach of contract, breach of the duty of loyalty, tortious interference with business relationships, permanent injunction, and attorneys' fees. AppealTech, for these claims, stretches the law and Mynes and Wallach's employment agreements to the breaking point.

Multiple problems exist with the breach of contract claim. First, it rests upon enforcing a non-solicit provision that goes beyond what the First Department permits: the provision would bar them from soliciting customers with whom they never had any contact and includes a geographical scope that goes beyond where AppealTech does business. Second, it claims Mynes is breaching the agreement by being a Counsel Press employee – even though the agreement does not preclude this. Third, it claims Mynes and Wallach breached the confidentiality provision but fails to plead facts which, if proven, would show the information is confidential and equally fails to identify what information they allegedly shared with Counsel Press.

Its breach of duty of loyalty claim suffers from a different problem. This claim is a near-mirror image of the breach of contract claim and does not identify any duty that exists separate and apart from the employment agreements.

The tortious interference with business relationships claim fails as well. The claim is, fundamentally, misguided. This tort focuses on whether someone wrongfully interfered with existing or prospective clients. The focus is thus, naturally, on conduct directed at those clients. But that is not where the FAC takes aim. The FAC, rather, focuses, entirely on Mynes and Wallach's conduct towards AppealTech. What's more, this claim cannot be pleaded in a conclusory manner. AppealTech's burden is, instead, to assert specific facts showing how they acted with the specific intent to harm it. But it cannot carry that burden. It, instead, resorts to "group pleadings," claiming all of the "Defendants" interfered with these relationships – without specifying how, what clients and who did what.

In the end, the substantive claims against Mynes and Wallach fail as a matter of law. With that, AppealTech's claims for injunctive relief and attorneys' fees also fall.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

A.    AppealTech and Counsel Press

AppealTech is an appellate service provider, with offices in New York City, Rochester, New York and Los Angeles and advises its clients on the technical and procedural aspects of appellate practice.[2] Counsel Press is also an appellate service

---

[1] These facts are based entirely on the assumed-to-be-true allegations in Plaintiff's First Amended Complaint and the Employment Agreements between AppealTech, Mynes and Wallach. Mynes and Wallach do not, however, admit or concede any of these allegations are true or that the Agreements are enforceable.

[2] Plaintiff's April 18, 2018 First Amended Complaint (Doc. No. 36) ("FAC") ¶¶ 22-26, Exhibit A to Douglas B. Lipsky's September 18, 2018 Affidavit ("Lipsky Aff.").

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 10 of 28

provider.[3]

B.    Laurence Mynes

AppealTech hired Mynes in 2006 as a Senior Appellate Consultant.[4] More than ten

years later, on November 16, 2016, he signed an employment agreement with AppealTech

("Mynes Employment Agreement") that contains various terms, including "Confidential

Information" and "Non-Competition" provisions. [5] The "Confidential Information"

provision states:

> You agree not to, directly or indirectly, disclose or use any of the
> Company's Confidential Information (defined below) during or after your
> employment, except to the extent necessary to perform your job duties for
> the Company . . .[6]

The "Non-Competition" provision states:

> You agree that during your employment and for a period of six (6) months
> after your employment terminates ("Restricted Period") for any reason, you
> will not, except as necessary to perform your job duties for the Company,
> directly or indirectly, on your own behalf or on behalf of any individual or
> entity, as an employee, owner, joint venture, consultant, contractor, or
> otherwise: (a) provide services for any individual, entity, or other third party
> that is engaged or seeks to engage in the same or similar business as that of
> the Company in any geographic area in which the Company does or is
> actively seeking to do business . . .[7]

Between June 2017 and January 2018, while an AppealTech employee, Mynes

"retained" his then-employer's client information and other confidential information[8] and

---

[3] FAC ¶ 29.
[4] FAC ¶ 76.
[5] November 16, 2016 Mynes-AppealTech Employment Agreement, Lipsky Aff. Exhibit
B; FAC ¶ 88. In using the "Employment Agreement" reference, Defendants do not
concede they are enforceable agreements.
[6] FAC ¶ 90; Employment Agreement ¶ 10, Exhibit B to Lipsky Aff.
[7] FAC ¶ 91; Employment Agreement ¶ 12, Exhibit B to Lipsky Aff.
[8] Mynes and Wallach do not concede any information is, in fact, confidential. For the sake
of brevity, they will, for purposes of this Motion, refer to the alleged confidential
information as merely "confidential information."

