# Exhibit Q

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Z & J LLC d/b/a APPEALTECH, | NYSCEF CASE |
| Plaintiff, | Hon. Doris Ling-Cohan, J.S.C |
| v. | No. 650620/2018 |
| LAURENCE MYNES, COUNSEL PRESS INC., GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATIONS, GLADSTONE ADMINISTATION, LLC AND JONATHAN WALLACH, | |
| Defendants. | |
| LAURENCE MYNES AND JONATHAN WALLACH, | |
| Counterclaim Plaintiffs, | |
| v. | |
| Z & J LLC d/b/a APPEALTECH AND MICHAEL KESTAN, Jointly and Severally, | |
| Counterclaim Defendants. | |

---

### AFFIRMATION OF DOUGLAS B. LIPSKY IN SUPPORT OF DEFENDANTS LAURENCE MYNES AND JONATHAN WALLACH'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Douglas B. Lipsky, Esq., an attorney duly licensed to practice before the Courts of the State of New York, affirms the truth of the following under the penalties of perjury.

1.   I submit this Affirmation in support of Defendants Laurence Mynes and Jonathan Wallach's Motion to Dismiss Plaintiff's First Amended Complaint, as against them, as a matter of law under C.P.L.R. § 3211.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 59
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
Aff Re Lipsky Motion to Dismiss.   Pg 3 of 54

2.      Attached hereto as Exhibit A is a true and correct copy of Plaintiff's April 18, 2018 First Amended Complaint (Doc. No. 36).

3.      Attached hereto as Exhibit B is a true and correct copy of the November 16, 2016 Mynes-AppealTech Employment Agreement.

4.      Attached hereto as Exhibit C is a true and correct copy of the March 5, 2014 AppealTech-Wallach Employment Agreement.

5.      Attached hereto as Exhibit D is a true and correct copy of sample appellate pleadings with AppealTech and other service providers' unique printer mark.

6.      Attached hereto as Exhibit E is a true and correct copy of sample appellate pleadings for Horing Welikson & Rosen, P.C. with Counsel Press' unique printer mark.

Dated: New York, New York
       September 18, 2018

                          LIPSKY LOWE LLP


                          s/ Douglas B. Lipsky
                          Douglas B. Lipsky
                          630 Third Avenue, Fifth Floor
                          New York, New York 10017
                          Tel. 212.392.4772
                          Fax. 212.444.1030
                          doug@lipskylowe.com
                          *Counsel for Defendant Mynes*

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM

NYSCEF DOC. NO. 59

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
Aff Re Lipsky Motion to Dismiss.   Pg 4 of 54

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ x
                                                            :
Z & J LLC d/b/a APPEALTECH                                  :
                                                            :    Index No. 650620/2018
                              Plaintiff,                    :
                                                            :
        -against-                                          :    **VERIFIED AMENDED**
                                                            :    **COMPLAINT**
LAURENCE MYNES, COUNSEL PRESS, INC.,                       :
GLADSTONE INVESTMENT CORPORATION,                          :
GLADSTONE MANAGEMENT CORPORATIONS,                         :
GLADSTONE ADMINISTRATION, LLC and                          :
JONATHAN WALLACH,                                          :
                                                            :
                              Defendants.                   :
------------------------------------------------------------ x

Plaintiff Z&J LLC d/b/a AppealTech ("Plaintiff" or "AppealTech"), by and through its

attorneys Michelman & Robinson, LLP, for its Verified Amended Complaint ("Complaint") in the

above-captioned action against Defendants Laurence Mynes ("Mynes"), Counsel Press Inc.

("Counsel Press"), Gladstone Investment Corporation ("Gladstone Investment"), Gladstone

Management Corporation ("Gladstone Management") and Gladstone Administration, LLC

("Gladstone Administration") (Gladstone Investment, Gladstone Management and Gladstone

Administration collectively referred to herein as the "Gladstone Entities") and Jonathan Wallach

("Wallach") (Mynes, Counsel Press, the Gladstone Entities and Wallach are collectively referred

to herein as "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.       This action arises from Defendants' malicious attempt to destroy AppealTech as a

reputable, viable competitor in the appellate service provider and printer industry, as evidenced by

a statement from the Chief Executive Officer of Counsel Press that targeting and hiring Plaintiffs'

key personnel would result in "one less competitor" in the market.

2.      Defendants' scheme began in 2016, when Counsel Press raided AppealTech, hiring three of its four Senior Appellate Consultants, one of its nine paralegals, and two of its six production specialists, by offering compensation well above market, and with the intent of driving AppealTech out of business, thereby causing Counsel Press to contend with "one less competitor."

3.      AppealTech did not seek judicial relief at the time, opting instead to focus on protecting and preserving its business.

4.      AppealTech did so by significantly increasing its compensation to correspond to the above market compensation paid by Counsel Press, and entering into Employment Agreements with key employees, including Defendant Mynes, which contained post-termination restrictive covenants.

5.      Despite entering into an employment agreement with AppealTech and acknowledging that he would not compete with AppealTech's business in a way that is harmful to its client relationships and sensitive business information, Mynes deliberately breached his Employment Agreement in order to work for Counsel Press, a direct competitor in AppealTech's key markets.

6.      Mynes also breached his Employment Agreement, as well as his fiduciary obligation and duty of loyalty, and engaged in other tortious conduct, by transferring confidential information and client lists for his use at Counsel Press, in a position with the same title as that he held at AppealTech – Senior Appellate Consultant.

7.      It is this recent misconduct by Counsel Press and Mynes that has compelled AppealTech to seek judicial intervention

8.      As indicated above, the defection of Mynes to Counsel Press followed the poaching of many other key employees at AppealTech, by Counsel Press and the Gladstone Entities, in a

knowing and willful effort to remove AppealTech as a viable competitor and drive it out of business.

9.    Like Mynes, defendant Jonathan Wallach breached his employment agreement with AppealTech as well as his fiduciary obligations and duty of loyalty, and engaged in tortious conduct, by, among other things, misappropriating AppealTech's confidential information, and disclosing that confidential information to Counsel Press. Mynes and Wallach, used that confidential information while working at Counsel Press, with the knowledge and consent of, or at the direction of, Counsel Press and/or the Gladstone Defendants, with the intent to cripple AppealTech and drive it out of business, causing there to be "one less competitor" in the market.

10.    As a result of the foregoing, AppealTech has suffered substantial harm.

## THE PARTIES

11.    Plaintiff Z&J LLC d/b/a AppealTech was and still is a Delaware limited liability company authorized to do business in the State of New York, with a principal place of business at 7 West 36th Street, 10th Floor, New York, New York.

12.    Defendant Laurence Mynes ("Mynes") is an individual whose employment at both AppealTech and Counsel Press is at issue in this action, and who resides at 21 Stall Lane, Lodi, New Jersey 07644.

13.    Defendant Counsel Press, Inc. ("Counsel Press") is a Delaware corporation headquartered in New York City, with a principal place of business at 460 West 34th Street, New York, New York.

14.    Gladstone Investment Corporation ("Gladstone Investment") is a business development company ("BDC") incorporated under the General Corporation Law of the State of

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM   INDEX NO. 650620/2018
NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 04/18/2018

Delaware, which conducts business in the State of New York and maintains offices in the County of New York, State of New York.

15.     Gladstone Management Corporation ("Gladstone Management") is an affiliate of Gladstone Investment, incorporated under the General Corporation Law of the State of Delaware, which conducts business in the State of New York and maintains offices in the County of New York, State of New York.

16.     Gladstone Administration, LLC ("Gladstone Administration") is an affiliate of Gladstone Investment, incorporated under the General Corporation Law of the State of Delaware, which conducts business in the State of New York and maintains offices in the County of New York, State of New York.

17.     Gladstone Investment is externally managed by Gladstone Management and Gladstone Administration.

18.     Jonathan Wallach is an individual whose principal place of business is located in New York County, New York, who regularly transacts business in the State of New York, whose actions in the State of New York gives rise to the claims set forth herein and who resides in New York County, State of New York.

## JURISDICTION AND VENUE

19.     Jurisdiction and venue in this Court are proper because the Defendants either have their principal place of business in New York County, reside in New York and/or transact business within New York, and the claims referred to herein arose in the County of New York, State of New York.

4

20.     Pursuant to paragraph 14 of the November 16, 2016 Employment Agreement between Mynes and AppealTech ("Mynes' Employment Agreement"), Mynes consents to the exclusive jurisdiction of the state or federal courts located in New York County for all purposes.

21.     Pursuant to paragraph 14 of the March 5, 2014 Employment Agreement between Wallach and AppealTech ("Wallach's Employment Agreement"), Wallach consents to the exclusive jurisdiction of the state or federal courts located in New York County with respect to any dispute arising under the agreement.

## FACTUAL ALLEGATIONS

22.     AppealTech is a comprehensive appellate services provider that has been in operation for approximately twenty (20) years.

23.     AppealTech maintains offices in New York City, Rochester, New York and Los Angeles, California.

24.     AppealTech also services surrounding areas, including New Jersey.

25.     AppealTech is retained by attorneys and law firms during the appellate process to guide them through appellate court procedures in various jurisdictions for both state and federal appellate courts.

26.     AppealTech's employees advise clients on the technical and procedural aspects of appellate practice, including court rules specific to each appellate jurisdiction.

