# Exhibit X

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM          INDEX NO. 650620/2018
NYSCEF DOC. NO. 75                                        RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
                MOL in Opposition to Motiion to Dimiss.    Pg 2 of 27

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------x

Z & J LLC d/b/a APPEALTECH,                          :          Index No.: 650620/2018
                                                     :
                          Plaintiff,                 :
                                                     :
        -against-                                    :
                                                     :
LAURENCE MYNES and COUNSEL PRESS, INC.,              :
GLADSTONE INVESTMENT CORPORATION,                   :
GLADSTONE MANAGEMENT CORPORATION,                   :
GLADSTONE ADMINISTRATION, LLC and                   :
JONATHAN WALLACH                                     :
                                                     :
                          Defendants.                :
                                                     :
-------------------------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION TO COUNSEL PRESS, INC., GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATION, AND GLADSTONE ADMINISTRATION, LLC'S MOTION TO **DISMISS THE AMENDED COMPLAINT**

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 75 RECEIVED NYSCEF: 01/22/2019

19-01435-jlg   Doc 5-25   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit X -
MOL in Opposition to Motiion to Dimiss.   Pg 3 of 27

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL ALLEGATIONS ...............................................................................3

ARGUMENT ......................................................................................................8

I.    The Rule 3211(a)(1) Standard ..........................................................8

II.   The Rule 3211(a)(7) Standard ..........................................................9

III.  AppealTech Pled A Claim For Tortious Interference With Contract ................................10

    A.  AppealTech Alleged The Existence Of Valid Agreements .........................................10

        i)  The Restrictive Covenants Are No Greater Than Necessary To
            Protect AppealTech's Legitimate Business Interests.......................................11

        ii)  The Restrictive Covenants Do Not Impose Undue Hardship
            On Wallach And Mynes....................................................................................12

        iii)  The Restrictive Covenants Are Not Injurious To The General Public ...........14

        iv)  The Court Has Authority To Narrow The Restrictive Covenants
            Under The Employment Agreements ..............................................................15

    B.  AppealTech Alleged Its Claims With Adequate Specificity........................................15

    C.  AppealTech Alleged A Breach Of The Confidentiality Provisions.............................16

IV.   AppealTech Pled A Claim For Tortious Interference With
     Business Relationships......................................................................18

V.    AppealTech Pled A Claim For Unfair Competition ........................................................19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## CASES

534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick
 90 A.D.3d 541, 935 N.Y.S.2d 23 (1st Dept. 2011)............................................18

Access Nursing Services v. Street Consulting Group
 137 A.D.3d 678, 29 N.Y.S.3d 268 (1st Dept. 2016) ........................................16

Art and Fashion Group Corp. v. Cyclops Production, Inc.
 120 A.D.3d 436, 992 N.Y.S.2d 7 (1st Dept. 2014)..........................................8-9

Bazak Int'l Corp. v. Mast Indus., Inc.
 73 N.Y.2d 113, 538 N.Y.S.2d 503 (1989) ........................................................16

BDO Seidman v. Hirshberg
 93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999) ........................................... 11, 14-15

Blackman Plumbing Supply Co., Inc. v Connelly
 2011 WL 4344999 (Sup. Ct. Nassau Cty Aug. 23, 2011) ................................14

Brown & Brown, Inc. v. Johnson
 25 N.Y.3d 364, 12 N.Y.S.3d 606 (2015) ........................................................11

Carlson v. Am. Int'l Grp., Inc.
 30 N.Y.3d 288, 89 N.E.3d 490 (2017)................................................................9

Children's Magical Garden, Inc. v. Norfolk Street Development, LLC
 164 A.D.3d 73, 82 N.Y.S.3d 354 (1st Dept. 2018)...........................................10

EBC I, Inc. v. Goldman, Sachs & Co.
 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005) ...........................................................16

E.J. Brooks Company v. Cambridge Security Seals
 31 N.Y.3d 441, 80 N.Y.S.3d 162 (2018) .................................................. 19-20

ENV Servs., Inc. v. Alesia
 10 Misc.3d 1054(A), 809 N.Y.S.2d 481 (Sup. Ct. Nassau Cty 2005) ......... 13-14

Fontanetta v. Doe
 73 A.D.3d 78, 898 N.Y.S.2d 569 (2nd Dept. 2010)............................................9

Good Energy, L.P. v. Kosachuk
 49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dept. 2008)...................................... 12-13

iii

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 75

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dimiss.    Pg 5 of 27

RECEIVED NYSCEF: 01/22/2019

Goodman v. N.Y. Oncology Hematology, P.C.
    101 A.D.3d 1524, 957 N.Y.S.2d 449 (3d Dept. 2012) .....................................12

High Definition MRI, P.C. v. Travelers Companies, Inc.
    137 A.D.3d 602, 29 N.Y.S.3d 23, 24 (1st Dept. 2016).........................................9

J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.
    21 N.Y.3d 324, 970 N.Y.S.2d 733 (2013) ................................................... 8-10

LinkCo Inc. v. Fujitsu Ltd.
    230 F.Supp.2d 492 (S.D.N.Y. 2002)...............................................................20

Maltby v. Harlow Meyer Savage Inc.
    166 Misc.2d 481, 633 N.Y.S.2d 926 (Sup. Ct. N.Y. Cty 1995) ........................11

Marsh USA Inc. v. Hamby
    28 Misc.3d 1214(A), 958 N.Y.S.2d 61 (Sup. Ct. N.Y. Cty 2010).............. 17-18

Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC
    149 A.D.3d 127, 50 N.Y.S.3d 13 (1st Dept. 2017)...........................................10

