# Exhibit Z

19-01435-jlg     Doc 5-27     Filed 12/23/19     Entered 12/23/19 16:01:58     Exhibit Z -
MOL in Opp. to MTD     Pg 2 of 31

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x
Z & J LLC d/b/a APPEALTECH,                          :          Index No.: 650620/2018
                                                     :
                          Plaintiff,                 :
                                                     :
          -against-                                  :
                                                     :
LAURENCE MYNES and COUNSEL PRESS, INC.,              :
GLADSTONE INVESTMENT CORPORATION,                    :
GLADSTONE MANAGEMENT CORPORATION,                    :
GLADSTONE ADMINISTRATION, LLC and                    :
JONATHAN WALLACH                                     :
                                                     :
                          Defendants.                :
                                                     :
------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO LAURENCE MYNES AND
JONATHAN WALLACH'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL ALLEGATIONS ...............................................................................3

ARGUMENT .....................................................................................................9

I.     The Rule 3211(a)(1) Standard ..................................................................9

II.    The Rule 3211(a)(7) Standard ................................................................10

III.   AppealTech Pled A Claim For Breach Of Contract .............................11

      A.  AppealTech Alleged The Existence Of Valid Agreements .........................11

            i)  The Restrictive Covenants Are No Greater Than Necessary To
                Protect AppealTech's Legitimate Business Interests.................................12

            ii)  The Restrictive Covenants Do Not Impose Undue Hardship
                On Wallach And Mynes...........................................................................13

           iii)  The Restrictive Covenants Are Not Injurious To The General Public ...........16

           iv)  The Court Has Authority To Narrow The Restrictive Covenants
                Under The Employment Agreements ............................................................16

      B.  AppealTech Alleged That Mynes Breached The Mynes Employment
          Agreement By Commencing Employment With Counsel Press ...................17

      C.  AppealTech Alleged That The Moving Defendants Breached
          The Confidentiality Provisions ....................................................................18

      D.  AppealTech Alleged What Confidential Information Was Transmitted
          To Counsel Press.........................................................................................20

IV.   AppealTech Pled A Claim For Breach Of The Duty Of Loyalty ......................21

V.    AppealTech Pled A Claim For Tortious Interference With
     Business Relationships.......................................................................................22

VI.   AppealTech May Seek A Permanent Injunction And Attorneys' Fees .............24

VII.  Motion To Dismiss By Counsel Press And The Gladstone Entities...................24

CONCLUSION.......................................................................................................25

ii

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM
NYSCEF DOC. NO. 80

INDEX NO. 650620/2018
RECEIVED NYSCEF: 01/22/2019

19-01435-jlg   Doc 5-27   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Z -
MOL in Opp. to MTD   Pg 4 of 31

# **TABLE OF AUTHORITIES**

## **CASES**

1 Model Management, LLC v. Kavoussi
    82 A.D.3d 502, 918 N.Y.S.2d 431 (1st Dept. 2011) ........................................19

534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick
    90 A.D.3d 541, 935 N.Y.S.2d 23 (1st Dept. 2011)...........................................22

Anonymous v. Anonymous
    233 A.D.2d 162, 649 N.Y.S.2d 665 (1st Dept. 1996).......................................21

Art and Fashion Group Corp. v. Cyclops Production, Inc.
    120 A.D.3d 436, 992 N.Y.S.2d 7 (1st Dept. 2014).............................................9

Bazak Int'l Corp. v. Mast Indus., Inc.
    73 N.Y.2d 113, 538 N.Y.S.2d 503 (1989) .......................................................21

BDO Seidman v. Hirshberg
    93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999) ........................................... 12, 14-17

Bender Insurance Agency, Inc. v. Treiber Insurance Agency, Inc.
    283 A.D.2d 448, 729 N.Y.S.2d 142 (2d Dept. 2001) ......................................22

Brown & Brown, Inc. v. Johnson
    25 N.Y.3d 364, 12 N.Y.S.3d 606 (2015) .................................................. 11-12

Business Intelligence Servs., Inc. v. Hudson
    580 F. Supp. 1068 (S.D.N.Y. 1984)................................................................16

Carlson v. Am. Int'l Grp., Inc.
    30 N.Y.3d 288, 89 N.E.3d 490 (2017)..............................................................10

Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.
    76 A.D.3d 310, 901 N.Y.S.2d 618 (1st Dept. 2010) ........................................21

Children's Magical Garden, Inc. v. Norfolk Street Development, LLC
    164 A.D.3d 73, 82 N.Y.S.3d 354 (1st Dept. 2018)...........................................10

Contempo Communications, Inc. v. MJM Creative Services, Inc.
    182 A.D.2d 351, 582 N.Y.S.2d 667 (1st Dept. 1992)........................................15

EBC I, Inc. v. Goldman, Sachs & Co.
    5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005) ...........................................................21

iii

Fontanetta v. Doe
    73 A.D.3d 78, 898 N.Y.S.2d 569 (2nd Dept. 2010)..............................................9

Good Energy, L.P. v. Kosachuk
    49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dept. 2008).................................. 13, 15-16

Gordon v. Dino De Laurentiis Corp.
    141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dept. 1998)........................................21

Grund v. Delaware Charter Guarantee & Trust Co.
    788 F.Supp.2d 226 (S.D.N.Y. 2011)................................................................22

Harris v. Seward Park Hous. Corp.
    79 A.D.3d 425, 913 N.Y.S.2d 161 (1st Dept. 2010) .........................................11

Healthworld Corp. v. Gottlieb
    12 A.D.3d 278, 786 N.Y.S.2d 8 (1st Dept. 2004)........................................ 14-15

High Definition MRI, P.C. v. Travelers Companies, Inc.
    137 A.D.3d 602, 29 N.Y.S.3d 23, 24 (1st Dept. 2016)......................................10

J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.
    21 N.Y.3d 324, 970 N.Y.S.2d 733 (2013) .................................................... 9-10

Maltby v. Harlow Meyer Savage Inc.
    166 Misc.2d 481, 633 N.Y.S.2d 926 (Sup. Ct. N.Y. Cty 1995) ........................12

Marsh USA Inc. v. Hamby
    28 Misc.3d 1214(A), 958 N.Y.S.2d 61 (Sup. Ct. N.Y. Cty 2010)......................19

Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC
    149 A.D.3d 127, 50 N.Y.S.3d 13 (1st Dept. 2017)............................................11

Poller v. BioScrip, Inc.
    974 F.Supp.2d 204 (S.D.N.Y. 2013)................................................................22

Serao v. Bench-Serao
    149 A.D.3d 645, 53 N.Y.S.3d 628 (1st Dept. 2017) ...........................................9

