# Exhibit II

19-01435-jlg   Doc 5-36   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit II -
Reply MOL in Support MTD Amended Complaint.   Pg 2 of 23

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
Z & J LLC d/b/a APPEALTECH,                                :
                                                          :
                          Plaintiff,                       :
                                                          :   Index No. 650620/2018
           -against-                                       :
                                                          :
LAURENCE MYNES and COUNSEL PRESS, INC.,                    :
GLADSTONE INVESTMENT CORPORATION,                          :
GLADSTONE MANAGEMENT CORPORATION,                          :
GLADSTONE ADMINISTRATION, LLC and                          :
JONATHAN WALLACH                                           :
                                                          :
                          Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92

INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg   Doc 5-36   Filed 12/23/19   Entered 12/23/19 16:01:58   Exhibit II -
Reply MOL in Support MTD Amended Complaint.   Pg 3 of 23

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

POINT ONE APPEALTECH DOES NOT DISPUTE THAT ITS
ALLEGATIONS AGAINST THE GLADSTONE ENTITIES ARE
INSUFFICIENT .......................................................................................................... 2

POINT TWO APPEALTECH FAILED TO ALLEGE A CLAIM AGAINST
MOVANTS FOR TORTIOUS INTERFERENCE WITH CONTRACT ........................... 3

    A.    THE EMPLOYMENT AGREEMENTS ARE
        UNENFORCEABLE AND, AS A RESULT, APPEALTECH
        FAILED TO ALLEGE THE EXISTENCE OF A VALID
        CONTRACT, A REQUIRED ELEMENT IN ITS CLAIMS ..................... 4

        1.    The Non-Compete Provisions' Geographic Scope Is
             Unreasonable ................................................................................. 4

        2.    The Non-Compete Provisions Are Unenforceable As A
             Matter of Law Because They Seek To Bar Wallach And
             Mynes From Soliciting AppealTech Customers With
             Whom They Had No Relationship .................................................. 6

        3.    The Court Should Not Narrow The Non-Compete
             Provisions ...................................................................................... 8

    B.    APPEALTECH FAILED TO ALLEGE ITS CLAIMS WITH
        SPECIFICITY ................................................................................. 8

        1.    AppealTech's Speculative Claims Are Insufficient ....................... 9

        2.    AppealTech's Allegations Made "Upon Information And
             Belief" Are Insufficient .............................................................. 11

        3.    AppealTech Failed To Allege That "But For" Counsel
             Press' Alleged Actions, The Employment Agreement
             Would Not Have Been Breached ................................................. 11

    C.    APPEALTECH HAS NOT ALLEGED A BREACH OF THE
        CONFIDENTIALITY PROVISIONS ............................................... 12

POINT THREE APPEALTECH FAILED TO ALLEGE A CLAIM FOR
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS ......................... 14

POINT FOUR APPEALTECH FAILED TO ALLEGE A CLAIM
AGAINST MOVANTS FOR UNFAIR COMPETITION .............................................. 16

CONCLUSION ......................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy Orthotic & Prostehetic Assoc. IPA, Inc. v. Healthfirst PHSP, Inc.,*
  2016 N.Y. Misc. LEXIS 2734 (Sup. Ct. N.Y. Cnty. July 21, 2016)...................................14, 15

*Amaranth LLC v. J.P. Morgan Chase & Co.,*
  71 A.D.3d 40 (1st Dep't 2009) ...............................................................................14

*Angel v. Bank of Tokyo-Mitsubishi. Ltd.,*
  39 A.D.3d 368 (1st Dep't 2007) ..............................................................................11

*Bazak Int'l Corp. v. Mast Indus., Inc.,*
  73 N.Y.2d 113 (1989)............................................................................................11

*BDO Seidman v. Hirshberg,*
  93 N.Y.2d 382 (1999) ..........................................................................................7, 8

*Beverage Mktg. USA v. South Beach Bev. Co.,*
  20 A.D.3d 439 (2d Dep't 2005).................................................................................16

*Black Car and Livery Ins., Inc. v H&W Brokerage. Inc.,*
  28 AD3d 595 (2d Dep't 2006) ...................................................................................9

*Blackman Plumbing Supply Co. v. Connelly,*
  2011 N.Y. Misc. LEXIS 4352 (Sup. Ct. Nassau Cnty. 2011) .............................................4, 5

*Bonanni v. Straight Arrow Publishers, Inc.,*
  133 A.D.2d 585 (1st Dep't 1987) ...............................................................................9

*Brown & Brown, Inc. v. Johnson,*
  115 A.D.3d 162 (4th Dep't 2014)............................................................................7, 8

*Burrowes v. Combs,*
  25 A.D.3d 370 (1st Dep't 2006) ................................................................................9

*CDR Creances S.A. v. Euro-American Lodging Corp.,*
  40 AD3d 421 (1st Dep't 2007).................................................................................12

*Chestnut Hill Partners, LLC v. Van Raalte,*
  45 AD3d 434 (1st Dep't 2007) ..................................................................................9

