# Exhibit JJ

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Z & J LLC d/b/a APPEALTECH, | <u>NYSCEF CASE</u> |
| Plaintiff, | Hon. Doris Ling-Cohan, J.S.C |
| v. | No. 650620/2018 |
| LAURENCE MYNES, COUNSEL PRESS INC., GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATIONS, GLADSTONE ADMINISTATION, LLC AND JONATHAN WALLACH, | Motion Seq. No. 5 |
| Defendants. | |
| LAURENCE MYNES AND JONATHAN WALLACH, | |
| Counterclaim Plaintiffs, | |
| v. | |
| Z & J LLC d/b/a APPEALTECH AND MICHAEL KESTAN, Jointly and Severally, | |
| Counterclaim Defendants. | |

MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS LAURENCE MYNES AND JONATHAN WALLACH'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

Dated: February 22, 2019
         New York, New York

Motion Return Date: February 25, 2019

Douglas B. Lipsky
LIPSKY LOWE LLP
630 Third Avenue, Fifth Floor
New York, New York 10017
*Counsel for Defendants Mynes and Wallach*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL ARGUMENT ...................................................................................................................3

I. RELYING ON IRRELEVANT DISTINCTIONS AND IGNORING BINDING LEGAL AUTHORITY, APPEALTECH CANNOT ESCAPE THE REALITY THAT ITS BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW ...........................3

    A. AppealTech Does Not Successfully Rebut That The Geographical Scope of the Non-Compete Provisions Is Unreasonably Broad. ...................................................3

    B. The Non-compete Provisions Are Further Unenforceable Because They Would Prohibit Mynes and Wallach from Soliciting Current and Prospective AppealTech Clients With Whom They Had No Contact. ............................................................5

    C. The Court Should Invalidate the Non-Compete Provisions In Their Entirety. ........6

    D. AppealTech Cannot Overcome Fatal Flaws In Its Claim that Defendants Breached The Confidentiality Provision In Their Agreements. ..............................................9

II. DESPITE ITS EFFORTS TO EXPAND IT, THE BREACH OF THE DUTY OF LOYALTY CLAIM IS LIMITED AND SHOULD BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM .................................................................11

III. APPEALTECH CANNOT OVERCOME THE FATAL FLAWS TO ITS TORTIOUS INTERFERENCE CLAIM ...............................................................................................12

IV. COUNSEL PRESS, GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATION, GLADSTONE ADMINISTRATION, LLC'S REPLY SUBMISSION. ..................................................................................................14

CONCLUSION ............................................................................................................................15

i

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM
NYSCEF DOC. NO. 93
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ-
MOL in Reply.    Pg 4 of 19

## TABLE OF AUTHORITIES

CASES

*2470 Cadillac Res., Inc. v. DHL Exp. (USA), Inc.*,
84 A.D.3d 697, 923 N.Y.S.2d 530 (1st Dep't 2011) .................................................................11

*Admarketplace Inc. v. Salzamn,*
Index No. 651390/2013, 2014 N.Y. Misc. Lexis 1458 (N.Y. Sup. N.Y. Cty. March 28, 2014)...11

*Ashland Mgt. Inc. v. Altair Invs. NA, LLC*,
59 A.D.3d 97 (1st Dep't 2008) ....................................................................................................9

*BDO Seidman v. Hirschberg*,
93 N.Y.2d 382, 690 N.Y.S2d 854 (1999) ....................................................................................6

*Brown & Brown, Inc. v. Johnson,*
115 A.D.3d 162 (4th Dep't 2014) ................................................................................................9

*Crippen v. United Petroleum Feedstocks*,
245 A.D.2d 152, 666 N.Y.S.2d 156 (1st Dep't 1997) ..................................................................8

*Gilman & Ciocia, Inc. v. Randello,*
55 AD3d 871, 866 N.Y.S.2d 334 (2d Dep't 2008) .......................................................................7