uploaded it to his personal iCloud account.[9] On January 17, 2018, Mynes resigned from

AppealTech and commenced employment with Counsel Press on January 29.[10] Mynes was

then, subsequently, listed on Counsel Press' website as a Senior Appellate Consultant.[11]

C.    Jonathan Wallach

On or about March 5, 2014, Wallach signed an employment agreement with

AppealTech as staff counsel ("Wallach Employment Agreement"). [12] His agreement

contains "Confidential Information" and "Non-Competition" provisions that closely mirror

Mynes'. Wallach's "Confidential Information" provision states:

> You agree not to, directly, or indirectly, disclose or use any "Confidential
> Information" during or after your employment, except as required to do
> your job for the Company and as may be required by law or subpoena . . .[13]

The "Non-Solicitation" provision states:

> . . . You agree that, during your employment and for twelve (12) months
> after your employment terminates, voluntarily or involuntarily, you will not,
> directly or indirectly, on your own behalf or on behalf of any individual or
> entity, in any geographic area in which the company does or is seeking to
> do business, engage in any of the following conduct, except as necessary to
> perform your job duties for the Company (a) encourage, induce or attempt
> to encourage or induce any Client to change the nature, terms, or amount of
> business it conducts with the Company; or (b) solicit, hire, or attempt to
> solicit or hire, any individual who is an employee, consultant, or contractor
> of the Company or who was an employee, consultant, or contractor of the
> Company at any time during the six (6) months preceding the termination
> of this Agreement.[14]

Wallach, prior to resigning, emailed to his personal email account sales reports,

---

[9] FAC ¶¶ 99-100.

[10] FAC ¶ 101.

[11] FAC ¶ 107.

[12] FAC ¶ 41; March 5, 2014 AppealTech-Wallach Employment Agreement, Lipsky Aff. Exhibit C. In using the "Employment Agreement" reference, Defendants do not concede they are enforceable agreements.

[13] Wallach Employment Agreement ¶ 10, Lipsky Aff. Exhibit C; FAC ¶ 42.

[14] Wallach Employment Agreement ¶ 12, Lipsky Aff. Exhibit C; FAC ¶43.

-4-

client lists, client documents, client deadlines and a list of active accounts.[15] Wallach, on

an unspecified date, sent AppealTech's "client lists and other confidential and propriety

information" to Counsel Press, which it uploaded to its system.[16] He then, on another

unspecified date, commenced employment with Counsel Press.

    D.    <u>Procedural History.</u>

    On February 7, 2018, AppealTech filed a Complaint against Mynes and Counsel

Press.[17] It asserted five causes of action: breach of contract against Mynes; breach of the

duty of loyalty against Mynes; tortious interference with a contract against Counsel Press;

tortious interference with a  prospective business relationship against Mynes and Counsel

Press; injunctive relief against Mynes and Counsel Press; and attorneys' fees against

Mynes and Counsel Press. AppealTech, in addition to filing the Complaint, moved, by way

of an Order to Show Cause, for a preliminary injunction and temporary restraining order

that would, *inter alia,* preclude Counsel Press from employing Mynes and preclude him

from disclosing any confidential information.[18] The parties subsequently entered into a

February 9, 2018 Stipulation and Order, mooting the Order to Show Cause.[19]

    On March 30, 2018, Mynes and Counsel Press filed separate Motions to Dismiss

the Complaint.[20] AppealTech, subsequently, filed the April 6, 2018 First Amended

Complaint, adding four new defendants: Gladstone Investment Corporation, Gladstone

Management Corporation, Gladstone Administration, LLC and Wallach.[21] While shuffling

---

[15] FAC ¶ 45.
[16] FAC ¶ 47.
[17] Doc. No. 1.
[18] Doc. Nos. 2-20.
[19] Doc. No. 22.
[20] Dkt. No. 25-35.
[21] Doc. No. 36.