27.     The relationships that AppealTech establishes with attorneys and law firms is critical to AppealTech's success. AppealTech relies on client referrals to establish its goodwill and build its reputation as an appellate services provider. Without client relationships, AppealTech would struggle to promote its services in various jurisdictions.

5

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018

NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 04/18/2018

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM
INDEX NO. 650620/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -

28.     To survive, it is imperative for AppealTech to maintain its client relationships without malicious, unlawful interference from former employees and competitors.

29.     Counsel Press is also an appellate services provider.

30.     Like AppealTech, Counsel Press focuses on the preparation of appellate documents, printing services and electronic filing services.

31.     Like AppealTech, Counsel Press also advises law firms and attorneys on procedural court rules by jurisdiction.

32.     Both AppealTech and Counsel Press hire employees to work as appellate consultants to develop relationships with lawyers, litigation clerks, and other key personnel in law firms to develop business, shepherd client projects through the appellate process, and advise clients and prospective clients on the intricacies of the appellate process in the jurisdictions in which they do business,  all of which creates goodwill with clients and prospects, with the goal being to develop initial and repeat business through the development and maintenance of these relationships.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Counsel Press and the Gladstone Entities Engineer a Scheme to of Raid AppealTech

33.     On or about March 31, 2015, Gladstone Investment announced its acquisition of Counsel Press by investing an aggregate of $32.5 million in a combination of equity and debt into the company.

34.     Gladstone Investment, as a BDC, is required to provide significant management assistance to its portfolio companies, such as Counsel Press, including guidance and counsel concerning management and operations of the company. As a result, following the acquisition,

6

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:41 PM    INDEX NO. 650620/2018

NYSCEF DOC. NO. 36    RECEIVED NYSCEF: 04/18/2018

Gladstone Investment, through its affiliates, Gladstone Management and Gladstone Administration, has provided significant managerial assistance to Counsel Press.

35.    Specifically, upon information and belief, Gladstone Management and Gladstone Administration entered a service agreement with Counsel Press wherein Gladstone Management and Gladstone Administration agreed to advise and provide management and consulting services to the company.

36.    Upon information and belief, Gladstone Investment, through its affiliates Gladstone Management and Gladstone Administration, are involved in the day to day business operations and management of Counsel Press.

**Counsel Press and the Gladstone Defendants Begin Raiding AppealTech for Key Employees**

37.    In or around the Summer of 2016, Counsel Press and the Gladstone Entities initiated a directed and concerted effort to poach AppealTech employees and obtain AppealTech's confidential and proprietary information to undermine its operation and standing in the industry.

38.    Upon information and belief, Counsel Press and the Gladstone Entities embarked on a corporate raid of AppealTech with the single goal of removing AppealTech as a competitor.

39.    Upon information and belief, Counsel Press' solicitation of AppealTech's employees was part of a scheme designed solely to damage AppealTech and put it out of business.

**Defendant Jonathan Wallach**

40.    Thus, on or before August 4, 2016, Jonathan Wallach ("Wallach") a Senior Appellate Consultant for AppealTech, accepted an offer of employment from Counsel Press.

41.    Wallach had previously signed an Employment Agreement with AppealTech, on or about March 5, 2014.

7

42.    Paragraph 10 of Wallach's Employment Agreement provides, in relevant part, as follows:

> 10.    **Confidential Information.**    You agree not to, directly or indirectly, disclose or use any "Confidential Information" during or after your employment, except as required to do your job for the Company...Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Section 10-13 of this Agreement only.

43.    Paragraph 12 of Wallach's Employment Agreement provides, in relevant part, as follows:

> 12.    **Non-Solicitation.**    You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships and other legitimate business interests of the Company and is reasonable in scope, duration, and geography.    You agree that, during your employment and for twelve (12) months after your employment termination, voluntarily or involuntarily, you will not, directly or indirectly, on your own behalf or on behalf of any individual or entity, in any geographic area in which the Company does or is seeking to do business...(a) encourage, induce or attempt to encourage or induce any Client to change the nature, terms or amount of business it conducts with the Company."

44.    The "non-competition" covenant was in exchange for an annualized draw of $140,000, in addition to a commission.

45.    Despite these contractual provisions, prior to his resignation from AppealTech, Wallach began emailing AppealTech's confidential information to his personal email address including, but not limited to, sales reports, clients lists, client documents, upcoming client deadlines, lists of "active accounts" and other related information.

46.    The foregoing documents constitute "Confidential Information," as defined in Wallach's Employment Agreement.

8

19-01435-jlg Doc 5-18 Filed 12/23/19 Entered 12/23/19 16:01:58 Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM 54

47. Upon information and belief, Wallach sent AppealTech's client lists and other confidential and proprietary information to Counsel Press, and Counsel Press uploaded it to its system.

48. Upon information belief, and at the direction of Counsel Press and/or the Gladstone Entities, Wallach remained employed at AppealTech for several months after he decided to join Counsel Press for the sole purpose of continuing to refer existing and prospective clients of AppealTech to Counsel Press and to acquire and misappropriate AppealTech's confidential information and providing the same to Counsel Press.

49. During this time, when Wallach received calls from AppealTech's current or prospective clients, he would refer the work to Counsel Press instead.

50. The foregoing was done at the direction of Counsel Pres and/or the Gladstone Entities to injure AppealTech.

51. In essence, Wallach served as a "mole" for Counsel Press and/or the Gladstone Entities.

52. Upon information and belief, Counsel Press and the Gladstone Entities have used and continue to use AppealTech's confidential information provided by Wallach for the purpose of damaging AppealTech's goodwill.

53. Specifically, Counsel Press and the Gladstone Entities have used AppealTech's client lists and other confidential and proprietary information provided by Wallach to solicit new clients and drive AppealTech out of business.

**Debra Rudoltz and Tina Fisher**

54. Shortly thereafter, Counsel Press hired two other senior appellate consultants employed by AppealTech, Debra Rudoltz ("Rudoltz") and Tina Fisher ("Fisher").

9

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:41 PM   Pg 54
INDEX NO. 650620/2018
NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 04/18/2018

55.     On or about June 13, 2014 and June 17, 2014, Rudoltz and Fisher signed an Employment Agreement with AppealTech, respectively.

56.     Paragraph 9 of Rudoltz' and Fisher's Employment Agreements provide, in relevant part, as follows:

> **9. Confidential Information.** You agree to keep the terms of this Agreement confidential…you further agree not to, directly or indirectly, disclose or use any "Confidential Information" during or after your employment, except as required to do your job for the Company…"

57.     Upon information and belief, at Counsel Press and the Gladstone Entities direction, Rudoltz and Fisher retained AppealTech's Confidential Information, as defined in the Rudoltz and Fisher Employment Agreements, and provided the information to them.

58.     Upon information and belief, Counsel Press and the Gladstone Entities have used AppealTech's Confidential Information for the purpose of damaging AppealTech's business relationships.

### The 2016 Counsel Press Raid on AppealTech Includes Critical Paralegals and Production Employees

59.     At or about the same time in 2016 that Counsel Press was hiring 3 of AppealTech's 4 Senior Appellate Consultants, Counsel Press also attempted to poach approximately sixty-five percent (65%) of AppealTech's other employees.

60.     Specifically, at or about the same time, Counsel Press approached five out of AppealTech's nine paralegal staff and made offers to four of them, with one paralegal accepting Counsel Press's offer.

10

61. Given the threat of losing approximately fifty-five percent (55%) of AppealTech's paralegal staff, AppealTech was forced to dramatically raise the paralegal's salaries and match Counsel Press' offer of employment.

62. Upon information and belief, the offers presented by Counsel Press to AppealTech's paralegal staff were significantly above market value and were designed exclusively to injure AppealTech and drive it out of business by either paying its employees significantly above market to retain them or lose vital components of its staff.

63. At or about the same time, Counsel Press approached four out of the six employees at AppealTech's production shop and made offers to three of them, with two accepting Counsel Press' offer of employment.

64. The production employees were vital to AppealTech's production shop.

65. By losing so many of these employees in such a short period of time, AppealTech's ability to accept and timely complete print orders was significantly impaired.

66. Upon information and belief, Counsel Press and the Gladstone Entities have obtained AppealTech's confidential and proprietary information from the employees it hired away from AppealTech and have used and continue to use that information to the competitive disadvantage of AppealTech.

67. Upon information and belief, Counsel Press and the Gladstone Entities knew and encouraged AppealTech employees to violate their respective employment agreements by breaching the confidentiality provision and soliciting, either directly or indirectly, key clients of AppealTech.

68. During a meeting in or about August 2016, Scott Thompson, Chief Executive Officer and President of Counsel Press, referred to this strategy of raiding AppealTech and

11

poaching so many of its employees, stating that there was going to be "one less competitor" in the market.

69.    The corporate raid by Counsel Press and the Gladstone Entities that began in 2016 had a direct and devastating impact on AppealTech's business operation, as intended.

70.    As a result of the foregoing, AppealTech's revenue declined substantially in 2017 and is currently operating at a loss.

71.    Upon information and belief, Counsel Press and the Gladstone Entities have not made any effort to poach any employees from any other competitor.

72.    Indeed, Counsel Press's efforts to damage AppealTech has been a directed effort exclusively targeting AppealTech in particular.