Normandy Real Estate Partners LLC v. 24 East 12th Street Associates LLC
    2019 WL 123518 (1st Dept. Jan. 8, 2019)........................................................10

Serao v. Bench-Serao
    149 A.D.3d 645, 53 N.Y.S.3d 628 (1st Dept. 2017) ..........................................9

Serio v. Rhulen
    24 A.D.3d 1092, 806 N.Y.S.2d 283 (3d Dept. 2005) .......................................16

Suburban Graphics Supply Corp. v. Nagle
    5 A.D.3d 663, 774 N.Y.S.2d 160 (2d Dept. 2004) ...........................................17

TSIG Consulting, Inc. v. ACP Consulting LLC
    2014 N.TY.Misc.LEXIS 3788 (Sup. Ct. N.Y. Cty August 18, 2014) ...............14

Volt Delta Res. LLC v. Soleo Commc'ns Inc.
    11 Misc. 3d 1071(A), 816 N.Y.S.2d 702 (Sup. Ct. N.Y. Cty 2006)..................20

White Plains Coat & Apron Co., Inc. v. Cintas Corp.
    8 N.Y.3d 422, 835 N.Y.S.2d 530 (2007) .........................................................10

Yedlin v. Lieberman
    102 A.D.3d 769, 961 N.Y.S.2d 186 (2d Dept. 2013) ......................................14

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM

NYSCEF DOC. NO. 75

INDEX NO. 650620/2018

RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dimiss.    Pg 6 of 27

## **STATUTES**

CPLR Rule 3211(a)(1)............................................................................................................1, 8

CPLR Rule 3211(a)(7)........................................................................................................ 1, 9-10

v

Plaintiff Z & J LLC d/b/a AppealTech ("AppealTech") submits this memorandum of law in opposition to the motion to dismiss the Amended Complaint (the "Motion") filed by Defendants Counsel Press, Inc. ("Counsel Press"), Gladstone Investment Corporation, Gladstone Management Corporation and Gladstone Administration, LLC (collectively, the "Moving Defendants") pursuant to Rules 3211(a)(1) and (7) of the New York Civil Practice Rules and Procedures ("CPLR").

## PRELIMINARY STATEMENT

AppealTech's claims are based on the Moving Defendants' efforts to destroy AppealTech as a direct competitor of Counsel Press. The Moving Defendants targeted and hired AppealTech personnel and obtained AppealTech's confidential information from such personnel for the stated purpose of putting AppealTech out of business.

As alleged in the Amended Complaint, during an August 2016 meeting at Defendant Counsel Press, its President and CEO Scott Thompson discussed the Moving Defendants' strategy of putting AppealTech out of business by poaching so many of its employees that there would be "one less competitor" in the market. Counsel Press began trying to hire the majority of AppealTech's employees, including all of its key employees. Among those it hired were Defendants Jonathan Wallach ("Wallach") and Laurence Mynes ("Mynes"), who while still employed by AppealTech, brazenly breached their employment agreements and duties of loyalty by misappropriating AppealTech's confidential information including client lists, lists of active accounts, client account information, client documents and deadlines, sales reports, sales budgets, invoices, accounts receivables and otherwise. Wallach and Mynes transmitted this confidential information to their personal e-mail accounts and Wallach (and likely Mynes) then

1

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 75                                                        RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dimiss.    Pg 8 of 27

transmitted the client list and other confidential information to Defendant Counsel Press, which circulated it internally and uploaded it to its internal computer systems.

Despite AppealTech's detailed and documented allegations, the Moving Defendants ignore and mischaracterize AppealTech's allegations, as well as the standard for a motion to dismiss and applicable law, contending that AppealTech's allegations are not specific enough or too speculative. The Moving Defendants' contentions are patently without merit. AppealTech has plainly alleged adequate facts at this stage of the proceeding and is entitled to proceed to discovery where it can undoubtedly uncover far more facts to prove its allegations. Only through discovery can AppealTech be expected to uncover the full extent of the Moving Defendants' wrongdoing.

The Moving Defendants' contentions that AppealTech has failed to allege a claim for tortious interference with contract on the grounds that the restrictive covenants contained in the employment agreements for Mynes and Wallach are overbroad are without merit. The clear language of these restrictive covenants provides that they are limited to only those areas where AppealTech does business (which is only three cities and their surrounding areas) or is actively seeking to do business. AppealTech is a small company and has never alleged that it does business, or is seeking to do business, nationwide. Regardless, even if these restrictive covenants were actually somehow overbroad, the employment agreements provide that if any provision is unenforceable, including the restrictive covenants, such provision shall be limited to the extent required to be enforced.

The Moving Defendants' contentions that AppealTech has not pled claims for tortious interference with business relationships or unfair competition are equally without merit. AppealTech has very specifically alleged interference, wrongful means, malice and bad faith in

2

considerable detail. Only through discovery can AppealTech be expected to uncover further specifics of the Moving Defendants' wrongdoing.

<u>**FACTUAL ALLEGATIONS**</u>

AppealTech is a comprehensive appellate services provider that has been in operation for approximately 20 years. <u>See</u> Amended Complaint, ¶22; <u>see also</u> ¶3 of the Affidavit of Michael Kestan ("PI Affidavit") annexed as Exhibit "B" to the Affidavit of Ryan Cronin submitted with the Motion and annexed as Exhibit "A" to the Affidavit of Michael Kestan ("Kestan Affidavit") submitted with this opposition. AppealTech maintains offices in New York City, Rochester, and Los Angeles, and provides appellate services in those cities and surrounding areas. <u>See</u> Amended Complaint, ¶¶23-24; PI Affidavit, ¶3.