Serio v. Rhulen
    24 A.D.3d 1092, 806 N.Y.S.2d 23 (3d Dept. 2005) ..................................... 20-21

Sontag v. Cook
    2005 N.Y.Misc. LEXIS 3256 (Sup. Ct. N.Y. Cty Feb. 18, 2005) .....................16

Suburban Graphics Supply Corp. v. Nagle
    5 A.D.3d 663, 774 N.Y.S.2d 160 (2d Dept. 2004) ...........................................................19

TBA Global, LLC v. Proscenium Events, LLC
    114 A.D.3d 571, 980 N.Y.S.2d 459 (1st Dept. 2014)........................................................15

Willis of New York, Inc. v. DeFelice
    299 A.D.2d 240, 750 N.Y.S.2d 39 (1st Dept. 2002).................................................... 14-15

## STATUTES

CPLR 3016(b)...........................................................................................................................24

CPLR Rule 3211(a)(1)............................................................................................................1, 9

CPLR Rule 3211(a)(7)..........................................................................................................1, 10

v

Plaintiff Z & J LLC d/b/a AppealTech ("AppealTech") submits this memorandum of law in opposition to the motion to dismiss the Amended Complaint (the "Motion") filed by Defendants Laurence Mynes ("Mynes") and Jonathan Wallach ("Wallach"; collectively, with Mynes, the "Moving Defendants") pursuant to Rules 3211(a)(1) and (7) of the New York Civil Practice Rules and Procedures ("CPLR").

## PRELIMINARY STATEMENT

AppealTech's claims are based on the Moving Defendants' breaches of their respective employment agreements and their duties as employees of AppealTech. The Moving Defendants: 1) misappropriated AppealTech's confidential information for the benefit of a direct competitor; 2) solicited AppealTech's clients and prospects for such direct competitor during and after their employment; and 3) subsequently worked for such direct competitor in violation of their employment agreements.

As alleged in the Amended Complaint, during an August 2016 meeting at Defendant Counsel Press, Inc. ("Counsel Press"), its President and CEO Scott Thompson discussed its strategy of putting AppealTech out of business by poaching so many of its employees that there would be "one less competitor" in the market. Counsel Press began trying to hire the majority of AppealTech's employees, including all of its key employees. Among those it hired were Wallach and Mynes, who while still employed by AppealTech, brazenly breached their employment agreements and duties of loyalty by misappropriating AppealTech's confidential information including client lists, lists of active accounts, client account information, client documents and deadlines, sales reports, sales budgets, invoices, accounts receivables and otherwise. Wallach and Mynes transmitted this confidential information to their personal e-mail accounts and Wallach (and likely Mynes) then transmitted the client list and other confidential

1

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM

NYSCEF DOC. NO. 80

INDEX NO. 650620/2018

RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -
MOL in Opp. to MTD    Pg 8 of 31

information to Defendant Counsel Press, which circulated it internally and uploaded it to its internal computer systems.

Despite AppealTech's detailed and documented allegations, the Moving Defendants ignore and mischaracterize AppealTech's allegations, as well as the standard for a motion to dismiss and applicable law, contending that AppealTech's allegations are not specific enough or too speculative. The Moving Defendants' contentions are patently without merit. AppealTech has plainly alleged adequate facts at this stage of the proceeding and is entitled to proceed to discovery where it can undoubtedly uncover far more facts to prove its allegations. Only through discovery can AppealTech be expected to uncover the full extent of the Moving Defendants' wrongdoing.

The Moving Defendants' contentions that AppealTech has failed to allege a claim for breach of contract on the grounds that the restrictive covenants contained in their employment agreements are overbroad are without merit. The clear language of these covenants provides that they are limited to only those areas where AppealTech does business (which is only three cities and their surrounding areas) or is actively seeking to do business. AppealTech is a small company and has never alleged that it does business, or is seeking to do business, nationwide. Regardless, even if these restrictive covenants were actually somehow overbroad, the employment agreements provide that if any provision is unenforceable, including the restrictive covenants, such provision shall be limited to the extent required to be enforced.

The Moving Defendants' contentions that Mynes's employment by Counsel Press as an appellate consultant in their New York City office is not a breach of the non-competition provision of his employment agreement is obviously without merit. The clear wording of this provision provides that Mynes cannot provide services to any third party that is in the same

2

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM

NYSCEF DOC. NO. 80

INDEX NO. 650620/2018

RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -
MOL in Opp. to MTD    Pg 9 of 31

business as AppealTech (which obviously includes Counsel Press) in any geographic location where AppealTech does business (which obviously includes New York City, where he was employed by AppealTech).

The Moving Defendants' argument that AppealTech's breach of the duty of loyalty claim is duplicative of its breach of contract claim is without merit because a party's conduct in breaching a contract can also be a breach of the duty of loyalty. The duty of loyalty owed by the Moving Defendants to AppealTech is independent of their formal employment agreements. Moreover, the Moving Defendants argue that the contracts at issue are unenforceable.

Lastly, the Moving Defendants' argument that AppealTech's claim for tortious interference with business relationships should be dismissed on the grounds that they did not direct any tortious conduct towards AppealTech's clients or that AppealTech did not allege any wrongful means is equally without merit. The Moving Defendants, for the benefit of all of the Defendants, wrongly misappropriated AppealTech's confidential information and wrongfully solicited AppealTech's clients.

## FACTUAL ALLEGATIONS

AppealTech is a comprehensive appellate services provider that has been in operation for approximately 20 years. See Amended Complaint, ¶22; see also ¶3 of the Affidavit of Michael Kestan ("PI Affidavit") annexed as Exhibit "B" to the Affidavit of Ryan Cronin in support of the motion to dismiss filed by Counsel Press and the Gladstone Entities (the "Counsel Press Motion"), and annexed as Exhibit "A" to the Affidavit of Michael Kestan ("Kestan Affidavit") submitted with this opposition. AppealTech maintains offices in New York City, Rochester, and Los Angeles, and provides appellate services in those cities and surrounding areas. See Amended Complaint, ¶¶23-24; PI Affidavit, ¶3.

3

Counsel Press is also an appellate services provider, which operates with the assistance of

Defendants Gladstone Investment Corporation, Gladstone Management Corporation and

Gladstone Administration, LLC (collectively, the "Gladstone Entities") for its day to day

operations.  See Amended Complaint, ¶¶29, 36.  Both AppealTech and Counsel Press hire

employees to work as appellate consultants to develop business relationships with lawyers and

law firms, shepherd client projects through the appellate process, and advise clients and

prospective clients on the appellate process, all of which creates goodwill with clients and

prospects, with the goal being to develop repeat business through the development and

maintenance of these relationships.  See Amended Complaint, ¶32.