*Comcast Sound Commc'ns, Inc. v. Hoeltke,*
  572 N.Y.S.2d 189 (4th Dep't 1991)...........................................................................12

ii

*Constantin Assocs. v. Kapetas,*
    17 Misc. 3d 1137(A), (Sup. Ct. N.Y. Cnty. Dec. 6, 2007) .....................................................12

*Don Buchwald & Assoc., Inc. v. Rich,*
    281 A.D.2d 329 (1st Dep't 2001) ...........................................................................................15

*EBC I, Inc. v. Goldman, Sachs & Co.,*
    5 N.Y.3d 11 (2005) .................................................................................................................11

*ENV Servs., Inc. v. Alesia,*
    10 Misc. 3d 1054(A), (Sup. Ct. Nassau Cnty. Nov. 28, 2005) .............................................4, 5

*Good Energy. L.P. v. Kosachuk,*
    49 A.D.3d 331 (1st Dep't 2008) ...............................................................................................4

*Headquarters Buick-Nissan, Inc. v. Michael Oldsmobile,*
    149 A.D.2d 303 (1st Dep't 1989) ...........................................................................................16

*Jonas v. Newedge USA, LLC,*
    2008 N.Y. Misc. LEXIS 9805 (Sup. Ct. N.Y. Cnty. 2008) .......................................8, 9, 10, 11

*Jurlique, Inc. v. Austral Biolab Pty., Ltd.,*
    187 A.D.2d 637 (2d Dep't 1992) ............................................................................................15

*Kickertz v. N.Y. Univ.,*
    110 A.D.3d 268 (1st Dep't 2013) ...........................................................................................14

*Korangy Publ., Inc. v. Miceli,*
    22 Misc. 3d 1130(A), (Sup. Ct. N.Y. Cnty. Feb. 27, 2009)......................................................3

*Mandarin Trading Ltd. v. Wildenstein,*
    17 Misc. 3d 1118(A), (Sup. Ct., N.Y. Cnty. Sept. 4, 2007)....................................................11

*Marsh USA Inc. v. Hamby,*
    28 Misc.3d 1214(A), (Sup. Ct. N.Y. Cnty. July 22, 2010) .....................................................13

*Martian Entertainment, LLC v Harris,*
    12 Misc 3d 1190[A] (Sup. Ct., NY Cnty 2006)...............................................................3, 10, 15

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,*
    87 N.Y.2d 614 (1996) ...............................................................................................................3

*Rescomcleaning, Inc. v. Ulloa,*
    5 Misc. 3d 1003(A), (Sup Ct. Suffolk Cnty. June 30, 2004) .................................................4, 5

*Roy Export Co. Establishment v. CBS, Inc.,*
    672 F.2d 1095 (2d Cir. 1982)...................................................................................................16

iii

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92

INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 6 of 23

*Scott, Strackrow & Co., C.P.A.'s v. Skavina,*
   9 A.D.3d 805 (3d Dep't 2004) ...................................................................7, 8

*Serio v. Rhulen,*
   24 A.D.3d 1092 (3d Dep't 2005) ....................................................................10

*Snyder v. Sony Music Entertainment, Inc.,*
   252 A.D.2d 292 (1st Dep't 1999) ...................................................................15

*Telecom Int'l Am., Ltd. v. AT&T Corp.,*
   280 F.3d 175 (2d Cir. 2001)...........................................................................16

*TSIG Consulting, Inc. v. ACP Consulting LLC,*
   2014 N.TY. Misc. LEXIS 3788 (Sup. Ct. N.Y. Cnty. 2014)................................6, 7

*Veramark Techs. Inc. v. Bouk,*
   10 F. Supp. 3d 395 (W.D.N.Y. 2014) ............................................................7, 8

*Volt Delta Res. LLC v. Soleo Commc'ns, Inc.,*
   816 N.Y.S.2d 702 (Sup. Ct. N.Y. Cnty. Mar. 29, 2006).....................................16

*Washington Ave. Assocs. v. Euclid Equip.,*
   229 A.D.2d 486 (2d Dep't 1996) .....................................................................14

*Yeldin v. Lieberman,*
   102 A.D.3d 769 (2d Dep't 2013) ......................................................................6

**Statutes**

N.Y. Civ. Prac. Law and Rules § 3211(a)(1)...........................................................1

N.Y. Civ. Prac. Law and Rules § 3211(a)(7)...........................................................1

iv

Defendants Counsel Press, Inc. ("Counsel Press"), Gladstone Investment Corporation

("Gladstone Investment"), Gladstone Management Corporations ("Gladstone Management"),

and Gladstone Administration, LLC (together with Gladstone Investment and Gladstone

Management, the "Gladstone Entities") (Counsel Press and the Gladstone Entities are

collectively referred to herein as "Movants") submit this Reply Memorandum of Law in further

support of their motion (the "Motion") to dismiss Plaintiff Z & J LLC d/b/a AppealTech's

("AppealTech") claims against Movants pursuant to New York Civil Practice Law and Rules

§§ 3211(a)(1) and (7).