*Good Energy, L.P. v. Kosachuk*,
49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dep't 2008), ....................................................................3

*Gordon v. Dino De Laurentiis Corp.*,
141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ................................................................10

*Healthworld Corp. v. Gottlieb*,
12 A.D.3d 278, 786 N.Y.S.2d 8 (1st Dep't 2004) ........................................................................5

*Healthworld Corp. v. Gottlieb*,
Index No. 600641/04, 2004 N.Y. Misc. Lexis 3281 (N.Y. Sup. Crt. N.Y. Cty. April 21, 2004)....5

*Lionella Prods., Ltd. v. Mironchik,*
Index No. 108693/98, 2012 N.Y. Misc. Lexis 3472, at *18 (N.Y. Sup. Crt. N.Y. Cty.
July 13, 2012) ...............................................................................................................................7

*Noise Marketing LLC v. Great Works America, Inc.*,
Index No. 113722/08, 2009 N.Y. Misc. Lexis 4709 (N.Y. Sup. Ct. N.Y. Cty April 29, 2019)....12

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM                INDEX NO. 650620/2018
NYSCEF DOC. NO. 93                                                              RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ -
                            MOL in Reply.    Pg 5 of 19

Defendants Laurence Mynes and Jonathan Wallach submit this memorandum of law in further support of their motion to dismiss the First Amended Complaint under C.P.L.R. §§ 3211(a) and (7).

## PRELIMINARY STATEMENT

AppealTech takes a two-prong approach in trying to save its claims against Mynes and Wallach: it tries to expand the law and rewrite the allegations in the First Amended Complaint. But the claims against them should be dismissed as a matter of law when the correct standard is applied to what is actually pled.

Fatal to its breach of contract claim, AppealTech drafted and inserted unreasonable and unenforceable non-compete provisions in Wallach and Mynes' employment agreements. It ties to save this claim in two ways. First, it attempts to rewrite the non-compete provisions by arguing they are limited to where the company does business. But that is not what is written. The provisions, instead, extend beyond where the company is doing business, which is directly contrary to what the Court of Appeals and First Department permit.

It next tries to save this claim by arguing a company may lawfully prohibit a former employee from soliciting its entire client base – regardless of whether that employee had any contact with those clients. But that is not the law: a non-compete must be limited to the clients the employee actually serviced. Wallach and Mynes' agreements, however, go beyond this permitted scope.

In its last effort to save this claim, AppealTech argues the Court should only partially enforce the non-compete provisions, versus invalidating them. But that result would be inconsistent with Court of Appeals precedent. Here, the non-compete provision in Mynes' agreement was deliberately designed to forestall competition and was a condition of continued employment. For Wallach, he had to agree to the non-compete as a condition of his initial

1

employment with AppealTech. These factors, as the Court of Appeals recognizes, call for invalidating the non-compete provisions.

As to its breach of fiduciary duty claim, AppealTech tries to expand this claim to include claims relating to Wallach and Mynes soliciting AppealTech clients. But this claim is limited to them allegedly disclosing confidential information to Counsel Press – the very same facts underlying the breach of contract claim. As many New York County Supreme Courts have held when examining mirror image claims, the duplicative fiduciary duty claims should be dismissed as a matter of law.

Finally, AppealTech remains misguided on its tortious interference claim. This claim, to be sufficiently pled, requires allegations that Wallach and Mynes directed wrongful means at third parties with the intent of interfering with their relationship with AppealTech. But this claim takes aim elsewhere, focusing on their conduct directed at AppealTech, dooming it.

Ultimately, fact questions do not exist on the validity of the claims against Wallach and Mynes. They should be dismissed as a matter of law.

LEGAL ARGUMENT

I. RELYING ON IRRELEVANT DISTINCTIONS AND IGNORING BINDING LEGAL AUTHORITY, APPEALTECH CANNOT ESCAPE THE REALITY THAT ITS BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW.