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 13 of 28

some around and adding new paragraphs, the First Amended Complaint asserts the same

causes of action as against Mynes and adds Wallach as a defendant to them: breach of

contract; breach of the duty of loyalty; tortious interference with a prospective business

relationship; injunctive relief; and attorneys' fees.[22] The FAC, as explained below, does

not cure the deficiencies that plagued the initial Complaint. It, instead, ignores the legal

framework for each claim and continues to rely on conclusory, non-specific allegations

that are made "upon information and belief."[23]

<u>LEGAL ARGUMENT</u>

I.    APPEALTECH'S CLAIMS AGAINST MYNES AND WALLACH DO NOT
      SURVIVE THE MOTION TO DISMISS STANDARD.

        Courts, generally, "must accept as true the facts alleged in the complaint" and draw

every possible inference in the claimant's favor. *Williams-Smith v. MTA N.Y.C. Transit,* 82

A.D.3d 512, 513, 918 N.Y.S.2d 345 (1st Dep't 2011). Limits exist to this rule: "allegations

consisting of bare legal conclusions, as well as factual claims that are inherently incredible

or flatly contradicted by documentary evidence, are not entitled to such considerations."

*Kaisman v. Hernandez*, 61 A.D.3d 565, 566, 878 N.Y.S.2d 305 (1st Dep't 2009).

        Dismissal under C.P.L.R. § 3211(a)(1) is warranted when the documentary

evidence submitted "utterly refutes plaintiff's factual allegations" and conclusively

establishes a defense to the asserted claims as a matter of law. *Goshen v. Mutual Life Ins.

Co. of N.Y.*, 98 N.Y.2d 314, 326, 774 N.E.2d 1190 (N.Y. 2002); *see Greenapple v. Capital

One, N.A.*, 92 A.D.3d 548, 550, 939 N.Y.S.2d 351 (1st Dep't 2012). Dismissal under to

C.P.L.R. § 3211(a)(1) is accordingly appropriate when documentary proof disproves an

---

[22] *Id.*
[23] FAC ¶¶ 45-51, 95-100, 103, 116-117, 136.

-6-

essential allegation – even if the allegations, standing alone, could withstand a motion to dismiss. *McGuire v. Sterling Doubleday Enters., L.P.*, 19 A.D.3d 660, 661-62, 799 N.Y.S.2d 65 (1st Dep't 2005).

## II. APPEALTECH'S BREACH OF CONTRACT CLAIM FAILS FOR FUNDAMENTAL REASONS, INCLUDING THE AGREEMENTS ARE UNENFORCEABLE AND NO BREACH OCCURRED.

Inescapable flaws exist with AppealTech's breach of contract claim. This claim rests, in part, on enforcing non-compete provisions that go beyond what the First Department permits. It also claims Mynes breached his Agreement by becoming a Counsel Press employee – even though his Agreement does not prohibit this. It further claims Mynes and Wallach breached their Agreements because they removed confidential information and disclosed it to Counsel Press. But the FAC does not, as required, plead facts showing the information is, ultimately, confidential or identify what information was misappropriated.

### A. The Agreements' Non-Compete Provisions Extend Beyond What Is Permissible, Making Them Unenforceable.

The non-compete provisions in Wallach and Mynes' Agreements are over broad in two ways. AppealTech's claim that they breached this provision by soliciting its clients accordingly fails as a matter of law.[24]

Preliminarily, New York "public policy . . . militate[s] against sanctioning the loss of a man's livelihood." *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84, 86 (N.Y. 1979). Restrictive covenants, such as non-compete and non-solicitation provisions, are consequently "uniformly disfavored and are sustained only to the extent

---

[24] FAC ¶ 117.

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 15 of 28

that they are reasonably necessary to protect the legitimate interests of the employer and not unduly harsh or burdensome to the one restrained." *Id.* at 86-87 (quoting *Columbia Ribbon & Cabon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (N.Y. 1977)); *see also Brown & Brown, Inc. v. Johnson,* 25 N.Y.3d 364, 370 (N.Y. 2015) ("New York law provides that covenants not to compete should be strictly construed because of the powerful considerations of public policy which militate against sanctioning the loss of a person's livelihood").

A restrictive covenant in an employment agreement is reasonable and enforceable only if all three conditions are met: it "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 93 NY2d 382, 388-89, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999). Such covenants must be reasonably limited as to time and geographical scope. *Am. Para Professional Sys. v. Examination Mgmt. Servs., Inc.*, 214 A.D.2d 413, 625 N.Y.S.2d 33 (1st Dep't 1995). The Employment Agreements fail this test in many ways.