**Counsel Press Targets Defendant Lawrence Mynes in the Summer of 2017**

73.    Counsel Press and the Gladstone Defendants continued their scheme to poach AppealTech employees and drive AppealTech out of business through the end of 2017 and into early 2018, targeting a fourth Senior Appellate Consultant, Lawrence Mynes ("Mynes").

74.    On January 17, 2018, Mynes announced he was leaving AppealTech, but declined to reveal where he was moving to.

75.    AppealTech learned the next day that Mynes had accepted a position as an Appellate Consultant at Counsel Press.

76.    Mynes began his employment with AppealTech in 2006.

77.    Prior to working in the appellate services industry, Mynes worked in the marketing and advertising industry, focusing on general sales promotion and event marketing for various advertising and marketing consultant companies for approximately twenty-five (25) years.

12

78.     Mynes had no background or experience with law firms in connection with appellate services, practice, and procedure prior to his employment with AppealTech. He was a "blank slate."

79.     Mynes did not maintain any client or customer relationships relating to the appellate services industry.

80.     Prior to his defection to Counsel Press, the only experience Mynes had in the appellate services industry came from his employment with AppealTech.

81.     Over the course of twelve (12) years, AppealTech trained, supported and educated Mynes, allowing Mynes to develop critical relationships with law firms and key personnel within those firms who were responsible for selecting appellate service providers in the open market.

82.     The training, support and education AppealTech provided to Mynes enhanced the goodwill and reputation that AppealTech had nurtured and developed with AppealTech's clients and prospects.

83.     As a Senior Appellate Consultant, Mynes assisted AppealTech's clients in perfecting thousands of appeals in state and federal appellate courts nationwide.

84.     Mynes specialized in New York State Appellate Divisions, the New York State Court of Appeals and the Second Circuit Court of Appeals.

85.     As a Senior Appellate Consultant, Mynes was privy to AppealTech's confidential and proprietary information including, but not limited to, its sales and marketing strategies, proprietary sales practices, general and specific client pricing data, know-how, good will and client lists.

13

86.    As a result of AppealTech's investment into Mynes' growth as a consultant, Mynes'

sales increased from 2011 through 2017 as he developed client relationships and acquired

knowledge of appellate procedure.

87.    In August 2016, with the departure of the three Senior Appellate Consultants, the

paralegal and two production staff members, AppealTech immediately approached Mynes, as the

only remaining Senior Appellate Consultant, along with other key AppealTech employees, to

negotiate significantly increased compensation in exchange for written promises from Mynes and

the other employees to protect and preserve AppealTech's confidential and proprietary

information, ensuring that it would not fall into the hands of the competition.

**Mynes' Employment Agreement**

88.    On or about November 16, 2016, Mynes signed an Employment Agreement with

AppealTech.

89.    The Employment Agreement provided Mynes with a significant increase in

compensation through a draw, which was increased from $80,000 to $120,000. It also contained

a restrictive "non-competition" covenant and a confidentiality clause.

90.    Paragraph 10 of the Employment Agreement provides, in relevant part, as follows:

> 10.    **Confidential Information.**  You agree not to, directly or
> indirectly, disclose or use any of the Company's Confidential
> Information (defined below) during or after your employment,
> except to the extent necessary to perform your job duties ....
> Notwithstanding the foregoing, you agree to notify any prospective
> or actual future employer of Sections 10-13 of this Agreement only.

91.    Paragraph 12 of the Employment Agreement provides, in relevant part, as follows:

> 12.    **Non-Competition.**  You agree that during your employment
> and for a period of six (6) months after your employment terminates
> ("**Restricted Period**") for any reason, you will not, except as
> necessary to perform your job duties for the Company, directly or

14

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 36                                                    RECEIVED NYSCEF: 04/18/2018

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM INDEX NO. 650620/2018
19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q
                    Part Three Pg 17 of 54

indirectly, on your own behalf or on behalf of any individual or
entity, as an employee, owner, joint venturer, consultant, contractor,
volunteer, or otherwise: (a) provide services for any individual,
entity, or other third party that is engaged or seeks to engage in the
same or similar business as that of the Company in any geographic
area in which the Company does or is actively seeking to do
business; (b) solicit or accept the business of any Client (defined
below), to the extent such business involves services that are the
same or similar to those that the Company provides or has provided
within six (6) months prior to the termination of your employment;
(c) interfere with the Company's relationship with any Client or
induce or attempt to induce any Client to change the nature, terms,
or amount of business it conducts with the Company; or (d) solicit,
hire, or attempt to solicit or hire, any individual who is an employee,
consultant, or contractor of the company or who was an employee,
consultant, or contractor of the Company at any time during the six
(6) months preceding the termination of this Agreement .... You
acknowledge and agree that each restriction contained in this
Section is necessary to protect the Confidential Information,
goodwill, relationships, and other legitimate business interests of the
Company and is reasonable in scope, duration, and geography.

92.   Paragraph 15 of the Employment Agreement provides, in relevant part, as follows:

15.  **Injunctive Relief.**  You acknowledge and agree that if you
breach, or attempt or threaten to breach, any part of Sections 10-13,
the Company shall be entitled, in addition to any other right or
remedy it may have, to an order enjoining or restraining you from
any breach, or attempted or threatened breach, without having to
post a bond or other security or prove damages and you hereby
consent to the issuance of such an order .... If you violate any of the
provisions of Section 12 ... the duration of the covenants shall be
extended for the period of time when the violation began until you
permanently cease such violation. Nothing set forth in this Section
shall prevent the Company from seeking money damages or other
relief instead of or in addition to injunctive relief.

93.   The "non-competition" covenant was in exchange for the significant increase in

compensation.  AppealTech also directed certain house accounts to him, thereby increasing his

overall sales and his percent on commission, resulting in even higher total compensation.

15

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:42 PM
RECEIVED NYSCEF: 04/18/2018
NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 04/18/2018

94.     Mynes accepted AppealTech's offer, increasing his compensation by more than thirty (30%) percent. His sales almost doubled as a result of the foregoing.

### Mynes' Breach of the Employment Agreement

95.     Upon information and belief, in or about June 2017, Counsel Press renewed its effort to raid AppealTech's business, with the sole and exclusive goal of putting AppealTech out of business.

96.     Thus, upon information and belief, at or about the time Mynes and Counsel Press began to communicate, Mynes began to provide Counsel Press and the Gladstone Entities with AppealTech's confidential client and other confidential and proprietary information.

97.     Mynes began emailing AppealTech's confidential information to his personal email address including, but not limited to: AppealTech's 2017 sales budget, AppealTech checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information and/or goodwill.

98.     Upon information and belief, between September 2017 and December 2017, Mynes engaged in multiple conversations with Counsel Press's head of sales, with the goal of misappropriating AppealTech's confidential and proprietary information and joining Counsel Press, in furtherance of Counsel Press's scheme to put AppealTech out of business.

99.     From June 2017 through January 2018, Mynes retained AppealTech's client information and other confidential and proprietary information.

100.    During the relevant period of time herein, Mynes uploaded confidential and client information from his company-issued cell phone to his personal cloud account.

16

.101.    On January 17, 2018, Mynes abruptly announced his resignation from AppealTech.

102.    Mynes refused to disclose where he would be employed or whether he had found

other employment.

103.    Upon information and belief, immediately upon Mynes' resignation from

AppealTech and for the twelve (12) months preceding his resignation, Mynes solicited, directly

and indirectly, AppealTech's clients to change the nature, terms or amount of business it conducted

with AppealTech.

104.    Upon information and belief, Mynes shared AppealTech's confidential and

proprietary information with Counsel Press and/or the Gladstone Entities.

105.    On or about January 19, 2018, AppealTech sent Mynes a demand letter to comply

with the restrictive "non-competition" covenant and confidentiality provision contained within the

Employment Agreement.  Mynes never responded.

106.    On or about January 29, 2018, AppealTech sent Counsel Press a cease and desist

letter concerning its deliberate effort to poach AppealTech's employees.

107.    Shortly thereafter, Counsel Press announced that Mynes had joined the company,

effective January 29, 2018, in Counsel Press's New York City office.  Counsel Press immediately

listed Mynes on the website as a Senior Appellate Consultant, which was the same title that he

held at AppealTech.

108.    On February 2, 2018, Counsel Press, through its counsel, responded to the January

29, 2018 correspondence refusing to remove Mynes from the website and maintaining that he is

an employee of Counsel Press.

109.    Defendants have utilized AppealTech's confidential information and goodwill

obtained by Mynes to damage AppealTech's business interests.

110.    As a result of Defendants' conduct, AppealTech has been severely damaged.  In particular, AppealTech has suffered dramatically decreased profits and is currently operating at a loss.

111.    In addition to decreased profits, AppealTech has also lost clients as a result of Defendants' improper conduct.

112.    For example, on or about February 1, 2018, AppealTech was advised that the law firm of Horing Welikson & Rosen, P.C., a long-standing client of AppealTech, was transferring its account to Counsel Press.

113.    But for Counsel Press' effort to put AppealTech out of business, AppealTech would still have Horing Welikson & Rosen, P.C.'s account.

### AS AND FOR THE FIRST CAUSE OF ACTION
#### (Breach of Contract Against Mynes and Wallach)

114.    AppealTech repeats and realleges paragraphs 1-113 of this Complaint as if fully restated herein.

115.    Defendants Mynes and Wallach breached their respective employment agreements (collectively the "Employment Agreements") with AppealTech by, among other things, removing AppealTech's confidential and proprietary business information and client information, to disclose and or use the same in connection with their employment with Defendant Counsel Press in direct violation of their Employment Agreement.