Counsel Press is also an appellate services provider, which operates with the assistance of the other Moving Defendants for its day to day operations. <u>See</u> Amended Complaint, ¶¶29, 36. Both AppealTech and Counsel Press hire employees to work as appellate consultants to develop business relationships with lawyers and law firms, shepherd client projects through the appellate process, and advise clients and prospective clients on the appellate process, all of which creates goodwill with clients and prospects, with the goal being to develop repeat business through the development and maintenance of these relationships. <u>See</u> Amended Complaint, ¶32.

In March 2014, Wallach began his employment with AppealTech and entered into an employment agreement (the "Wallach Employment Agreement"). <u>See</u> <u>Id.</u> at ¶¶40-41; and Wallach Employment Agreement annexed as Exhibit "B" to the Kestan Affidavit. The Wallach Employment Agreement contains a confidentiality provision prohibiting him from using any of AppealTech's confidential information during or after his employment, except as required to do his job for AppealTech. <u>See</u> <u>Id.</u> at ¶42; Wallach Employment Agreement, Section 10. The

3

Wallach Employment Agreement also contains a non-solicitation provision, which provides that "during [his] employment and for twelve (12) months after…[he] will not…in any geographic area in which [AppealTech] does or is seeking to do business…(a) encourage, induce or attempt to encourage or induce any Client to change the nature, terms, or amount of business it conducts with [AppealTech]." See Id. at ¶43; Wallach Employment Agreement, Section 12. This non-solicitation provision, however, "exclude[s] any individual, entity, or other third party with whom [Wallach] had a business relationship and for whom [Wallach] provided appellate services prior to [Wallach's] employment with [AppealTech]." See Wallach Employment Agreement, Section 12. These covenants were in exchange for an annualized draw of $140,000, in addition to a commission. See Amended Complaint, ¶44. The Wallach Employment Agreement also provides that if any provision of the Wallach Employment Agreement is deemed unenforceable, that provision will be limited to the extent required to be enforced. See Wallach Employment Agreement, Section 16.

In or around the summer of 2016, the Moving Defendants initiated a directed and concerted effort to poach AppealTech's employees and steal AppealTech's confidential and proprietary information to undermine AppealTech's business and destroy AppealTech as a competitor. See Amended Complaint, ¶¶37-39. During an August 2016 meeting at Defendant Counsel Press, its President and CEO Scott Thompson discussed the Moving Defendants' strategy of putting AppealTech out of business by poaching so many of its employees that there would be "one less competitor" in the market. Id. at ¶68.

In furtherance thereof, Counsel Press hired Defendant Wallach in August 2016. Several days prior to resigning from AppealTech, Wallach began e-mailing AppealTech's confidential information to his personal e-mail address, including sales reports, client lists, client documents,

4

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM
NYSCEF DOC. NO. 75

INDEX NO. 650620/2018
RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dimiss.    Pg 11 of 27

upcoming client deadlines, lists of active accounts and other related information, all of which

constitutes "Confidential Information" as defined in the Wallach Employment Agreement. See

Amended Complaint, ¶¶45-46; Kestan Affidavit, ¶14; Wallach Employment Agreement, Section

10. Wallach then sent AppealTech's client list and other confidential information to Counsel

Press, which circulated it internally and uploaded it to their system. See Id. at ¶¶47, 135; Kestan

Affidavit, ¶5. Moreover, while still employed at AppealTech, Wallach received e-mails and

voice-mails from numerous attorneys and law firms regarding new matters, yet never advised

AppealTech of such new matters, thereby preventing AppealTech from providing services to

these attorneys and law firms for such new matters. See Amended Complaint, ¶¶48-49; Kestan

Affidavit, ¶¶6, 8-13. Upon information and belief and at the direction of the Moving

Defendants, Wallach referred these and other AppealTech clients to Counsel Press while still

employed at AppealTech. See Amended Complaint, ¶¶48-51.

Shortly after hiring Wallach, Counsel Press also hired two other Senior Appellate

Consultants of AppealTech and attempted to poach approximately 65% of AppealTech's other

employees. See Id. at ¶¶54, 59. This forced AppealTech to drastically raise salaries above

market value and impaired AppealTech's ability to accept and timely complete print orders. See

Id. at ¶¶59-65. As a result of the foregoing, AppealTech's revenue declined substantially in

2017 and is currently operating at a loss. See Id. at ¶70.

Through the end of 2017 and into early 2018, the Moving Defendants continued their

scheme to poach AppealTech's employees and drive AppealTech out of business by targeting

Mynes, an AppealTech Senior Appellate Consultant. See Id. at ¶73.

customer relationships in the appellate service industry. See Id. at ¶¶76-79; PI Affidavit at

¶¶10-12. For over 12 years, AppealTech trained and supported Mynes, allowing him to develop

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 75          19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X - RECEIVED NYSCEF: 01/22/2019

MOL in Opposition to Motiion to Dimiss.    Pg 12 of 27

key relationships with AppealTech clients.  <u>See</u> Amended Complaint, ¶¶81-82.  During his

employment with AppealTech, Mynes had access to and dealt with most of AppealTech's

clients.  <u>See</u> PI Affidavit, ¶14.  Mynes specialized in appeals for the New York State Appellate

Division, the New York Court of Appeals and the Second Circuit Court of Appeals.  <u>See</u> PI

Affidavit, ¶13.  As a Senior Appellate Consultant, Mynes was privy to AppealTech's

confidential and proprietary information, including AppealTech's sales and marketing strategies,

proprietary sales practices, general and specific client pricing data, and client lists.  <u>See</u>

Amended Complaint, ¶85.