In March 2014, Wallach began his employment with AppealTech and entered into an

employment agreement (the "Wallach Employment Agreement").  See Id. at ¶¶40-41 and the

Wallach Employment Agreement annexed as Exhibit "B" to the Kestan Affidavit.  The Wallach

Employment Agreement contains a confidentiality provision prohibiting him from using any of

AppealTech's confidential information during or after his employment, except as required to do

his job for AppealTech.  See Id. at ¶42; Wallach Employment Agreement, Section 10.  The

Wallach Employment Agreement also contains a non-solicitation provision, which provides that

"during [his] employment and for twelve (12) months after…[he] will not…in any geographic

area in which [AppealTech] does or is seeking to do business…(a) encourage, induce or attempt

to encourage or induce any Client to change the nature, terms, or amount of business it conducts

with [AppealTech]."  See Id. at ¶43; Wallach Employment Agreement, Section 12.  This non-

solicitation provision, however, "exclude[s] any individual, entity, or other third party with

whom [Wallach] had a business relationship and for whom [Wallach] provided appellate services

prior to [Wallach's] employment with [AppealTech]."  See Wallach Employment Agreement,

4

Section 12. These covenants were in exchange for an annualized draw of $140,000, in addition to a commission. <u>See</u> Amended Complaint, ¶44. The Wallach Employment Agreement also provides that if any provision of the Wallach Employment Agreement is deemed unenforceable, that provision will be limited to the extent required to be enforced. <u>See</u> Wallach Employment Agreement, Section 16.

In or around the summer of 2016, Counsel Press and the Gladstone Entities initiated a directed and concerted effort to poach AppealTech's employees and steal AppealTech's confidential and proprietary information to undermine AppealTech's business and destroy AppealTech as a competitor. <u>See</u> Amended Complaint, ¶¶37-39. During an August 2016 meeting at Defendant Counsel Press, its President and CEO Scott Thompson discussed Counsel Press and the Gladstone Entities' strategy of putting AppealTech out of business by poaching so many of its employees that there would be "one less competitor" in the market. <u>Id</u>. at ¶68.

In furtherance thereof, Counsel Press hired Wallach in August 2016. Several days prior to resigning from AppealTech, Wallach began e-mailing AppealTech's confidential information to his personal e-mail address, including sales reports, client lists, client documents, upcoming client deadlines, lists of active accounts and other related information, all of which constitutes "Confidential Information" as defined in the Wallach Employment Agreement. <u>See</u> Amended Complaint, ¶¶45-46; Kestan Affidavit, ¶14; Wallach Employment Agreement, Section 10. Wallach then sent AppealTech's client list and other confidential information to Counsel Press, which circulated it internally and uploaded it to their system. <u>See Id</u>. at ¶¶47, 135; Kestan Affidavit, ¶5. Moreover, while still employed at AppealTech, Wallach received e-mails and voice-mails from numerous attorneys and law firms regarding new matters, yet never advised AppealTech of such new matters, thereby preventing AppealTech from providing services to

5

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 80                19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -    RECEIVED NYSCEF: 01/22/2019

MOL in Opp. to MTD    Pg 12 of 31

these attorneys and law firms for such new matters.  <u>See</u> Amended Complaint, ¶¶48-49; Kestan Affidavit, ¶¶6, 8-13.  Upon information and belief and at the direction of Counsel Press and the Gladstone Entities, Wallach referred these and other AppealTech clients to Counsel Press while still employed at AppealTech.  <u>See</u> Amended Complaint, ¶¶48-51.

Shortly after hiring Wallach, Counsel Press also hired two other Senior Appellate Consultants of AppealTech and attempted to poach approximately 65% of AppealTech's other employees.  <u>See</u> <u>Id</u>. at ¶¶54, 59.  This forced AppealTech to drastically raise salaries above market value and impaired AppealTech's ability to accept and timely complete print orders.  <u>See</u> <u>Id</u>. at ¶¶59-65.  As a result of the foregoing, AppealTech's revenue declined substantially in 2017 and is currently operating at a loss.  <u>See</u> <u>Id</u>. at ¶70.

Through the end of 2017 and into early 2018, Counsel Press and the Gladstone Entities continued their scheme to poach AppealTech's employees and drive AppealTech out of business by targeting Mynes, an AppealTech Senior Appellate Consultant.  <u>See</u> <u>Id</u>. at ¶73.

Mynes began working with AppealTech in 2006, having no prior experience or any customer relationships in the appellate service industry.  <u>See</u> <u>Id</u>. at ¶¶76-79; PI Affidavit at ¶¶10-12.  For over 12 years, AppealTech trained and supported Mynes, allowing him to develop key relationships with AppealTech clients.  <u>See</u> Amended Complaint, ¶¶81-82.  During his employment with AppealTech, Mynes had access to and dealt with most of AppealTech's clients.  <u>See</u> PI Affidavit, ¶14.  Mynes specialized in appeals for the New York State Appellate Division, the New York Court of Appeals and the Second Circuit Court of Appeals.  <u>See</u> PI Affidavit, ¶13.  As a Senior Appellate Consultant, Mynes was privy to AppealTech's confidential and proprietary information, including AppealTech's sales and marketing strategies,

proprietary sales practices, general and specific client pricing data, and client lists.  <u>See</u>
Amended Complaint, ¶85.

In 2016, as Counsel Press and the Gladstone Entities were poaching AppealTech's
employees, AppealTech approached Mynes to negotiate significantly increased compensation in
exchange for his agreement to protect and preserve AppealTech's confidential and proprietary
information and not compete with AppealTech.  <u>See</u> <u>Id</u>. at ¶¶87-91, 93.  Accordingly, on or
about November 16, 2016, Mynes entered into an employment agreement with AppealTech that
provided a significant increase in compensation through a draw, which was increased from
$80,000 to $120,000.  <u>See</u> <u>Id</u>. at ¶¶88-89; and Employment Agreement annexed as Exhibit "C"
to the Kestan Affidavit (the "Mynes Employment Agreement"; collectively with the Wallach
Employment Agreement, the "Employment Agreements").  Mynes' compensation increased by
more than 30% because of the Mynes Employment Agreement and AppealTech's directing
certain house accounts to Mynes, which increased his commissions and almost doubled his sales.
<u>See</u> <u>Id</u>. at ¶¶93-94; <u>see</u> <u>also</u> PI Affidavit, ¶29.