## PRELIMINARY STATEMENT

AppealTech's claims for tortious interference and unfair competition against Counsel

Press - its primary competitor in the appellate services industry - are vexatious claims brought as

retaliation against Counsel Press for succeeding in a marketplace where AppealTech has been

unsuccessful.  AppealTech's allegations are speculative, conclusory, and alleged predominantly

"upon information and belief."  Despite basing its claims against Counsel Press on the purported

misuse of confidential information, AppealTech does not identify any confidential information

that was misappropriated.  For example, AppealTech primarily complains about the misuse of its

confidential customer lists, but Counsel Press established (and AppealTech did not dispute) that

AppealTech's customer lists are not only publicly available, but advertised by AppealTech.

Moreover, every potential appeal, as well as the attorneys involved, are public knowledge once

the trial court renders a decision and then again when a notice of appeal is filed.  As a result, no

customer list in the entire appellate services industry is confidential.

In its Opposition Brief, AppealTech repeats its speculative and conclusory allegations,

arguing that discovery is required for it to develop specific allegations.  But the heightened

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO.: 92
INDEX NO. 650620/2018
19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 8 of 23
RECEIVED NYSCEF: 02/22/2019

pleading requirement for tortious interference claims is meant to prevent just such a fishing expedition.

The vexatious nature of AppealTech's complaint is made even clearer by its unsupportable allegations against the Gladstone Entities (Gladstone Investment acquired Counsel Press in 2015). The Gladstone Entities established in the Moving Brief that the allegations against them are even more speculative, extending the essentially hypothetical claims against Counsel Press to another level of attenuation. AppealTech merely alleges that the Gladstone Entities provided "advice and guidance" to Counsel Press. Such benign allegations are untenable especially considering the lack of cognizable underlying claims. Notably, in its Opposition Brief, AppealTech does not dispute that its allegations against the Gladstone Entities are insufficient.

Accordingly, the Court should dismiss AppealTech's claims against Movants with prejudice.

## ARGUMENT

### POINT ONE

### APPEALTECH DOES NOT DISPUTE THAT ITS ALLEGATIONS AGAINST THE GLADSTONE ENTITIES ARE INSUFFICIENT

As an initial matter, the Gladstone Entities established in the Moving Brief that the allegations against them are speculative, extending the already essentially hypothetical claims against Counsel Press to another level of attenuation. *See* Movants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Moving Br.") at 15. Indeed, AppealTech merely alleges that the Gladstone Entities provided "advice and guidance" to Counsel Press. *See* Amended Complaint ("Am. Cmplt.") ¶¶ 132, 134. These allegations are simply not actionable. In its Opposition Brief, AppealTech does not dispute that its allegations against the Gladstone

2

Entities are insufficient.  As a result, AppealTech's claims against the Gladstone entities should

be dismissed.

## POINT TWO

### APPEALTECH FAILED TO ALLEGE A CLAIM AGAINST MOVANTS FOR TORTIOUS INTERFERENCE WITH CONTRACT

In its Moving Brief, Counsel Press established that AppealTech failed to adequately

allege its claim for tortious interference with contract for at least three reasons.  *See* Moving Br.

at 10-11 (citing *Martian Entertainment, LLC v. Harris*, 12 Misc. 3d 1190(A), at *7 (Sup. Ct.

N.Y. Cnty. July 5, 2006) (the elements required to plead a claim for tortious interference with

contract are: "(1) a valid contract between the plaintiff and a third party; (2) defendant's

knowledge of the contract; (3) defendant's intentional procurement of a breach of that contract

without justification; (4) actual breach; and (5) damages.")); *see also, e.g., NBT Bancorp Inc. v.

Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 620-21 (1996); *Korangy Publ., Inc. v. Miceli*, 22

Misc. 3d 1130(A), at *7 (Sup. Ct. N.Y. Cnty. Feb. 27, 2009) ("[A] plaintiff's failure to plead

each element of a tortious interference claim with specificity requires dismissal of that claim.").

First, AppealTech's allegations fail to allege the existence of a valid contract because the

Non-Compete Provisions in the Employment Agreements are unenforceable.[1]  Second,

AppealTech's claims improperly rely on speculative and conclusory allegations predominantly

alleged "upon information and belief."  And third, AppealTech failed to allege a breach of the

Confidentiality Provisions of the Employment Agreements, because it does not identify any

confidential information that was allegedly disclosed to Counsel Press.  *See* Moving Br. at 10-17.

Nothing submitted in opposition to the motion overcomes those failures.  Thus, the complaint

against the Movants should be dismissed.

---

[1]    Capitalized terms not defined herein shall have the same meaning attributed to them in the Moving Brief.

3

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
INDEX NO. 650620/2018
NYSCEF DOC. NO. 92
19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit U -
RECEIVED NYSCEF: 02/22/2019
Reply MOL in Support MTD Amended Complaint.    Pg 10 of 23

**A.    The Employment Agreements Are Unenforceable And, As A Result, AppealTech Failed To Allege The Existence Of A Valid Contract, A Required Element In Its Claims**

Counsel Press established that the Employment Agreements are unenforceable because (i) they are geographically overbroad; and (ii) they impermissibly restrict Wallach and Mynes from soliciting any AppealTech customers or potential customers, including customers with whom they never had a relationship. *See* Moving Br. at 10-13.