AppealTech, try as it might, cannot overcome the flaws in its breach of contract claim: that the geographical scope in the non-compete provisions is overbroad and unenforceable; and that the non-compete is unenforceable because it precludes Wallach and Mynes from soliciting *every* AppealTech customer – regardless of whether they had any contact with them when in AppealTech's employment. What's more, it cannot overcome that these provisions were put in their employment agreements to forestall competition and as a condition for employment, warranting this Court to completely invalidate them.

A. AppealTech Does Not Successfully Rebut That The Geographical Scope of the Non-Compete Provisions Is Unreasonably Broad.

The non-compete provisions in Wallach and Mynes' employment agreements have no defined geographical limitation, making them unreasonable and unenforceable as a matter of law. AppealTech tries, in its opposition, to minimize this by obfuscating the legal standard and what the provisions actually say.

The First Department in *Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 853 N.Y.S.2d 75 (1st Dep't 2008), which Defendants cite in their moving papers,[1] sets forth the two requirements that must be met for a non-compete's geographical scope to be reasonable. Namely, the scope must be limited to where the employer is doing business, and it must be further limited to where the employee was doing business. *Id.* at 332.

The parties appear to agree on the first requirement: that it must be limited to where the employer is doing business. Defendants state an apparent agreement exists because AppealTech

---

[1] Defendants' Mynes and Wallach's September 18, 2018 Memorandum of Law (Doc. No. 58) ("Defendants MOL") at 8-9.

3

argues Defendants do not cite any cases that hold a non-compete is unreasonable and unenforceable if it extends beyond where the employer is doing business, but then immediately cites cases that hold just that: restrictive covenants are unreasonable if they go beyond where the employer is doing business.[2] Defendants agree with the cases AppealTech cites: a non-compete is unreasonable and unenforceable if it goes beyond where the employer does business.

AppealTech is, however, silent on the second requirement: that the scope must be further limited to where the employee was doing business. But it cannot escape this requirement, which was so important to the First Department that it separately examined it when analyzing whether the geographical scope was reasonable. *See Good Energy, L.P.*, 49 A.D.3d at 332.

The non-compete provisions here are unquestionably too broad. AppealTech describes in its opposition where it does business: "AppealTech is a small company that has offices in only three cities, New York City, Rochester and Los Angeles and it only provides services those cities and surrounding areas."[3] The non-compete provisions are, however, not limited to these cities. They, instead, cover "any geographical area in which the Company does *or is actively seeking to do business*."[4] This is directly contrary to what the First Department held is permissible. *See Good Energy, L.P.*, 49 A.D.3d at 332. And AppealTech does not cite any authority that holds this broad, undefined geographical scope is permissible. And for good reason. This provision is effectively without borders.

In the end, the non-compete provisions are unenforceable on their face as the geographical scope extends beyond where the company is doing business and beyond where Wallach and Mynes

---

[2] AppealTech's January 22, 2019 Memorandum of Law (Doc. No. 80) ("AppealTech MOL") at 15-16.
[3] AppealTech MOL at 13.
[4] November 16, 2016 Mynes-AppealTech Employment Agreement ¶ 12(a), Exhibit B to Douglas B. Lipsky's September 18, 2018 Affidavit ("Lipsky Aff.") (Doc. No. 59) ("Mynes Agreement"); March 5, 2014 AppealTech-Wallach Employment Agreement ¶ 12, Exhibit C to Lipsky Aff. ("Wallach Agreement") (emphasis added).

4

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM		INDEX NO. 650620/2018
NYSCEF DOC. NO. 93		RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ-
MOL in Reply.    Pg 9 of 19

were doing business.

      B.    The Non-compete Provisions Are Further Unenforceable Because They Would Prohibit Mynes and Wallach from Soliciting Current and Prospective AppealTech Clients With Whom They Had No Contact.