    1.    <u>The Geographical Scope of the Non-Compete Is Unreasonable.</u>

A restrictive covenant is unreasonable and unenforceable if its geographical scope extends beyond where the employer does business and where the employee serviced that employer within that scope. *See Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 332, 853 N.Y.S.2d 75 (1st Dep't 2008); *Sontag v. Cook*, Index No. 600102/04, 2005 N.Y. Misc. Lexis 3256 (N.Y. Sup. Crt. N.Y. Cty. 2005) (holding on motion to dismiss geographical scope unreasonably broad because it extends beyond where the company does business); *see also Business Intelligence Servs., Inc. v. Hudson*, 580 F. Supp. 1068 (S.D.N.Y. 1984)

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58

INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-17   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit P -
MOL re Motion to Dismiss.   Pg 16 of 28

(equating the reasonableness of the geographical restriction with the scope of plaintiff's business activity). The First Department held, for example, the geographical scope of a restrictive covenant was unenforceable because it was nationwide, when the company operated in only eight states. *Good Energy, L.P.*, 49 A.D.3d at 332.

The FAC confirms the unreasonableness of the geographical scope. AppealTech lists where it does business: New York City, Rochester, New York, Los Angeles, California and "surrounding areas, including New Jersey."[25] Yet the non-compete provisions for Wallach and Mynes go beyond that geographic scope. They both cover "any geographic area in which the Company does <u>or is actively seeking to do business.</u>"[26] This is, effectively, a non-compete with no defined borders.

The FAC's description of Mynes and Wallach's work at AppealTech does not save this restrictive covenant. It states that Mynes worked only in New York;[27] it is silent on where Wallach worked; and it is silent on where Mynes and Wallach's clients were based.

The non-compete, accordingly, goes beyond where AppealTech does business and where Mynes and Wallach's clients were located, making it unenforceable on its face and dooming the non-solicitation part of the breach of contract claim.[28]

    2.    The Non-Solicitation Provisions Extend Too Far, Covering Individuals With Whom Mynes and Wallach Had No Contact.

The non-solicit provisions impermissibly extend beyond any legitimate interest AppealTech needs to protect. The First Department has delineated the parameters of permissible non-solicitation provisions: a provision is permissible if it prevents a former

---

[25] FAC ¶¶ 23-24.
[26] Mynes Agreement ¶ 12(a); Wallach Agreement ¶ 12 (emphasis added).
[27] FAC ¶ 84.
[28] FAC ¶ 117.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 17 of 28

employee from competing for the business of customers with whom he had a relationship with while at his former employer. *Healthworld Corp. v. Gottlieb,* 12 A.D.3d 278, 279, 786 N.Y.S.2d 8, (1st Dep't 2004); *Willis of New York Inc., v. Defelice,* 299 A.D.2d 240, 242, 750 N.Y.S.2d 39 (1st Dep't 2002); *Contempo Communications, Inc. v. MJM Creative Services, Inc.*, 182 A.D.2d 351, 354, 582 N.Y.S2d 667 (1st Dep't 1992) (explaining the non-solicit is enforceable because it barred the employee from "competing with those companies with whom they had worked prior to their termination" and did not bar them from "soliciting those of plaintiff's clients for whom they had not worked."). A provision is, conversely, impermissible if it seeks to prevent an employee from soliciting customers with whom he never had a relationship while at his former employer or customers with whom he had a relationship with prior to his employment there. *Id.; see also Good Energy, L.P.*, 49 A.D.3d at 332 ("the covenant not to compete is unreasonable because it purports to prohibit defendant from dealing with Good Energy's entire client base, thus including not only those clients or customers that had been created and maintained at Good Energy's expense, but also those clients that were not serviced by defendant during his tenure at Good Energy and those that came to Good Energy solely because of a preexisting relationship with him").

The non-solicitation provision in Mynes and Wallach's Employment Agreements go beyond what the First Department has held is permissible. Their Agreements are not limited to customers they directly serviced or recruited while at AppealTech. They go further: they cover <u>any</u> actual client that any AppealTech employee serviced during their last six months and <u>any</u> prospective client that any AppealTech employee solicited during

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018
19-01435-jlg   Doc 5-17   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit P -
MOL re Motion to Dismiss.   Pg 18 of 28

their last six months.[29] That is impermissible on its face. *Healthworld Corp.,* 12 A.D.3d at 279; *Willis of New York Inc.* 299 A.D.2d at 242; *Contempo Communications, Inc.*, 182 A.D.2d at 354.

> 3.      The Court Should Decline AppealTech's Likely Request to Modify the Covenants And, Instead, Categorically Bar Their Enforcement.