116.    Defendant Mynes also breached his employment agreement by, among other things, providing services for Counsel Press in the same geographic area as AppealTech does or is actively seeking to do business less than six months after his resignation from AppealTech in direct violation of the restrictive "non-competition" covenant.

18

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM    INDEX NO. 650620/2018
NYSCEF DOC. NO. 36    RECEIVED NYSCEF: 04/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:42 PM    INDEX NO. 650620/2018

117.    Defendants Wallach and Mynes also breached their respective employment agreements by, among other things, soliciting, both directly and indirectly, AppealTech's Clients within twelve (12) months of their resignation from the company.

118.    Mynes and Wallach have damaged AppealTech by breaching their respective Employment Agreements including, but not limited to, causing AppealTech to lose profit and good will.

119.    As a result of the foregoing, Mynes and Wallach are liable for damages in an amount to be determined at trial.

120.    Pursuant to their respective employment agreements, AppealTech is entitled to recover all reasonable attorneys' fees and costs with respect to any dispute arising thereunder.

**AS AND FOR THE SECOND CAUSE OF ACTION**
**(Breach of the Duty of Loyalty Against Mynes and Wallach)**

121.    AppealTech repeats and realleges paragraphs 1-120 of this Complaint is if fully restated herein.

122.    Mynes and Wallach owed a duty of loyalty as an employee of AppealTech.

123.    Pursuant to their respective Employment Agreements, and as a matter of common law, Mynes and Wallach are obligated to protect AppealTech's "confidential information."

124.    Mynes and Wallach breached that duty by acting to advance their own personal interest, and the interests of Counsel Press and the Gladstone Entities at the expense of AppealTech's interests.

125.    Specifically, Mynes and Wallach intentionally and knowingly appropriated AppealTech's proprietary and confidential information in an effort to undermine AppealTech's sales and hurt AppealTech as Counsel Press's competitor.

19

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM   INDEX NO. 650620/2018
NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 04/18/2018

126.   The foregoing breach by Mynes and Wallach has harmed AppealTech.

127.   As a result of the foregoing, Mynes and Wallach are liable for damages in an amount to be determined at trial.

128.   Pursuant to the Employment Agreements of Mynes and Wallach, AppealTech is entitled to recover all reasonable attorneys' fees and costs with respect to any dispute arising thereunder.

### AS AND FOR THE THIRD CAUSE OF ACTION
**(Tortious Interference with Contract Against Counsel Press and the Gladstone Entities)**

129.   AppealTech repeats and realleges paragraphs 1-128 of this Complaint as if fully restated herein.

130.   Valid Employment Agreements existed between AppealTech and Mynes, Wallach, Rudoltz and Fisher, respectively.

131.   Defendants Counsel Press and the Gladstone Entities knew, or had constructive knowledge of, the Employment Agreements between AppealTech and Mynes, Wallach, Rudoltz and Fisher, respectively.

132.   Nevertheless, Counsel Press, with the advice and guidance of the Gladstone Entities, knowingly, intentionally, improperly, tortuously and in bad faith, caused, induced and/or procured Mynes, Wallach, Rudoltz and Fisher to resign from AppealTech and work for Counsel Press, AppealTech's known competitor.

133.   Defendant Counsel Press induced these individuals to join its company by, among other things, offering above market compensation packages.

134.   Defendant Counsel Press, with the advice and guidance of the Gladstone Entities, further intentionally, knowingly, improperly, tortuously and in bad faith caused and induced

20

Mynes, Wallach, Rudoltz and Fisher to appropriate AppealTech's confidential and proprietary business information and confidential information for its own use.

135.    For example, prior to Wallach's resignation, he sent AppealTech's client list and other proprietary information to Counsel Press, which was uploaded to Counsel Press' system.

136.    Likewise, beginning in or about June 2017, Mynes began emailing AppealTech's confidential information to his personal email address including, but not limited to: AppealTech's 2017 sales budget, AppealTech checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information and/or goodwill.

137.    The foregoing confidential information was procured for the benefit of Mynes, Counsel Press and the Gladstone Entities for the purpose of damaging AppealTech.

138.    The intentional interference by Counsel Press and the Gladstone Entities resulted in a breach of the Employment Agreements of Mynes, Wallach, Rudoltz and Fisher.

139.    Indeed, but for Counsel Press and the Gladstone Entities actions, Mynes, Wallach, Rudoltz and Fisher would not have breached their respective employment agreements.

140.    Counsel Press' and the Gladstone Entities' tortious interference with the Employment Agreements have caused damage to AppealTech including, but not limited to, lost profits.

141.    Specifically, Counsel Pres and the Gladstone Entities' tortious interference with the subject Employment Agreements had a direct and devastating impact on AppealTech's business operation.

21

142.    As a result of the foregoing, AppealTech's revenue declined substantially in 2017 and is currently operating at a loss.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Unfair Competition Against Counsel Press and the Gladstone Entities)

143.    AppealTech repeats and realleges paragraphs 1-142 of this Complaint as if fully set forth herein.

144.    Counsel Press and the Gladstone Entities have, in bad faith, employed unfair means, including, but not limited to, inducing Mynes, Wallach, Rudoltz and Fisher to violate their respective Employment Agreements to lure away key-employees of AppealTech as part of a deliberate and malicious strategy to destroy AppealTech's business and force it out of business.

145.    During the course of only a few months in 2016, Counsel Press raided and attempted to hire sixty-five (65%) percent of all AppealTech employees.

146.    Counsel Press and the Gladstone Entities raided these employees as part of their scheme to gain access to confidential and proprietary information, including but not limited to AppealTech's goodwill and client opportunities, in furtherance of its exclusive goal to eliminate AppealTech as a competitor.

147.    In concert with Mynes, Wallach, Rudoltz and Fisher, Counsel Press and the Gladstone Entities have acquired and have been using this information to its advantage, and to the competitive disadvantage of AppealTech.

148.    Counsel Press and the Gladstone Entities have no business justification for their actions. These actions were taken in bad faith with the intention to harm AppealTech.

149.    Counsel Press and the Gladstone Entities' unfair competition have caused damage to AppealTech in an amount to be proven at trial.

22

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Tortious Interference with Business Relationships Against Defendants)

150.  AppealTech repeats and realleges paragraphs 1-149 of this Complaint as if fully restated herein.

151.  AppealTech established its goodwill as an appellate services provider through developing client relationships with attorneys, litigation clerks and law firms.

152.  As a result of AppealTech's efforts, AppealTech has been voted as one of the best appellate service providers by the New York Law Journal and Corporate Counsel.

153.  The relationships that AppealTech has established with attorneys, litigation clerks and law firms are business relations that foster an expectancy of future contract rights with clients in the legal industry.

154.  Defendants interfered with AppealTech's business relationships by appropriating confidential and proprietary information and acquiring AppealTech's clients.

155.  For example, in the latter half of 2016 and throughout 2017, AppealTech lost key clients and business as a result of Defendants' conduct.

156.  Specifically, for example, while Wallach was still employed at AppealTech, he would refer existing and potential clients of AppealTech to Counsel Press.

157.  More recently, on or about February 1, 2018, AppealTech was advised that the law firm of Horing Welikson & Rosen, P.C., a long-standing client of AppealTech, was transferring its account to Counsel Press.

158.  By utilizing AppealTech's confidential information improperly retained by Mynes, Counsel Press enticed Horing Welikson & Rosen, P.C. to discontinue its relationship with AppealTech.

23

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q
FILED: NEW YORK COUNTY CLERK 01/06/2018 05:48 PM    INDEX NO. 650620/2018
NYSCEF DOC. NO. 36    Pg 26 of 53    RECEIVED NYSCEF: 04/18/2018
NYSCEF DOC. NO. 36    RECEIVED NYSCEF: 04/18/2018

159.    But for Defendants wrongful acts, AppealTech would have retained its relationship with its existing clients, including Horing Welikson & Rosen, P.C., and would have been able to develop other business relationships.

160.    Defendants acted solely to harm AppealTech and diminish its standing as Counsel Press's competitor.

161.    As a result of the foregoing, Defendants are liable for damages in an amount to be determined at trial, because of the lost opportunities for profit that have been diverted away from AppealTech in favor of Counsel Press.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Injunctive Relief)

162.    AppealTech repeats and realleges paragraphs 1-161 of this Complaint as if fully restated herein.

163.    Pursuant to paragraph 15 of Mynes' Employment Agreement, AppealTech is entitled to an order enjoining or restraining Defendant Mynes from any breach, or attempted or threatened breach, of the Employment Agreement, in addition to any other right or remedy it may have. Defendant Mynes expressly agreed and consented to the issuance of such an order.

164.    Pursuant to paragraph 15 of Mynes' Employment Agreement, AppealTech agreed that if he breaches, attempts or threatens to breach, any part of Sections 10-13 of the Employment Agreement, AppealTech is entitled to "an order enjoining or restraining [Mynes] from any breach, or attempted or threatened breach [of the Employment Agreement]."

165.    As a result of Defendants' conduct referenced herein, AppealTech will suffer irreparable harm if the restrictive covenant is not enforced, and if Counsel Press is not enjoined from further interfering with AppealTech's business and contracts.