In 2016, as the Moving Defendants were poaching AppealTech's employees, AppealTech

approached Mynes to negotiate significantly increased compensation in exchange for his

agreement to protect and preserve AppealTech's confidential and proprietary information and

not compete with AppealTech.  <u>See Id.</u> at ¶¶87-91, 93.  Accordingly, on or about November 16,

2016, Mynes entered into an employment agreement with AppealTech that provided a significant

increase in compensation through a draw, which was increased from $80,000 to $120,000.  <u>See</u>

<u>Id.</u> at ¶¶88-89; and Employment Agreement annexed as Exhibit "C" to the Kestan Affidavit (the

"Mynes Employment Agreement"; collectively with the Wallach Employment Agreement, the

"Employment Agreements").  Mynes' compensation increased by more than 30% because of the

Mynes Employment Agreement and AppealTech's directing certain house accounts to Mynes,

which increased his commissions and almost doubled his sales.  <u>See Id.</u> at ¶¶93-94; <u>see also</u> PI

Affidavit, ¶29.

The Mynes Employment Agreement contains a confidentiality provision prohibiting him

from using any of AppealTech's confidential information during or after his employment, except

as required to do his job for AppealTech.  <u>See</u> Amended Complaint, ¶90; Mynes Employment

6

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 75 RECEIVED NYSCEF: 01/22/2019

19-01435-jlg Doc 5-25 Filed 12/23/19 Entered 12/23/19 16:01:58 Exhibit X -
MOL in Opposition to Motiion to Dimiss. Pg 13 of 27

Agreement, Section 10. The Mynes Employment Agreement also contains a non-competition provision, which provides that during his employment and for six months after termination, he would not, except as necessary to perform his duties for AppealTech (a) provide services for any other third party that is engaged in the same or similar business as AppealTech in any geographic area in which AppealTech does or is actively seeking to do business, (b) solicit any AppealTech client for the types of services AppealTech provides or provided within six months prior to Mynes' termination, (c) interfere with AppealTech's relationship with any client, or (d) solicit any person who is, or was during the six month period prior to Mynes' termination, an AppealTech employee. See Id. at ¶91; Mynes Employment Agreement, Section 12. Lastly, the Mynes Employment Agreement provides that if any provision is deemed unenforceable, that provision will be limited to the extent required to be enforced. See Mynes Employment Agreement, Section 16.

In late 2017, Mynes began e-mailing AppealTech's confidential information to his personal e-mail address, including AppealTech's 2017 sales budget, company checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint presentation prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information, all of which constitute "Confidential Information" under the Mynes Employment Agreement. See Amended Complaint, ¶97; Mynes Employment Agreement, Section 10. Mynes also uploaded confidential information from his company-issued cell phone to his personal cloud account. See Id. at ¶100.

On January 17, 2018, Mynes abruptly resigned from AppealTech, refusing to disclose where he would be employed or whether he had found other employment. See Id. at ¶¶74, 101-

02. AppealTech learned the next day that Mynes had accepted a position as a Senior Appellate Consultant at Counsel Press. See Id. at ¶75. Upon information and belief, immediately upon his resignation from AppealTech and for months prior to his resignation, Mynes solicited AppealTech's clients to move their business to Counsel Press and shared AppealTech's foregoing confidential and proprietary information with the Moving Defendants. See Id. at ¶¶103-04.

Counsel Press subsequently announced that Mynes had joined the company, effective January 29, 2018, as a Senior Appellate Consultant in Counsel Press's New York City office. See Id. at ¶107.

As a result of Moving Defendants' conduct, AppealTech has suffered dramatically decreased profits, is currently operating at a loss, and has lost clients, such as Horing Welikson & Rosen, P.C., as well as numerous client opportunities. See Id., at ¶¶110-113; see also Kestan Affidavit, ¶¶6, 8-13.

## ARGUMENT

### I.    The Rule 3211(a)(1) Standard

CPLR Rule 3211(a)(1) provides that a defendant can seek dismissal of a complaint on the ground that "a defense is founded upon documentary evidence." In order to grant a motion to dismiss pursuant to CPLR Rule 3211(a)(1), the documentary evidence submitted must utterly and conclusively refute the plaintiff's allegations. See J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 21 N.Y.3d 324, 334, 970 N.Y.S.2d 733, 738 (2013). In other words, the documents relied upon must "definitely dispose of the plaintiff's claim." See Art and Fashion Group Corp. v. Cyclops Production, Inc., 120 A.D.3d 436, 438, 992 N.Y.S.2d 7, 10 (1st Dept. 2014). To be considered documentary evidence, such materials "must be unambiguous and of undisputable authority."

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM
NYSCEF DOC. NO. 75

INDEX NO. 650620/2018

RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dismiss.    Pg 15 of 27

See Fontanetta v. Doe, 73 A.D.3d 78, 86, 898 N.Y.S.2d 569, 575 (2nd Dept. 2010) (the contents of such documents must be "essentially undeniable"). "Factual affidavits do not constitute documentary evidence within the meaning of the statute." See Serao v. Bench-Serao, 149 A.D.3d 645, 646, 53 N.Y.S.3d 628, 630 (1st Dept. 2017); see also Art and Fashion, supra, 120 A.D.3d at 438, 992 N.Y.S.2d at 10.