The Mynes Employment Agreement contains a confidentiality provision prohibiting him
from using any of AppealTech's confidential information during or after his employment, except
as required to do his job for AppealTech.  <u>See</u> Amended Complaint, ¶90; Mynes Employment
Agreement, Section 10.  The Mynes Employment Agreement also contains a non-competition
provision, which provides that during his employment and for six months after termination, he
would not, except as necessary to perform his duties for AppealTech (a) provide services for any
other third party that is engaged in the same or similar business as AppealTech in any geographic
area in which AppealTech does or is actively seeking to do business, (b) solicit any AppealTech
client for the types of services AppealTech provides or provided within six months prior to

7

Mynes' termination, (c) interfere with AppealTech's relationship with any client, or (d) solicit any person who is, or was during the six month period prior to Mynes' termination, an AppealTech employee.  See Id. at ¶91; Mynes Employment Agreement, Section 12.  Lastly, the Mynes Employment Agreement provides that if any provision is deemed unenforceable, that provision will be limited to the extent required to be enforced.  See Mynes Employment Agreement, Section 16.

In late 2017, Mynes began e-mailing AppealTech's confidential information to his personal e-mail address, including AppealTech's 2017 sales budget, company checklists for document preparation, details regarding client accounts assigned to Mynes, a PowerPoint presentation prepared by AppealTech on how to perfect appeals, a July 13, 2017 CLE prepared by AppealTech employees, client lists, upcoming filing deadlines for such clients, invoices, outstanding account receivables and other related confidential information, all of which constitute "Confidential Information" under the Mynes Employment Agreement.  See Amended Complaint, ¶97; Mynes Employment Agreement, Section 10.  Mynes also uploaded confidential information from his company-issued cell phone to his personal cloud account.  See Id. at ¶100.

On January 17, 2018, Mynes abruptly resigned from AppealTech, refusing to disclose where he would be employed or whether he had found other employment.  See Id. at ¶¶74, 101-02.  AppealTech learned the next day that Mynes had accepted a position as a Senior Appellate Consultant at Counsel Press.  See Id. at ¶75.  Upon information and belief, immediately upon his resignation from AppealTech and for months prior to his resignation, Mynes solicited AppealTech's clients to move their business to Counsel Press and shared AppealTech's foregoing confidential and proprietary information with Counsel Press and the Gladstone Entities.  See Id. at ¶¶103-04.

8

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 80    19-01435-jlg   Doc 5-27   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Z - RECEIVED NYSCEF: 01/22/2019

MOL in Opp. to MTD    Pg 15 of 31

Counsel Press subsequently announced that Mynes had joined the company, effective January 29, 2018, as a Senior Appellate Consultant in Counsel Press's New York City office. See Id. at ¶107.

As a result of Moving Defendants' conduct, AppealTech has suffered dramatically decreased profits, is currently operating at a loss, and has lost clients, such as Horing Welikson & Rosen, P.C., as well as numerous client opportunities. See Id., at ¶¶110-113; see also Kestan Affidavit, ¶¶6, 8-13.

## ARGUMENT

### I.    The Rule 3211(a)(1) Standard

CPLR Rule 3211(a)(1) provides that a defendant can seek dismissal of a complaint on the ground that "a defense is founded upon documentary evidence." In order to grant a motion to dismiss pursuant to CPLR Rule 3211(a)(1), the documentary evidence submitted must utterly and conclusively refute the plaintiff's allegations. See J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 21 N.Y.3d 324, 334, 970 N.Y.S.2d 733, 738 (2013). In other words, the documents relied upon must "definitely dispose of the plaintiff's claim." See Art and Fashion Group Corp. v. Cyclops Production, Inc., 120 A.D.3d 436, 438, 992 N.Y.S.2d 7, 10 (1st Dept. 2014). To be considered documentary evidence, such materials "must be unambiguous and of undisputable authority." See Fontanetta v. Doe, 73 A.D.3d 78, 86, 898 N.Y.S.2d 569, 575 (2nd Dept. 2010) (the contents of such documents must be "essentially undeniable"). "Factual affidavits do not constitute documentary evidence within the meaning of the statute." See Serao v. Bench-Serao, 149 A.D.3d 645, 646, 53 N.Y.S.3d 628, 630 (1st Dept. 2017); see also Art and Fashion, supra, 120 A.D.3d at 438, 992 N.Y.S.2d at 10.

9

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 80    19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -    RECEIVED NYSCEF: 01/22/2019

MOL in Opp. to MTD    Pg 16 of 31

As part of their documentary evidence, the Moving Defendants submit the PI Affidavit of Michael Kestan, the President and Owner of AppealTech, that was previously submitted to the Court in support of AppealTech's application for a preliminary injunction. Not only does the PI Affidavit not support the Moving Defendants' arguments, but as stated above, a factual affidavit should not be considered documentary evidence because it is not considered to be of undisputable authority and essentially undeniable. Moreover, the Moving Defendants would presumably dispute many of the statements in the PI affidavit. Regardless, both the PI Affidavit and the Kestan Affidavit should be considered in response to the Moving Defendants' motion to dismiss pursuant to CPLR Rule 3211(a)(7) to remedy any defects in the Amended Complaint. See e.g., Carlson v. Am. Int'l Grp., Inc., 30 N.Y.3d 288, 298, 89 N.E.3d 490, 495 (2017) (expert affidavit submitted by plaintiff sufficient to defeat a motion to dismiss); High Definition MRI, P.C. v. Travelers Companies, Inc., 137 A.D.3d 602, 29 N.Y.S.3d 23, 24 (1st Dept. 2016).

## II.    The Rule 3211(a)(7) Standard

On a motion to dismiss for failure to state a cause of action pursuant to CPLR Rule 3211(a)(7), the Court must give the complaint a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference. See J.P. Morgan, supra, 21 N.Y.3d at 334, 970 N.Y.S.2d at 737. Whether the plaintiff can ultimately establish its allegations "is not part of the calculus in determining a motion to dismiss." Id. at 334, 738. The Court must determine only whether the facts as alleged fit within any cognizable legal theory. See Children's Magical Garden, Inc. v. Norfolk Street Development, LLC, 164 A.D.3d 73, 80, 82 N.Y.S.3d 354, 359 (1st Dept. 2018). Hence, to succeed on a Rule 3211(a)(7) motion to dismiss, "the moving party must convince the court that nothing the plaintiff can reasonably be expected to prove would help; that the plaintiff just

10

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM    INDEX NO. 650620/2018

NYSCEF DOC. NO. 80    19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z - RECEIVED NYSCEF: 01/22/2019

MOL in Opp. to MTD    Pg 17 of 31

doesn't have a claim." See Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC, 149 A.D.3d 127, 136, 50 N.Y.S.3d 13, 20 (1st Dept. 2017).