**1.    The Non-Compete Provisions' Geographic Scope Is Unreasonable**

The scope of the Non-Compete Provisions is geographically overbroad because it restricts competition "in any geographic area in which [AppealTech] does or is actively seeking to do business." *See* Am. Cmplt., ¶ 44.  Counsel Press established that such a vast geographic restriction is far greater than required to protect AppealTech's legitimate interests, and New York courts routinely deem such broad geographic restrictions unenforceable. *See* Moving Br. at 12 (citing *Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 332 (1st Dep't 2008); *ENV Servs., Inc. v. Alesia*, 10 Misc. 3d 1054(A), at *6 (Sup. Ct. Nassau Cnty. Nov. 28, 2005); *Rescomcleaning, Inc. v. Ulloa*, 5 Misc. 3d 1003(A), at *4 (Sup Ct. Suffolk Cnty. June 30, 2004); *Blackman Plumbing Supply Co. v. Connelly*, 2011 N.Y. Misc. LEXIS 4352, at *6 (Sup. Ct. Nassau Cnty. 2011)).

In its Opposition Brief, AppealTech cites no case to support its argument that the geographic scope of the Non-Compete Provisions is enforceable.  Rather, it makes a brief attempt to distinguish the cases cited by Counsel Press, arguing that the geographic scope of the restrictions in those cases were "far more expansive" than the restrictions at issue here. *See* Opp. Br. at 13.  This argument is simply incorrect.  The geographic restrictions at issue in *ENV Services*, *Rescomcleaning*, and *Blackman* were all less expansive than the restrictions at issue here.  In *ENV Services*, the restriction limited competition within 100 miles of where the

4

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 11 of 23

company did business. *See ENV Servs.*, 10 Misc. 3d 1054(A), at \*6. The restriction in *Rescomcleaning* was even narrower, prohibiting competition within a 100-mile radius of where the company did business, but only those areas where the employees had been assigned. *Rescomcleaning*, 5 Misc. 3d 1003(A), at \*4. And narrowest of all, the restriction in *Blackman* prohibited competition from Manhattan to Montauk. *Blackman*, 2011 N.Y. Misc. LEXIS 4352, at \*6. The restrictions in all three cases were deemed unreasonably overbroad in their geographic scope.

Here, the geographic scope of the Non-Compete Provisions stretches to "any geographic area in which [AppealTech] does or is actively seeking to do business." *See* Am. Cmplt., ¶ 44. AppealTech argues that this geographic scope is proper because AppealTech is a "small company that has offices in only three cities: New York City, Rochester and Los Angeles and it only provides services in those cities and surrounding areas." *See* Opp. Br. at 13. But on its face, this geographic restriction is at least as restrictive as the unreasonable restrictions in *ENV Services* and *Rescomcleaning*. This is particularly the case for the restriction in *Rescomcleaning* which was limited to areas within a 100-mile radius of areas covered by the employee. *See Rescomcleaning*, 5 Misc. 3d 1003(A), at \*4. And the unreasonable restriction in *Blackman* is clearly less expansive because it is limited to New York City and Long Island. *Blackman*, 2011 N.Y. Misc. LEXIS 4352, at \*6. AppealTech has cited no authority to support that the Non-Compete Provisions' geographic scope is reasonable.

And AppealTech's description of the Non-Compete Provisions' geographic scope is contradicted by AppealTech's own website, which suggests that the geographic scope is more expansive than AppealTech has stated to this Court in its opposition. AppealTech claims in its Opposition Brief that it only does business "in the areas surrounding" New York City, Rochester,

5

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 12 of 23

and Los Angeles. *See* Opp. Br. at 13. But on the "About AppealTech" section of AppealTech's website, AppealTech suggests a nationwide scope because it states that it works on "appeals in the State Appellate Courts, the Federal Circuit Courts of Appeals and the United States Supreme Court."[2] AppealTech's website also boasts that AppealTech has been voted as one of the top appellate service providers by the New Jersey Law Journal and the Connecticut Law Tribune. Based on these statements, the actual geographic scope of the Non-Compete Provisions falls somewhere on a spectrum between (i) nationwide, on the broadest end, and (ii) New York State, New Jersey, Connecticut, and California, on the narrowest end. Either way, the geographic scope AppealTech has argued to this Court is contradicted by its own promotional materials. Regardless, even the geographic scope on the narrowest end of this spectrum is unreasonable under New York law and, therefore, the Non-Compete Provisions are unenforceable.

> **2.    The Non-Compete Provisions Are Unenforceable As A Matter of Law Because They Seek To Bar Wallach And Mynes From Soliciting AppealTech Customers With Whom They Had No Relationship**

But even if the geographic scope of the Non-Compete Provisions is reasonable, which it is not, Counsel Press also established that the Non-Compete Provisions are unenforceable because they purport to bar Wallach and Mynes from soliciting any AppealTech customers or potential customers, including customers with whom they never had a relationship. *See* Moving Br. at 12-13 (citing *TSIG Consulting, Inc. v. ACP Consulting LLC*, 2014 N.Y. Misc. LEXIS 3788, at *16 (Sup. Ct. N.Y. Cnty. Aug 18, 2014) (a "non-solicitation covenant is overbroad and therefore unenforceable [when] it seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment.") (citation omitted)); *see also, Yeldin v. Lieberman*, 102 A.D.3d 769, 770 (2d Dep't

---

[2]    *See* http://www.appealtech.com/about/.