Just as the non-compete provisions go too far geographically, they go too far on restricting what current and prospective AppealTech clients Mynes and Wallach may solicit. AppealTech, likely recognizing this, does not cite a single case to support its position that a non-compete may lawfully restrict an employee from contacting current or prospective clients with whom he or she had no contact. It, instead, incorrectly argues that Defendants "completely misconstrue" the governing law.[5] Defendants, however, correctly describe the binding legal authority on this issue – which calls for invalidating these non-compete provisions.[6]

The First Department in *Healthworld Corp. v. Gottlieb*, 12 A.D.3d 278, 786 N.Y.S.2d 8 (1st Dep't 2004), which Defendants cite[7] and AppealTech argues we misconstrue, held a non-compete provision is unenforceable if it prohibits a former employee from soliciting existing or prospective customers with whom the employee had no relationship while at his former employer. The court reached this holding by modifying a preliminary injunction the Supreme Court issued. *Id.* at 279. That preliminary injunction barred the former employee from "soliciting or accepting business from, or rendering services of the type rendered by Healthworld to "*any current Healthworld client, anyone who was a Healthworld client in the prior year* and any client with whom Gottlieb had contact with while employed." *Healthworld Corp. v. Gottlieb*, Index No. 600641/04, 2004 N.Y. Misc. Lexis 3281 (N.Y. Sup. Crt. N.Y. Cty. April 21, 2004) (emphasis added).[8] The First Department reversed that decision, holding this "preliminary injunction imposed

---

[5] AppealTech MOL at 14.
[6] Defendants MOL at 9-11.
[7] Defendants MOL at 9-10.
[8] Copies of the unpublished decisions cited in the memorandum are being provided with Douglas B Lipsky's February 22, 2019 Affirmation.

restrictions that were broader than those contained in the Covenant Agreement and those permitted under the principles in *BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 392, 690 N.Y.S2d 854 (1999)." *Healthworld Corp.*, 12 A.D.3d at 279. It accordingly unanimously modified the injunction "to limit the preliminary injunction to any clients of Healthworld with whom defendant Lisa Gottlieb had contact while employed at Healthworld . . ." *Id.*

This holding, as Defendants correctly describe, squares with the Court of Appeal's position in the seminal case *BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 690 N.Y.S2d 854 (1999). There, the Court held a non-solicit is overbroad and unreasonable if it extends to clients with whom the employee had no contact while in the company's employment. *BDO Seidman*, 93 N.Y.2d at 392; *see also Good Energy, L.P.*, 49 A.D.3d at 332 ("the covenant not to compete is unreasonable because it purports to prohibit defendant from dealing with Good Energy's entire client base, thus including not only those clients or customers that had been created and maintained at Good Energy's expense, but also those clients that were not serviced by defendant during his tenure at Good Energy and those that came to Good Energy solely because of a preexisting relationship with him.").

AppealTech is accordingly woefully wrong in arguing Defendants have misstated the legal framework. Under this framework, the non-compete provisions in Wallach and Mynes' agreements are overbroad since they are not limited to the clients with whom they had contact while in AppealTech's employment; they cover <u>any</u> actual client that <u>any</u> AppealTech employee serviced during their last six months and <u>any</u> prospective client that any AppealTech employee solicited during their last six months.[9] This is unreasonable and unenforceable.

C.    <u>The Court Should Invalidate the Non-Compete Provisions In Their Entirety.</u>

AppealTech argues for the Court to blue pencil the non-compete provisions, versus

---

[9] Mynes Agreement ¶ 12; Wallach Agreement ¶ 12.

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM
NYSCEF DOC. NO. 93
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019
19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ-
MOL in Reply.    Pg 11 of 19

invalidating them, but it noticeably does not examine the relevant factors on this issue.[10] The factors argue for invalidating the provisions.