The Court should reject AppealTech's likely argument to modify or "blue pencil" the covenants. The First Department, faced with similarly overly broad covenants, declined to modify covenants that were "unreasonably broad on [their] face." *Crippen v. United Petroleum Feedstocks*, 245 A.D.2d 152, 153, 666 N.Y.S.2d 156 (1st Dep't 1997). The First Department, in reaching that holding, held the modifications would have meaningfully altered the original contract and the employer "should have drafted the agreement to include [reasonable] provisions from the start." *Id.*; *Bower v. FDR Servs. Corp.,* Index No. 651420/2016, 2016 N.Y. Misc. LEXIS 2400 (N.Y. Sup. Crt. N.Y. Cty. June 28, 2016) (holding "this Court declines Defendant's proposal to modify the restrictive covenant so as to restrict Plaintiff only from working for defendant's two direct competitors in the hospital laundry"). That same logic applies here, resulting in the Agreements being *per se* unenforceable.

> B.      AppealTech Fails to Show Mynes Breached the Agreement By Commencing Employment With Counsel Press[30]

AppealTech overstates the scope of his Agreement in claiming Mynes breached it by "providing services" to Counsel Press.[31] The Agreement, in fact, does not prohibit this.

The breach of contract elements are well known: (1) formation of a contract

---

[29] Mynes Agreement ¶ 12; Wallach Agreement ¶ 12.
[30] The FAC does not assert Wallach breached the Agreement in this context. FAC ¶ 116.
[31] FAC ¶ 116.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM    INDEX NO. 650620/2018
NYSCEF DOC. NO. 58                                  RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
                     MOL re Motion to Dismiss.    Pg 19 of 28

between plaintiff and defendant; (2) plaintiff performed; (3) defendant failed to perform; and (4) resulting damages. *VisionChina Media Inc. v. Shareholder Representative Servs., LLC*, 109 A.D.3d 49, 58 967 N.Y.S.2d 338 (1st Dep't 2013). Absent any of these elements, the claim fails. *Id.*

The natural starting point for any breach of contract claim is the agreement. Mynes' Employment Agreement, importantly, does not prohibit Counsel Press from employing him. It, rather, purports to limit his ability to provide services for a company, which provides similar services as AppealTech in any geographic area in which AppealTech does business or is seeking to do business.[32] Applying this term to its description of AppealTech's business, Mynes is prohibited from "advis[ing] clients on the technical and procedural aspects of appellate practice, including court rules specific to each appellate jurisdiction"[33] in New York City, Rochester, New York, Los Angeles, California or New Jersey and wherever AppealTech is seeking to do business.

The FAC does not, however, plead facts that show Mynes violated this provision. It does not assert he is advising clients on appellate practice or on anything else – let alone in any prohibited geographical area. It asserts, instead, only that he commenced employment with Counsel Press in its New York City Office with the Senior Appellate Consultant title.[34] Nothing more. For that that threadbare allegation to support this claim, the Agreement would have to be rewritten to categorically prohibit Counsel Press from employing him. The Court would, furthermore, have to make two assumptions – that go beyond favorable inferences – for this claim to survive: that his duties at AppealTech and

---

[32] Agreement ¶ 12, Lipsky Aff. Ex. B.
[33] FAC ¶ 26.
[34] FAC ¶ 107.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 58                                                    RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
                        MOL re Motion to Dismiss.    Pg 20 of 28

Counsel Press are the same; and the location of his office automatically correlates with where his clients are located – which is not a given in this modern era. This part of the claim accordingly fails as a matter of law.

      C.        **AppealTech Fails to Show Mynes and Wallach Breached The Agreement By Disclosing Confidential Information to Counsel Press.**

AppealTech's breach of contract claim on Mynes and Wallach misappropriating confidential information fails for two independent reasons.[35] First, it does not establish the information is, in fact, confidential. Second, it does not sufficiently identify what information they purportedly disclosed.

      1.        The FAC Does Not Sufficiently Show the Information Is Ultimately Confidential.

To sufficiently assert a claim for misappropriating confidential information, the party must show it "took steps to maintain the secrecy of the information" allegedly being misappropriated. *2470 Cadillac Res., Inc. v. DHL Exp. (USA), Inc.*, 84 A.D.3d 697, 698, 923 N.Y.S.2d 530 (1st Dep't 2011). Failing to assert that these protective steps were taken is fatal. *Id.* (affirming dismissal of claim because plaintiff "failed to allege that [defendant] stole the information or that plaintiffs took steps to maintain the secrecy of the information."). This requirement is not met by merely asserting the information is confidential. More is required. *See Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, No. 651994/15, 2015 N.Y. Misc. LEXIS 3814, at \*12 (N.Y. Sup. Ct. N.Y. Cty. 2015) (holding plaintiff failed to assert a claim for misappropriating confidential information because it "failed to demonstrate how it protected the secrecy of the Excel spreadsheets, business plan, or SLA beyond the allegation that these documents were confidential.").