24

166.     Specifically, the relationships that AppealTech has developed and fostered and the

goodwill that AppealTech has nurtured and maintained through its employment and training of

Mynes, who had no knowledge, training or experience in this industry prior to his employment

with AppealTech, will be irreparably harmed, as will AppealTech's ability to fairly compete as an

appellate services provider in its markets.

167.     AppealTech seeks to enjoin Defendants from stealing and/or using its confidential

and proprietary information, and customer information.

168.     No adequate remedy exists at law.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Attorneys' Fees and Costs against Mynes and Wallach)

169.     AppealTech repeats and realleges paragraphs 1 - 168 of this Complaint as if fully

restated herein.

170.     The Employment Agreements of Mynes and Wallach expressly provide that the

prevailing party in any dispute shall be reimbursed by the other party for a reasonable attorneys'

fees and costs.

171.     AppealTech is entitled to recover its reasonable attorneys' fees, costs and

disbursements against Mynes and Wallach for bringing this action to enforce its rights under the

respective Employment Agreements.

**WHEREFORE**, Plaintiff Z & J LLC d/b/a APPEALTECH demands judgment as follows:

a.     On the First Cause of Action, judgment in favor of AppealTech and against Mynes

and Wallach in an amount to be proven at trial;

b.     On the Second Cause of Action, judgement in favor of AppealTech and against

Mynes and Wallach in an amount to be proven at trial;

25

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018

19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -

FILED: NEW YORK COUNTY CLERK 04/06/2018 05:48 PM   INDEX NO. 650620/2018
Pg 29 of 53

NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 04/18/2018

c.   On the Third Cause of Action, judgment in favor of AppealTech and against Counsel Press and the Gladstone Entities in an amount to be proven at trial;

d.   On the Fourth Cause of Action, judgment in favor of AppealTech and against Counsel Press and the Gladstone Entities in an amount to be proven at trial;

e.   On the Fifth Cause of Action, judgment in favor of AppealTech and against the Defendants in an amount to be proven at trial;

f.   On the Sixth Cause of Action, injunctive relief;

g.   On the Seventh Cause of Action and as to all causes of action, in favor of AppealTech and against Mynes and Wallach for attorneys' fees, costs and the disbursements of this action; and

h.   Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 6, 2018

MICHELMAN & ROBINSON, LLP

By: /s/: Christopher A. D'Angelo
Christopher A. D'Angelo
Kathryn T. Lundy
Janeen R. Hall
800 Third Avenue, 24th Floor
New York, New York 10022
(212) 730-7700

26

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO: 59
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
Aff Re Lipsky Motion to Dismiss.   Pg 31 of 54

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM    INDEX NO. 650620/2018

19-01435-jig    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
NYSCEF DOC. NO.    FILED: NEW YORK COUNTY CLERK 02/08/2018 01:23 PM    Page 54    RECEIVED NYSCEF: 02/08/2018

NYSCEF DOC. NO. 12                                                    RECEIVED NYSCEF: 02/08/2018



APPEALTECH

YOUR APPELLATE PARTNER

**EMPLOYMENT AGREEMENT**

This Employment Agreement ("Agreement") is between **Z&J LLC d/b/a AppealTech** (the "**Company**") and **Laurence Mynes** ("**you**").

1. **Employment.** You will be employed as Senior Appellate Consultant. Your employment will be **at will** and may be terminated at any time by you or the Company, with or without reason, and with or without advance notice.

2. **Draw.** Your annualized draw will be $120,000 ("**Draw**"), paid pro rata, less applicable withholdings, in accordance with the Company's regular payroll practices. Any change to your Draw shall be deemed an automatic amendment to this Agreement.

3. **Commissions.** You will be eligible to earn a "**Commission**" at the rate set forth below on Your Net Sales. "**Your Net Sales**" are the fees less the Expenses (defined below) that the Company receives from jobs due solely to your efforts, which have been completed and fully paid for by the client(s), on a calendar year basis, during the term of your employment.

In the event Your Net Sales in a calendar year are between the following amounts, the corresponding Commission rate shall apply:

| Your Net Sales | Commission rate |
|---|---|
| $1 and $700,000 | 10% |
| $700,001 and $1,100,000 | 12% |
| $1,100,001 and $1,300,000 | 13% |
| $1,300,001 and up | 14% |

For illustrative purposes only, to the extent Your Net Sales in a calendar year are $1,400,000, you will be eligible to earn a Commission of $157,999.60 [(700,000*0.10) + (399,999*0.12) + (199,999*0.13) + (99,999*0.14)].

"**Expenses**" are costs that the Company incurs related to the sales that are included in Your Net Sales, including your pro-rated Draw, mailing, courier, and delivery charges to clients, and any discounts or refunds to clients. If Expenses in a given month exceed Your Net Sales, then the excess of the Expenses will be carried over and included in Expenses when calculating subsequent Commissions until such time as Your Net Sales exceed Expenses. To the extent Expenses exceed Your Net Sales when your employment terminates, you will not be required to reimburse the Company for such deficit.

A Commission is calculated and Earned when the Company receives full payment from the applicable clients during the term of your employment. A Commission will be paid, less applicable withholdings,

Page 1 of 5

7 WEST 36ᵗʰ STREET ● 12ᵗʰ FLOOR ● NEW YORK, NEW YORK 10018 ● TEL. 212-213-3222 ● FAX 212-213-9702
8 EXCHANGE BLVD. ● SUITE 170 ● ROCHESTER, NEW YORK 14614 ● TEL. 585-802-9837 ● FAX 585-295-9652
www.appealtech.com

within one month after the month in which it is Earned. You will receive a monthly reconciliation statement reflecting any Commission that you Earned.

4. **Benefits.** You will be eligible to take 15 vacation and 5 sick days per year, pro-rated for partial years, in accordance with the Company's policies. Accrued, unused vacation and sick days do not carry over from year to year (except to the extent provided otherwise by applicable law) and are forfeited upon termination of employment. You also will be eligible for fringe benefits that are made available to employees of the Company generally in accordance with the terms of the applicable plans or policies.

5. **Expenses.** You will be reimbursed for reasonable and necessary business expenses, provided you submit appropriate documentation and receipts within 30 days of incurring the expense.

6. **Equipment.** The Company will provide a mobile device for you to use to perform your job duties. The device will remain the Company's property and your use will be subject to all Company policies. You may choose to use your own device and have the company reimburse your mobile phone charges each month.

7. **Termination.** In the event your employment terminates for any reason, the Company will pay your pro-rated Draw through your last day worked. You will be paid any Commissions that you Earned through your last day worked on the terms set forth in Section 3.

8. **Return of Property.** You agree to return all Company property, including without limitation mobile devices, keys, access cards, passwords, and all Confidential Information (defined in Section 10) and copies thereof, upon termination of employment or at the Company's request at any time.

9. **No Restrictions.** You acknowledge and agree that in offering employment to you, the Company has reasonably relied upon your representations that: (a) you do not have any legal restrictions that would prohibit you from working for the Company or fully performing the duties of a Staff Counsel for the Company; and (b) you will not bring or disclose to the Company, or use in your employment with the Company, any confidential or proprietary information that is the property of any other person or entity, including any such information that you may be restricted from disclosing or using under any agreement with any current or prior employer.

10. **Confidential Information.** You agree not to, directly or indirectly, disclose or use any of the Company's Confidential Information (defined below) during or after your employment, except to the extent necessary to perform your job duties for the Company. **Confidential Information** means any and all proprietary, confidential, or sensitive information, and any and all data, trade secrets, or know-how of the Company, including, but not limited to: client and potential client identities and lists; contact details for, personal data concerning, and needs, preferences, and specifications of clients and potential clients; product/services lists; relationships and arrangements with vendors; marketing strategies and plans; operating strategies and plans; finances; financing strategies and plans; pricing; commissions; relationships, methodologies; processes; research; business plans; alliances; technology; software; databases; source code; planned technology or software improvements or changes; developments; Inventions (defined in Section 11); designs; and any other technical, financial, or business information or plans pertaining to the Company's business. Confidential Information does not include information that is or has become publicly known or made generally available through no wrongful act of you or anyone else who had confidentiality obligations

Page 2 of 5

7 West 36th Street ● 12th Floor ● New York, New York 10018 ● Tel. 212-213-3222 ● Fax 212-213-9702
8 Exchange Blvd. ● Suite 170 ● Rochester, New York 14614 ● Tel. 585-802-9837 ● Fax 585-295-9652
www.appealtech.com

to the Company. Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Sections 10-13 of this Agreement only. You acknowledge and agree that nothing in this Agreement shall preclude you or the Company from providing truthful information: (a) in response to lawful inquiries from governmental, regulatory, or self-regulatory agencies; (b) in response to a valid subpoena, court order or other legal process; (c) in connection with lawful governmental, regulatory, or self-regulatory agency investigations; or (d) to any governmental, regulatory, or self-regulatory agency, including the Securities and Exchange Commission, about a possible violation of law. You further agree to provide the Company with the opportunity to seek a protective order or other relief prior to making any disclosure required by subpoena, court order, legal process, or a governmental, regulatory, or self-regulatory agency investigation.