As part of their documentary evidence, the Moving Defendants submit the PI Affidavit of Michael Kestan, the President and Owner of AppealTech, that was previously submitted to the Court in support of AppealTech's application for a preliminary injunction. Not only does the PI Affidavit not support the Moving Defendants' arguments, but as stated above, a factual affidavit should not be considered documentary evidence because it is not considered to be of undisputable authority and essentially undeniable. Moreover, the Moving Defendants would presumably dispute many of the statements in the PI affidavit. Regardless, both the PI Affidavit and the Kestan Affidavit should be considered in response to the Moving Defendants' motion to dismiss pursuant to CPLR Rule 3211(a)(7) to remedy any defects in the Amended Complaint. See e.g., Carlson v. Am. Int'l Grp., Inc., 30 N.Y.3d 288, 298, 89 N.E.3d 490, 495 (2017) (expert affidavit submitted by plaintiff sufficient to defeat a motion to dismiss); High Definition MRI, P.C. v. Travelers Companies, Inc., 137 A.D.3d 602, 29 N.Y.S.3d 23, 24 (1st Dept. 2016).

## II.    The Rule 3211(a)(7) Standard

On a motion to dismiss for failure to state a cause of action pursuant to CPLR Rule 3211(a)(7), the Court must give the complaint a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference. See J.P. Morgan, supra, 21 N.Y.3d at 334, 970 N.Y.S.2d at 737. Whether the plaintiff can ultimately establish its allegations "is not part of the calculus in determining a motion to

9

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM
INDEX NO. 650620/2018

NYSCEF DOC. NO. 75    19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -    RECEIVED NYSCEF: 01/22/2019

MOL in Opposition to Motiion to Dismiss.    Pg 16 of 27

dismiss." Id. at 334, 738. The Court must determine only whether the facts as alleged fit within any cognizable legal theory. See Children's Magical Garden, Inc. v. Norfolk Street Development, LLC, 164 A.D.3d 73, 80, 82 N.Y.S.3d 354, 359 (1st Dept. 2018). Hence, to succeed on a Rule 3211(a)(7) motion to dismiss, "the moving party must convince the court that nothing the plaintiff can reasonably be expected to prove would help; that the plaintiff just doesn't have a claim." See Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC, 149 A.D.3d 127, 136, 50 N.Y.S.3d 13, 20 (1st Dept. 2017).

### III.    AppealTech Pled A Claim For Tortious Interference With Contract

In a claim for tortious interference with contract, a plaintiff must allege: 1) a valid contract with a third party, 2) defendant's knowledge of that contract, 3) defendant's intentional and improper procuring of a breach, and 4) damages. See White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426, 835 N.Y.S.2d 530, 532 (2007); Normandy Real Estate Partners LLC v. 24 East 12th Street Associates LLC, 2019 WL 123518, at *1 (1st Dept. Jan. 8, 2019) (allegations show that defendant's inducement of breach "exceeded a minimum level of ethical behavior in the marketplace"). AppealTech pled each of these elements in the Amended Complaint and supported them with detailed factual allegations.

### A.    AppealTech Alleged The Existence Of Valid Agreements

AppealTech has alleged the existence of valid agreements, the Employment Agreements that AppealTech entered into with Mynes and Wallach. The Moving Defendants' contentions that these agreements are not valid contracts due to their restrictive covenants are without merit. The restrictive covenants are narrow in scope and necessary for the protection of AppealTech's legitimate interests. Moreover, the Employment Agreements provide that if any provision of the

10

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 75 RECEIVED NYSCEF: 01/22/2019

19-01435-jlg Doc 5-25 Filed 12/23/19 Entered 12/23/19 16:01:58 Exhibit X -
MOL in Opposition to Motiion to Dimiss. Pg 17 of 27

Employment Agreements, including the restrictive covenants, is unenforceable, the Court has the power to reduce such provision to the extent necessary.

In New York, a restrictive covenant in an employment agreement is reasonable if it: 1) is no greater than required for the protection of the legitimate interest of the employer, 2) does not impose undue hardship on the employee, and 3) is not injurious to the public. See Brown & Brown, Inc. v. Johnson, 25 N.Y.3d 364, 369, 12 N.Y.S.3d 606, 610 (2015); BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89, 690 N.Y.S.2d 854, 856-57 (1999). The application of the test of reasonableness for employee restrictive covenants "focuses on the particular facts and circumstances giving context to the agreement." See BDO Seidman, 93 N.Y.2d at 390, 690 N.Y.S.2d at 858. "[A]n employer is entitled to protection from unfair or illegal conduct that causes economic injury….Indeed, the modern trend in the case law seems to be in favor of according such covenants full effect when they are not unduly burdensome." See Maltby v. Harlow Meyer Savage Inc., 166 Misc.2d 481, 485, 633 N.Y.S.2d 926, 929 (Sup. Ct. N.Y. Cty 1995) (cited by the Moving Defendants).

### i) The Restrictive Covenants Are No Greater Than Necessary To Protect AppealTech's Legitimate Business Interests

The restrictive covenants in the Employment Agreements plainly meet these standards. First, the restrictive covenants are no greater than necessary to protect AppealTech's legitimate business interests. "The legitimate purpose of an employer in connection with employee restraints is 'to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." BDO Seidman, supra, 93 N.Y.2d at 391, 690 N.Y.S.2d at 858. Here, the restrictive covenants are necessary to protect AppealTech's client relationships and its confidential information. AppealTech spent time and money training and supporting Wallach and Mynes in order to

11

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM    INDEX NO. 650620/2018

NYSCEF DOC. NO. 75    19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -    RECEIVED NYSCEF: 01/22/2019

MOL in Opposition to Motiion to Dimiss.    Pg 18 of 27

enhance the goodwill and reputation that AppealTech has nurtured and developed with its clients and prospects. See Amended Complaint, ¶¶32, 81-82. Moreover, AppealTech obviously has an interest in preventing an employee from misappropriating its confidential information.