### III.    AppealTech Pled A Claim For Breach of Contract

In a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract, 2) the plaintiff's performance thereunder, 3) the defendant's breach thereof, and 4) resulting damages. See Harris v. Seward Park Hous. Corp., 79 A.D.3d 425, 426, 913 N.Y.S.2d 161, 162 (1st Dept. 2010). AppealTech pled each of these elements in the Amended Complaint and supported them with detailed factual allegations. Specifically, AppealTech pled that: 1) each Moving Defendant entered into an Employment Agreement with AppealTech; 2) AppealTech performed its obligations under these agreements; 3) each Moving Defendant breached their respective Employment Agreement; and 4) AppealTech was damaged by such breaches. See Amended Complaint, ¶¶4-7, 9-10, 41-53, 88-94, 96-100, 103-04, 109-12, 114-120.

### A.    AppealTech Alleged The Existence Of Valid Agreements

AppealTech has alleged the existence of valid agreements, the Employment Agreements that AppealTech entered into with Mynes and Wallach. The Moving Defendants' contentions that these agreements are not valid contracts due to their restrictive covenants are without merit. The restrictive covenants are narrow in scope and necessary for the protection of AppealTech's legitimate interests. Moreover, the Employment Agreements provide that if any provision of the Employment Agreements, including the restrictive covenants, is unenforceable, the Court has the power to reduce such provision to the extent necessary.

In New York, a restrictive covenant in an employment agreement is reasonable if it: 1) is no greater than required for the protection of the legitimate interest of the employer, 2) does not impose undue hardship on the employee, and 3) is not injurious to the public. See Brown &

11

Brown, Inc. v. Johnson, 25 N.Y.3d 364, 369, 12 N.Y.S.3d 606, 610 (2015); BDO Seidman v.

Hirshberg, 93 N.Y.2d 382, 388-89, 690 N.Y.S.2d 854, 856-57 (1999). The application of the test

of reasonableness for employee restrictive covenants "focuses on the particular facts and

circumstances giving context to the agreement." See BDO Seidman, 93 N.Y.2d at 390, 690

N.Y.S.2d at 858. "[A]n employer is entitled to protection from unfair or illegal conduct that

causes economic injury….Indeed, the modern trend in the case law seems to be in favor of

according such covenants full effect when they are not unduly burdensome." See Maltby v.

Harlow Meyer Savage Inc., 166 Misc.2d 481, 485, 633 N.Y.S.2d 926, 929 (Sup. Ct. N.Y. Cty

1995).

> **i)**     **The Restrictive Covenants Are No Greater Than Necessary To Protect AppealTech's Legitimate Business Interests**

The restrictive covenants in the Employment Agreements plainly meet these standards.

First, the restrictive covenants are no greater than necessary to protect AppealTech's legitimate

business interests. "The legitimate purpose of an employer in connection with employee

restraints is 'to prevent competitive use, for a time, of information or relationships which pertain

peculiarly to the employer and which the employee acquired in the course of the employment."

BDO Seidman, supra, 93 N.Y.2d at 391, 690 N.Y.S.2d at 858. Here, the restrictive covenants are

necessary to protect AppealTech's client relationships and its confidential information.

AppealTech spent time and money training and supporting the Moving Defendants in order to

enhance the goodwill and reputation that AppealTech has nurtured and developed with its clients

and prospects. See Amended Complaint, ¶¶32, 81-82. Moreover, AppealTech obviously has an

interest in preventing an employee from misappropriating its confidential information.

The non-solicitation provisions in the Employment Agreements are reasonably limited to

the extent necessary to protect AppealTech's business interests. They provide only that for

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM
NYSCEF DOC. NO. 80

INDEX NO. 650620/2018

RECEIVED NYSCEF: 01/22/2019

19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -
MOL in Opp. to MTD    Pg 19 of 31

anyone that is (or was during the six months prior to termination) either an AppealTech customer or a potential customer whose business AppealTech was actively seeking, Mynes could not solicit their appellate service business for six months after termination, and Wallach could not do so for twelve months after termination. See Amended Complaint, ¶91; and the Employment Agreements, Section 12.   Further, the non-solicitation provision in the Wallach Employment Agreement excludes any third party that Wallach had a business relationship with and for whom he provided appellate services prior to his employment with AppealTech.   See Wallach Employment Agreement, Section 12. As discussed above, Mynes had no experience in the appellate service industry prior to working for AppealTech.

ii)    **The Restrictive Covenants Do Not Impose Undue Hardship On Wallach And Mynes**

The restrictive covenants do not impose undue hardship on the Moving Defendants as they are limited in both time and geographic scope.   The amount of time these restrictive covenants last is short and limited: six months for Mynes and one year for Wallach.   Even some of the cases cited by the Moving Defendants upheld restrictive covenants for far longer periods. See, e.g. Good Energy, L.P. v. Kosachuk, 49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dept. 2008) (five year period for noncompete deemed reasonable).   The Moving Defendants have not disputed that the restrictive covenants are reasonably limited in time.

The geographic scope of the restrictive covenants is limited to only where AppealTech does business or is actively seeking to do business.   AppealTech is a small company that has offices in only three cities: New York City, Rochester and Los Angeles and it only provides services in those cities and surrounding areas.   See Amended Complaint, ¶¶23-24; PI Affidavit, ¶3.   The Moving Defendants' position that the geographic scope of these covenants is undefined is without merit and they do not cite a single case that supports their position.   AppealTech

13

alleges that Mynes is working for Counsel Press in New York City, where he previously worked for AppealTech, which is the only location at issue. See Id. at ¶107. AppealTech does not allege that the Moving Defendants breached the restrictive covenants in any other location. In fact, one of the cases cited by the Moving Defendants held that "[w]hile the geographical extent of the restrictive covenant is very broad, [defendant] is currently working at the New York office of a competitor of plaintiffs, and it would certainly be reasonable to enforce a restrictive covenant covering New York." See Willis of New York, Inc. v. DeFelice, 299 A.D.2d 240, 241–42, 750 N.Y.S.2d 39, 42 (1st Dept. 2002).

As a further matter, the restrictive covenants are limited to AppealTech's business, which is the appellate service provider business. There is nothing preventing the Moving Defendants from performing a similar type of work outside of this industry. Mynes, for example, has 25 years of experience in the marketing and advertising industry. See Amended Complaint, ¶77.