6

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 13 of 23

2013) (finding restrictive covenant unenforceable where it would have precluded the former employee from merely participating in projects that involved employer's present or former clients).

In its Opposition Brief, AppealTech does not cite a single case to support its claim that a restrictive covenant may prohibit an employee from soliciting all of a company's clients – even those with whom the employee had no relationship while at his former employer. Indeed, no such case exists, because it is black letter law in New York that: "[a] 'non-solicitation covenant is overbroad and therefore unenforceable if it seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment'..." *See TSIG Consulting*, 2014 N.Y. Misc. LEXIS 3788, at *16 (citing *Brown & Brown, Inc. v. Johnson*, 115 A.D.3d 162, 171 (4th Dep't 2014); *Scott, Strackrow & Co., C.P.A.'s v. Skavina*, 9 A.D.3d 805, 806 (3d Dep't 2004)). As one court noted: the Court of Appeals has put employers "on notice...that a restrictive covenant is overly broad where it is not targeted to solicitation of customers with whom the employee acquired a relationship through his employment." *See Veramark Techs. Inc. v. Bouk*, 10 F. Supp.3d 395, 407 (W.D.N.Y. 2014) (citing *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 394 (1999)).[3]    AppealTech does not contest that the Non-Compete Provisions seek to restrict Wallach and Mynes from soliciting customers with whom they had no prior relationship. For this reason alone, AppealTech's claim for tortious interference with the Employment Agreements fails as a matter of law.

---

[3]    AppealTech's attempts to distinguish cases cited by Counsel Press are irrelevant. *See* Opp. Br. at 14. For example, AppealTech argues that the court's holding in *TSIG* is inapposite because it enforced a nonsolicitation restriction. But, as noted above, the *TSIG* court repeatedly confirmed that "a nonsolicitation covenant is overbroad and therefore unenforceable if it seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment." *TSIG Consulting*, 2014 N.Y. Misc. LEXIS 3788, at *16. Here, it is undisputed that the Non-Compete Provisions seek to bar Wallach and Mynes from soliciting clients with whom they never acquired a relationship through their employment at AppealTech.

7

In sum, the Non-Compete Provisions are overbroad both in terms of where the employees may compete and with whom they can do business. Accordingly, the Employment Agreements are unenforceable as a matter of law and, as a result, AppealTech's claims that Movants tortiously interfered with the Employment Agreements should be dismissed.

### 3.    *The Court Should Not Narrow The Non-Compete Provisions*

AppealTech suggests that, to the extent the Non-Compete Provisions are unenforceable, the Court should narrow their scope and hold them enforceable. *See* Opp. Br. at 15. But this is not a case where narrowing the scope of the restriction is appropriate. Indeed, Courts have held that "partial enforcement is inappropriate where an employer attempts to prohibit solicitation of its entire customer base…" *See Veramark Techs. Inc.*, 10 F. Supp. 3d at 407 (citing *Brown & Brown,* 115 A.D.3d at 172; *Scott, Stackrow & Co.*, 9 A.D.3d at 806-807). Partial enforcement is inappropriate even in cases, such as this one, where the employment agreement contemplates partial enforcement. *See Brown & Brown,* 115 A.D.3d at 172 (citing *BDO Seidman*, 93 N.Y.2d at 394). Courts reason that allowing for partial enforcement would "enhance the risk that 'employers will use their superior bargaining position to impose unreasonable anti-competitive restrictions, uninhibited by the risk that a court will void the entire agreement leaving the employee free of any restraint." *Id.* (citing *BDO Seidman*, 93 N.Y.2d at 394). As Counsel Press established above, the Non-Compete Provisions seek to prohibit solicitation of AppealTech's entire customer base and, as a result, the Court should not narrow the scope of the Non-Compete Agreements.

### B.    *AppealTech Failed To Allege Its Claims with Specificity*

Regardless of whether the Employment Agreements are enforceable, which they are not, Counsel Press established that AppealTech failed to plead tortious interference with the Employment Agreements with specificity. *See* Moving Br. at 13-16 (citing *Jonas v. Newedge*

8

*USA, LLC*, 2008 N.Y. Misc. LEXIS 9805, at \*26 (Sup. Ct. N.Y. Cnty. 2008) ("[T]o avoid
dismissal of a tortious interference with contract claim, a plaintiff must support his claim with
more than mere speculation."); *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006)
(stating same)); *Bonanni v. Straight Arrow Publishers, Inc.*, 133 A.D.2d 585, 587 (1st Dep't
1987) (citation omitted) ("Failure to plead in nonconclusory language facts establishing all the
elements of a wrongful and intentional interference in the contractual relationship requires
dismissal of the action."); *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at \*26 (plaintiff must
specifically allege that the contract would not have been breached "but for" the defendant's
conduct). AppealTech has failed to establish that its conclusory and speculative claims are
sufficient to survive the motion to dismiss.