In *BDO Seidman*, the Court of Appeals explained, under the right circumstances, it is appropriate for a court to completely invalidate, versus partially enforce, unenforceable non-compete provisions. *BDO Seidman*, 93 N.Y.2d at 394-95. The Court of Appeals explained the following circumstances argue for invaliding the provisions: if they were imposed as a condition of initial or continued employment; whether coercion existed; or whether the agreement "was part of some general plan to forestall competition." *Id.* at 395. The Court also identified a circumstance that would argue for partially enforcing the provision: if it was offered with a promotion. *Id.* at 395. Consistent with these factors, a New York County Supreme Court invalidated, versus partially enforced, a non-compete "since the covenant was imposed as a condition of defendant's initial employment, not in connection with a promotion to a position of responsibility or trust, and there is evidence that the Agreement was part of a general plan to forestall competition." *Lionella Prods., Ltd. v. Mironchik,* Index No. 108693/98, 2012 N.Y. Misc. Lexis 3472, at *18 (N.Y. Sup. Crt. N.Y. Cty. July 13, 2012); *see also Gilman & Ciocia, Inc. v. Randello,* 55 AD3d 871, 872, 866 N.Y.S.2d 334 (2d Dep't 2008) (affirming lower court's refusal to partially enforce restrictive covenant where employer failed to demonstrate "the absence of overreaching, the coercive use of dominant bargaining power, or other anticompetitive misconduct").

AppealTech appears to argue an evidentiary hearing is necessary on this issue. But the First Amended Complaint has the answers. For Mynes, AppealTech brazenly admits he was required to sign his August 2016 agreement to forestall competition. It alleges Counsel Press and the Gladstone Defendants had a "scheme" to poach AppealTech employees and drive AppealTech out

---

[10] AppealTech MOL at 16-17.

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM        INDEX NO. 650620/2018
NYSCEF DOC. NO. 93                                      RECEIVED NYSCEF: 02/22/2019
19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ -
                              MOL in Reply.    Pg 12 of 19

of business;[11] that Counsel Press, in 2016, hired three of AppealTech's four Senior Appellate Consultants and tried to "poach" 65% of its other employees;[12] AppealTech raised employees' salaries given the threat of losing its staff;[13] and that Counsel Press' Chief Executive Officer was "raiding" AppealTech's employees so that there would be "one less competitor."[14] Considering this backdrop and with numerous employees departing in August 2016, AppealTech approached Mynes with the November 2016 agreement that contains the unenforceable non-compete provisions.[15] These allegations make clear the agreement was intended to forestall Counsel Press from competing with AppealTech and that this agreement was a condition of his continued employment. These two factors favor invalidating the provisions. *BDO Seidman*, 93 N.Y.2d at 395.

For Wallach, the surrounding facts are different but still favor the same conclusion. He was not given the March 2014 agreement as part of a promotion, but was required to sign it as a condition of his initial employment with AppealTech.[16] *See Lionella Prods., Ltd.*, 2012 N.Y. Misc. Lexis 3472, at *18 (invalidating the non-compete when it was "imposed as a condition of defendant's initial employment").

The restrictive covenants in both agreements should accordingly be invalidated. Modifying them would meaningfully alter the agreements and AppealTech "should have drafted the agreement[s] to include [reasonable] provisions from the start. *Crippen v. United Petroleum Feedstocks*, 245 A.D.2d 152, 153, 666 N.Y.S.2d 156 (1st Dep't 1997) (holding invalidating the non-compete, versus partial enforcement, was appropriate). Doing otherwise and partially

---

[11] AppealTech's April 18, 2018 First Amended Complaint (Doc. No. 36) ("FAC") ¶ 73, Exhibit A to Lipsky Aff.
[12] *Id.* ¶ 59.
[13] *Id.* ¶ 61.
[14] *Id.* ¶ 68.
[15] *Id.* ¶ 87.
[16] *Id.* ¶¶ 41-44.

enforcing these provisions would reward bad behavior and "enhance the risk that employers will use their superior bargaining position to impose unreasonable anti-competitive restrictions, uninhibited by the risk that a court will void the entire agreement leaving the employee free of any restraint." *Brown & Brown, Inc. v. Johnson,* 115 A.D.3d 162, 172 (4th Dep't 2014).