---

[35] FAC ¶ 115.

It is likewise necessary to show the information is, in fact, confidential. This requires showing that the information is not readily available to others in the same industry. *1 Model Mgt., LLC v. Kavoussi*, 82 A.D.3d 502, 503 (1st Dep't 2011) (affirming dismissal of misappropriating confidential information claim since plaintiff "failed to establish that its customer lists and model contact information are confidential, since it has not shown that the information is not readily available to others in the modeling industry.") AppealTech's claim fails on both fronts.

AppealTech identifies a few categories of its purported confidential information: sales reports, client lists, client documents, client deadlines, a list of active accounts, sales and marketing strategies, sales practices, client pricing data, "know-how," "good will," and "other related information."[36] It does not, however, identify any steps it took to protect the secrecy of that information. The company, instead, asserts only that the information it provided Wallach and Mynes is confidential, and they misused the information. That is not enough. *See 2470 Cadillac Res., Inc.*, 84 AD3d at 698.

AppealTech, also, fails to plead facts establishing the purported confidential information is, indeed, confidential. It does not, as required, show the information is unavailable to others in the same industry. *See 1 Model Mgt., LLC*, 82 A.D.3d at 503. Namely, it does not establish the identity of its clients or their contact information is known only to AppealTech. It likewise does not show how the other information is supposedly secret. It, instead, repeats the information is confidential and nothing more.

AppealTech's allegation that its client list is confidential underscores the point. It, like other appellate service providers, puts a unique printer's mark on the pleadings it

---

[36] FAC ¶¶ 45, 85.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58
19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 22 of 28
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

handles.[37] Any individual or company can accordingly learn the identity of AppealTech's clients by reviewing these publicly available records. And the Court is permitted to take judicial notice of this fact. *See RGH Liquidating Trust v. Deloitte & Touche LLP,* 71 A.D.3d 198, 207-208, 891 N.Y.S.2d 324 (1st Dep't 2009) ("it is well established that a court may take judicial notice of undisputed court records and files," including files in other matters). Its client list is thus far from confidential.  AppealTech, rather, broadcasts it to the public.

>    2.    The FAC Does Not Sufficiently Identify What Supposed Confidential Information Wallach and Mynes Imparted to Counsel Press.

Where, like here, a party is asserting a breach exists from disclosing confidential information, "vague and conclusory allegations are insufficient to sustain a breach of contract cause of action." *Gino v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436, 529 N.Y.S.2d 777 (1st Dep't 1988) (reversing and dismissing on a motion to dismiss a breach of contract claim); *see also Anonymous v. Anonymous*, 233 A.D.2d 162, 166, 649 N.Y.S.2d 665 (1st Dep't 1996) ("Vague and conclusory allegations concerning disclosures of confidential information are not a sufficient basis upon which to base a claim that a confidentiality agreement has been breached"). A party must, instead, identify the confidential information "impart[ed] to" the third-party. *Gino*, 141 A.D.2d at 436. AppealTech does not meet this standard for various reasons.

The heart of this claim is that Mynes and Wallach disclosed AppealTech's confidential information to Counsel Press, breaching the Agreement.[38] But the allegations

---

[37] Lipsky Aff. Exhibit D. AppealTech's mark is on the first two pleadings and the other pleadings have marks from different service providers.
[38] FAC ¶115.

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 23 of 28

fail to sufficiently identify what information was purportedly disclosed. As to Wallach, the

FAC asserts he sent AppealTech's "client lists and other confidential and proprietary

information to Counsel Press."[39] Again, the client lists are not confidential, reducing this

claim to the generic allegation of disclosing "other confidential and proprietary

information." A similarly vague allegation is made against Mynes, claiming he shared

"AppealTech's confidential and proprietary information with Counsel Press."[40]

The FAC accordingly fails to identify with the required specificity what

information they "impart[ed] to" Counsel Press. *Gino*, 141 A.D.2d at 436. This is fatal.

III.    APPEALTECH'S BREACH OF THE DUTY OF LOYALTY CLAIM
        DUPLICATES ITS BREACH OF CONTRACT CLAIM, WARRANTING ITS
        DISMISSAL AS A MATTER OF LAW.