11. **Intellectual Property.** You will not, directly or indirectly, on your own or by, through or for any other person or entity, claim ownership of any product, technology, automation, computer, or software development efforts undertaken while employed by the Company. You acknowledge and agree that all concepts, designs, work product, improvements, modifications, and finished product are the sole and exclusive property of the Company. You will hold in trust for the sole right and benefit of the Company, and hereby irrevocably and perpetually assign to the Company, or its designee, all of your right, title, and interest, if any, in any and all Inventions (defined below). You acknowledge and agree that the decision whether or not to commercialize any Invention is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other payment will be due to you as a result of the Company's efforts to commercialize any Invention. You further acknowledge that all original works of authorship that are made by you, solely or jointly with others, related in any way to services provided during the course of your employment with the Company that are protectable by copyright are "works made for hire," as that term is defined in the U.S. Copyright Act. You agree not to seek injunctive relief against the Company related to its use of any material on which you have worked. **Inventions** means any and all inventions, products, processes, original works of authorship, developments, concepts, improvements, modifications, designs, discoveries, techniques, methods, technologies, software, automation, data, databases, media, derivative works, ideas, trademarks, or trade secrets, whether or not patentable or registrable under copyright or other laws, rules or regulations, of the Company, including without limitation those that you may, solely or jointly, conceive, develop, or reduce to practice, or cause to be conceived, developed, or reduced to practice, during or in the scope of your employment.

12. **Non-Competition.** You agree that during your employment and for a period of six (6) months after your employment terminates ("**Restricted Period**") for any reason, you will not, except as necessary to perform your job duties for the Company, directly or indirectly, on your own behalf or on behalf of any individual or entity, as an employee, owner, joint venturer, consultant, contractor, volunteer, or otherwise: (a) provide services for any individual, entity, or other third party that is engaged or seeks to engage in the same or similar business as that of the Company in any geographic area in which the Company does or is actively seeking to do business; (b) solicit or accept the business of any Client (defined below), to the extent such business involves services that are the same or similar to those that the Company provides or has provided within the six (6) months prior to the termination of your employment; (c) interfere with the Company's relationship with any Client or induce or attempt to induce any Client to change the nature, terms, or amount of business it conducts with the Company; or (d) solicit, hire, or attempt to solicit or hire, any individual who is an employee, consultant, or contractor of the Company or who was an employee, consultant, or contractor of the Company at any time during the six (6) months preceding the termination of this

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Part 1 Pg 35 of 54

FILED: NEW YORK COUNTY CLERK 02/08/2018 01:28 PM
INDEX NO. 650620/2018

NYSCEF DOC. NO. 12                                                        RECEIVED NYSCEF: 02/08/2018

Agreement. "**Client**" means any individual or entity that is, or during the last six (6) months of your employment was, a customer of the Company or a potential customer from whom the Company actively sought business. Notwithstanding the foregoing: (i) you may be a passive owner of up to 5% of the outstanding stock of any publicly traded corporation that competes with the Company; and (ii) the terms of Section 12(a) shall not apply if the Company terminates your employment without Cause (defined below). You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships, and other legitimate business interests of the Company and is reasonable in scope, duration, and geography. "**Cause**" means your: (i) material breach of this Agreement or any other agreement with, or policy of, the Company; (ii) failure or refusal to perform your job duties or follow a lawful directive; (iii) unsatisfactory performance; (iv) fraud, disloyalty, negligence, misconduct, or dishonesty with respect to the Company, a client of the Company, or your job duties; (v) illegal conduct involving dishonesty, fraud or theft; (vi) any act that could reasonably be expected to harm the reputation of the Company or any of its owners; (vii) misappropriation or diversion of any of the Company's assets or business opportunities; (viii) failure to disclose to the Company information material to its business; or (ix) excessive absences or tardiness.

13. **Non-disparagement.** During and after your employment, you agree not to make any statements (verbally, in writing, or electronically) that are disparaging, untrue, or that could reasonably be expected to impair the business, goodwill, or reputation of the Company or its owners, officers, or employees.

14. **Law.** This Agreement shall be governed by New York law without regard to choice of law principles. You hereby consent to the exclusive jurisdiction of the state or federal courts located in New York County with respect to any dispute arising hereunder. The prevailing party in any dispute arising out of this Agreement shall be reimbursed by the other party for all reasonable attorneys' fees and costs.

15. **Injunctive Relief.** You acknowledge and agree that if you breach, or attempt or threaten to breach, any part of Sections 10-13, the Company shall be entitled, in addition to any other right or remedy it may have, to an order enjoining or restraining you from any breach, or attempted or threatened breach, without having to post a bond or other security or prove damages and you hereby consent to the issuance of such an order. If you violate any of the provisions of Section 12, then in addition to all other remedies available to Company, the duration of the covenants shall be extended for the period of time when the violation began until you permanently cease such violation. Nothing set forth in this Section shall prevent the Company from seeking money damages or other relief instead of or in addition to injunctive relief.

16. **Miscellaneous.** The parties waive any rule of construction that would require an interpretation against the drafter. Headings are for convenience only. If either party waives or fails to dispute a breach of this Agreement, such party will not be deemed to have waived any other breach of this Agreement. If any provision of this Agreement is deemed illegal or unenforceable, that provision shall be limited to the extent required to be enforced, and, if necessary, severed, and all other provisions will remain effective. The obligations herein, which, by their terms, extend beyond termination of this Agreement and/or your employment, and all provisions necessary to enforce such obligations, shall survive such termination. This Agreement states the entire agreement and

Page 4 of 5

7 WEST 36ᵗʰ STREET ● 12ᵗʰ FLOOR ● NEW YORK, NEW YORK 10018 ● TEL. 212-213-3222 ● FAX 212-213-9702
8 EXCHANGE BLVD. ● SUITE 170 ● ROCHESTER, NEW YORK 14614 ● TEL. 585-802-9837 ● FAX 585-295-9652
www.appealtech.com

supersedes all prior agreements, statements, and negotiations with respect to the subject matter hereof. This Agreement may only be modified in a writing signed by both parties.

17. **Acknowledgements.** You acknowledge and agree that: (a) you understand all of the terms and conditions of this Agreement, including the restrictions in Section 12; (b) you had sufficient opportunity to consult legal counsel regarding this Agreement; (c) the benefits you are receiving are sufficient consideration for the promises you are making in this Agreement; and (d) you are freely and voluntarily entering into this Agreement and agreeing to be bound by all of its terms.

ACCEPTED AND AGREED:

Laurence Mynes                              Z&J LLC d/b/a AppealTech

By: _____

Date: ___0/16/16___                         Date: ___9/13/16___

Page 5 of 5
7 West 36th Street ● 12th Floor ● New York, New York 10018 ● Tel. 212-213-3222 ● Fax 212-213-9702
8 Exchange Blvd. ● Suite 170 ● Rochester, New York 14614 ● Tel. 585-802-9837 ● Fax 585-295-9652
www.appealtech.com

35 of 53

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM

NYSCEF DOC. NO. 59

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 37 of 54

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 59    RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 38 of 54

## EMPLOYMENT AGREEMENT

This **Agreement** is between **Z&J LLC d/b/a AppealTech** (the "Company") and **Jonathan Wallach** ("You").

1.  **Employment**. Your initial title will be Staff Counsel. Your employment will be "at will" and may be terminated at any time by you or the Company with or without reason and with or without advance notice.

2.  **Draw.** You annualized draw will be $140,000, paid pro rata, less applicable withholdings, in accordance with the Company's regular payroll practices. Any change to your draw shall be deemed an automatic amendment to this Agreement.

3.  **Commission.** You will be eligible to earn a **"Commission"** as set forth below after the Company has received $1,167,000 in fees after reduction for **"Expenses"** from **"Your Sales"** in a calendar year. To the extent the Company receives fees, after reduction for Expenses, from Your Sales in a calendar year in an amount:

    - between $1,167,000 and $1,500,000, you will be eligible to earn a Commission of 12% of such fees;

    - between $1,500,001 and $1,800,000, you will be eligible to earn a Commission of 13% of such fees; and

    - that exceeds $1,800,000, you will be eligible to earn a Commission of 14% of such fees.

For illustrative purposes only, to the extent the Company receives $1,900,000 in fees after reduction for Expenses from Your Sales in a calendar year, you will be eligible to earn a Commission of $92,960 [(1,500,000-1,167,000)*0.12] + [(1,800,000-1,500,000)*0.13] + [(1,900,000-1,800,000)*0.14].

**"Your Sales"** are fee-paying jobs that are: (1) received by the Company due solely to your efforts; and (2) completed and fully paid for by the clients during the term of your employment. **"Expenses"** include mailing, courier, and delivery charges to clients, any discounts or refunds to clients, and any costs the Company incurs to collect payment, such as legal fees, collection agent fees, and other such expenses. If Expenses in any given month exceed the fees the Company received from Your Sales, then the excess of the Expenses over such amount will be carried over to each subsequent month until such time as Your Sales exceed Expenses, or January 1 of the next calendar year, whichever occurs first. A Commission is calculated and **Earned** when the Company receives full payment from the applicable clients (after the first $1,167,000 in a calendar year) during the term of your employment.  Commission will be paid, less applicable withholdings, within one month after the month in which it is Earned, which will be reflected in a monthly reconciliation statement.

4.  **Business Expenses**.  The Company will reimburse you for reasonable and necessary business expenses that you properly incurred provided you submit appropriate receipts within 30 days of incurring the expense.

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM  INDEX NO. 650620/2018
NYSCEF DOC. NO. 59                                RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
Aff Re Lipsky Motion to Dismiss.   Pg 39 of 54

5.  **Equipment**.  The Company will provide a mobile phone and email device to use for the purpose of performing your duties for the Company. The device will remain the Company's property and your use will be subject to all Company policies.