The non-solicitation provisions in the Employment Agreements are reasonably limited to the extent necessary to protect AppealTech's business interests. They provide only that for anyone that is (or was during the six months prior to termination) either an AppealTech customer or a potential customer whose business AppealTech was actively seeking, Mynes could not solicit their appellate service business for six months after termination, and Wallach could not do so for twelve months after termination. See Amended Complaint, ¶91; and the Employment Agreements, Section 12. Further, the non-solicitation provision in the Wallach Employment Agreement excludes any third party that Wallach had a business relationship with and for whom he provided appellate services prior to his employment with AppealTech. See Wallach Employment Agreement, Section 12. As discussed above, Mynes had no experience in the appellate service industry prior to working for AppealTech.

### ii)    The Restrictive Covenants Do Not Impose Undue Hardship On Wallach And Mynes

The restrictive covenants do not impose undue hardship on Wallach and Mynes as they are limited in both time and geographic scope. The amount of time these restrictive covenants last is short and limited: six months for Mynes and one year for Wallach. Even some of the cases cited by the Moving Defendants upheld restrictive covenants lasting one year and far more. See, e.g. Goodman v. N.Y. Oncology Hematology, P.C., 101 A.D.3d 1524, 957 N.Y.S.2d 449 (3d Dept. 2012) (one year covenant deemed reasonable); Good Energy, L.P. v. Kosachuk, 49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dept. 2008) (five year period for noncompete deemed

12

reasonable).   The Moving Defendants have not disputed that the restrictive covenants are reasonably limited in time.

The geographic scope of the restrictive covenants is limited to only where AppealTech does business or is actively seeking to do business.   The Moving Defendants' contentions that the geographic scope of these covenants is nationwide are without merit.   AppealTech is a small company that has offices in only three cities: New York City, Rochester and Los Angeles and it only provides services in those cities and surrounding areas.   <u>See</u> Amended Complaint, ¶¶23-24; PI Affidavit, ¶3.   Moreover, the only location at issue is New York City.

As a further matter, the restrictive covenants are limited to AppealTech's business, which is the appellate service provider business.   There is nothing preventing Wallach or Mynes from performing a similar type of work outside of this industry.   Mynes, for example, has 25 years of experience in the marketing and advertising industry.   <u>See</u> Amended Complaint, ¶77.

Additionally, both Wallach and Mynes acknowledged in their agreements that each restrictive covenant is "necessary to protect the Confidential Information, goodwill, relationships and other legitimate business interests of [AppealTech] and is reasonable in scope, duration and geography."   <u>See</u> Amended Complaint, ¶43, and Employment Agreements, Section 12.

The cases cited by the Moving Defendants are inapposite as those cases involve restrictive covenants that are far more expansive than the ones at issue here.   For example, in <u>Good Energy, L.P.</u>, supra, 49 A.D.3d at 332, 853 N.Y.S.2d at 77, the First Department held that a restrictive covenant that covered the entire United States was unreasonable when the plaintiff only operated in eight states.   In <u>ENV Servs., Inc. v. Alesia</u>, 10 Misc.3d 1054(A), 809 N.Y.S.2d 481 (Sup. Ct. Nassau Cty 2005), the Court held on a summary judgment motion that a noncompete provision that covered a 100 mile radius of any geographic area where the employer

13

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM
NYSCEF DOC. NO. 75

INDEX NO. 650620/2018
RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dimiss.    Pg 20 of 27

is engaged in business or maintains sales was deemed unreasonable where the employer did business in the entire Northeast and Middle Atlantic Regions of the United States. The citation to <u>Blackman Plumbing Supply Co., Inc. v Connelly</u>, 2011 WL 4344999 (Sup. Ct. Nassau Cty Aug. 23, 2011) is inapplicable as it involved a motion for injunctive relief, which requires a showing of likelihood of success on the merits, a far higher standard than required here.

The Moving Defendants' contentions that the restrictive covenants are overbroad because they prevent Wallach and Mynes from soliciting any AppealTech client are without merit and the cases they cite are inapposite. In <u>TSIG Consulting, Inc. v. ACP Consulting LLC</u>, 2014 N.TY.Misc.LEXIS 3788 (Sup. Ct. N.Y. Cty August 18, 2014), the Court upheld a nonsolicitation provision that prevented an employee from soliciting any of an employer's clients to be later identified by employer, including those the employee was already acquainted with. <u>Yedlin v. Lieberman</u>, 102 A.D.3d 769, 961 N.Y.S.2d 186 (2d Dept. 2013) is equally inapposite as the Second Department was reviewing a motion for injunctive relief for a restrictive covenant that covered the entire United States.

Regardless, the non-solicitation provision in the Wallach Employment Agreement "exclude[s] any individual, entity, or other third party with whom [Wallach] had a business relationship and for whom [Wallach] provided appellate services prior to [Wallach's] employment with [AppealTech]." <u>See</u> Wallach Employment Agreement, Section 12. As discussed above, Mynes had no prior experience in the appellate services industry.

### iii) The Restrictive Covenants Are Not Injurious To The General Public

The restrictive covenants are not injurious to the general public. To the contrary, they benefit the public since they restrain only unfair competition and prevent the Moving Defendants from putting AppealTech out of business. <u>See</u> <u>BDO Seidman</u>, supra, 93 N.Y.2d at 393, 690

14

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 75    19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -    RECEIVED NYSCEF: 01/22/2019
MOL in Opposition to Motiion to Dismiss.    Pg 21 of 27

N.Y.S.2d at 860 (restrictive covenant covering an accounting firm's Buffalo office did not "seriously impinge on the availability of accounting services in the Buffalo area from which the public may draw, or cause any significant dislocation in the market or cause a monopoly in accounting services in that locale").