Additionally, both Wallach and Mynes acknowledged in their agreements that each restrictive covenant is "necessary to protect the Confidential Information, goodwill, relationships and other legitimate business interests of [AppealTech] and is reasonable in scope, duration and geography." See Amended Complaint, ¶43; and Employment Agreements, Section 12.

The Moving Defendants completely misconstrue the cases that they cite in support of their position that the restrictive covenants are overbroad. For example, the First Department did not hold in Healthworld Corp. v. Gottlieb, 12 A.D.3d 278, 786 N.Y.S.2d 8 (1st Dept. 2004) that a non-solicitation provision is limited to preventing an employee from competing for the business of customers with whom he had a relationship while with his former employer; instead, in upholding a restrictive covenant, the First Department held that a restrictive covenant is limited to what is stated in the agreement at issue and to what is permitted under the principles of BDO

14

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 80
19-01435-jlg   Doc 5-27   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit Z -
RECEIVED NYSCEF: 01/22/2019
MOL in Opp. to MTD   Pg 21 of 31

Seidman.  Likewise, Willis, supra, 299 A.D.2d at 242, 750 N.Y.S.2d at 42, is inapposite as the First Department (in reviewing a motion for preliminary injunction) limited the non-solicitation provision to only exclude those clients that the defendant originally brought to the plaintiff.  As stated above, the Wallach Employment Agreement excludes any third party that Wallach had a business relationship with prior to his employment with AppealTech.  See Wallach Employment Agreement, Section 12.  As also stated above, Mynes had no prior experience in the appellate service business.  See Amended Complaint, ¶¶77-80; PI Affidavit at ¶¶10-12.  Moreover, whether or not any of the clients at issue were originally brought by the Moving Defendants to AppealTech is an issue of fact.

Likewise, the Moving Defendants' citation of Contempo Communications, Inc. v. MJM Creative Services, Inc., 182 A.D.2d 351, 582 N.Y.S.2d 667 (1st Dept. 1992) is also inapposite as that case dealt with a summary judgment motion and the non-solicitation provision at issue actually stated that it was limited to those client accounts that the defendant actively worked on while in plaintiff's employ.  Moreover, here there are issues of fact regarding which AppealTech clients were solicited and whether the Moving Defendants worked with those clients.  See TBA Global, LLC v. Proscenium Events, LLC, 114 A.D.3d 571, 980 N.Y.S.2d 459 (1st Dept. 2014) (reversed summary judgment order that nonsolicitation provision was unenforceable as there was an issue of fact regarding the relationships between defendants and other clients of plaintiff and because the plaintiff "is not precluded from seeking to enforce the nonsolicitation covenants for the purpose of protecting its customer relationships and goodwill.").

The cases cited by the Moving Defendants also fail to support their argument that a restrictive covenant is unreasonable and unenforceable merely because its geographical scope extends beyond where an employer does business.  In Good Energy, supra, the First Department

15

held that a restrictive covenant that covered the entire United States was unreasonable when the

employer only had offices in eight states and the employee would be effectively excluded from

the entire energy industry as there were only a very limited number of energy suppliers in the

U.S.  In <u>Sontag v. Cook</u>, 2005 N.Y.Misc. LEXIS 3256 (Sup. Ct. N.Y. Cty Feb. 18, 2005), this

Court reformed a restrictive covenant with an unlimited geographical scope into a restrictive

covenant with a nationwide scope.  In <u>Business Intelligence Servs., Inc. v. Hudson</u>, 580 F. Supp.

1068 (S.D.N.Y. 1984), the U.S. District Court for the Southern District of New York held that a

restrictive covenant that covered the entire world was permissible because the plaintiff had a

worldwide business.

### iii) The Restrictive Covenants Are Not Injurious To The General Public

The restrictive covenants are not injurious to the general public.  To the contrary, they

benefit the public since they restrain only unfair competition and prevent the Moving Defendants

from putting AppealTech out of business.  <u>See</u> <u>BDO Seidman</u>, supra, 93 N.Y.2d at 393, 690

N.Y.S.2d at 860 (restrictive covenant covering an accounting firm's Buffalo office did not

"seriously impinge on the availability of accounting services in the Buffalo area from which the

public may draw, or cause any significant dislocation in the market or cause a monopoly in

accounting services in that locale").

### iv) The Court Has Authority To Narrow The Restrictive Covenants Under The Employment Agreements

As a further matter, both Wallach and Mynes agreed in their Employment Agreements

that if any portion of the agreement is unenforceable, such portion will be limited to the extent

required to be enforced.  <u>See</u>, <u>e.g.</u>, Section 16 of the Employment Agreements.  Accordingly,

even if the restrictive covenants were somehow overbroad (which they are not) this Court has the

16

authority to narrow their scope and hold them enforceable. Whether restrictive covenants are to
be narrowed depends on the facts and circumstances of the matter and requires an evidentiary
record that could only be formed after development of the facts in discovery. See BDO
Seidman, supra, 93 N.Y.2d at 390, 395, 690 N.Y.S.2d at 858, 860-61. While the Moving
Defendants argue that the restrictive covenants should not be modified, none of the cases they
cite involved an agreement that contained the modification provision here.

In sum, the Employment Agreements are valid agreements, the restrictive covenants are
reasonable, and even if they were not, this Court has authority under the Employment
Agreements to narrow the scope of the restrictive covenants.

**B.      AppealTech Alleged That Mynes Breached The Mynes Employment Agreement By Commencing Employment With Counsel Press**

The Moving Defendants' contention that AppealTech "fails to show" Mynes breached his
employment agreement by commencing employment with Counsel Press is frivolous. Section
12 of the Mynes Employment Agreement provides that for six months following his termination,
Mynes would not "provide services for any individual, entity or other third party that is engaged
or seeks to engage in the same or similar business as that of [AppealTech] in any geographic area
in which [AppealTech] does or is actively seeking to do business." See Amended Complaint,
¶91. AppealTech alleges that Mynes breached this provision by becoming employed by a direct
competitor (Counsel Press) as a Senior Appellate Consultant (the exact same position he held at
AppealTech) in their New York City Office (the same city in which he worked for AppealTech).
See Amended Complaint, ¶¶91, 107. Accordingly, AppealTech has plainly pled that Mynes
breached the Mynes Employment Agreement by commencing employment with Counsel Press.
The Moving Defendants' contentions that there is no breach because 1) AppealTech does not
allege that Mynes is working in the appellate industry (even though AppealTech alleges that

17

Mynes has the exact same position with Counsel Press that he had with AppealTech), or 2) AppealTech does not allege that Mynes' clients are located in New York City (even though AppealTech alleges that Mynes is employed by Counsel Press in New York City, where he was employed by AppealTech), are without merit.