### 1. AppealTech's Speculative Claims Are Insufficient

Counsel Press established in its Moving Brief that Courts have dismissed allegations
virtually identical to the allegations here. *See* Moving Br. at 14-16 (citing *Jonas*, 2008 N.Y.
Misc. LEXIS 9805, at \*26-28). In the *Jonas* case, for example, plaintiffs alleged that defendants
tortiously interfered with a contract between plaintiffs and co-defendant. There, the court noted
that despite plaintiff's assertions to the contrary, "in reality, the amended complaint merely
speculates, in the most conclusory of terms, that [defendants] induced [co-defendant] to delay
signing a definitive agreement and to renege on its existing contractual and other legal
obligations..." The court held that "[t]hese conclusory allegations are insufficient to sustain a
claim for tortious interference with contract." *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at \*26-28
(citing *Chestnut Hill Partners, LLC v. Van Raalte*, 45 AD3d 434, 435 (1st Dep't 2007) ("[T]he
speculative allegations set forth by plaintiff are insufficient to sustain a claim for ... tortious
interference with contract")); *see also, Black Car and Livery Ins., Inc. v H&W Brokerage. Inc.*,

9

28 AD3d 595, 595 (2d Dep't 2006) ("The cause of action alleging tortious interference with a

contract was properly dismissed as to the respondent, as the allegations in support of this cause

of action 'are devoid of a factual basis and are vague and conclusory'") (citation omitted);

*Martian Entertainment,* 12 Misc. 3d 1190(A), at *7 (dismissing tortious interference claim on

ground that "plaintiff must support its claim with more than mere speculation").

Counsel Press established in its Moving Brief that, like the allegations in *Jonas,* the

allegations in this case merely speculate, in the most conclusory terms, that Counsel Press

"induced" the Employees to breach the Employment Agreements. *See* Am. Cmplt. ¶¶ 132-134.

AppealTech fails to specify how this purported inducement was carried out, nor does it allege

any wrongful means despite having already amended its Complaint once when faced with the

lack of specificity on this precise issue.[4] Rather, AppealTech's amended claims amount to

nothing more than speculation that: (i) the Employees <u>may</u> have retained certain information

from their employment at AppealTech and, <u>if</u> they did, (ii) they <u>may</u> also have shared that

information with Counsel Press and, <u>if</u> they did, (iii) Counsel Press <u>may</u> have misused that

information. These speculative and conclusory allegations are insufficient as a matter of law.

Amazingly, AppealTech urges the Court to disregard the pleading requirements for

tortious interference claims arguing that "specific allegations can be sought via disclosure." *See*

Opp. Br. 16. It cites three cases for the proposition that "lack of exact specificity" is not ground

for dismissal. But none of these cases dealt with claims for tortious interference, and none of

these cases held that conclusory allegations, speculative allegations, or allegations based on

"information and belief" were sufficient under any circumstances. *See Serio v. Rhulen,* 24

A.D.3d 1092, 1094 (3d Dep't 2005) (finding that allegations of breach of fiduciary duty were not

---

[4]    It is also notable that AppealTech has submitted several affidavits in this matter as well, none of which has
identified any alleged "inducement" by any Movants.

10

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92

INDEX NO. 650620/2018

RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 17 of 23

conclusory but specifically pled); *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113 (1989) (finding fraud claim sufficiently plead with specificity); *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11 (2005) (holding that plaintiff specifically alleged breach of fiduciary duty). AppealTech's inability to identify any supporting authority further confirms that its speculative allegations are insufficient as a matter of law.

### 2. AppealTech's Allegations Made "Upon Information And Belief" Are Insufficient

Counsel Press established that AppealTech's allegations are also insufficient because they are alleged "upon information and belief." *See* Moving Br. at 15-16 (citing *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at *28 (dismissal is particularly appropriate when most of the allegations in support of the tortious interference claim were made "upon information and belief"); *Angel v. Bank of Tokyo-Mitsubishi. Ltd.*, 39 A.D.3d 368, 369 (1st Dep't 2007) (stating same); *Mandarin Trading Ltd. v. Wildenstein*, 17 Misc. 3d 1118(A), at *5 (Sup. Ct., N.Y. Cnty. Sept. 4, 2007) (allegation based upon information and belief "is simply a conclusory claim or statement unsupported by factual evidence," and, as such, "the bald allegation is not entitled to preferential consideration" on a motion to dismiss)). AppealTech's allegations of tortious interference made "on information and belief" include, for example, the allegation that, "upon information and belief," Counsel Press has used confidential information provided to it by the Employees. *See, e.g.* Am. Cmplt. ¶¶ 57-58, 96, 98, 103-104. AppealTech does not address this argument in its Opposition Brief.

### 3. AppealTech Failed To Allege That "But For" Counsel Press' Alleged Actions, The Employment Agreement Would Not Have Been Breached

Counsel Press also established that AppealTech failed to allege that "but for" the defendants' actions, the contract would not have been breached, and "this omission is fatal to the[] claim." *See* Moving Br. at 16 (citing *Jonas*, 2008 N.Y. Misc. LEXIS 9805, at *28-29;

11

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92

INDEX NO. 650620/2018

RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 18 of 23

*CDR Creances S.A. v. Euro-American Lodging Corp.*, 40 AD3d 421, 422 (1st Dep't 2007) ("The

tortious interference cause of action was deficient for failure to allege the required 'but for'

causation and intent to induce a breach in nonconclusory fashion"); *Constantin Assocs. v.