> D. AppealTech Cannot Overcome Fatal Flaws In Its Claim that Defendants Breached The Confidentiality Provision In Their Agreements.

This claim essentially focuses on Wallach and Mynes allegedly disclosing AppealTech's client lists to Counsel Press. Wallach and Mynes, however, establish in their moving brief that the client list is ultimately not confidential, dooming this claim.[17] AppealTech, likely recognizing this, overstates the law and argues it is a fact question whether the information is confidential. That is not the law. Rather, "Whether a plaintiff's customer list and/or other proprietary information constitutes a trade secret or is readily ascertainable from public sources is *ordinarily* a triable issue of fact." *Ashland Mgt. Inc. v. Altair Invs. NA, LLC,* 59 A.D.3d 97, 102 (1st Dep't 2008) (emphasis added). It therefore follows that a court may *sometimes* decide, as a matter of law, whether the information is confidential. And that is precisely the situation here with AppealTech's client lists.

AppealTech does not hide who its customers are; it broadcasts their identities. It, like other appellate service providers, puts a unique marker on its pleadings, allowing anyone in the public to identify AppealTech's clients.[18] Its client list is accordingly, by definition and a matter of law, public information. *Id.* This alone dooms the breach of contract claim as it relates to Defendants disclosing the client list.

AppealTech cannot overcome in its opposition this claim's other deficiency: besides the client list, the FAC does not sufficiently identify what information Defendants shared with Counsel Press. AppealTech, trying to avoid this, misstates the First Department's holding in *Gordon v.*

---

[17] Defendants MOL at 13-15.
[18] Lipsky Aff. Exhibit. D.

9

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM
NYSCEF DOC. NO. 93
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ -
MOL in Reply.    Pg 14 of 19

*Dino De Laurentiis Corp.*, 141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988). This is understandable because the First Department, in reviewing a motion a dismiss, examined allegations that closely mirror the FAC's and dismissed the claim. There, the plaintiff made the "boilerplate" allegation that the defendant disclosed "confidential information" to Coca-Cola and also alleged the defendant disclosed a prior proposal and financial information to Coca-Cola. *Id.* at 436. The Court held these allegations are insufficient to support a claim for two reasons. Starting with the "boilerplate" allegation of disclosing "confidential information," it held "these vague and conclusory allegations are insufficient to sustain a breach of contract cause of action." *Id.* at 436. Turning to the only information the plaintiff specifically identifies that defendant disclosed (i.e., the proposal and financial information), the First Department held this too was insufficient because that information was already in Coca-Cola's position and was thereby not confidential. *Id.*

The same deficiencies doom the FAC. As to Mynes, while AppealTech focuses on information he emailed to his personal account,[19] that information is immaterial since the FAC does not assert he disclosed that information to Counsel Press. It, instead, alleges he disclosed to Counsel Press only "client lists and other confidential and proprietary information."[20] As for the allegations against Wallach, the FAC alleges only that he shared "AppealTech's confidential and proprietary informatiion with Counsel Press."[21] Again, the client lists Mynes supposedly disclosed are not confidential as a matter of law. *See Ashland Mgt. Inc.*, 59 A.D.3d at 102. The allegations against them boil down to the generic allegation of disclosing "confidential and proprietary information" and the First Department has held this "boilerplate" allegation is insufficient as a matter of law. *Gordon*, 141 A.D.2d at 436.

Finally, AppealTech agrees that this claim's survival depends on alleging facts that it took

---

[19] AppealTech MOL at 18.
[20] FAC ¶ 104.
[21] FAC ¶ 47.