AppealTech's breach of duty of loyalty claim is nothing more than a rebranding of

its breach of contract claim. It does not identify any duty that arises separate and apart from

Mynes and Wallach's Agreements. It should therefore be dismissed as duplicative of the

breach of contract claim.

A breach of fiduciary duty claim cannot stand, as a matter of law, when it duplicates

a breach of contract claim. *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de

C.V.*, 76 A.D.3d 310, 333-34, 910 N.Y.S.2d 618 (1st Dep't 2010) ("Generally, a cause of

action for breach of fiduciary duty that is merely duplicative of a breach of contract claim

cannot stand."); *Granirer v. Bakery, Inc.*, 54 A.D.3d 269, 272, 863 N.Y.S.2d 396 (1st Dep't

2008) ("The cause of action for breach of fiduciary duty should have been dismissed as

against the cooperative, as well as the individual defendants, because it is merely

_____

[39] FAC ¶ 47.
[40] FAC ¶ 104.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 24 of 28

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

duplicative of the cause of action for breach of the proprietary lease."). The pleading must go further. To assert both claims, the plaintiff must identify a duty that exists independent of the agreement. *Id.*

The FAC does not go further and, as required, identify any duty that exists separate from the Agreements. It, instead, asserts Mynes and Wallach breached their fiduciary duty to AppealTech by "appropriat[ing]" its confidential information.[41] The purported duty they breached with these alleged acts is, however, found in one place: Paragraph 10 of their respective Agreements. Indeed, while it changes the verbiage, this claim mirrors the breach of contract claim, which is entirely dependent on Paragraph 10.[42] This fact underscores the fiduciary duty claim duplicates the breach of contract claim, warranting its dismissal. *See Centro Empresarial Cempresa S.A.*, 76 A.D.3d at 333-334.

IV.    FATAL TO ITS TORTIOUS INTERFERENCE CLAIM, APPEALTECH DOES NOT CLAIM MYNES AND WALLACH DIRECTED ANY TORTIOUS CONDUCT AT APPEALTECH CLIENTS, NOR DOES IT SUFFICIENTLY IDENTIFY THE SUPPOSED TORTIOUS ACTS.

The tortious interference with business relationship claim misses the mark, as it focuses only on Mynes' and Wallach's conduct towards AppealTech. Yet a tortious interference claim concerns a party's conduct towards existing or prospective clients. On this, the FAC is silent. Equally problematic, the claim asserts Mynes and Wallach acted to harm AppealTech without identifying how they did so.

A tortious interference with business relationship claim has four elements: (1) "the plaintiff had business relations with a third party"; (2) "the defendant interfered with those business relations"; (3) "the defendant acted for a wrongful purpose or used dishonest,

---

[41] FAC ¶ 125.
[42] FAC ¶ 115.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 58
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 25 of 28

unfair, or improper means"; and (4) "the defendant's acts injured the relationship." *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108, 890 N.Y.S.2d 16, 31 (1st Dep't 2009). AppealTech cannot carry this burden.

A.      The Tortious Interference Claim Is Misdirected.

As a preliminary manner, the claim totally misses the mark. A tortious interference claim focuses on conduct directed at existing or prospective customers; it does not concern conduct directed at the plaintiff. *See Carvel Corp.*, 3 N.Y.3d at 190 ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."); *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d Cir 1995) (claim dismissed because alleged conduct was not directed at plaintiff's customers); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) ("[U]nder New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must . . . direct some activities towards the third party . . .").

Despite this, the only conduct AppealTech identifies in the FAC focuses on Wallach and Mynes allegedly misappropriating AppealTech's confidential information and then leaps frog to asserting AppealTech consequently lost "key clients and business." [43] But this conduct is all directed at AppealTech. It does not identify any wrongful means Wallach or Mynes directed at any specific current or existing client. This is fatal. *See Carvel Corp.*, 3 N.Y.3d at 190.

_____

[43] FAC ¶¶ 151-160.

B.    AppealTech Fails To Plead With Particularly What Wrongful Means, If Any, Mynes and Wallach Used.

The third element is satisfied if defendant's conduct amounts to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004). These wrongful means cannot, importantly, be conclusively pleaded. *Kickertz v. New York Univ.*, 110 A.D.3d 268,275. 971 N.Y.S.2d 271 (1st Dep't 2013); . The complaint must, at a minimum, "plead in nonconclusory language facts" that give rise to a reasonable inference of the alleged wrongful means. *Bonanni v. Straight Arrow Publishers, Inc.*, 133 A.D.2d 585, 520 N.Y.S.2d 7 (1st Dep't 1987). AppealTech's initial Complaint fell short of carrying this burden – so too does the FAC.