6.  **Termination.**  Following termination of employment, the Company will pay your pro-rated Draw through your last day worked. You are not entitled to payment for any accrued, unused paid time off. You will be paid for any Commissions that you Earned through your last day worked on the terms set forth in Section 3. To the extent Expenses exceed Your Sales as of the date your employment terminates, you will not be required to reimburse the Company for such deficit.

7.  **Section 409A.**  Payments made pursuant to this Agreement are intended to be exempt from or to strictly comply with the provisions of Section 409A of the Internal Revenue Code.

8.  **Return of Property.**  You agree to return all Confidential Information (defined in Section 10), including all copies, and all other Company property upon termination or at the Company's request at any time.

9.  **No Restrictions.**  You represent and warrant that you are not subject to any obligations that in any way restrict your ability to accept employment with and fully perform your duties for the Company. You agree not to bring or use anything that contains another's confidential information.

10.  **Confidential Information.** You agree not to, directly or indirectly, disclose or use any **"Confidential Information"** during or after your employment, except as required to do your job for the Company and as may be required by law or subpoena, in which event you agree to provide the Company with the opportunity to seek a protective order or other relief prior to making any disclosure. **"Confidential Information"** means any and all proprietary, confidential or sensitive information; data, trade secrets or know-how of the Company, including, but not limited to: client and potential client names; contact details for, personal data concerning, and needs, preferences, and specifications of clients and potential clients; product/services lists; relationships and arrangements with vendors; marketing strategies and plans; operating strategies and plans; finances; financing strategies and plans; pricing; commissions; relationships, methodologies; processes; research; business plans; alliances; software; databases; source code; developments; Inventions; technology; designs; and any other technical, financial, or business information or plans pertaining to the Company's business. Confidential Information does not include information that is or has become publicly known and made generally available through no wrongful act of you or others who had confidentiality obligations to the Company. Notwithstanding the foregoing, you agree to notify any prospective or actual future employer of Sections 10-13 of this Agreement only.

11.  **Intellectual Property.** You will not, directly or indirectly, on your own or by, through or for any other person or entity, claim ownership of any product development efforts undertaken while employed by the Company. You acknowledge and agree that all concepts, design, work product, improvements, modifications, and finished product are the sole and exclusive property of the Company.  You will hold in trust for the sole right and benefit of the Company, and hereby irrevocably and perpetually assign to the Company, or its designee, all of your right, title, and interest, if any, in any and all **"Inventions."** You acknowledge and agree that the decision whether or not to commercialize any Invention is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other payment will be due to you as a result of the Company's efforts to commercialize any Invention. You further acknowledge that all original works

Page 2 of 4

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM    INDEX NO. 650620/2018
NYSCEF DOC. NO. 59                                  RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 40 of 54

of authorship which are made by you, solely or jointly with others, related to services provided during the course of your employment with the Company that are protectable by copyright are "works made for hire," as that term is defined in the U.S. Copyright Act. You agree not to seek injunctive relief against the Company related to its use of any material on which you have worked. "**Inventions**" means any and all inventions, products, processes, original works of authorship, developments, concepts, improvements, modifications, designs, discoveries, techniques, methods, technologies, data, media, derivative works, ideas, trademarks, or trade secrets, whether or not patentable or registrable under copyright or other laws, rules or regulations, of the Company, including without limitation those that you may, solely or jointly, conceive, develop, or reduce to practice, or cause to be conceived, developed, or reduced to practice, during or in the scope of your employment.

12.  **Non-Solicitation.** You acknowledge and agree that each restriction contained in this Section is necessary to protect the Confidential Information, goodwill, relationships, and other legitimate business interests of the Company and is reasonable in scope, duration, and geography. You agree that, during your employment and for twelve (12) months after your employment terminates, voluntarily or involuntarily, you will not, directly or indirectly, on your own behalf or on behalf of any individual or entity, in any geographic area in which the Company does or is seeking to do business, engage in any of the following conduct, except as necessary to perform your job duties for the Company:

(a) encourage, induce or attempt to encourage or induce any Client to change the nature, terms, or amount of business it conducts with the Company; or

(b) solicit, hire, or attempt to solicit or hire, any individual who is an employee, consultant, or contractor of the Company or who was an employee, consultant, or contractor of the Company at any time during the six (6) months preceding the termination of this Agreement.

For purposes of this Section 12, all references to a **Client:** (i) include any individual, entity, or other third party that is, or was during your employment or the six (6) months prior to the termination of your employment, a customer of the Company or a potential customer from whom the Company actively sought business; and (ii) exclude any individual, entity, or other third party with whom you had a business relationship and for whom you provided appellate services prior to your employment with the Company.

13.  **Non-disparagement.** During and after your employment, you agree not to make any statements (verbally, in writing, or electronically) that are disparaging, untrue, or that could reasonably be expected to impair the business, goodwill, or reputation of the Company or its owners, officers, or employees.

14.**Law and Attorneys' Fees.** This Agreement will be governed by New York law without regard to choice of law principles. You hereby consent to the exclusive jurisdiction of the state or federal courts located in New York County with respect to any dispute arising hereunder. The prevailing party in any dispute arising out of this Agreement shall be reimbursed by the other party for all reasonable attorneys' fees and costs.

15.  **Injunctive Relief.** You acknowledge and agree that if you breach, or attempt or threaten to breach, any part of Sections 10-13, the Company shall be entitled, in addition to any other right or

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 59

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 41 of 54

remedy it may have, to an order enjoining or restraining you from any breach, or attempted or threatened breach, without having to post a bond or other security or prove damages and you hereby consent to the issuance of such an order. If you violate any of the provisions of Section 12, then in addition to all other remedies available to Company, the duration of the covenants shall be extended for the period of time when the violation began until you permanently cease such violation. Nothing set forth in this Section shall prevent the Company from seeking money damages or other relief instead of or in addition to injunctive relief.

16. **Miscellaneous.** The parties waive any rule of construction that would require an interpretation against the drafter. Headings are for reference purposes only. If either party waives or fails to dispute any breach of this Agreement, such party will not be deemed to have waived any other breach of this Agreement. If any provision of this Agreement is deemed illegal or unenforceable, that provision will be limited to the extent required to be enforced, and, if necessary, severed, and all other provisions will remain effective. The obligations herein, which, by their terms, extend beyond termination of this Agreement and/or your employment, and all related provisions necessary to enforce such obligations, shall survive such termination. This Agreement states the entire agreement and supersedes all prior agreements, statements, and negotiations with respect to the subject matter hereof. This Agreement may only be modified in a writing signed by both parties.

17. **Acknowledgements.** You acknowledge and agree that: (a) you carefully read and understand all the terms and conditions of this Agreement, including the restrictions imposed on you in Sections 10-13; (b) you had ample opportunity to consult legal counsel regarding this Agreement; (c) the benefits you are receiving hereunder are sufficient consideration for the promises you are making hereunder; and (d) you are freely and voluntarily entering into this Agreement.

**ACCEPTED AND AGREED:**

Jonathan Wallach

Date: 3/5/2014

Z&J LLC d/b/a AppealTech

Date: March 5, 2014

Page 4 of 4

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
NYSCEF DOC. NO. 59

INDEX NO. 650620/2018

RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 42 of 54

# EXHIBIT D

14479

*To be Argued by:*
NILES C. WELIKSON

# MICRO-FICHE

New York County Clerk's Index No. 116747/10

# New York Supreme Court

## Appellate Division – First Department

————— ❖❖❖ —————

MARCIA MEYERS,

*Plaintiff-Respondent,*

– against –

FOUR THIRTY REALTY,

*Defendant-Appellant.*

## BRIEF FOR DEFENDANT-APPELLANT

HORING WELIKSON & ROSEN, P.C.
*Attorneys for Defendant-Appellant*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
nwelikson@hwrpc.com

Printed on Recycled Paper

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 59
19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
RECEIVED NYSCEF: 09/18/2018
Aff Re Lipsky Motion to Dismiss.   Pg 44 of 54

1865

New York County Clerk's Index No. 156986/12

# New York Supreme Court
## Appellate Division – First Department

——————◆❿◆——————

ISAAC EIDA,

*Plaintiff-Appellant,*

– against –

THE BOARD OF MANAGERS OF THE 135 CONDOMINIUM,

*Defendant-Respondent.*

---

## APPENDIX

FILED

JUN  -3 7018

SUP COURT, APP. DIV
FIRST DEPT.