**iv)    The Court Has Authority To Narrow The Restrictive Covenants Under The Employment Agreements**

As a further matter, both Wallach and Mynes agreed in their Employment Agreements that if any portion of the agreement is unenforceable, such portion will be limited to the extent required to be enforced.  See, e.g., Section 16 of the Employment Agreements.  Accordingly, even if the restrictive covenants were somehow overbroad (which they are not) this Court has the authority to narrow their scope and hold them enforceable.  Whether restrictive covenants are to be narrowed depends on the facts and circumstances of the matter and requires an evidentiary record that could only be formed after development of the facts in discovery.  See BDO Seidman, supra, 93 N.Y.2d at 390, 395, 690 N.Y.S.2d at 858, 860-61.

In sum, the Employment Agreements are valid agreements and the restrictive covenants are reasonable. Regardless, even if the Court determined that the restrictive covenants were somehow not reasonable, the Court has authority under the Employment Agreements to narrow the scope of the restrictive covenants.

**B.    AppealTech Alleged Its Claims With Adequate Specificity**

Contrary to the Moving Defendants' contentions, AppealTech pled its claims with more than adequate specificity and has supported its claims with detailed factual allegations. AppealTech has made factual allegations that: 1) the Employment Agreements with Wallach and Mynes are valid and enforceable agreements; 2) AppealTech performed its obligations under these agreements; 3) Wallach and Mynes breached these agreements by misappropriating its

15

confidential information, soliciting and referring AppealTech's clients and prospects to Counsel Press, and accepting employment with Counsel Press; 4) the Moving Defendants intentionally induced Wallach and Mynes to breach their employment agreements and willingly accepted and utilized AppealTech's misappropriated confidential information; 5) AppealTech's confidential information was used to steal clients; and 6) AppealTech has suffered damages. AppealTech has also alleged that the Employment Agreements would not have been breached but for the Moving Defendants' conduct. Accordingly, AppealTech has plainly stated a claim for tortious interference with contract. See Access Nursing Services v. Street Consulting Group, 137 A.D.3d 678, 29 N.Y.S.3d 268 (1st Dept. 2016) (a reasonable view of the pleading supported plaintiff's claims of breaches of the restrictive covenants in the employment agreement).

The Moving Defendants ignore and mischaracterize AppealTech's allegations and the motion to dismiss standard, and demand that AppealTech allege facts that are within Defendants' sole possession, which can only be uncovered through discovery. However, "Defendants' purported desire to know the specific allegations as to each defendant can be sought via…disclosure. Indeed, disclosure will undoubtedly result in a refining of the action. The lack of exact specificity at this procedural juncture, however, is not a ground for dismissal." See Serio v. Rhulen, 24 A.D.3d 1092, 1094, 806 N.Y.S.2d 283, 285 (3d Dept. 2005) (citing Bazak Int'l Corp. v. Mast Indus., Inc., 73 N.Y.2d 113, 538 N.Y.S.2d 503 (1989) and EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)).

## C.   AppealTech Alleged A Breach Of The Confidentiality Provisions

The Moving Defendants' contentions that AppealTech has not alleged a breach of the confidentiality provisions of the Employment Agreements are obviously without merit. AppealTech alleges that both Wallach and Mynes, in violation of their Employment Agreements,

16

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM
NYSCEF DOC. NO. 75
19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dismiss.    Pg 23 of 27
INDEX NO. 650620/2018
RECEIVED NYSCEF: 01/22/2019

e-mailed AppealTech's confidential information to their personal e-mail addresses, including sales budgets, sales reports, client lists, client documents, client account information, invoices, upcoming client deadlines, lists of active accounts, outstanding account receivables and other related confidential information. <u>See</u> Amended Complaint, ¶¶45-46, 97, 100. AppealTech also alleges that this information falls under the definition of "Confidential Agreements" in the Employment Agreements. <u>See</u> Amended Complaint, ¶¶45-46, 97, 99. AppealTech further alleges that Wallach sent its client list and other confidential information to Counsel Press, who then circulated it and uploaded it to their system. <u>See Id</u>. at ¶¶47, 104, 135. AppealTech also alleges, on information and belief, that the other confidential information misappropriated by Wallach and Mynes was shared with Counsel Press, which is plainly a reasonable allegation in light of the foregoing. <u>Id</u>. at ¶¶47,103-04, 135.

The Moving Defendants' contentions that these allegations are not enough are frivolous. AppealTech specifies in detail the confidential documents which were misappropriated by Wallach and Mynes, as well as the documents sent by Wallach to Counsel Press. Only through discovery can AppealTech know further specifics regarding what was done with these documents and the full extent to which they were taken at the direction of, shared with, and utilized by the Moving Defendants. Moreover, whether AppealTech's confidential information is "a trade secret or [is] readily ascertainable from public sources [is] an issue of fact." <u>See</u> <u>Marsh USA Inc. v. Hamby</u>, 28 Misc.3d 1214(A), 958 N.Y.S.2d 61 (Sup. Ct. N.Y. Cty 2010) (quoting <u>Suburban Graphics Supply Corp. v. Nagle</u>, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163 (2d Dept. 2004)). In <u>Marsh</u>, this Court held that allegations that defendants defected to a direct competitor, after which employees and clients quickly followed, raises a strong inference of misappropriation of confidential information and thus the "plaintiff meets the basic pleading

17

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 75

19-01435-jlg   Doc 5-25   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit X -
MOL in Opposition to Motiion to Dismiss.   Pg 24 of 27

RECEIVED NYSCEF: 01/22/2019

requirements and the Complaint survives the motion to dismiss…" Id. Moreover, AppealTech does not even assert trade secret claims.