### C. AppealTech Alleged That The Moving Defendants Breached The Confidentiality Provisions

The Moving Defendants' contentions that AppealTech "fails to show" that Mynes and Wallach breached the confidentiality provisions of their Employment Agreements are patently without merit. As an initial matter, AppealTech does not have to "show" this in the Amended Complaint, it must only allege it. AppealTech plainly alleges that the Moving Defendants breached the confidentiality provisions of their respective employment agreements by misappropriating AppealTech's confidential information. See Amended Complaint, ¶¶114-128. AppealTech alleges that the Moving Defendants e-mailed AppealTech's confidential information to their personal e-mail addresses, including sales budgets, sales reports, client lists, client documents, client account information, invoices, upcoming client deadlines, lists of active accounts, outstanding account receivables and other related confidential information. See Amended Complaint, ¶¶45-46, 97, 100. AppealTech also alleges that this information falls under the definition of "Confidential Agreements" in the Employment Agreements. See Amended Complaint, ¶¶45-46, 97, 99. AppealTech further alleges that Wallach sent its client list and other confidential information to Counsel Press, who then circulated it and uploaded it to their system. See Id. at ¶¶47, 104, 135. AppealTech also alleges, on information and belief, that the other confidential information misappropriated by Wallach and Mynes was shared with Counsel Press, which is plainly a reasonable allegation in light of the foregoing. Id. at ¶¶47,103-04, 135.

18

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 80    19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -    RECEIVED NYSCEF: 01/22/2019

MOL in Opp. to MTD    Pg 25 of 31

The Moving Defendants' contentions that these allegations are not enough are frivolous. AppealTech specifies in detail the confidential documents which were misappropriated by the Moving Defendants, as well as the documents sent by Wallach to Counsel Press. Only through discovery can AppealTech know further specifics regarding what was done with these documents and the full extent to which they were taken at the direction of, shared with, and utilized by Counsel Press and the Gladstone Entities.

The Moving Defendants' contentions that the information they misappropriated was not confidential is equally without merit. Sales budgets, sales reports, client lists, client account information, lists of active accounts, accounts receivables, and the other misappropriated information is plainly confidential on its face. Regardless, whether AppealTech's confidential information is "a trade secret or [is] readily ascertainable from public sources [is] an issue of fact." See Marsh USA Inc. v. Hamby, 28 Misc.3d 1214(A), 958 N.Y.S.2d 61 (Sup. Ct. N.Y. Cty 2010) (quoting Suburban Graphics Supply Corp. v. Nagle, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163 (2d Dept. 2004)). In Marsh, this Court held that allegations that defendants defected to a direct competitor, after which employees and clients quickly followed, raises a strong inference of misappropriation of confidential information and thus the "plaintiff meets the basic pleading requirements and the Complaint survives the motion to dismiss…" Id. The Moving Defendants' citation to 1 Model Management, LLC v. Kavoussi, 82 A.D.3d 502, 918 N.Y.S.2d 431 (1st Dept. 2011) for the proposition that AppealTech "fails to show" that the information at issue is confidential is inapplicable as that case involved a motion for summary judgment, which obviously has a much higher standard than a motion to dismiss. Throughout their brief, the Moving Defendants confuse the standards for a motion to dismiss with those for summary judgment, arguing that AppealTech has failed to "show" this or that.

19

Likewise, the Moving Defendants' contentions that AppealTech "fails to show" that it took steps to maintain the secrecy of the information allegedly being misappropriated is equally without merit. AppealTech obviously took steps to maintain the secrecy of this information as it entered into Employment Agreements that required the Moving Defendants to keep the information confidential. <u>See</u> Amended Complaint, ¶¶42, 90. AppealTech also had confidentiality agreements with its other employees to maintain the secrecy of its confidential information. <u>See</u> Amended Complaint, ¶56.

Lastly, the Moving Defendants' arguments actually apply to a claim for misappropriation of trade secrets. AppealTech, however, has alleged a claim for breach of contract, not misappropriation of trade secrets. Each Employment Agreement has a confidentiality provision and by the clear terms of such provision, the Moving Defendants have breached them.

### D.    <u>AppealTech Alleged What Confidential Information Was Transmitted To Counsel Press</u>

The Moving Defendants' contentions that AppealTech has not identified what confidential information was transmitted to Counsel Press are without merit. First, AppealTech specifically alleges that "prior to Wallach's resignation, he sent AppealTech's client list and other proprietary information to Counsel Press, which was uploaded to Counsel Press' system." <u>See</u> Amended Complaint, ¶135.

Second, AppealTech is not required to provide such detail at the pleading stage without discovery. Such information is within the possession of the Moving Defendants and AppealTech has made ample detailed allegations without yet having the benefit of discovery. <u>See</u> <u>Serio v. Rhulen</u>, 24 A.D.3d 1092, 1094, 806 N.Y.S.2d 283, 285 (3d Dept. 2005) ("Defendants' purported desire to know the specific allegations as to each defendant can be sought via…disclosure. Indeed, disclosure will undoubtedly result in a refining of the action. The lack of exact

specificity at this procedural juncture, however, is not a ground for dismissal.") (citing <u>Bazak</u> <u>Int'l Corp. v. Mast Indus., Inc.</u>, 73 N.Y.2d 113, 538 N.Y.S.2d 503 (1989) and <u>EBC I, Inc. v.</u> <u>Goldman, Sachs & Co.</u>, 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)).

The cases cited by the Moving Defendants are inapplicable. In <u>Gordon v. Dino De</u> <u>Laurentiis Corp.</u>, 141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dept. 1998), the information at issue was not confidential because it was disclosed to third parties prior to the disclosure to defendants. Further, the plaintiff in <u>Gordon</u> never alleged how the breach caused injury. <u>Id</u>. <u>Anonymous v. Anonymous</u>, 233 A.D.2d 162, 649 N.Y.S.2d 665 (1st Dept. 1996) did not involve a motion to dismiss, but a motion seeking disclosure with respect to a confidentiality agreement.

## IV.    **AppealTech Pled A Claim For Breach Of The Duty Of Loyalty**

The Moving Defendants' contentions that AppealTech's claim for breach of the duty of loyalty should be dismissed as duplicative of AppealTech's claim for breach of contract are without merit. The Moving Defendants quote <u>Centro Empresarial Cempresa S.A. v. Am. Movil,</u> <u>S.A.B. de C.V.</u>, 76 A.D.3d 310, 333, 901 N.Y.S.2d 618, 636 (1st Dept. 2010) for the proposition that "Generally, a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand." However, they conveniently ignore the next sentence from <u>Centro Empresarial</u> which states that "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." <u>Id</u>.