Kapetas*, 17 Misc. 3d 1137(A), at *3 (Sup. Ct. N.Y. Cnty. Dec. 6, 2007) (stating same)). Not

only did AppealTech fail to allege that "but for" Movants' actions the Employees would not

have breached the Employment Agreements, but AppealTech concedes that there had already

been an exodus of employees leaving AppealTech in the midst of AppealTech's financial

struggles. *See* Moving Br. at 3.

In its Opposition Brief, AppealTech does not meaningfully contest that it failed to allege

the "but for" requirement. Instead, AppealTech makes the conclusory statement that it "alleged

that the Employment Agreements would not have been breached but for the Moving Defendants

conduct." *See* Opp. Br. at 16. But tellingly, AppealTech fails to provide a citation to any such

allegation in the Complaint, nor could it do so.

As a result of AppealTech's multiple failures to adequately plead tortious interference

with contracts, its claim should be dismissed.

C.    **AppealTech Has Not Alleged a Breach of the Confidentiality Provisions**

Counsel Press also established in its Moving Brief that AppealTech failed to allege a

breach of the Confidentiality Provisions, because the information AppealTech claims to have

been disclosed is public information that does not constitute confidential information subject to

protection. *See* Moving Br. at 16-17 (citing *Comcast Sound Commc'ns, Inc. v. Hoeltke*, 572

N.Y.S.2d 189 (4th Dep't 1991) (a nondisclosure provision is unenforceable where a list of

customer names is readily ascertainable from sources available to the general public);

12

Employment Agmt., ¶ 10 (definition of "Confidential Information" specifically excludes "information that is or has become publicly known or made generally available…)).

AppealTech does not identify <u>any</u> specific confidential information subject to protection, despite already facing a motion to dismiss and amending its initial complaint. And it has already been established that AppealTech's customer lists are publicly available because, when AppealTech prepares an appeal for a client, AppealTech applies its logo to the papers in the form of a unique printer's mark on the cover page, and each filing is public. *See* Moving Br. at 17. As a result, <u>AppealTech's customer list is not only publicly available, but AppealTech advertises it</u>. Moreover, every potential appeal, as well as the attorneys involved, are public knowledge once the trial court renders a decision and then again when a notice of appeal is filed. As a result, no customer list in the entire appellate services industry is confidential.

AppealTech does not dispute that its customer list is publicly available. Rather, it attempts to elude this issue, arguing that whether AppealTech's customer list "is readily ascertainable from public sources is an issue of fact." *See* Opp. Br. at 17 (citing *Marsh USA Inc. v. Hamby*, 28 Misc.3d 1214(A), at *5 (Sup. Ct. N.Y. Cnty. July 22, 2010)). But AppealTech does not cite a single case where a Court ignored dispositive documentary evidence which was publicly filed by the plaintiff itself. Such an outcome would be absurd.

In its Opposition Brief, AppealTech still does not specify any confidential information it believes was misappropriated. Instead, it repeats conclusory statements and insists that discovery is required for it to learn specifics. The requirement that tortious interference be alleged with specificity is meant to prevent the very type of fishing expedition AppealTech seeks permission from this Court to conduct. Its claim for tortious interference with contract against the Movants should be dismissed.

13

**POINT THREE**

**APPEALTECH FAILED TO ALLEGE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

Counsel Press also established in its Moving Brief that AppealTech failed to adequately allege tortious interference with any business relationship. *See* Moving Br. at 18-20. To state a claim for tortious interference with business relationship, AppealTech must plead these elements with specificity: "(1) that it had a business relationship with a third party; (2) that the defendant knew of the relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Academy Orthotic & Prostehetic Assoc. IPA, Inc. v. Healthfirst PHSP, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at *40 (Sup. Ct. N.Y. Cnty. July 21, 2016) (citing *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47 (1st Dep't 2009)). The Amended Complaint satisfies none of these elements.

First, Counsel Press established that AppealTech failed to allege any supposed wrongful means with specificity. *See* Moving Br. at 18-20 (citing *Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40 ("[i]t is well settled that 'wrongful means' cannot be conclusorily pleaded.") (citing *Kickertz v. N.Y. Univ.*, 110 A.D.3d 268, 275 (1st Dep't 2013)); *see also, Washington Ave. Assocs. v. Euclid Equip.*, 229 A.D.2d 486, 487 (2d Dep't 1996) ("[G]eneric allegations which vaguely refer to 'wrongful means'... neither particularly describe the misconduct at issue nor disclose precisely how each defendant allegedly committed whatever wrongful acts are being relied upon"). AppealTech speculates, with no supporting detail, that Movants interfered with AppealTech's business relationships by appropriating confidential and proprietary information and acquiring AppealTech's client lists. And that, "[u]pon information

14

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM          INDEX NO. 650620/2018

NYSCEF DOC. NO. 92     19-01435-jlg     Doc 5-36     Filed 12/23/19     Entered 12/23/19 16:01:58     Exhibit II -
                                                                        RECEIVED NYSCEF: 02/22/2019
                              Reply MOL in Support MTD Amended Complaint.     Pg 21 of 23

and belief," Counsel Press has utilized this information to further its own business interests. *See*

Am. Cmplt. ¶¶ 52, 66, 103, 132-134, 154. These allegations are yet another link in a chain of

hypothetical arguments and speculative statements that are insufficient as a matter of law to

allege wrongful means. Moreover, as established above, AppealTech makes its customer list

public and, as a result, the list cannot be confidential.