10

necessary steps to protect secrecy of the information.[22] This issue, importantly, may be decided as a matter of law. The First Department, in fact, affirmed dismissing a claim at this stage because the plaintiff "failed to allege that [defendant] stole the information or took steps to maintain the secrecy of the information." *2470 Cadillac Res., Inc. v. DHL Exp. (USA), Inc.*, 84 A.D.3d 697, 698, 923 N.Y.S.2d 530 (1st Dep't 2011). AppealTech, trying to meet this burden, argues the employment agreements are sufficient measures to protect the information.[23] It, noticeably, does not cite any authority on this position.

At bottom, the FAC fails allege sufficient facts that Wallach and Mynes breached their agreement by disclosing any purported confidential information to Counsel Press.

II.   DESPITE ITS EFFORTS TO EXPAND IT, THE BREACH OF THE DUTY OF LOYALTY CLAIM IS LIMITED AND SHOULD BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM.

This claim, as pled, is limited to Wallach and Mynes allegedly disclosing AppealTech's confidential information to Counsel Press.[24] AppealTech, in its opposition, tries to expand this claim to covering soliciting AppealTech clients,[25] but that allegation is not found anywhere in this claim. The issue here is accordingly whether AppealTech may simultaneously assert a fiduciary duty claim and breach of contract claim, both of which focus on the same allegation: their disclosure of confidential information to Counsel Press.

New York County Supreme Courts who have looked at this issue regularly dismiss the duplicative fiduciary duty claim. In *Admarketplace Inc. v. Salzamn,* Index No. 651390/2013, 2014 N.Y. Misc. Lexis 1458 (N.Y. Sup. N.Y. Cty. March 28, 2014), the plaintiff alleged the defendants breached their employment agreement by disclosing confidential information to a third party and,

---

[22] AppealTech MOL at 20.
[23] *Id.*
[24] FAC ¶¶ 122-128.
[25] AppealTech MOL at 21.

in doing so, also breached their duty of loyalty to the company. The court, on a motion to dismiss, dismissed the fiduciary claim as duplicative, explaining "where, as here, the alleged breach of fiduciary duty is no different than the alleged breach of contract, the claims are duplicative. Since the NDA expressly governs the legitimacy of [defendants'] disclosure to [a third party], a separate claim for breach of fiduciary duty is unnecessary and is dismissed." *Admarketplace Inc.*, 2014 N.Y. Misc. Lexis 1458 at * 12 (citing *Kaminsky v. FSP Inc.*, 5 A.D.3d 251, 252, 773 N.Y.S.2d 292 (1st Dept 2004)).

The same result occurred in *Noise Marketing LLC v. Great Works America, Inc.*, Index No. 113722/08, 2009 N.Y. Misc. Lexis 4709 (N.Y. Sup. Ct. N.Y. Cty April 29, 2019). There, like here, the plaintiff alleges defendants agreed in their employment agreements to keep certain information confidential and breached those agreements and the duty of loyalty by disclosing confidential information to a third party. The court granted the motion to dismiss on the fiduciary duty claim as duplicative of the contract claim, explaining "the conduct relating to breach of duties alleged in [Plaintiff's] third cause of action for breach of fiduciary duty is no different from the conduct relating to defendants' alleged breach of contract." *Noise Marketing LLC*, 2009 N.Y. Misc. Lexis 4709, at *13 (citing *William Kaufman Org., Ltd. v Graham & James LLP*, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439 (1st Dept 2000)).

The same holds true here. The alleged disclosure of the confidential information underlying the fiduciary duty claim is the same conduct that underlies the breach of contract claim. The fiduciary duty claim should therefore be dismissed as a matter of law.

III.   APPEALTECH CANNOT OVERCOME THE FATAL FLAWS TO ITS TORTIOUS INTERFERENCE CLAIM

While it tries to reframe the allegations, the First Amended Complaint ultimately does not allege Wallach and Mynes directed any wrongful means at AppealTech clients with the sole intent of interfering with that business relationship. This warrants dismissing the tortious interference

12

FILED: NEW YORK COUNTY CLERK 02/22/2019 04:30 PM
NYSCEF DOC. NO. 93
INDEX NO. 650620/2018
RECEIVED NYSCEF: 02/22/2019

19-01435-jlg    Doc 5-37    Filed 12/23/19    Entered 12/23/19 16:01:58    Exhibit JJ -
MOL in Reply.    Pg 17 of 19

with business relationship claim.