Trying unsuccessfully to meet its burden, AppealTech claims it lost "key clients" due to "Defendants' conduct."[44] But what Defendants? And what clients? AppealTech does not say – despite its requirement to plead this claim with sufficient particularity. What's more, this type of "group pleading" is impermissible because it "inhibits the court from understanding who exactly did what." *See Talking Capital LLC v. Omanoff,* No. 650973/2018, 2018 N.Y. Misc. Lexis 650 (N.Y. Sup. Crt. N.Y. Cty. Feb. 23, 2018); *Goldin v. Tag Virgin Is. Inc.*, No. 651021/2013, 2014 N.Y Misc. Lexis 2300, *36 (N.Y. Sup. N.Y. Cty. May 20, 2014) (dismissing breach of fiduciary duty claim when the claim is "pleaded collectively as to [the defendants] as a whole and contains no particularly allegations as to the [individual defendants]").

The closest – but not close enough – AppealTech comes to meeting this burden are its allegations on Horing Welikson & Rosen, P.C. switching from AppealTech to Counsel

---

[44] FAC ¶ 155.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58
INDEX NO. 650620/2018
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-17    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit P -
MOL re Motion to Dismiss.    Pg 27 of 28

Press.[45] But these allegations fail to connect the dots. The FAC does not identify what wrongful means Wallach – or any other defendant – used to interfere with that relationship. It, at most, alleges Counsel Press used "confidential information" to entice this firm to switch providers.[46] But how? What "confidential information?" And who at Counsel Press? The FAC does not say. What's more, documentary evidence contradicts this allegation. AppealTech claims Horing moved its business in February 2018,[47] but Horing's publicly available appellate briefs confirms it has been a Counsel Press client for years: Counsel Press' unique logo is on their briefs.[48]

AppealTech thus fails to sufficiently identify any tortious conduct Wallach or Mynes directed at any prospective or existing client.

V.    WITH THE FAILED SUBSTANTIVE CLAIMS, APPEALTECH CANNOT SEEK A PERMANENT INJUNCTION AGAINST MYNES NOR FEES AGAINST BOTH.

Permanent injunctive relief is, logically, unavailable when the plaintiff does not have any remaining substantive claims against that defendant. *Weinreb v. 37 Apts. Corp.*, 97 A.D.3d 54, 943 N.Y.S.2d 519 (1st Dep't 2012) ("Although it is permissible to plead a cause of action for a permanent injunction . . . permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted"). As the substantive claims against him fail, its injunctive relief claim against Mynes is thus unavailable.[49] Similarly, with those claims failing, AppealTech cannot obtain any of the relief it seeks and is thus not a prevailing party under the Agreement, warranting the

---

[45] FAC ¶¶ 157-159.
[46] FAC ¶ 158.
[47] FAC ¶ 157.
[48] Lipsky Aff. Exhibit E.
[49] AppealTech does not seek injunctive relief against Wallach. FAC ¶¶ 162-168.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 58

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-17   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit P -
MOL re Motion to Dismiss.   Pg 28 of 28

dismissal of its claim for fees. *See Wiederhorn v. J. Ezra Merkin,* 98 A.D.3d 859, 863, 952 N.Y.S.2d 478 (1st Dep't 2012) ("The party who prevails with respect to the central relief sought is considered the prevailing party.").

## VI.   COUNSEL PRESS, GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATION, GLADSTONE ADMINISTRATION, LLC'S MOTION.

Mynes and Wallach incorporate by reference the arguments Counsel Press, Gladstone Investment Corporation, Gladstone Management Corporation, Gladstone Administration, LLC make in their motion.

CONCLUSION

For the foregoing reasons, Defendants Mynes and Wallach respectfully request that the Court enter an Order dismissing Counts One, Two, Five, Six and Seven of AppealTech's First Amended Complaint and grant any other relief the Court deems appropriate.

Dated: New York, New York
       September 18, 2018

Respectfully submitted,
LIPSKY LOWE LLP

s/ Douglas B. Lipsky
Douglas B. Lipsky
630 Third Avenue, Fifth Floor
New York, New York 10017
Tel: 212.392.4772
doug@lipskylowe.com
*Counsel for Defendants Mynes and Wallach*

-21-