LAW OFFICE OF ROBERT L. GREENER
*Attorneys for Plaintiff-Appellant*
112 Madison Avenue, 6th Floor
New York, New York 10016
(646) 415-8920
rlg@greenerlegal.com

ORIGINAL
WITH PROOF OF
SERVICE

LAW OFFICE OF CHARLES J. SIEGEL
*Attorneys for Defendant-Respondent*
125 Broad Street, 7th Floor
New York, New York 10004
(212) 440-2350
jack.cohen@cna.com

Printed on Recycled Paper

*Bronx County Clerk's Index Nos. 306059/12 and 83703/13*

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT

►►◄◄

### Index No. 306059/12

ANGEL LEONIDES CASHBAMBA,

*Plaintiff-Appellant-Respondent,*

*against*

1056 BEDFORD LLC, LEADEX INC.,

*Defendants-Respondents-Appellants,*

*and*

MYBEM CORP.,

*Defendant.*

*(Additional Caption on the Reverse)*

## JOINT RECORD ON APPEAL
## VOLUME II OF II
## Pages 415 to 847

HAVKINS ROSENFELD RITZERT
  & VARRIALE, LLP
*Attorneys for Defendants/Third-Party*
  *Plaintiffs-Respondents-Appellants*
114 Old Country Road, Suite 300
Mineola, New York 11501
516-620-1700
robert.coleman@hrrvlaw.com

ORESKY & ASSOCIATES, PLLC
*Attorneys for Plaintiff-Appellant-*
  *Respondent*
149 East 149th Street
Bronx, New York 10451
718-993-9999
lrogers@oreskylaw.com

DILLON HOROWITZ & GOLDSTEIN LLP
*Attorneys for Third-Party Defendant-*
  *Respondent-Appellant*
11 Hanover Square, 20th Floor
New York, New York 10005
212-248-4900
mmhorowitz@dhgattorneys.com

FILED
AUG  6 2018
SUP COURT APP DIV
FIRST DEPT.

*Printed on Recycled Paper*

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM   INDEX NO. 650620/2018

NYSCEF DOC. NO. 59                                                    RECEIVED NYSCEF: 09/18/2018

19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
Aff Re Lipsky Motion to Dismiss.   Pg 46 of 54

*New York County Clerk's Index No. 110053/11*

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT

▶▶◀◀

LAURA DiLORENZO,

*Plaintiff-Respondent,*

*against*

WINDERMERE OWNERS LLC and
WINDEMERE CHATEAU, INC.,

*Defendants-Appellants.*

## APPENDIX



CULLEN & ASSOCIATES, P.C.
*Attorneys for Defendants-Appellants*
132 Nassau Street, Suite 1220
New York, New York 10038
212-233-9772
wayne@cullenpc.com

MARC BOGATIN
*Attorney for Plaintiff-Respondent*
305 Broadway, 7th Floor
New York, New York 10007
212-406-9065
marcbogatin@yahoo.com

*Printed on Recycled Paper*

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018

NYSCEF DOC. NO. 59   19-01435-jlg   Doc 5-18   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Q -
Aff Re Lipsky Motion to Dismiss.   Pg 47 of 54
RECEIVED NYSCEF: 09/18/2018

*Bronx County Clerk's Index No. 304739/14*

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT

▶▶◀◀

REYNA DIAZ-MARTINEZ,

*Plaintiff-Appellant,*

*against*

KING OF GLORY TABERNACLE,

*Defendant-Respondent.*



---

# RECORD ON APPEAL

---

GORAYEB & ASSOCIATES, P.C.
*Attorneys for Plaintiff-Appellant*

By: POLLACK, POLLACK, ISAAC
& DeCICCO, LLP
*Appellate Counsel*
225 Broadway, 3rd Floor
New York, New York 10007
212-233-8100
bji@ppid.com

MOLOD SPITZ & DeSANTIS, P.C.
*Attorneys for Defendant-Respondent*
1430 Broadway, 21st Floor
New York, New York 10018
212-869-3200
sdesantis@molodspitz.com

*Printed on Recycled Paper*

*New York County Clerk's Index No. 157609/14*

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT

➤➤◄◄

TISHMAN CONSTRUCTION CORP. OF N.Y.,

*Plaintiff-Respondent,*

*against*

SCOTTSDALE INSURANCE COMPANY,

*Defendant-Appellant,*

*and*

ORNAMENTAL INSTALLATION SPECIALISTS, INC.,

*Defendant.*

## RECORD ON APPEAL
## VOLUME IV OF IV
## Pages 1661 to 2096

KENNEDYS CMK LLP
*Attorneys for Defendant-Appellant*
570 Lexington Avenue, 8th Floor
New York, New York 10022
212-252-0004
ann.odelson@kennedyscmk.com
jake.palefski@kennedyscmk.com

CORNELL GRACE, P.C.
*Attorneys for Plaintiff-Respondent*
111 Broadway, Suite 810
New York, New York 10006
212-233-1100
jcornell@cornellgrace.com
lmaletta@cornellgrace.com

RECEIVED
AUG - 6 2018
SUP COURT APP. DIV.
FIRST DEPT

*Printed on Recycled Paper*

*New York County Clerk's Index No. 655506/2016*

# New York Supreme Court

## APPELLATE DIVISION – FIRST DEPARTMENT

EMMET AUSTIN, individually and derivatively on behalf of:
STONEMAR MM JACKSON, LLC, STONEMAR MANAGING MEMBER, LLC,
STONEMAR MM WEST DES MOINES, LLC, STONEMAR MM JONESBORO, LLC,
STONEMAR MM COOKEVILLE, LLC and
STONEMAR MM MILFORD, LLC,

**Docket No. 2018-2263**

*Plaintiffs-Appellants,*

-against-

JONATHAN GOULD, STONEMAR MM JACKSON, LLC, STONEMAR MANAGING MEMBER, LLC,
STONEMAR MM WEST DES MOINES, LLC, STONEMAR MM JONESBORO, LLC, STONEMAR
MM COOKEVILLE, LLC, STONEMAR MM MILFORD, LLC, JACKSON RETAIL PARTNERS, LLC,
OWENSBORO RETAIL HOLDINGS, LLC, STONEMAR WEST DES MOINES PARTNERS, LLC,
STONEMAR JONESBORO PARTNERS, LLC, STONEMAR COOKEVILLE PARTNERS, LLC,
STONEMAR MILFORD PLAZA, LLC AND MELINDA GOULD A/K/A MELINDA SCHNEIDER.

*Defendants-Respondents.*

## Record on Appeal

**WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP**
*Attorneys for Defendants-Respondents*
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
gzucker@westermanllp.com

**LAW OFFICE OF EDWARD J. BOYLE**
*Attorneys for Plaintiffs-Appellants*
500 Manhasset Woods Road
Manhasset, New York 11030
(917) 538-0324
ejboyle3@gmail.com

*Printed on Recycled Paper*

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 59
RECEIVED NYSCEF: 09/18/2018

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 50 of 54

# EXHIBIT E

*To be Argued by:*
NILES C. WELIKSON

New York County Clerk's Index No. 452674/15

# New York Supreme Court

## Appellate Division—First Department

REGINA ALSTON, SANDRA VAUGHN-COOKE
and FAIR HOUSING JUSTICE CENTER,

*Plaintiffs-Respondents.*

– against –

STARRETT CITY, INC. and GRENADIER REALTY CORP.,

*Defendants-Appellants.*

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

HORING WELIKSON & ROSEN, P.C.
*Attorneys for Defendants-Appellants*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
nwelikson@hwrpc.com

PRINTED ON RECYCLED PAPER ♻

FILED: NEW YORK COUNTY CLERK 09/18/2018 05:35 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 59     19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q - RECEIVED NYSCEF: 09/18/2018

Aff Re Lipsky Motion to Dismiss.    Pg 52 of 54

*To be Submitted by:*
ASHKA S. PATWA

District Court, Nassau County Clerk's Index No. L&T 3699/14

# New York Supreme Court

## Appellate Term—Second Department

### 9th & 10th Judicial Districts

385 BAYVIEW LLC,

*Petitioner-Respondent,*

– against –

CHARLENE WARREN, "JOHN DOE" and YAZMYN GREEN,

*Respondents-Appellants.*

## BRIEF FOR PETITIONER-RESPONDENT

HORING, WELIKSON & ROSEN, P.C.
*Attorneys for Petitioner-Respondent*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700

19-01435-jlg    Doc 5-18    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Q -
Aff Re Lipsky Motion to Dismiss.    Pg 53 of 54

*To be Submitted by:*
NILES C. WELIKSON

New York County Clerk's Index No. 162752/15

# New York Supreme Court

## Appellate Division—First Department

---

NEIL ALTMAN & JILLIAN STILE,

*Plaintiffs-Respondents,*

– against –

GEORGIA PROPERTIES, INC.,

*Defendant-Appellant.*

---

## REPLY BRIEF FOR DEFENDANT-APPELLANT

**FILED**

AUG 1 / 2017

SUP COURT, APP. DIV.
FIRST DEPT.

, HORING WELIKSON & ROSEN, P.C.
*Attorneys for Defendant-Appellant*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
nwelikson@hwrpc.com

#2135-MS

PRINTED ON RECYCLED PAPER ♻

*To be Argued by:*
JANN S. BRENT

New York County Clerk's Index No. 100643/16

# New York Supreme Court

## Appellate Division—First Department

In the Matter of the Application of

160 EAST 84TH STREET ASSOCIATES LLC,

*Petitioner-Appellant-Respondent,*

For a Judgment Pursuant to Article 78 of the Civil Practice Law and Rules,

– against –

NEW YORK STATE DIVISION OF HOUSING
AND COMMUNITY RENEWAL,

*Respondent-Respondent-Appellant,*

– and –

SHERRY SADO,

*Intervenor-Respondent.*

## BRIEF FOR PETITIONER-APPELLANT-RESPONDENT

HORING WELIKSON & ROSEN, P.C.
*Attorneys for Petitioner-Appellant-Respondent*
11 Hillside Avenue
Williston Park, New York 11596
(516) 535-1700
jbrent@hwrpc.com

PRINTED ON RECYCLED PAPER ♺