Accordingly, AppealTech has plainly alleged a breach of the confidentiality provisions in the employment agreements.

## IV.   AppealTech Pled A Claim For Tortious Interference With Business Relationships

In a claim for tortious interference with business relations, a plaintiff must allege: (1) the defendant's knowledge of a business relationship between the plaintiff and a third party; (2) the defendant's intentional interference with the relationship; (3) that the defendant acted by the use of wrongful means or with the sole purpose of malice; and (4) resulting injury to the business relationship. See 534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick, 90 A.D.3d 541, 542, 935 N.Y.S.2d 23, 24 (1st Dept. 2011).

AppealTech alleges each of these elements in the Amended Complaint. See Amended Complaint, ¶¶150-161. AppealTech alleges that the Moving Defendants engaged in a scheme to interfere with AppealTech's business relationships with its clients and prospective clients and eliminate it as a competitor by using wrongful means to obtain AppealTech's confidential information, i.e. by inducing Wallach, Mynes and others to breach their confidentiality obligations to AppealTech and improperly transmit such confidential information to them, and subsequently using such confidential information to gain a competitive advantage at AppealTech's expense and drive AppealTech out of business. Id. at ¶¶9, 27-28, 49-53, 58, 66-70, 95-100, 103-104, 109-113, 150-161.

AppealTech has also identified numerous additional attorneys and law firms that contacted Wallach regarding new matters for AppealTech that Wallach never informed AppealTech about, thereby preventing AppealTech from obtaining this business. See Kestan

18

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM
NYSCEF DOC. NO. 75
INDEX NO. 650620/2018
RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-25    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit X -
MOL in Opposition to Motiion to Dismiss.    Pg 25 of 27

Affidavit, ¶¶6, 8-13. It reasonably follows that Wallach referred these clients to Counsel Press, but only through discovery will AppealTech be able to fully unveil the full extent of the wrongdoing.

AppealTech has also alleged that the Moving Defendants acted out of malice, alleging that Counsel Press openly stated that its goal was to put AppealTech out of business. As stated above, in August 2016, while discussing a strategy of raiding AppealTech and poaching its employees, Counsel Press' President and CEO stated that there was going to be "one less competitor" in the market. See Amended Complaint, ¶68.

The Moving Defendants argue that AppealTech did not identify any client relationships that the Moving Defendants interfered with. AppealTech, however, specifically identified Horing Welikson & Rosen, P.C. ("Horing") as a long-standing client of AppealTech whose relationship the Moving Defendants interfered with. See Amended Complaint, ¶¶157-159. The Moving Defendants' contention that because Horing was already a client of Counsel Press, they could not have interfered with AppealTech's relationship with Horing is without merit. Their contention that Horing was also a Counsel Press client obviously does not mean the Moving Defendants did not interfere with AppealTech's relationship with Horing.

In sum, AppealTech has properly pled all the elements of a claim of tortious interference with business relations.

### V.    AppealTech Pled A Claim For Unfair Competition

A party is liable under the "misappropriation theory" of unfair competition if they unfairly exploit the skill, expenditure and labors of a competitor. See E.J. Brooks Company v. Cambridge Security Seals, 31 N.Y.3d 441, 449, 80 N.Y.S.3d 162, 169 (2018). The essence of this claim is not just that the defendant has "reaped where it has not sown," but that it has done

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:45 PM INDEX NO. 650620/2018
NYSCEF DOC. NO. 75                                                    RECEIVED NYSCEF: 01/22/2019

19-01435-jlg   Doc 5-25   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit X -
MOL in Opposition to Motiion to Dismiss.   Pg 26 of 27

so in an unethical way and thereby unfairly neutralized a commercial advantage that the plaintiff achieved through honest labor. Id. A claim for unfair competition can also apply where a plaintiff alleges misappropriation of information that does not rise to the level of trade secret misappropriation. See LinkCo Inc. v. Fujitsu Ltd., 230 F.Supp.2d 492, 501 (S.D.N.Y. 2002).

AppealTech's claim for unfair competition is not only about its employees being hired away by a competitor; it's about the Moving Defendants' scheme to use dishonest and unethical means to drive AppealTech out of business by improperly obtaining AppealTech's confidential information and using it to its advantage. AppealTech has plainly alleged that the Moving Defendants have misappropriated a commercial advantage maintained by AppealTech in bad faith by exploiting AppealTech's confidential information. As discussed above, the Moving Defendants induced Wallach, Mynes and others to breach their confidentiality obligations to AppealTech and improperly transmit confidential information to them, and subsequently used such confidential information to gain a competitive advantage at AppealTech's expense. See Volt Delta Res. LLC v. Soleo Commc'ns Inc., 11 Misc. 3d 1071(A), 816 N.Y.S.2d 702 (Sup. Ct. N.Y. Cty 2006) (cited by the Moving Defendants).

Accordingly, AppealTech pled a claim for unfair competition.

## CONCLUSION

For the reasons given above, the Moving Defendants' motion to dismiss should be denied.

Dated: January 22, 2019

                              **MOREA SCHWARTZ BRADHAM**
                              **FRIEDMAN & BROWN LLP**


                              By: /s/ John M. Bradham
                                   John M. Bradham

20

Peter B. Katzman
444 Madison Avenue, 4th Floor
New York, New York 10022
Tel: (212) 695-8050
Email: jbradham@msbllp.com

***Attorneys for Plaintiff Z & J LLC d/b/a
AppealTech***

21