AppealTech alleges that the Moving Defendants misappropriated confidential information and solicited clients on behalf of Counsel Press and the Gladstone Entities while they were employed with AppealTech. This is not only a breach of their Employment Agreements, but also a breach of their duty of loyalty to AppealTech. Their duties not to

FILED: NEW YORK COUNTY CLERK 01/22/2019 07:54 PM INDEX NO. 650620/2018

NYSCEF DOC. NO. 80    19-01435-jlg    Doc 5-27    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit Z -    RECEIVED NYSCEF: 01/22/2019
MOL in Opp. to MTD    Pg 28 of 31

misappropriate confidential information and not to solicit AppealTech's clients for a competitor are independent of the Employment Agreements. See Bender Insurance Agency, Inc. v. Treiber Insurance Agency, Inc., 283 A.D.2d 448, 729 N.Y.S.2d 142 (2d Dept. 2001) (on motion to dismiss, misappropriation of confidential information was deemed to be both a claim for breach of employment agreement and a breach of a duty of loyalty); Grund v. Delaware Charter Guarantee & Trust Co., 788 F.Supp.2d 226, 250 (S.D.N.Y. 2011) (breach of fiduciary duty claim that overlapped with breach of contract claim upheld on motion to dismiss); and Poller v. BioScrip, Inc., 974 F.Supp.2d 204, 227 (S.D.N.Y. 2013) (duty of loyalty, which includes not misusing confidential information, is not dependent upon an express contractual relationship).

### V.    AppealTech Pled A Claim For Tortious Interference With Business Relationships

In a claim for tortious interference with business relations, a plaintiff must allege: (1) the defendant's knowledge of a business relationship between the plaintiff and a third party; (2) the defendant's intentional interference with the relationship; (3) that the defendant acted by the use of wrongful means or with the sole purpose of malice; and (4) resulting injury to the business relationship. See 534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick, 90 A.D.3d 541, 542, 935 N.Y.S.2d 23, 24 (1st Dept. 2011).

AppealTech alleges each of these elements in the Amended Complaint. See Amended Complaint, ¶¶150-161. AppealTech alleges that the Moving Defendants, along with Counsel Press and the Gladstone Entities, engaged in a scheme to interfere with AppealTech's business relationships with its clients and prospective clients and eliminate it as a competitor by wrongly misappropriating AppealTech's confidential information and then subsequently using such confidential information to solicit AppealTech's clients and prospects, and referring AppealTech's clients and prospects to Counsel Press. Id. at ¶¶6, 9, 27-28, 49-53, 95-100, 103-

22

104, 109-113, 150-161. AppealTech has also alleged that the Defendants acted out of malice, alleging that Counsel Press openly stated that its goal was to put AppealTech out of business. As stated above, in August 2016 while discussing a strategy of raiding AppealTech and poaching its employees, Counsel Press' President and CEO stated that there was going to be "one less competitor" in the market. Id. at ¶68.

The Moving Defendants' contentions that the bad acts committed by the Moving Defendants were directed at AppealTech and not AppealTech's clients, and that AppealTech has not pled the wrongful means used are without merit.

First, AppealTech alleges that the Moving Defendants' conduct was directed not only at AppealTech, but also at AppealTech's clients and prospects. AppealTech specifically alleges that Wallach, while working for AppealTech, referred AppealTech's clients and prospects to Counsel Press. See Amended Complaint, ¶¶49-50. AppealTech also alleges that Mynes, immediately upon his resignation and for 12 months prior thereto, solicited AppealTech's clients to change the nature, terms or amount of business they conducted with AppealTech. Id. at ¶103. As AppealTech amply alleges, the Moving Defendants' actions were clearly directed at AppealTech's clients and prospects. To fully uncover the full extent of the Moving Defendants' wrongdoing in this regard, AppealTech obviously needs to conduct party and third party discovery.

Second, AppealTech clearly alleges that the Moving Defendants used wrongful means, i.e. they breached their Employment Agreements and duty of loyalty by 1) misappropriating AppealTech's confidential information and improperly transmitting such confidential information to Counsel Press; and 2) soliciting AppealTech's clients and prospects on behalf of Counsel Press, during and after their employment with AppealTech.

23

The Moving Defendants also contend that AppealTech did not identify any "key clients" that AppealTech lost due to the Defendants' conduct. AppealTech, however, specifically identified Horing Welikson & Rosen, P.C. ("Horing") as a long-standing client of AppealTech whose relationship it lost due to the Defendants' wrongful conduct. See Amended Complaint, ¶¶157-159. The Moving Defendants' contention that because Horing was already a client of Counsel Press, they could not have interfered with AppealTech's relationship with Horing is without merit. Their contention that Horing was also a Counsel Press client obviously does not mean the Moving Defendants did not interfere with AppealTech's relationship with Horing.

Moreover, AppealTech has also identified numerous additional attorneys and law firms that contacted Wallach regarding new matters for AppealTech that Wallach never informed AppealTech about, thereby preventing AppealTech from obtaining this business. See Kestan Affidavit, ¶¶6, 8-13. It reasonably follows that Wallach referred these clients to Counsel Press, but only through discovery will AppealTech be able to fully unveil the full extent of the wrongdoing, and the amount of business it lost as a result.[1]

## VI.    AppealTech May Seek A Permanent Injunction And Attorneys' Fees

As set forth above, as AppealTech's substantive claims are adequately pled and meritorious, its claims for permanent injunction and attorneys' fees must also remain.

## VII.    Motion To Dismiss By Counsel Press And The Gladstone Entities

The Moving Defendants state that they incorporate by reference the arguments raised in the Counsel Press Motion. Accordingly, AppealTech incorporates by reference the arguments that it makes in its opposition to the Counsel Press Motion.

---

[1] The Moving Defendants' contentions regarding "group pleading" do not apply here as: 1) the Amended Complaint contains separate allegations for Mynes and Wallach; and 2) the cases relied upon by the Moving Defendants deal with the particularity requirements of CPLR Rule 3016(b), which are inapplicable here.

## **CONCLUSION**

For the reasons given above, the Moving Defendants' motion to dismiss should be

denied.

Dated: January 22, 2019

> **MOREA SCHWARTZ BRADHAM
> FRIEDMAN & BROWN LLP**
>
>
> By: /s/ John M. Bradham
>     John M. Bradham
>     Peter B. Katzman
> 444 Madison Avenue, 4th Floor
> New York, New York 10022
> Tel: (212) 695-8050
> Email: jbradham@msbllp.com
>
> *Attorneys for Plaintiff Z & J LLC d/b/a
> AppealTech*

25