Second, Counsel Press also established that AppealTech failed to allege that Movants

acted purely out of malice – another required element of the claim. *See* Moving Br. at 18-20

(citing *Academy Orthotic & Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at 40

("The law deliberately makes tortious interference with business relations more difficult to plead

and prove by virtue of the requirement that plaintiff establish sufficiently 'culpable conduct' in

the form of malice or an independent tort.")); *see also, e.g., Martian Entertainment*, 12 Misc. 3d

1190(A), at *8; *Snyder v. Sony Music Entertainment, Inc.*, 252 A.D.2d 292, 299-300 (1st Dep't

1999); *Don Buchwald & Assoc., Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001); *Jurlique,

Inc. v. Austral Biolab Pty., Ltd.*, 187 A.D.2d 637, 639 (2d Dep't 1992). In its Opposition Brief,

AppealTech argues that Counsel Press acted with malice because it wanted "one less competitor

in the market." *See* Moving Br. at 19. But this is competition, not malice. As a matter of law,

such allegations cannot amount to malice because Counsel Press was acting in its own economic

interest to gain a competitive advantage and expand its market share. *See Academy Orthotic &

Prostehetic Assoc. IPA, Inc.*, 2016 N.Y. Misc. LEXIS 2734, at *40-41 (a plaintiff fails to plead

malice if it alleges that defendant acted in its economic interest).

Third, AppealTech continues to rely on its contention that Counsel Press interfered with

AppealTech relationship with Horing, Welikson & Rosen, P.C. ("Horing"), because Horing

allegedly transferred its account from AppealTech to Counsel Press in 2018. *See* Am. Cmplt. ¶¶

15

FILED: NEW YORK COUNTY CLERK 02/22/2019 10:08 AM
NYSCEF DOC. NO. 92
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-36    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit II -
Reply MOL in Support MTD Amended Complaint.    Pg 22 of 23

157-159. But, using publicly available documentary evidence, Counsel Press established in its Moving Brief that Horing has been a Counsel Press client for years. *See* Moving Br. at 8-9, 20. AppealTech fails to specify any other client relationships with which Movants allegedly interfered.

AppealTech's allegations fall woefully short of New York's heightened pleading requirement for tortious interference. As a result, AppealTech's claim against Movants for tortious interference with business relationships should be dismissed.

### POINT FOUR

### APPEALTECH FAILED TO ALLEGE A CLAIM AGAINST MOVANTS FOR UNFAIR COMPETITION

Finally, Counsel Press established that AppealTech failed to allege its claim for unfair competition. *See* Moving Br. at 20-21 (citing *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (Claims for unfair competition under New York law address "commercial immorality.") (citing *Roy Export Co. Establishment v. CBS, Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)); *see also, Headquarters Buick-Nissan, Inc. v. Michael Oldsmobile*, 149 A.D.2d 303, 304 (1st Dep't 1989) (A claim for unfair competition based on "the mere inducement of an at-will employee to join a competitor" is not actionable unless "dishonest means are employed, or the solicitation is part of a scheme designed solely to produce damage."); *Volt Delta Res. LLC v. Soleo Commc'ns, Inc.*, 816 N.Y.S.2d 702 (Sup. Ct. N.Y. Cnty. Mar. 29, 2006) (dismissing unfair competition counterclaim where defendant "failed to allege that plaintiff exploited any proprietary information or trade secrets.") (citing *Beverage Mktg. USA v. South Beach Bev. Co.*, 20 A.D.3d 439, 440 (2d Dep't 2005)).

Here, even under AppealTech's theory set forth in the Amended Complaint and Opposition Brief, Counsel Press hired the Employees to gain a competitive advantage. Such

16

conduct is not actionable.  And such conduct is certainly not "act[ion] solely to produce

damage."  Nor do AppealTech's assertions, even if true, demonstrate that Movants exploited

proprietary information or trade secrets.  As established above, the information alleged to have

been misappropriated is not proprietary, and much of it is publicly available.  In its Opposition

Brief, AppealTech does not present new facts or authority to maintain its claim for unfair

competition.  It merely reiterates its conclusory allegations from the Complaint.  *See* Opp. Br. at

19-20.  As a result, AppealTech's unfair competition claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Movants respectfully request an order granting their

Motion to Dismiss in its entirety, along with such other and further relief as the Court may deem

just and proper.

Dated: New York, New York
       February 21, 2019

**BLANK ROME LLP**

By: _____
       Anthony A. Mingione
       Ryan E. Cronin
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5345
Email: amingione@blankrome.com
       rcronin@blankrome.com
*Attorneys for Defendant Counsel Press, Inc.*
   *Gladstone Investment Corporation, Gladstone*
   *Management Corporation, and Gladstone*
   *Administration, LLC*

17