AppealTech remains confused about this claim. This claim is not about conduct between the defendant and the plaintiff; it is about conduct the defendant directed at third parties. And that conduct must be wrongful. To sufficiently assert this claim, a party must therefore allege facts supporting a key element: that the defendant directed wrongful means at a third party – not the plaintiff – with the goal of interfering with the relationship between the third party and the plaintiff. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (N.Y. 2004). The Court of Appeals explained what conduct rises to the level of constituting "wrongful means:"

> "Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract."

*Id.* at 191 (quoting Restatement (Second) of Torts § 768, Comment e; § 767, Comment c). The exception to this rule is if the defendant acted solely to harm the plaintiff. *Id*.

Trying to meet this burden as to Wallach, the company points to the allegations that he, as an AppealTech employee, referred calls from existing and prospective clients to Counsel Press.[26] As to Mynes, the company points to the allegation that he, as a Counsel Press employee, solicited AppealTech clients to do business with Counsel Press.[27] Then, trying to show how this alleged conduct is somehow "wrongful," the company argues these acts constitute breaches of their employment agreements and the duty of loyalty. But none of this conduct involves either of them directing wrongful means at any current or prospective AppealTech employee. That is the required element to adequately plead this claim.

The only way this claim survives is, accordingly, if Mynes and Wallach acted solely to

---

[26] AppealTech MOL at 23 (citing FAC ¶¶ 49-50).
[27] AppealTech MOL at 23 (citing FAC ¶ 103).

13

harm AppealTech. Trying to show this malicious intent, AppealTech points to a statement that Counsel Press' President made about a strategy of wanting one less competitor.[28] But this statement does not show the required intent. A "strategy" to reduce competition is not intended to solely harm the vanquished, but is, rather, intended, to benefit the victor. This is fair competition. The Court of Appeals recognized this, explaining the appellant-defendant did not act solely to harm the respondent-plaintiffs by interfering with their business relationships, but was acting out of "normal economic self-interest." *Id.* at 190.

Trying again to meet this test, AppealTech identifies a client it lost to Counsel Press: Horing Welikson & Rosen, P.C. Yet it does not, as required, identify any wrongful means Wallach or Mynes directed at this firm. It, instead, alleges that this firm was at one point an AppealTech and Counsel Press client and is now only a Counsel Press client.[29] That's it. This falls woefully short of its burden.

IV. COUNSEL PRESS, GLADSTONE INVESTMENT CORPORATION, GLADSTONE MANAGEMENT CORPORATION, GLADSTONE ADMINISTRATION, LLC'S REPLY SUBMISSION.

Mynes and Wallach incorporate by reference the arguments Counsel Press, Gladstone Investment Corporation, Gladstone Management Corporation, Gladstone Administration, LLC make in their February 22, 2019 memorandum of law in further support of their motion to dismiss (Doc. No. 92).

---

[28] AppealTech MOL at 23 (citing FAC ¶ 68).
[29] AppealTech MOL at 24 (citing FAC ¶¶ 157-159).

14

## CONCLUSION

For the foregoing reasons and the reasons stated in their moving papers, Defendants Mynes and Wallach respectfully request that the Court enter an Order dismissing Counts One, Two, Five, Six and Seven of AppealTech's First Amended Complaint and grant any other relief the Court deems appropriate.

Dated: New York, New York
February 22, 2019

>Respectfully submitted,
>LIPSKY LOWE LLP
>
>s/ Douglas B. Lipsky
>Douglas B. Lipsky
>630 Third Avenue, Fifth Floor New York, New York 10017
>Tel: 212.392.4772
>doug@lipskylowe.com
>*Counsel for Defendants Mynes and Wallach*